WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
:
**In re**                                       :        **Chapter 11**
:
**AÉROPOSTALE, INC.**, *et al.*,                :        **Case No. 16-_____ (___)**
:
**Debtors.**[1]                                 :        **Joint Administration Requested**
:
---------------------------------------------------------x

## MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105, 363, AND 365 FOR APPROVAL OF (I) PROCEDURES FOR STORE CLOSING SALES, AND (II) THE ASSUMPTION OF THE LIQUIDATION CONSULTING AGREEMENTS

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Aéropostale, Inc. and its subsidiaries, as debtors and debtors in possession in the

above-captioned chapter 11 cases (collectively, the "***Debtors***"), respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: Aéropostale, Inc. (3880); Aéropostale West, Inc. (7013); Jimmy'Z Surf Co., LLC (0461); Aero GC Management LLC (4257); Aeropostale Procurement Company, Inc. (8518); Aeropostale Licensing, Inc. (8124); P.S. from Aeropostale, Inc. (5900); GoJane LLC (4923); Aeropostale Canada Corp. (N/A); Aeropostale Holdings, Inc. (7729); and Aeropostale Puerto Rico, Inc. (6477). The Debtors' corporate headquarters is located at 112 West 34th Street, 22nd Floor, New York, NY 10120.

### Preliminary Statement

1.      A key component of the Debtors' restructuring strategy is to right-size their operations by closing unprofitable stores.  Such closures will help stem the Debtors' significant cash burn, increase the Debtors' liquidity, and allow the Debtors to focus their reorganization efforts around a smaller footprint of more profitable stores.

2.      The Debtors and their advisors have identified 154 stores that require prompt closure (the "*Closing Stores*").  A list of the Closing Stores is attached hereto as **Exhibit A**.  The Closing Stores include 113 of the Debtors' approximately 770 stores operating in the United States and all 41 of the Debtors' stores operating in Canada.

3.      In formulating the list of Closing Stores, the Debtors considered, among other factors, historical store profitability, recent sales trends, the geographic market in which the store is located, the potential to realize negotiated rent reductions with applicable landlords, and specific circumstances related to a store's performance.  One hundred seventeen of the Closing Stores were unprofitable in fiscal year 2015.  Each of the remaining 37 Closing Stores produced flat or marginal profit in fiscal year 2015.  Many of these 37 stores are located in geographic markets that the Debtors have made a strategic decision to exit, such as Canada, Alaska, and Hawaii.  The remainder experienced poor or negative sales trends and no longer fit within the Debtors' business plan.

4.      Collectively, the 117 unprofitable Closing Stores generated approximately $17 million in losses for fiscal year 2015, which represents 56% of the Debtors' total losses from stores with negative pro forma EBITDA.[2]  The liquidation of the assets in the Closing Stores is

---

[2] Pro Forma EBITDA adjusts the earnings before interest, taxes, depreciation, and amortization measured on a store-by-store basis to include certain adjustments for non-cash rent and allocated corporate expenses such as District Manager costs, in-store marketing costs, and telephone / data charges.

2

expected to yield approximately $21 million in net proceeds, which the Debtors will use to repay their postpetition debtor-in-possession financing and reduce their costs and expenses in these chapter 11 cases. To the extent that assets at the Closed Stores constitute Prepetition Term Loan Collateral, net proceeds thereof shall be paid to the Term Loan Agent.

5.    By this Motion, the Debtors seek approval of streamlined procedures to sell the inventory, furniture, fixtures, and equipment at any store scheduled for closure during these chapter 11 cases, in each case free and clear of liens, claims or encumbrances (the "**Store Closing Procedures**"). The Debtors are seeking interim approval to apply the Store Closing Procedures to the Closing Stores given the significant operating losses continuing in the Closing Stores in the aggregate, the Debtors' liquidity constraints, and the budget set forth in the Debtors' proposed postpetition financing facility. In order to maximize value for their creditors, the Debtors may need to close additional stores during these chapter 11 cases (such stores, the "**Additional Closing Stores**," and together with the Closing Stores, the "**Stores**"). The Debtors will seek authority to apply the Store Closing Procedures to any Additional Closing Stores at the final hearing on this Motion.

6.    To run a seamless and efficient large-scale store closing process and to maximize the value of the assets being sold, the Debtors require and are also seeking authority to assume their liquidation consulting agreements (the "**Liquidation Consulting Agreements**") with Tiger Capital Group, LLC and Great American Group, LLC (the "**Liquidation Consultant**"), liquidation consulting firms that the Debtors have determined in their business judgment are capable of performing the required tasks and have proposed favorable terms.

7.    The relief requested in this Motion is integral to maximizing the value of the Debtors' estates. It will permit the Debtors to immediately advertise and commence the store

3

closing sales at the Closing Stores, and it will establish fair and uniform store closing procedures to assist the Debtors and their creditors through the Debtors' transition to a smaller, more profitable enterprise.

### Relief Requested

8.      Pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors request entry of an order granting them authority, but not direction, to: (i) implement the Store Closing Procedures; and (ii) assume the Liquidation Consulting Agreements.

9.      As stated, the Debtors seek interim and final authority to implement the Store Closing Procedures with respect to the Closing Stores.  The Debtors will await a final hearing to obtain the authority to apply the Store Closing Procedures to any Additional Closing Stores.   The Debtors seek immediate authority to assume the Liquidation Consulting Agreements on a final basis.

10.      A proposed form of order granting the applicable relief requested herein on an interim basis is annexed hereto as **Exhibit D** (the "**Proposed Interim Order**") and, pending a final hearing on the relief requested herein, on a final basis is annexed hereto as **Exhibit E** (the "**Proposed Final Order**").

11.      In support of the relief requested herein, the Debtors submit the Declaration of Timothy McDonagh, a Managing Director at FTI Consulting, Inc., which has been filed contemporaneously herewith (the "**McDonagh Declaration**").

### Jurisdiction

12.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the Amended *Standing Order of Reference M-431*, dated January

WEIL:\95641370\15\11727.0012

31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

13.     On the date hereof (the "***Commencement Date***"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

14.     Contemporaneously herewith, the Debtors have filed a Motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

15.     Information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of David J. Dick Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York*, sworn to on the date hereof (the "***First Day Declaration***"), which has been filed with the Court contemporaneously herewith.[3]

**The Store Closing Procedures**

**A.       Description of the Store Closing Procedures**

16.     The Debtors have determined, in the exercise of their business judgment and in consultation with their advisors, that implementing the Store Closing Procedures attached hereto as **Exhibit B** will provide the best and most efficient means of selling the assets in the Stores ( the "***Store Closing Assets***") to maximize their value to the estates (such sales, the "***Store***

---

[3] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the First Day Declaration.

WEIL:\95641370\15\11727.0012

*Closing Sales*"). The Debtors estimate that the Store Closing Sales will take approximately six to eight weeks. The Debtors intend to market the leases for the Closing Stores during that time, and, therefore, the Debtors have not yet made a determination whether to reject the leases for the Closing Stores.

17.    Certain states in which the Debtors operate stores have or may have licensing or other requirements governing the conduct of store closing, liquidation, or other inventory clearance sales, including (but not limited to) state and local laws, statutes, rules, regulations, and ordinances (the "*Liquidation Sale Laws*"). Liquidation Sale Laws may establish licensing, permitting, or bonding requirements, waiting periods, time limits, and bulk sale restrictions and augmentation limitations that would otherwise apply to the Store Closing Sales. Such requirements may hamper the Debtors' efforts to maximize value in selling their inventory. The Debtors intend to conduct the Store Closing Sales in accordance with the Store Closing Procedures without complying with the Liquidation Sale Laws.[4]

18.    Similarly, the Debtors respectfully request a waiver of any contractual restrictions that could otherwise inhibit or prevent the Debtors from maximizing value for creditors through the Store Closing Sales.   In certain cases, the contemplated Store Closing Sales may be inconsistent with certain provisions of leases, subleases, or other documents with respect to the premises in which the Debtors operate, including (without limitation) reciprocal easement agreements, agreements containing covenants, conditions, and restrictions (including, without limitation, "go dark" provisions and landlord recapture rights), or other similar documents or provisions.

---

[4] The Debtors will continue to comply with laws, statutes, rules, or ordinances which are for the protection of the health and safety of the public and consumer protection laws.

6

19.    The Debtors also request that no entity, including, without limitation, utilities, landlords, creditors and all persons acting for or on their behalf shall interfere with or otherwise impede the conduct of the Store Closing Sales, or institute any action against the Debtors or landlords in any court (other than in this Court) or before any administrative body which in any way directly or indirectly interferes with, obstructs, or otherwise impedes the conduct of the Store Closing Sales, the advertising and promotion (including through the posting of signs) of Store Closing Sales.

**B.**    **The Store Closing Procedures Should Be Approved**

**1.**    **Implementation of the Store Closing Procedures Constitutes A Sound Exercise of the Debtors' Business Judgment**

20.    The Court may grant the Debtors authority to implement the Store Closing Procedures pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.  Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that, "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1).  Further, section 105(a) provides, in relevant part, that, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a).

21.    To obtain Court approval to use property under section 363(b) of the Bankruptcy Code for the purpose of a store closing sale, the Debtors need only show a legitimate business justification for the proposed action.  *See, e.g., Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain

WEIL:\95641370\15\11727.0012

objections to the debtor's conduct.") (citation omitted).  When a valid business justification exists, the law vests the debtor's decision to use property out of the ordinary course of business with a strong presumption "'that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'"  *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*), 147 B.R. 650, 656 (S.D.N.Y. 1990) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).  Accordingly, parties challenging a debtor's decision must make a showing of "bad faith, self-interest or gross negligence."  *Integrated Res.*, 147 B.R. at 656 (citations omitted).

22.    The relief requested by this Motion represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is justified under sections 105(a) and 363(b) of the Bankruptcy Code.  The Debtors and their advisors believe that the Store Closing Procedures represent the most efficient and appropriate means of maximizing the value of the Store Closing Assets, while balancing the potentially competing concerns of landlords and other parties in interest.

23.    Furthermore, ample business justification exists to conduct Store Closing Sales at the Closing Stores.  Prior to the Commencement Date, the Debtors, with the assistance of their advisors, engaged in an extensive review of each of their stores to (i) identify underperforming and unprofitable stores, (ii) consider whether the store's performance can be improved by various initiatives, including through the negotiation of lease concessions with landlords, and (iii) determine what stores should be closed promptly to eliminate their ongoing negative impact on the Debtors' financial performance and to improve the Debtors' liquidity. This process has resulted in the Debtors' identification of the Closing Stores.

WEIL:\95641370\15\11727.0012

## 2.    The Debtors Will Be Irreparably Harmed
## Absent the Granting of Immediate Relief

24.    Any interruption or delay in the Debtors' ability to implement the Store Closing Procedures at the Closing Stores will have serious negative consequences for the Debtors' estates.  As noted, the Closing Stores are a significant financial drain on the Debtors estates in the aggregate.  The sooner the Closing Stores are closed and the inventory at the Closing Stores liquidated, the more cash the Debtors will save for the benefit of all creditors.  For this reason, the Debtors' proposed postpetition financing agreement includes a budget that assumes the prompt commencement of store closing sales at the Closing Stores.  Failure to obtain interim relief for the commencement of Store Closing Sales places the Debtors at risk of defaulting on their obligations to their proposed postpetition lenders.  In addition, immediate approval of the Store Closing Procedures and the assumption of the Liquidation Consulting Agreements is required so that the Liquidation Consultant can immediately begin preparations and advertisements for the Store Closing Sales, with the aim of maximizing the value of the inventory in the Stores.  Indeed, to take advantage of higher weekend traffic, the Liquidation Consultant intends to commence the Store Closing Sales for a majority of the stores on or about Friday, May 6, 2016.[5]  Any delay in the commencement of the Store Closing Sales will cause the Debtors additional losses of approximately $300,000 to $400,000 per week.  More importantly, the Debtors expect that the announcement of a Store Closing Sale will result in difficulty retaining employees at those stores.[6]  In short, the longer the delay in commencing the Store

---

[5] The Debtors do not intend to commence Store Closing Sales at their Canadian locations until a Canadian court recognizes the Proposed Interim Order under the Companies' Creditors Arrangement Act.

[6] The announcement of these chapter 11 cases is also expected to cause increased customer interest in attending the Store Closing Sales during the first week of these chapter 11 cases, although the impact of any sales increase caused by the filing of these chapter 11 cases is difficult to quantify or predict.

Closing Sales, the more difficult it will be for the Debtors to maximize the results of the Store Closing Sales. For all these reasons, the Debtors submit that there is sufficient cause for approval of the Store Closing Procedures on both an interim and final basis.

25. Courts in this district and elsewhere have recently approved store closing procedures in chapter 11 cases on an interim basis, and numerous courts have granted retail debtors first-day authority to implement such procedures. *See, e.g., In re Sports Authority Holdings, Inc.*, Case No. 16-10527 (Bankr. D. Del. March 3, 2016) (granting first-day relief); *In re Quiksilver, Inc.*, Case No. 15-11880 (Bankr. D. Del. Sept. 10, 2015) (granting first-day relief); *In re Radioshack Corp.*, Case No. 15-10197 (Bankr. D. Del. Feb. 6, 2015) (granting first-day relief); *In re The Great Atl. & Pac. Tea Co., Inc., Case No.* 15-23007 ("*A&P II*") (Bankr. S.D.N.Y. August 13, 2015) (granting interim relief where first-day relief was not requested); *In re dELiA*s, Inc.*, Case No. 14-23678 (Bankr. S.D.N.Y. Dec. 10, 2014) (granting first-day relief). The store closing procedures approved in the foregoing cases are substantially similar to the Store Closing Procedures attached hereto. The Debtors have attempted to provide substantially all of the landlords impacted by this Motion with email service of the Motion, and many such landlords should already be familiar with the terms of the Store Closing Procedures given their involvement in other retail bankruptcy cases where similar procedures have been approved.

**3.    Sales of the Store Closing Assets Should Be
Free And Clear Of All Liens, Claims, and Encumbrances**

26. Pursuant to section 363(f) of the Bankruptcy Code, a debtor may sell property of the estate "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

(i)    applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(ii)    such entity consents;

10

(iii)        such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(iv)        such interest is in bona fide dispute; or

(v)        such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f)(1)-(5).

27.      The Debtors anticipate that, to the extent there are liens on the Store Closing Assets that would be the subject of the Store Closing Sales, all holders of such liens will consent to the sales because they provide the most effective, efficient, and time-sensitive approach to realizing proceeds for, among other things, the repayment of amounts due to such parties. Any and all liens on the Store Closing Assets sold under the Store Closing Sales would attach to the remaining net proceeds of such sales with the same force, effect, and priority as such liens currently have on these assets, subject to the rights and defenses, if any, of the Debtors and of any party-in-interest with respect thereto.

28.      Moreover, all identified lienholders will receive notice and will be given sufficient opportunity to object to the relief requested on a final basis. Any such entity that does not object to the sale should be deemed to have consented. *See Futuresource LLC v. Reuters Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002) ("It is true that the Bankruptcy Code limits the conditions under which an interest can be extinguished by a bankruptcy sale, but one of those conditions is the consent of the interest holder, and lack of objection (provided of course there is notice) counts as consent. It could not be otherwise; transaction costs would be prohibitive if everyone who might have an interest in the bankrupt's assets had to execute a formal consent before they could be sold." (internal citations omitted)); *Hargrave v. Twp. of Pemberton* (*In re Tabone, Inc.*), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (finding failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)); *Citicorp Homeowners Serv.,*

11

*Inc. v. Elliot* (*In re Elliot*), 94 B.R. 343, 345 (E.D. Pa. 1988) (same); *see also In re Enron Corp.*, Case No. 01-16034, 2003 WL 21755006, at *2 (Bankr. S.D.N.Y. July 28, 2003) (order deeming all parties who did not object to proposed sale to have consented under section 363(f)(2)).

29.     Accordingly, the Debtors submit that the sale of the Store Closing Assets satisfies the statutory requirements of section 365(f) of the Bankruptcy Code and should, therefore, be free and clear of any liens, claims, encumbrances, and other interests.

### 4.     The Court Should Invalidate Contractual Restrictions that Impair the Debtors' Ability to Conduct the Store Closing Sales

30.     Store closing sales are a routine part of chapter 11 cases involving retail debtors.     Such sales are consistently approved by courts, despite provisions in recorded documents or agreements purporting to forbid such sales.     Indeed, courts, including in this district, have repeatedly deemed such restrictive contractual provisions unenforceable as impermissible restraints on a debtor's ability to maximize the value of its assets under section 363 of the Bankruptcy Code.     *See, e.g., Sports Authority*, Case No. 16-10527 (Bankr. D. Del. March 3, 2016); *Quiksilver*, Case No. 15-11880 (Bankr. D. Del. Sept. 10, 2015); *A&P II,* Case No. 15-23007 (Bankr. S.D.N.Y. August 13, 2015); *In re the Great Atl. & Pac. Tea Co., Inc.*, Case No. 10-24549 (Bank. S.D.N.Y. Mar. 10, 2011); *In re Blockbuster Inc.*, Case No. 10-14997 (Bankr. S.D.N.Y. Jan. 20, 2011); *In re Bradlees Stores, Inc.*, Case No. 00-16035 (Bankr. S.D.N.Y. Jan. 4, 2001); *In re R.H. Macy & Co.*, 170 B.R. 69, 77 (Bankr. S.D.N.Y. 1994).

31.     The Store Closing Procedures, like the sale guidelines approved in other cases cited herein, provide the appropriate protections for any legitimate concerns that landlords or other affected parties might otherwise have with respect to the conduct of the Store Closing Sales.     Accordingly, the Debtors request that the Court authorize the Debtors to conduct the

Store Closing Sales consistent with the Store Closing Procedures, without interference by any landlords or other affected parties.

### 5. The Court Should Waive Compliance with Any State and Local Laws, Statutes, Rules, and Ordinances Restricting Store Closing Sales

32.    There is ample support for the Debtors' request for authority to not comply with the Liquidation Laws.  First, it is generally accepted that statutes and regulations provide that, if a liquidation or bankruptcy sale is court authorized, then a company need not comply with the Liquidation Sale Laws.

33.    Second, this Court will be able to supervise the Store Closing Sales because the Debtors and their assets are subject to this Court's exclusive jurisdiction.  *See* 28 U.S.C. § 1334.  Creditors and the public interest are adequately protected by notice of this Motion and the ongoing jurisdiction and supervision of this Court.  Moreover, 28 U.S.C. § 959, which requires debtors to comply with state and other laws in performance of their duties, does not apply to the Store Closing Sales.  *See, e.g., In re Borne Chemical Co.*, 54 B.R. 126, 135 (Bankr. D.N.J. 1984) (holding that 28 U.S.C. § 959(b) is only applicable when property is being managed or operated for the purpose of continuing operations, not liquidations).

34.    Third, even if a state or local law does not expressly except bankruptcy sales from its ambit, the Debtors submit that, to the extent such state or local law conflicts with federal bankruptcy laws, it is preempted by the Supremacy Clause of the United States Constitution.  To hold otherwise would severely impair the relief available under section 363 of the Bankruptcy Code.  Consistent with this premise, bankruptcy courts have recognized that federal bankruptcy laws preempt state and local laws that contravene the underlying policies of the Bankruptcy Code.  *See, e.g., Belculfine v. Aloe (In re Shenango Grp., Inc.)*, 186 B.R. 623, 628 (Bankr. W.D. Pa. 1995) ("Trustees and debtors-in-possession have unique fiduciary and

13

legal obligations pursuant to the bankruptcy code . . . [A] state statute [ ] cannot place burdens on them where the result would contradict the priorities established by the federal bankruptcy code."). While preemption of state law is not always appropriate, as when the protection of public health and safety is involved, *see Baker & Drake, Inc. v. Pub. Serv. Comm'n of Nev. (In re Baker & Drake)*, 35 F.3d 1348, 1353-54 (9th Cir. 1994) (finding no preemption when state law prohibiting taxicab leasing was promulgated in part as a public safety measure), it is appropriate when, as here, the only state laws involved concern economic regulation. *Id.* at 1353 (finding that "federal bankruptcy preemption is more likely . . . where a state statute is concerned with economic regulation rather than with protecting the public health and safety").

35. Here, section 363 of the Bankruptcy Code, which requires the Debtors to operate their business in a way that maximizes recoveries for creditors, will be undermined if the Court does not provide for the waiver of Liquidation Sale Laws because the Liquidation Sale Laws may constrain the Debtors' ability to marshal and maximize assets for the benefit of their estates. Similar relief has been granted in other bankruptcy cases in this district. *See, e.g., A&P II, Case No.* 15-23007 (Bankr. S.D.N.Y. August 13, 2015); *In re Daffy's, Inc.*, Case No. 12-13312 (Bankr. S.D.N.Y. 2012); *In re Blockbuster Inc.*, Case No. 10-14997 (Bankr. S.D.N.Y. Jan. 20, 2011); *In re Finlay Enters., Inc.*, Case No. 09-14873 (Bankr. S.D.N.Y. Sept. 25, 2009); *In re Steve & Barry's Manhattan LLC*, Case No. 08-12579 (Bankr. S.D.N.Y. Aug. 22, 2008) (authorizing store closing sales without requiring compliance with laws affecting store closing or liquidation sales).

36. The Debtors also request that no other person or entity, including (but not limited to) any lessor or federal, state, or local agency, department, or governmental authority, be allowed to take any action to prevent, interfere with, or otherwise hinder consummation of the

WEIL:\95641370\15\11727.0012

Store Closing Sales or the advertising and promotion (including through the posting of signs) of Store Closing Sales, except as otherwise permitted by the Proposed Interim Order and Proposed Final Order.

### The Liquidation Consulting Agreements

**A.      The Debtors' Entry Into the Liquidation Consulting Agreements**

37.    Prior to the Commencement Date, the Debtors ran a request-for-proposal process for a liquidation consultant to assist with the Store Closing Sales.   To facilitate a competitive process, the Debtors contacted five nationally recognized liquidation consulting firms.  The Debtors provided each of the firms with a solicitation package containing (i) a list of potential closing stores, (ii) store-level profit-and-loss data for the past fiscal year, and (iii) store-level inventory and fixed asset data.  The Debtors received three bids from the firms approached. Each bid involved a proposed partnership between two firms, with one of the firms electing to partner with a liquidation consultant which the Debtors had not previously contacted.

38.    After considering each of the bids received, and after further negotiations with the bidders, the Debtors determined in their business judgment that the Liquidation Consultant had proposed the most favorable terms and was capable of performing all required tasks.   Accordingly, the Debtors and the Liquidation Consultant entered into the Liquidation Consulting Agreements attached hereto as **Exhibit C**, which will govern the terms of the Liquidation Consultant's engagement.

39.    The Liquidation Consulting Agreements generally provide that the Liquidation Consultant will advise the Debtors with respect to the sale of their Store Closing Assets.   Specifically, the Liquidation Consultant will, among other things, (i) provide the Debtors with qualified supervisors as independent contractors to oversee the management of the Closing Stores, (ii) determine the appropriate pricing for the Store Closing Assets, staffing levels

15

for the Closing Stores, and advertising for the Store Closing Sales, (iii) coordinate with the landlords and any other tenants or subtenants, as necessary, (iv) maintain housekeeping standards, including safekeeping and oversight of the stores, and (vi) clean the premises to "broom clean" condition at the conclusion of the store closing process.

40.     In consideration of the services to be rendered, the Debtors propose to provide the Liquidation Consultant with a fee equal to a percentage of the gross sale proceeds related to inventory, capped at .75 percent of sales (the "***Inventory Fee***").  The Liquidation Consultant may also sell furniture, fixtures, and equipment ("***FF&E***") in the Closing Stores at the direction of the Debtors, and will receive a commission equal to 15 percent of the gross receipts from all sales or other dispositions of FF&E at the Closing Stores (the "***FF&E Commission***").  In addition, the Debtors will reimburse the Liquidation Consultant for certain reasonable out-of-pocket expenses incurred in connection with the sale or other disposition of the Store Closing Assets, subject to a cap.  The Debtors submit that the terms of the Liquidation Consulting Agreements are reasonable and the Debtors' selection process ensures that the Inventory Fee, FF&E Commission, and any other fees agreed to by the Debtors are reasonable and market based.

**B.     Assumption of the Liquidation Consulting Agreements Is
in the Best Interests of the Debtors' Estates and Should Be Immediately Approved**

41.     As set forth above, under section 365(a) of the Bankruptcy Code, a debtor may assume or reject any executory contract or unexpired lease of the debtor provided that such assumption or rejection satisfies the business judgment test.  *See Orion Pictures*, 4 F.3d at 1099. As set forth below, the Debtors' decision to utilize the services of a Liquidation Consultant and pay it for such services is a reasonable exercise of their business judgment.

16

42.     Given the number of Closing Stores that need to be simultaneously closed, only a national liquidator, such as the Liquidation Consultant, with significant experience with large-scale liquidations can ensure a smooth liquidation process that will maximize the value of the Store Closing Assets.  The Liquidation Consultant has extensive expertise in conducting store closing sales and can oversee, and assist in the management and implementation of, the Store Closing Sales in an efficient and cost effective manner.  The Liquidation Consulting Agreements will enable the Debtors to utilize the experience, skills, and resources of the Liquidation Consultant to effectively and efficiently conduct the Store Closing Sales and, thus, significantly improve the potential value to be received through the Store Closing Sales for the benefit of all stakeholders.  Value realized in such transactions will inure to the benefit of the Debtors' estates, which will more than offset any expenses incurred by reason of the assumption of the Liquidation Consulting Agreements.

43.     Further, the Liquidation Consultant's fees will be based on the successful sale of the Store Closing Assets.  The Debtors believe that the prepetition competitive bidding process and subsequent negotiations have ensured that the fee percentage set forth in the Liquidation Consulting Agreements is market based, and consistent with the fees this Court and other courts have approved in connection with entry into liquidating consulting agreements.  *See, e.g., In re The Great Atlantic & Pacific Tea Company, Inc., Case No.* 15-23007 (Bankr. S.D.N.Y. August 13, 2015) (authorizing a fee equal to 1% of gross sales if such sales exceed the cost value of the merchandise and 10% of proceeds from sales of furniture, fixtures, and equipment); *In re Lack's Stores, Inc.*, No. 10-60149 (Bankr.  S.D. Tex. Nov. 16, 2010) (approving a $4,500 per store base fee, a fee equal to 20% of net proceeds of sales of merchandise in excess of 64% of the cost value of the merchandise, and 15% of proceeds from

sales of furniture, fixtures, and equipment); *In re Bruno's Supermarkets, LLC,* No. 09-00634 (Bankr. N.D. Ala. Mar. 2, 2009) (approving a fee equal to 3% of net proceeds of sales of merchandise and 15% of proceeds from sales of furniture, fixtures, and equipment; *In re Value City Holdings, Inc.*, No. 08-14197 (Bankr. S.D.N.Y. Nov. 20, 2008) (approving a $25,00 per store base fee, up to a $25,000 per store success fee based on a 54.6% gross return on merchandise adjusted downward for lower gross return percentages, and a fee equal to 10% of gross proceeds from sales of furniture, fixtures, and equipment).

44.     In sum, the Court should authorize and approve of the Debtors' assumption of the Liquidation Consulting Agreements because the Debtors' use of the Liquidation Consultant's services on the terms set forth in the Liquidation Consulting Agreements will ensure that the Debtors receive the maximum value for the Store Closing Assets.   The Debtors request immediate authority to assume the Liquidation Consulting Agreements so that the Liquidation Consultant can begin preparations and advertisements for the Store Closing Sales, with the aim of maximizing the value of the inventory in the Stores.   As noted, the Debtors and Liquidation Consultant would like to take advantage of higher weekend traffic by commencing the Store Closing Sales for a majority of the stores on or about Friday, May 6, 2016.   With respect to the Debtors' unprofitable Closing Stores, the sooner the Liquidation Consultant is able to commence its work, the sooner such stores can be closed and the Debtors' losses reduced.

## Reservation of Rights

45.     Nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of

18

any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code,

other than the Liquidation Consulting Agreements.

### Bankruptcy Rule 6003 Has Been Satisfied

46.    Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to

avoid immediate and irreparable harm, a bankruptcy court may issue an order granting a "motion

to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a

motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one

(21) days after filing of the petition.  Fed. R. Bankr. P. 6003(b).  As discussed more fully above,

the Debtors and their estates and creditors will be irreparably harmed if the implementation of

the Store Closing Assets and the assumption of the Liquidation Consulting Agreements are

delayed for 21 days after the Commencement Date.  Accordingly, the Debtors have satisfied the

requirements of Bankruptcy Rule 6003.

### Request for Bankruptcy Rule 6004 Waivers

47.    To implement the foregoing successfully, the Debtors request a waiver of

the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by

Bankruptcy Rule 6004(h), to the extent such stay applies.

### Request for Relief from Bankruptcy Rule 2002

48.    Generally, pursuant to Bankruptcy Rule 2002, debtors are required to give

parties in interest 21 days' notice of "a proposed use, sale, or lease of property of the estate other

than in the ordinary course of business."  However, Bankruptcy Rule 2002(a)(2) provides that

the court may shorten this time for cause.  As discussed more fully above and in the McDonagh

Declaration, the Debtor and the Debtor's estate will suffer irreparable harm if the relief requested

is not heard on an expedited basis and the Proposed Interim Order is not entered as soon as

possible.

WEIL:\95641370\15\11727.0012

49.     For the foregoing reasons, the Debtor respectfully submits that cause exists to waive the 21 day notice requirement under Bankruptcy Rule 2002, to the extent applicable.[7]

**Notice**

50.     Notice of this Motion has been provided to (i) the Office of the United States Trustee for Region 2; (ii) the holders of the forty (40) largest unsecured claims against the Debtors (on a consolidated basis); (iii) the holders of the five (5) largest secured claims against the Debtors (on a consolidated basis); (iv) the attorneys for Aero Investors LLC, as agent under the Loan and Security Agreement, dated May 23, 2014; (v) the attorneys for Bank of America, N.A., as agent under the Third Amended and Restated Loan and Security Agreement, as amended on August 18, 2015; (vi) the Securities and Exchange Commission; (vii) the Internal Revenue Service; (viii) the United States Attorney's Office for the Southern District of New York; (ix) the attorneys for the DIP Agent; (x) all of the Debtors' nonresidential real property lease counterparties; (xi) the State Attorney General's offices for each state in which a Store is located; (xii) the State Consumer Protection Agency for each state in which a Store is located, (xiii) the chief legal counsel for each local jurisdiction where a retail store is located, addressed to the attention of the consumer protection division; (xiv) and all applicable federal, state and local taxing authorities.  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

51.     No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

---

[7] Prior to the Commencement Date, the Debtors conducted liquidation sales in the ordinary course of business.  The Debtors do not concede that the Store Closing Sales are anything other than ordinary course sales.

WEIL:\95641370\15\11727.0012

WHEREFORE the Debtors respectfully request entry of the Proposed Interim Order and the Proposed Final Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: May 4, 2016
      New York, New York

                                */s/ Garrett A. Fail*
                                WEIL, GOTSHAL & MANGES LLP
                                767 Fifth Avenue
                                New York, New York  10153
                                Telephone:  (212) 310-8000
                                Facsimile:  (212) 310-8007
                                Ray C. Schrock, P.C.
                                Jacqueline Marcus
                                Garrett A. Fail

                                *Proposed Attorneys for Debtors*
                                *and Debtors in Possession*

WEIL:\95641370\15\11727.0012

**<u>Exhibit A</u>**

**Closing Stores**

**CLOSING STORES**

| Store # | Store Name | Address | Town | State / Province | Zip Code | Developer |
|---|---|---|---|---|---|---|
| 88 | Scottsdale Fashion Square | 7014 E Camelback Rd #2129 | Scottsdale | AZ | 85251 | Macerich |
| 103 | Ohio Valley Mall | Unit #295 Mall Road St. | Clairsville | OH | 43950 | Cafaro Company |
| 105 | Monroeville Mall | US Rt 22 E | Monroeville | PA | 15146 | CBL & Associates Management Inc. |
| 133 | Tri-County Mall | 11700 Princeton Pike G-9 | Cincinnati | OH | 45246 | Tri-County Mall Property Mgmt LLC |
| 158 | Boulevard Mall | 1231 Niagara Falls Blvd | Amherst | NY | 14226 | Forest City Enterprises |
| 167 | Great Northern Mall | 4081 Rt 31 | Clay | NY | 13041 | Macerich |
| 195 | Crystal Mall | 850 Hartford Tpke R207 | Waterford | CT | 06385 | Simon Property Group |
| 201 | Southern Park Mall | 7401 Market St 725 | Youngstown | OH | 44512 | Simon Property Group |
| 209 | Meriden Square Mall | 470 Lewis Ave 4068 | Meriden | CT | 06451 | Westfield |
| 218 | Summit Mall | 3265 W Market St 258A | Akron | OH | 44333 | Simon Property Group |
| 219 | Eastwood Mall | 5555 Youngstown-Warren Rd 652 | Niles | OH | 44446 | Cafaro Company |
| 220 | College Mall | 2918 E Third St M13A | Bloomington | IN | 47401 | Simon Property Group |
| 244 | Maplewood Mall | 3001 White Bear Ave 2012 | Maplewood | MN | 55109 | Simon Property Group |
| 249 | Asheville Mall | 3 S Tunnel Rd L42 | Asheville | NC | 28805 | CBL & Associates Management Inc. |
| 288 | Eastland Mall | 2716 Eastland Mall B8 | Columbus | OH | 43232 | Woodmont Company |
| 303 | Northtown Mall | 398 Northtown Dr H19 | Blaine | MN | 55434 | Glimcher |
| 312 | McKinley Mall | 3701 McKinley Pkwy 807 | Buffalo | NY | 14219 | Stoltz |
| 319 | White Oaks Mall | 2501 W Wabash C10 | Springfield | IL | 62704 | Simon Property Group |
| 330 | Park Plaza Mall | 6000 West Markham Street | Little Rock | AR | 72205 | CBL & Associates Management Inc. |
| 338 | Jefferson Pointe Mall | 4120 W Jefferson Blvd H10 Fort | Wayne | IN | 46804 | UCR Asset Services |
| 341 | The Lakes Mall | 1740 Mt Garfield Rd 1076 | Muskegon | MI | 49444 | CBL & Associates Management Inc. |
| 355 | Eastgate Mall | 4601 Eastgate Blvd 344 | Cincinnati | OH | 45245 | CBL & Associates Management Inc. |
| 358 | Gateway Mall | #5 Gateway | Lincoln | NE | 68505 | Starwood Retail |
| 366 | Wausau Center | C-302 Wausau Center | Wausau | WI | 54403 | CBL & Associates Management Inc. |
| 367 | Birchwood Mall | 4350 24th Avenue #324 | Fort Gratiot | MI | 48059 | Rouse Properties, Inc. |
| 385 | Kentucky Oaks Mall | 5101 Hinkleville Road | Paducah | KY | 42001 | Cafaro Company |
| 397 | Indian Mound Mall | 771 South 30th Street | Heath | OH | 43056 | Glimcher |
| 441 | Georgia Square Mall | 3700 Atlanta Highway Suite 212 | Athens | GA | 30606 | Hendon Properties |
| 446 | Westwood Mall | 1850 West Michigan Ave. | Jackson | MI | 49201 | Rouse Properties, Inc. |
| 451 | University Mall | 1237 East Main Street PO Box 3187 | Carbondale | IL | 62902 | Urban Retail Properties |
| 454 | Grand Traverse | 3200 S Airport Road West | Traverse City | MI | 49684 | Valley Hills Mall LLC |
| 457 | Colony Square | 3575 Maple Ave | Zanesville | OH | 43701 | Rouse Properties, Inc. |

| Store # | Store Name | Address | Town | State / Province | Zip Code | Developer |
|---------|-----------|---------|------|-----------------|----------|-----------|
| | Mall | | | | | |
| 459 | Towne Mall | 1704 Dixie Highway | Elizabethtown | KY | 42701 | Macerich |
| 470 | Northgate Mall | 203 Northgate Mall | Chattanooga | TN | 37415 | CBL & Associates Management Inc. |
| 479 | Pecanland | 4700 Millhaven Road | Monroe | LA | 71203 | General Growth |
| 489 | Town Square Mall | 5000 Frederica Street | Owensboro | KY | 42301 | Towne Square Mall, LLC |
| 517 | New River Valley | 782 New River Road | Christiansburg | VA | 24073 | Preit Services LLC |
| 521 | Geneva Commons | 502 Commons Way | Geneva | IL | 60134 | Mid-America |
| 528 | Sarasota Square | 8201 South Tamiami Trail | Sarasota | FL | 34238 | Westfield |
| 530 | Columbia Mall | 2300 Bernadette Drive | Columbia | MO | 65203 | General Growth |
| 535 | Bellis Fair Mall | 1 Bellis Fair Parkway | Bellingham | WA | 98226 | General Growth |
| 557 | Quail Springs | 2501 West Memorial Road | Oklahoma City | OK | 73134 | General Growth |
| 593 | Fort Henry Mall | 2101 Fort Henry Drive | Kingsport | TN | 37664 | Avison Young |
| 598 | Rushmore Mall | 2200 North Maple | Rapid City | SD | 57701 | Simon Property Group |
| 606 | Oakridge Mall | 925 Blossom HIll Road | San Jose | CA | 95123 | Westfield |
| 632 | Bel Mar | 7251 West Alaska Drive | Lakewood | CO | 80226 | Continuum Partners |
| 635 | Mall at St. Vincent | 1133 St. Vincent Ave | Shreveport | LA | 71104 | Rouse Properties, Inc. |
| 637 | Chico Mall | 1950 East 20th Street | Chico | CA | 95928 | Jones Lang LaSalle |
| 650 | Sooner Fashion Mall | 3321 West Main Street | Norman | OK | 73072 | General Growth |
| 672 | Zona Rosa | 7116 Northwest 86 Terrace | Kansas City | MO | 64153 | Olshan Properties |
| 683 | Tanger Outlet Center Howell | 1475 North Burkhart Road | Howell | MI | 48855 | Tanger Properties, L.P. |
| 700 | Oak View Mall | 3001 S. 144th Street | Omaha | NE | 68144 | General Growth |
| 742 | Woodbury Lakes | 9140 Hudson Rd | Woodbury | MN | 55125 | Ramco Gershenson |
| 751 | Marley Station | 7900 Govenor Ritchie Highway | Glen Burnie | MD | 21061 | Woodmont Company |
| 767 | Forest Mall | 835 West Johnson St. | Fond Du Lac | WI | 54935 | Simon Property Group |
| 775 | Indian River Mall | 6200 20th St.Vero | Beach | FL | 32966 | Bayer Properties LLC |
| 776 | Northshore Square | 150 North Shore Blvd. | Slidell | LA | 70460 | Morguard & Jim Wilson Assoc. |
| 784 | Southhaven Towne Center | 6524 Towne Center Loop | Southaven | MS | 38671 | CBL & Associates Management Inc. |
| 785 | Eastern Shore Center | 30500 State Highway 181 | Spanish Fort | AL | 36527 | Jim Wilson & Assoc. |
| 809 | Bradley Square | 200 Paul Huff Parkway | Cleveland | TN | 37312 | Morrison Companies |
| 820 | Hot Springs Mall | 4501 Central Ave. | Hot Springs National Park | AR | 71913 | Aronov Realty Management |
| 830 | Branson Landing | 409 Branson Landing | Branson | MO | 65616 | HCW Private Development |
| 832 | Shops at Sunset Place | 5701 Sunset Drive | Miami | FL | 33143 | Simon Property Group |
| 835 | West Oaks Mall | 9401 West Colonial Drive | Orlando | FL | 34761 | Moonbeam Capital Investment, LLC |
| 840 | The Avenue Carriage Crossing | 4650 Merchants Park Circle | Memphis | TN | 38017 | Poag Shopping Centers LLC |
| 843 | Willowbend | 6121 West Park Blvd. | Plano | TX | 75093 | Starwood Retail |
| 849 | Magic Valley | 1485 Poleline Road East | Twin Falls | ID | 83301 | Woodbury Corporation |

| Store # | Store Name | Address | Town | State / Province | Zip Code | Developer |
|---|---|---|---|---|---|---|
| | Mall | | | | | |
| 861 | West Oaks Mall | 1000 West Oaks Mall | Houston | TX | 77082 | Pacific Retail Capital Partners |
| 869 | Mall at Stonecrest | 2929 Turner Hill Road | Lithonia | GA | 30038 | Forest City Enterprises |
| 871 | Shops at Montage | 2531 Shoppes Blvd | Moosic | PA | 18507 | USPG Portfolio Five LLC |
| 873 | Coconut Point | 23141 Fashion Drive | Estero | FL | 33928 | Simon Property Group |
| 875 | Village at Sandhill | 486-5 Town Center Place | Columbia | SC | 29229 | CNL Commerical Real Estate Inc |
| 876 | Pinnacle Hills Promenade | 2203 S. Promenade Blvd. | Rogers | AR | 72758 | General Growth |
| 883 | Southgate Mall | 2901 Brooks Street | Missoula | MT | 59801 | Southgate Mall Associates LP |
| 887 | Prime Outlets Hillsboro | 104 Interstate 35 Frontage Rd | Hillsboro | TX | 76645 | Craig Realty Group |
| 889 | Pinnacle at Tutwiler Farm | 5048 Pinnacle Square | Birmingham | AL | 35173 | Jones Lang LaSalle |
| 900 | Town Center at Otay Ranch | 2015 Birch Road | Chula Vista | CA | 91915 | General Growth |
| 902 | Brazos Mall | 100 Highway 332 West | Lake Jackson | TX | 77566 | StreetMAC Asset Managers, LLC |
| 904 | Promenade at Bolingbrook | 623 East Boughton Rd. | Bolingbrook | IL | 60440 | Starwood Retail Property Mgmt, LLC |
| 911 | Chesapeake Square | 4200 Portsmouth Blvd | Chesapeake | VA | 23321 | Simon Property Group |
| 914 | Shawnee Mall | 4901 North Kickapoo St. | Shawnee | OK | 74804 | StreetMAC Asset Managers, LLC |
| 918 | Westside Pavilion | 10800 W. Pico Blvd | Los Angeles | CA | 90064 | Macerich |
| 920 | Hickory Point | 1145 Hickory Point Mall | Forsyth | IL | 62535 | CBL & Associates Management Inc. |
| 927 | Town Square Las Vegas | 6605 Las Vegas Blvd | Vegas | NV | 89119 | Forest City Enterprises |
| 930 | Mesa Mall | 2424 US Highway 6 & 50 | Grand Junction | CO | 81505 | Simon Property Group |
| 955 | Riverdale Village | 12768 Riverdale Blvd | Coon Rapids | MN | 55433 | DDR |
| 957 | Village at Stone Oak | 22602 US 281 N Suite 108 | San Antonio | TX | 78259 | DDR |
| 961 | Sunset Mall | 4001 Sunset Drive Suite 1182 | San Angelo | TX | 76904 | Jones Lang LaSalle |
| 966 | Shoppes at River Crossing | 5080 Riverside Drive | Macon | GA | 31210 | General Growth |
| 976 | Chambersburg Mall | 3055 Black Gap Road | Chambersburg | PA | 17201 | Mason Asset Management |
| 988 | Dogwood | 106 Dogwood Blvd. | Flowood | MS | 39232 | Inland National Real Estate Svcs LLC |
| 1014 | Eastridge Mall | 601 SE Wyoming Rd | Casper | WY | 82609 | General Growth |
| 1015 | Ocean City Outlets | 12741 Ocean Gateway | Ocean City | MD | 21842 | Tanger Properties, L.P. |
| 1020 | Greendale Mall | 7 Neponset Street | Worcester | MA | 01606 | Simon Property Group |
| 1034 | Northfield Square | 1600 North US Route 50 | Bourbonnais | IL | 60914 | Spinoso Real Estate Group |
| 1035 | Pine Ridge Mall | 4155 Yellowstone Highway | Chubbuck | ID | 83202 | Covington Property Management, LLC |

WEIL:\95641370\15\11727.0012

| Store # | Store Name | Address | Town | State / Province | Zip Code | Developer |
|---|---|---|---|---|---|---|
| 1043 | Foothill AZ Mall | 7401 N. La Cholla Blvd. | Tucson | AZ | 85741 | Schottenstein Property Group |
| 1048 | Ala Moana Center | 1450 Ala Moana Boulevard #3053 | Honolulu | HI | 96814 | General Growth |
| 1053 | Sunrise Mall | 6041 Sunrise Mall | Citrus Heights | CA | 95610 | Steadfast |
| 1057 | Windward Mall | 46-056 Kamehameha Highway | Kaneohe | HI | 96744 | Jones Lang LaSalle |
| 1061 | The Gardens Mall | 3101 PGA Boulevard | Palm Beach Gardens | FL | 33410 | Forbes |
| 1067 | Dimond Center | 800 East Dimond Blvd. | Anchorage | AK | 99515 | Dimond Center Holdings |
| 1068 | Anchorage 5th Ave | 320 West 5th Avenue Suite 219 | Anchorage | AK | 99501 | Simon Property Group |
| 1074 | Outlets of Silverthorne | 246-V Rainbow Drive | Silverthorne | CO | 80498 | Craig Realty Group |
| 1081 | Pearl Ridge Mall | 98-1005 Moanalua | Aiea | HI | 96701 | Glimcher |
| 1091 | Mercer Mall | US Hignway 460 and Route 25 | Bluefield | WV | 24701 | Ershig Properties |
| 1093 | FULTON STREET | 472-474 Fulton Street | Brooklyn | NY | 11213 | 474 Fulton Owner LLC |
| 1096 | Tanger Outlets | D400 Tuscola Blvd Suite 4045 | Tuscola | IL | 61953 | Tanger Properties, L.P. |
| 1097 | Bellevue Square | 575 Bellevue Square | Bellevue | WA | 98004 | Kemper Development Company |
| 1105 | Fashion Outlets of Santa Fe | 8380 Cerrillos Road | Santa Fe | NM | 85707 | AWE Next |
| 1115 | Bentley Mall | 32 College Road | Fairbanks | AK | 99701 | Krausz Companies Inc |
| 1515 | Times Square | 1515 Broadway | New York | NY | 10032 | 1515 Broadway Fee Owner LLC |
| 3326 | Foothills Mall | 7401 N. La Cholla Blvd. | Tucson | AZ | 85741 | Schottenstein Property Group |
| 3011 | Metropolis at Metrotown | #268-4820 Kingsway | Burnaby | BC | V5H4P1 | Ivanhoe Cambridge |
| 3012 | Guildford TC | Guildford Town Centre 10355 - 152nd Street, Suite 2608A | Surrey | BC | V3R7C1 | Ivanhoe Cambridge |
| 3013 | White Oaks Mall | 1105 Wellington Road | London | ON | N6E 1V4 | Bentall Kennedy |
| 3015 | Fairview Park | 2960 Kingsway Drive | Kitchener | ON | N2C1X1 | Cadillac Fairview |
| 3016 | Georgian Mall | 509 Bayfield Street | Barrie | ON | L4M4ZB | RioCan Management Inc |
| 3018 | Vaughn Mills | 1 Bass Pro Mills Drive | Vaughn | ON | L4K5W4 | Ivanhoe Cambridge |
| 3021 | Square One | 100 City Centre Drive | Mississauga | ON | L5B2C9 | Oxford Properties Group |
| 3022 | Lime Ridge Mall | 999 Upper Wentworth Street | Hamilton | ON | L9A4X5 | Cadillac Fairview |
| 3023 | Scarborough TC | 300 Borough Drive | Scarborough | ON | M1P4P5 | Triple Five |
| 3024 | The Promenade | 1 Promenade Circle | Thornhill | ON | L4J4P8 | Cadillac Fairview |
| 3026 | Toronto Eaton Center | 220 Yonge Street Box 511 | Toronto | ON | M5B2H1 | Cadillac Fairview |
| 3027 | Upper Canada Mall | 17600 Yonge Street | Newmarket | ON | L3Y4Z1 | Oxford Properties Group |
| 3028 | Dixie Outlets | 1250 South Service Road | Mississauga | ON | L5E 1V4 | Cominar Real Estate |

WEIL:\95641370\15\11727.0012

| Store # | Store Name | Address | Town | State / Province | Zip Code | Developer |
|---|---|---|---|---|---|---|
| | | | | | | Investment Trust |
| 3031 | Mic Mac Mall | 21 Mic Mac Blvd. | Halifax | NS | B3A4N3 | Ivanhoe Cambridge |
| 3032 | West Edmunton Mall | 8882-170 Street | Edmonton | AB | T5T4M2 | Triple Five |
| 3033 | Devonshire Mall | 3100 Howard Avenue | Windsor | ON | N8X3Y8 | 20 VIC Management Inc. |
| 3034 | Champlain Place | 550 King Street North | Waterloo | ON | N2L 5W6 | Ivanhoe Cambridge |
| 3038 | Kingsway Mall | 109 Street and Kingsway | Edmonton | AB | T5G 3A6 | Oxford Properties Group |
| 3039 | Fairview | 1800 Shepard Avenue East | Toronto | ON | M2J5A7 | Cadillac Fairview |
| 3040 | New Sudbury | 1349 LaSalle Boulevard | Sudbury | ON | P3A1Z2 | Morguard Investments Limited |
| 3043 | South Edmonton Commons | 1441 99th Street | Edmonton | AB | T6N 0B4 | Cameron Corporation |
| 3044 | CrossIron Mills | 261005 CrossIron Blvd. | Rocky View | AB | T4A0G3 | Ivanhoe Cambridge |
| 3046 | Quinte Mall | 390 North Front Street | Bellville | ON | K8P 3E1 | 20 VIC Management Inc. |
| 3048 | Richmond Centre | #1838 (Unit T-19) 6060 Minoru Blvd. | Richmond | BC | V6Y 2V7 | Cadillac Fairview |
| 3049 | Bayshore Shopping Centre | 100 Bayshore Drive Unit T35 | Ottawa | ON | K2B 8C1 | Ivanhoe Cambridge |
| 3053 | Chinook Mall | 6455 Macleod Trail SW | Calgary | AB | T2H0K8 | Cadillac Fairview |
| 3055 | Avalon Mall | 48 Kenmount Road | St. John's | NL | A1B 1W3 | Crombie REIT |
| 3057 | Pen Centre | 221 Glendale Avenue | St. Catharine's | ON | L2T2K9 | 20 VIC Management Inc. |
| 3058 | Champlain Place | 477 Paul Street | Dieppe | NB | E1A4X5 | Cadillac Fairview |
| 3062 | Bower Place | 4900 Molly Bannister Drive | Red Deer | AB | T4R1N9 | Bentall Kennedy |
| 3067 | Lansdowne Place | 645 Lansdowne Street West | Peterborough | ON | K9J7Y5 | 20 VIC Management Inc. |
| 3068 | Bramalea City Center | 25 Peel Centre Drive | Brampton | ON | L6T 3R5 | Morguard Investments Limited |
| 3071 | Oshawa Centre | 419 King Street W. | Oshawa | ON | L1J2K5 | Ivanhoe Cambridge |
| 3074 | St. Vital Center | 1225 St. Mary's Road | Winnipeg | MB | R2M5E5 | 20 VIC Management Inc. |
| 3075 | Queensboro Landing | 805 Boyd Street | New Westminister | BC | V3M 5X2 | Smart Centres |
| 3078 | Grand Prairie | c/o Morguard Investments Limited Admin Office 41,11801-100 Street | Grand Prairie | AB | T8V 3Y2 | Morguard Investments Limited |
| 3079 | Kildonan Place | 1555 Regent Avenue West | Winnepeg | MB | R2C 4J2 | Ivanhoe Cambridge |
| 3081 | Midtown Plaza | 1200A - The Tower as Midtown  1st Avenue south | Saskatoon | SK | S7K1J5 | 20 VIC Management Inc. |
| 3091 | Polo Park | 1485 Portage Avenue | Winnipeg | MB | R3G OW4 | Cadillac Fairview |
| 3094 | Toronto Premium Outlets | 13850 Steeles Avenue West | Halton Hills | ON | L7G 0J1 | Simon Property Group |
| 3095 | Tanger Ottawa | 8555 Campeau Drive | Ottawa | ON | K2T 0K5 | RioCan |

5

**<u>Exhibit B</u>**

**Store Closing Procedures**

## **Store Closing Procedures**

1.     The Store Closing Sales will be conducted during normal business hours or such hours as otherwise permitted by the applicable unexpired lease.

2.     The Store Closing Sales will be conducted in accordance with applicable state and local "Blue Laws," and thus, where such a law is applicable, no Store Closing Sales will be conducted on Sunday unless the Debtors have been operating such stores on Sundays.

3.     On "shopping center" property, neither the Debtors nor the Liquidation Consultant shall distribute handbills, leaflets, or other written materials to customers outside of any Closing Stores' premises, unless permitted by the applicable lease or if distribution is customary in the "shopping center" in which such Closing Store is located; provided that the Debtors and the Liquidation Consultant may solicit customers in the Closing Stores themselves.   On "shopping center" property, neither the Debtors nor the Liquidation Consultant shall use any flashing lights or amplified sound to advertise the Store Closing Sales or solicit customers, except as permitted under the applicable lease or agreed in writing by the landlord.

4.     The Debtors and the Liquidation Consultant shall have the right to sell the furniture, fixtures, and equipment located at the Stores (the "***FF&E***"). The Debtors and the Liquidation Consultant may advertise the sale of the FF&E in a manner consistent with these Store Closing Sale Guidelines. The purchasers of any FF&E sold during the sale shall be permitted to remove the FF&E either through the back or alternative shipping areas at any time, or through other areas after Store business hours; *provided, however,* that the foregoing shall not apply to *de minimis* FF&E sales made whereby the item can be carried out of the Store in a shopping bag.

5.     The Debtors and the Liquidation Consultant may, but are not required to, advertise all of the Store Closing Sales as "sale on everything", "everything must go", or similarly themed sales.  The Debtors and the Liquidation Consultant may also advertise each sale as a "store closing" and have a "countdown to closing" sign prominently displayed in a manner consistent with these Store Closing Procedures.

6.     The Debtors and the Liquidation Consultant shall be permitted to utilize sign walkers, display, hanging signs, and interior banners in connection with the Sale; provided, however, that such sign walkers, display, hanging signs, and interior banners shall be professionally produced and hung in a professional manner. Neither the Debtors nor the Liquidation Consultant shall use neon or day-glo on its sign walkers, display, hanging signs, or interior banners if prohibited by the applicable lease or applicable law. Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Store Closing Procedures. In addition, the Debtors and the Liquidation Consultant shall be permitted to utilize exterior banners at (i) non-enclosed mall Locations and (ii) enclosed mall Locations to the extent the entrance to the applicable Location does not require entry into the enclosed mall common area; *provided, however,* that such banners shall be located or hung so as to make clear that the Store Closing Sale is being

2

conducted only at the affected Store, and shall not be wider than the storefront of the Store. In addition, the Debtors shall be permitted to utilize sign walkers in a safe and professional manner. Nothing contained in these Store Closing Procedures shall be construed to create or impose upon the Debtors or the Liquidation Consultant any additional restrictions not contained in the applicable lease agreement.

7.      Neither the Debtors nor the Liquidation Consultant shall make any alterations to the storefront, roof, or exterior walls of any Stores or shopping centers, or to interior or exterior store lighting, except as authorized by the applicable lease.  The hanging of in-Store signage shall not constitute an alteration to a Store.

8.      Impacted landlords will have the ability to negotiate with the Debtors, or at the Debtors' direction, the Liquidation Consultant, any particular modifications to the Store Closing Procedures. The Debtors and the landlord of any Store are authorized to enter into agreements modifying the Store Closing Procedures (each a "***Landlord Agreement***") without further order of the Court, provided that such agreements do not have a material adverse effect on the Debtors or their estates.

9.      Conspicuous signs will be posted in each of the affected stores to the effect that all sales are "final."

10.     No property of any landlord will be removed or sold during the Store Closing Sales.

11.     The Debtors will keep store premises and surrounding areas clear and orderly, consistent with past practices.

12.     The Debtors do not have to comply with lease provisions or covenants that are inconsistent with these procedures.

13.     The Debtors do not have to comply with the Liquidation Laws.

14.     An unexpired nonresidential real property lease will not be deemed rejected by reason of a Store Closing Sale or the adoption of the Store Closing Procedures.

15.     The rights of landlords against the Debtors for any damages to a Store shall be reserved in accordance with the provisions of the applicable lease.

16.     If and to the extent that the landlord of any Store contends that the Debtors or the Liquidation Consultant is in breach of or default under these Store Closing Procedures, such landlord shall provide at least five (5) days' written notice, served by email or overnight delivery, on:

Aéropostale, Inc.
112 West 34th Street, 22nd Floor,
New York, NY 10120
Attn: Marc Shuback
Email: MSchuback@aeropostale.com

WEIL:\95641370\15\11727.0012

With a copy to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attn: Ray C. Schrock, P.C., Jacqueline Marcus, and Garrett A. Fail
Emails: Ray.Schrock@weil.com, Jacqueline.Marcus@weil.com, Garrett.Fail@weil.com

Malfitano Partners
747 Third Ave, 2nd Floor
New York, NY 10017
Attn:  Joseph Malfitano
Email: jm@malfitanopartners.com

If the parties are unable to resolve the dispute, either the landlord or the Debtors shall
have the right to schedule a hearing before the Court on no less than five (5) days'
written notice to the other party, served by email or overnight delivery.

WEIL:\95641370\15\11727.0012

**<u>Exhibit C</u>**

**Liquidation Consulting Agreements**

# CONSULTING AGREEMENT

This Consulting Agreement, dated as of May 3, 2016 (together with all Schedules, Exhibits and attachments hereto, collectively, the "Agreement"), is made by and between Tiger Capital Group, LLC, a Massachusetts limited liability company ("Tiger"), Great American Group, LLC, a California limited liability company ("GA"; together with Tiger, the "Consultant"), and Aéropostale, Inc., a Delaware corporation (the "Merchant").

## WITNESSETH:

WHEREAS, Merchant operates retail store locations and desires to retain Consultant to provide consulting services to Merchant with respect to the management and disposition of the Merchandise (as defined below) and FF&E (as defined below) in the context of a "Store Closing Sale" (the "Sale") at the stores listed on Schedule A (the "Stores").

WHEREAS, Consultant is willing to serve as Merchant's consultant for the purpose of providing such consulting services, upon the terms and conditions and in the manner set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    DEFINITIONS

For the purposes of this Agreement, the terms listed below shall have the respective meanings indicated:

1.1    "FF&E" shall mean the furniture, fixtures and equipment owned by Merchant and located at the Stores.

1.2    "Leases" shall mean the leases, occupancy agreements, reciprocal easements or similar agreements pursuant to which Merchant has the right to occupy or utilize the Stores.

1.3    "Merchandise" shall mean all items of merchandise located in the Stores throughout the Sale Term, but excludes any furniture, fixtures (trade or other) or equipment.

1.4    "Proceeds" shall mean the aggregate of the total amount (in dollars) of all sales of Merchandise made under this Agreement, exclusive of sales taxes.

1.5    "Sale Commencement Date" shall mean on or around May 5, 2016. "Sale" shall have the meaning set forth in the recitals hereof.

1.6    "Sale Expenses" shall mean operating expenses incurred in connection with the Sale, including without limitation (i) advertising and signage costs, (ii) Supervisor fees and costs associated with performing the Services, and (iii) Miscellaneous Expenses, each of items (i)-(iii) as set forth in **Exhibit B**.

1.7     "Sale Term" shall mean the period of time beginning with the Sale Commencement Date and ending on the Sale Termination Date.

1.8     "Sale Termination Date" shall mean no later than June 30, 2016, or such other date mutually determined by Merchant and Consultant to terminate the Sale.

1.9     "Services" shall mean the services to be performed by Consultant pursuant to Section 2.2 of this Agreement.

1.10    "Store Employees" shall mean those individuals who Merchant employs and retains in the Stores to conduct the Sale.

1.11    "Supervisors" shall mean the individuals whom Consultant shall engage to provide Services in the Stores to Merchant in connection with the Sale.

2.     CONSULTING

2.1     Merchant hereby retains Consultant and Consultant hereby agrees to serve as an independent consultant to Merchant in connection with the conduct of the Sale as set forth herein.  With respect to the Sale, Consultant shall serve as Merchant's sole and exclusive consultant relative thereto at the Stores throughout the Sale Term;

2.2     On the terms and conditions set forth herein, commencing as of the Sale Commencement Date, Consultant shall provide Merchant with the following Services with respect to the conduct of the Sale at the Stores;

(i)     Provide qualified Supervisors to implement the Merchandise liquidation strategy in the Stores;

(ii)    Oversee the Sale of the Merchandise from the Stores in an effort to sell all of the Merchandise during the Sale Term;

(iii)   Determine and recommend appropriate point of purchase, point of sale and external advertising to effectively sell the Merchandise during the Sale Term, consistent with a "Store Closing" theme;

(iv)    Determine the appropriate pricing, display and discounting of Merchandise, as well as recommend appropriate staffing levels for the Stores (including Store Employees);

(v)     Recommend appropriate transfers of Merchandise among the Stores to maximize sales;

(vi)    Recommend shipping of additional Merchandise into and out of Stores to maximize sales;

(vii)   Sell all FF&E in the Stores pursuant to section 11.8 below;

WEIL:\95702434\3\11727.0012

(viii)    Advise and assist Merchant with respect to obtaining store closing permits in accordance with local laws, if applicable;

(ix)    Maintain the confidentiality of all proprietary or non-public information regarding Merchant or the Stores of which Consultant or its representatives become aware, except for information that is public as of the date hereof or becomes public through no fault of Consultant;

(x)    Coordinate sales and discounting reporting functions;

(xi)    Provide written reports to the Merchant during the Sale Term in such frequency as reasonably determined by the Merchant;

(xii)    Coordinate during the Sale Term with the Merchant at both the store and corporate level to insure that the Sale is conducted in an orderly and efficient manner, provided however, that the  Merchant shall have the ultimate control of store personnel and shall handle the cash, debit, and charge card payments for all Merchandise sold in accordance with Merchant's customary cash management procedures;

(xiii)    As necessary, coordinate with the landlords and any other tenants or other subtenants on the property in which the Closing Stores are located to minimize any possible disruptions caused during the Sale Term;

(xiv)    Maintain housekeeping standards, including safekeeping and oversight of the Stores, and cleanup of premises prior to exit of Stores; and

(xv)    Comply with the respective provisions applicable to them in the Approval Order (as defined below).

(xvi)    Provide such other related services deemed necessary or prudent by Merchant and Consultant under the circumstances giving rise to the Sale.

2.3    In connection with the Sale, Consultant shall directly retain and engage the Supervisors. The Supervisors are independent contractors engaged by Consultant and are not and shall not be deemed to be employees or agents of Merchant in any manner whatsoever; nor shall the Supervisors have any relationship with Merchant by virtue of this Agreement or otherwise which creates any liability or responsibility on behalf of Merchant for the Supervisors.  During the Sale Term, the Supervisors shall perform Services during normal Store operating hours and for the period of time prior to the Store opening and subsequent to the Store closing as required in connection with the Sale in Consultant's reasonable business judgment.

2.4    Title to all Merchandise shall remain with Merchant at all times during the Sale Term until such Merchandise is sold by or on behalf of Merchant.  All sales of Merchandise in the Stores shall be made on behalf of Merchant.

2.5    Should Merchant seek protection under Title 11 of the United States Code (the "Bankruptcy Code") by commencing a chapter 11 case in the United States Bankruptcy

3

Court for the Southern District of New York or other appropriate district (such court, the "Bankruptcy Court"), Merchant shall file a motion (the "Approval Motion") in the Bankruptcy Court on the date of the filing of such chapter 11 case (the "Petition Date") seeking entry of an order at a hearing to be conducted (the "First Day Hearing") (i) authorizing and approving Merchant and Consultant to continue to conduct the Sale under the terms of this Agreement pursuant to the Bankruptcy Code or otherwise applicable law nunc pro tunc to the Petition Date, and (2) authorizing Merchant to continue to promote the Sale as a "Going Out of Business Sale," "Liquidation Sale," or "Store Closing Sale" as applicable (the "Approval Order").  To the extent that the Merchant is only able to obtain entry of the Approval Order on a preliminary basis at the First Day Hearing, the Merchant shall subsequently seek entry of an Approval Order on a final basis within thirty (30)  days of the Petition Date.

3.    EXPENSES

3.1    In connection with the Sale, Merchant shall be responsible for the payment of all expenses incurred in operating the Stores and conducting the Sale, including all occupancy expenses for the Stores and all Sale Expenses; provided, however, that with respect to Sale Expenses of the type listed on Attachment B, Merchant's responsibility shall be capped at the aggregate amount set forth for such Sale Expenses on Attachment B unless mutually agreed, in writing between Merchant and Consultant.

4.    CONSULTANT'S FEES

4.1    Consultant shall receive a fee based on meeting certain thresholds as set forth on Exhibit C.   The applicable fee shall be earned on the aggregate Proceeds.  The thresholds percentages set forth on Exhibit C represent the aggregate Proceeds divided by the cost of all Merchandise sold during the Sale (i.e., the "cost of goods sold").  Merchant shall provide Consultant with the cost of each item of Merchandise.

4.2    Consultant shall submit reasonably detailed invoices accompanied by reasonable backup documentation to Merchant every week beginning the week of May 2, 2016, setting forth any Sale Expenses that have been incurred directly by Consultant, and commissions earned on the sale of FF&E, during the prior one-week period.  Within five business days of the submission of such invoices accompanied by reasonable backup documentation, such invoices shall be paid in full by Merchant via wire transfer to the extent Merchant is responsible therefor pursuant to Section 3.1 hereof.

5.    STORE EMPLOYEES

5.1    Consultant shall consult with Merchant, and Merchant shall select and retain all Store Employees to be utilized as part of the Sale during the Sale Term.

5.2    Merchant has applied, and Merchant shall through the Sale Commencement Date continue to apply, historic practices and policies regarding its Store Employees, including, without limitation, as to hiring, termination, promotion and compensation. Merchant agrees to use its reasonable commercial efforts to insure that as of the Sale Commencement Date the Stores will be staffed with historical levels of Store Employees.

WEIL:\95702434\3\11727.0012

5.3    Subject to paragraph 8.1 hereof, Consultant shall have no liability to the Store Employees (including any of Merchant's former employees) of any kind or nature whatsoever, including without limitation, with respect to severance pay, termination pay, vacation pay, pay in lieu of reasonable notice of termination, or any other expenses or liability arising from Merchant's employment of such Store Employees prior to, during, and subsequent to the Sale.

6.    REPRESENTATION AND WARRANTIES OF CONSULTANT

6.1    Consultant hereby represents warrants and covenants in favor of merchant as follows:

(a)    Consultant has taken all necessary action required to authorize the execution, performance and delivery of this agreement, and to consummate the transactions contemplated hereby.

(b)    This Agreement is a valid binding obligation of Consultant enforceable in accordance with its terms, subject only to any applicable bankruptcy, insolvency or similar laws affecting the rights of creditors generally and the availability of equitable remedies.

(c)    No action or proceeding has been instituted or, to Consultant's knowledge, threatened, affecting the consummation of this Agreement or the transactions contemplated herein.

(d)    Consultant acknowledges and agrees that it is being retained by Merchant because of its expertise in assisting debtors in liquidation matters during the course of a bankruptcy proceeding, and that Consultant has such expertise.  Consultant will perform its obligations under this Agreement according to the highest professional level of standard of care.

7.    REPRESENTATIONS AND WARRANTIES OF MERCHANT

7.1    Merchant hereby represents warrants and covenants in favor of Consultant as follows:

(a)    Merchant has taken all necessary action required to authorize its execution, performance and delivery of this Agreement, and to consummate the transactions contemplated hereby.

(b)    This Agreement is a valid and binding obligation of Merchant enforceable in accordance with its terms, subject only to any applicable bankruptcy, insolvency or similar laws affecting the rights of creditors generally and the availability of equitable remedies.

(c)    No action or proceeding has been instituted or, to Merchant's knowledge, threatened, affecting the consummation of this Agreement or the transactions contemplated herein.

8.    AFFIRMATIVE DUTIES OF CONSULTANT

5

8.1   Consultant shall reimburse, indemnify, defend and hold Merchant and its officers, directors, agents, and employees, harmless from and against any damage, loss, expense (including reasonable attorneys' fees) or penalty, or any claim or action therefor, by or on behalf of any person, arising out of the performance or failure of performance of this Agreement, or due to any acts or omissions by the Consultant or its employees, Supervisor or other agents ("Employees"), including but not limited to breaches or violations of human rights legislation and, the Consultant's Employees' payroll claims (wage claims, claims for taxes required to be withheld from wages, social security, etc.), unemployment compensation claims, or actions taken by Consultant or its Employees8.2   At the conclusion of the Sale, Consultant shall leave the Stores in broom clean condition, except for existing unsold fixtures.

8.3   Consultant, at no charge to Merchant, shall reasonably cooperate and work with all interested parties in connection with the Merchant's bankruptcy case, including without limitation, any postpetition debtor-in-possession financing lenders, statutory committee of creditors appointed in the Merchant's bankruptcy case, the prepetition secured parties that comprise the Merchant's capital structure, the Merchant's other advisors, and if requested Merchant, Consultant shall, at no charge to Merchant, provide written reports, meet with or participate in telephone conferences with such parties, and provide oral testimony or written affidavits for the Bankruptcy Court regarding its activities under this Agreement; provided, that Consultant shall not communicate with any such parties or their advisors regarding this Agreement without the prior written instruction of the Merchant. The Merchant acknowledges that the Consultant and/or its affiliates may have, or may have had, certain relationships with such interested parties that may need to be disclosed to the Bankruptcy Court as part of the retention by the Merchant of the Consultant, and the parties will work cooperatively to make all such required disclosures.

9.    AFFIRMATIVE DUTIES OF MERCHANT

9.1    Merchant shall be solely liable for, and shall pay when due, all Sale Expenses as well as all taxes, costs, expenses, accounts payable and other liabilities relating to the Sale, the Stores, Store Employees and Merchant's business operations during the Sale, in each case to the extent Merchant is responsible for such Sale Expenses pursuant to Section 3.1.

9.2    Merchant shall prepare and process all reporting forms, certificates, reports and other documentation required in connection with the payment of all applicable taxes for the Stores to the appropriate taxing authorities.  Merchant shall collect all sales taxes and Merchant shall pay the same to the appropriate taxing authorities in accordance with the applicable law.

9.3    Merchant shall indemnify and hold Consultant and its agents, employees, principals and Supervisor harmless from and against any and all damages, fines, penalties, losses, claims or expenses (including, without limitation, reasonable attorneys' fees) that Consultant may incur or sustain arising out of Merchant's failure to pay over to the appropriate taxing authority any taxes required to be paid by Merchant during the Sale Term in accordance with applicable law or to pay any liability referred to in Section 10.1 hereof.

9.4    Merchant shall use all reasonable efforts to cause all Store Employees, and all other representatives and agents of Merchant to cooperate fully with Consultant and its Supervisor in connection with the Sale during the Sale Term.

9.5    Merchant shall indemnify and hold Consultant and its agents, employees, principals and Supervisor harmless from and against all liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to the (i) negligent acts or omissions of Merchant or its agents, employees, in connection with the Sale, or (ii) the breach by Merchant of any of its obligations under this Agreement.

10.    INSURANCE

10.1    Merchant shall maintain throughout the Sale Term, liability insurance policies (including, but not limited to, product liability, comprehensive public liability insurance and auto liability insurance) covering injuries to persons and property in or in connection with Merchant's operation of the Stores, and shall cause Consultant to be an additional insured with respect to all such policies.  Merchant shall be responsible for the payment of all deductibles, self-insurance and other amounts payable in connection with any claim asserted under such policies, except for any claims arising directly from an act or omission of, or breach of this agreement by, Consultant, or its employees, representatives, agents or Supervisor.

10.2    Consultant shall maintain throughout the Sale Term, liability insurance policies (including, but not limited to, comprehensive public liability and auto liability insurance) covering injuries to persons and property in or in connection with Consultant's provision of Services at the Stores, and shall cause Merchant to be named an additional insured with respect to such policies.

11.    MISCELLANEOUS

11.1    Any notice or other communication under this Agreement shall be in writing and may be delivered personally or sent by prepaid registered or certified mail or by nationally recognized overnight courier or by electronic mail, addressed as follows:

(i)    In the case of Consultant:

Great American Group
21860 Burbank Blvd
Woodland Hills, CA 91367
Attn:   Scott Carpenter, President GA Retail
         Alan N. Forman, EVP & GC

and

Tiger Capital Group
60 State Street, 11th Floor
Boston, MA 02109
Attn     Michael McGrail, Chief Operating Officer

7

       (ii)       in the case of Merchant:

                Aéropostale, Inc.
                112 West 34th Street, 22nd Floor
                New York, New York 10120

                Attn: Marc Schuback and David Dick

11.2    This Agreement shall be governed by and interpreted in accordance with the internal laws of the State of New York, without reference to any conflict of laws provisions, and the United States Bankruptcy Code to the extent applicable.

11.3    In the event any term or provision contained within this Agreement shall be deemed illegal or unenforceable, then such offending term or provision shall be considered deleted from this Agreement and the remaining terms shall continue to be in full force and effect.

11.4    This Agreement constitutes the entire agreement between the parties with respect of the subject matter hereof and supersedes all prior negotiations and understandings, and can only be modified by a writing signed by Merchant and Consultant.

11.5    This Agreement shall inure to the benefit of, and be binding upon, the parties and their respective successors and permitted assigns.

11.6    This Agreement may be executed in several counterparts, each of which when so executed shall be deemed to be an original and such counterparts, together, shall constitute one and the same instrument.  Delivery by facsimile of this Agreement or an executed counterpart hereof shall be deemed a good and valid execution and delivery hereof or thereof.

11.7    Nothing contained herein shall be deemed to create any relationship between Consultant and Merchant other than that of an independent contractor.  It is stipulated that the parties are not partners or joint venturers.

11.8    Consultant may sell FF&E at a particular store after receiving written consent from Merchant.  Consultant will receive a 15% commission of the proceeds generated from the sale of such assets.  Consultant shall have the right to abandon any unsold fixtures at the Stores at the conclusion of the Sale.

11.9    Merchant or Consultant may terminate this Agreement, effective upon thirty (30) days prior written notice to the other party to this Agreement, if the other party has materially breached this Agreement, and such breach is incapable of cure, or with respect to a material breach capable of cure, the other party does not cure such breach within three (3) days after receipt of written notice of such breach.  The terms and conditions of this Section 11 and Sections 1,3,4,5,8,9 and 11 shall survive the expiration or termination of this Agreement.

8

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

TIGER CAPITAL GROUP, LLC

By:      */s/ Michael McGrail*
Name: Michael McGrail
Title: Chief Operating Officer

GREAT AMERICAN GROUP, LLC

By:      */s/ Scott K. Carpenter*
Name: Scott K. Carpenter
Title: President, GA Retail

AÉROPOSTALE, INC.

By: */s/ David J. Dick*
Name:  David J. Dick
Title:  Chief Financial Officer

WEIL:\95702434\3\11727.0012

# Exhibit A – Store List

| Count | Store Number | Mall | Location Type | Address | City | ST |
|---|---|---|---|---|---|---|
| 1 | 873 | Coconut Point | Mall | 23141 Fashion Drive | Estero | FL |
| 2 | 832 | Shops at Sunset Place | Mall | 5701 Sunset Drive | Miami | FL |
| 3 | 835 | West Oaks Mall | Factory | 9401 West Colonial Drive | Ocoee | FL |
| 4 | 1061 | The Gardens Mall | Mall | 3101 PGA Boulevard | Palm Beach Gardens | FL |
| 5 | 528 | Sarasota Square | Mall | 8201 South Tamiami Trail | Sarasota | FL |
| 6 | 775 | Indian River Mall | Mall | 6200 20th St. | Vero Beach | FL |
| 7 | 441 | Georgia Square Mall | Factory | 3700 Atlanta Highway Suite 212 | Athens | GA |
| 8 | 869 | Mall at Stonecrest | Mall | 2929 Turner Hill Road | Lithonia | GA |
| 9 | 966 | Shoppes at River Crossing | Lifestyle | 5080 Riverside Drive | Macon | GA |
| 10 | 875 | Village at Sandhill | Mall | 486-5 Town Center Place | Columbia | SC |
| 11 | 209 | Meriden Square Mall | Factory | 470 Lewis Ave4068 | Meriden | CT |
| 12 | 195 | Crystal Mall | Factory | 850 Hartford Tpke R207 | Waterford | CT |
| 13 | 1020 | Greendale Mall | Factory | 7 Neponset Street | Worcester | MA |
| 14 | 751 | Marley Station | Factory | 7900 Govenor Ritchie Highway | Glen Burnie | MD |
| 15 | 1015 | Ocean City Outlets | Factory | 12741 Ocean Gateway | Ocean City | MD |
| 16 | 1093 | FULTON STREET | Factory | 472-474 Fulton Street | Brooklyn | NY |
| 17 | 167 | Great Northern Mall | Factory | 4081 Rt 31 | Clay | NY |
| 18 | 1515 | Times Square | Mall | 1515 Broadway | New York | NY |
| 19 | 976 | Chambersburg Mall | Factory | 3055 Black Gap Road | Chambersburg | PA |
| 20 | 871 | Shops at Montage | Factory | 2531 Shoppes Blvd | Moosic | PA |
| 21 | 911 | Chesapeake Square | Mall | 4200 Portsmouth Blvd | Chesapeake | VA |
| 22 | 367 | Birchwood Mall | Factory | 4350 24th Avenue #324 | Fort Gratiot | MI |
| 23 | 683 | Tanger Outlet Center Howell | Outlet | 1475 North Burkhart Road | Howell | MI |
| 24 | 446 | Westwood Mall | Factory | 1850 West Michigan Ave. | Jackson | MI |
| 25 | 341 | The Lakes Mall | Mall | 1740 Mt Garfield Rd1076 | Muskegon | MI |
| 26 | 454 | Grand Traverse | Mall | 3200 S Airport Road West | Traverse City | MI |
| 27 | 158 | Boulevard Mall | Mall | 1231 Niagara Falls Blvd | Buffalo | NY |
| 28 | 312 | McKinley Mall | Mall | 3701 McKinley Pkwy807 | Buffalo | NY |
| 29 | 218 | Summit Mall | Mall | 3265 W Market St258A | Akron | OH |
| 30 | 288 | Eastland Mall | Mall | 2716 Eastland MallB8 | Columbus | OH |
| 31 | 397 | Indian Mound Mall | Mall | 771 South 30th Street | Heath | OH |
| 32 | 219 | Eastwood Mall | Factory | 5555 Youngstown-Warren Rd | Niles | OH |
| 33 | 103 | Ohio Valley Mall | Factory | Unit #295 Mall Road | Saint Clairsville | OH |
| 34 | 201 | Southern Park Mall | Mall | 7401 Market St725 | Youngstown | OH |
| 35 | 457 | Colony Square Mall | Mall | 3575 Maple Ave | Zanesville | OH |
| 36 | 105 | Monroeville Mall | Factory | US Rt 22 E | Monroeville | PA |
| 37 | 920 | Hickory Point | Factory | 1145 Hickory Point Mall | Forsyth | IL |
| 38 | 319 | White Oaks Mall | Mall | 2501 W Wabash C10 | Springfield | IL |
| 39 | 1096 | Tanger Outlets | Outlet | D400 Tuscola Blvd Suite 4045 | Tuscola | IL |
| 40 | 220 | College Mall | Factory | 2918 E Third St M13A | Bloomington | IN |
| 41 | 338 | Jefferson Pointe Mall | Factory | 4120 W Jefferson Blvd H10 | Fort Wayne | IN |
| 42 | 459 | Towne Mall | Factory | 1704 Dixie Highway | Elizabethtown | KY |
| 43 | 489 | Town Square Mall | Mall | 5000 Frederica Street | Owensboro | KY |
| 44 | 249 | Asheville Mall | Mall | 3 S Tunnel RdL42 | Asheville | NC |
| 45 | 133 | Tri-County Mall | Mall | 11700 Princeton PikeG-9 | Cincinnati | OH |
| 46 | 355 | Eastgate Mall | Mall | 4601 Eastgate Blvd344 | Cincinnati | OH |
| 47 | 470 | Northgate Mall | Mall | 203 Northgate Mall | Chattanooga | TN |
| 48 | 809 | Bradley Square | Mall | 200 Paul Huff Parkway | Cleveland | TN |
| 49 | 593 | Fort Henry Mall | Factory | 2101 Fort Henry Drive | Kingsport | TN |
| 50 | 517 | New River Valley | Mall | 782 New River Road | Christiansburg | VA |
| 51 | 1091 | Mercer Mall | Factory | US Highway 460 and Route 25 | Bluefield | WV |
| 52 | 904 | Promenade at Bolingbrook | Lifestyle | 623 East Boughton Rd. | Bolingbrook | IL |
| 53 | 1034 | Northfield Square | Lifestyle | 1600 North US Route 50 | Bourbonnais | IL |
| 54 | 521 | Geneva Commons | Lifestyle | 502 Commons Way | Geneva | IL |
| 55 | 303 | Northtown Mall | Factory | 398 Northtown Dr | Minneapolis | MN |
| 56 | 955 | Riverdale Village | Factory | 12768 Riverdale Blvd | Minneapolis | MN |
| 57 | 244 | Maplewood Mall | Mall | 3001 White Bear Ave | Saint Paul | MN |

WEIL:\95702434\3\11727.0012

# Exhibit A – Store List (cont.)

| Count | Store Number | Mall | Location Type | Address | City | ST |
|---|---|---|---|---|---|---|
| 58 | 742 | Woodbury Lakes | Mall | 9140 Hudson Rd | Saint Paul | MN |
| 59 | 530 | Columbia Mall | Mall | 2300 Bernadette Drive | Columbia | MO |
| 60 | 672 | Zona Rosa | Lifestyle | 7116 Northwest 86 Terrace | Kansas City | MO |
| 61 | 358 | Gateway Mall | Factory | #5 Gateway | Lincoln | NE |
| 62 | 700 | Oak View Mall | Mall | 3001 S. 144th Street | Omaha | NE |
| 63 | 767 | Forest Mall | Factory | 835 West Johnson St. | Fond Du Lac | WI |
| 64 | 366 | Wausau Center | Factory | Wausau Center A124 | Wausau | WI |
| 65 | 785 | Eastern Shore Center | Factory | 30500 State Highway | Spanish Fort | AL |
| 66 | 889 | Pinnacle at Tutwiler Farm | Factory | 5048 Pinnacle Square | Trussville | AL |
| 67 | 820 | Hot Springs Mall | Factory | 4501 Central Ave. | Hot Springs | AR |
| 68 | 330 | Park Plaza Mall | Mall | 6000 West Markham Street | Little Rock | AR |
| 69 | 876 | Pinnacle Hills Promenade | Lifestyle | 2203 S. Promenade Blvd. | Rogers | AR |
| 70 | 451 | University Mall | Mall | 1237 East Main Street PO Box 3187 | Carbondale | IL |
| 71 | 385 | Kentucky Oaks Mall | Factory | 5101 Hinkleville Road | Paducah | KY |
| 72 | 479 | Pecanland | Mall | 4700 Millhaven Road | Monroe | LA |
| 73 | 635 | Mall at St. Vincent | Factory | 1133 St. Vincent Ave | Shreveport | LA |
| 74 | 776 | Northshore Square | Mall | 150 North Shore Blvd. | Slidell | LA |
| 75 | 830 | Branson Landing | Lifestyle | 409 Branson Landing | Branson | MO |
| 76 | 988 | Dogwood | Factory | 106 Dogwood Blvd. | Flowood | MS |
| 77 | 784 | Southhaven Towne Center | Lifestyle | 6524 Towne Center Loop | Southaven | MS |
| 78 | 840 | The Avenue Carriage Crossing | Mall | 4650 Merchants Park Circle | Collierville | TN |
| 79 | 650 | Sooner Fashion Mall | Mall | 3321 West Main Street | Norman | OK |
| 80 | 557 | Quail Springs | Mall | 2501 West Memorial Road | Oklahoma City | OK |
| 81 | 914 | Shawnee Mall | Factory | 4901 North Kickapoo St. | Shawnee | OK |
| 82 | 887 | Prime Outlets Hillsboro | Factory | 104 I-35, Hillsboro | Hillsboro | TX |
| 83 | 861 | West Oaks Mall | Mall | 1000 West Oaks Mall | Houston | TX |
| 84 | 902 | Brazos Mall | Factory | 100 Highway 332 West | Lake Jackson | TX |
| 85 | 843 | Willowbend | Mall | 6121 West Park Blvd. | Plano | TX |
| 86 | 961 | Sunset Mall | Factory | 4001 Sunset Drive Suite 1182 | San Angelo | TX |
| 87 | 957 | Village at Stone Oak | Mall | 22602 US 281 N Suite 108 | San Antonio | TX |
| 88 | 88 | Scottsdale Fashion Square | Mall | 7014 E Camelback Rd #2 | Scottsdale | AZ |
| 89 | 1043 | Foothill AZ Mall | Outlet | 7401 N. La Cholla Blvd. | Tucson | AZ |
| 90 | 900 | Town Center at Otay Ranch | Mall | 2015 Birch Road | Chula Vista | CA |
| 91 | 918 | Westside Pavilion | Mall | 10800 W. Pico Blvd | Los Angeles | CA |
| 92 | 1081 | Pearl Ridge Mall | Mall | 98-1005 Moanalua | Aiea | HI |
| 93 | 1048 | Ala Moana Center | Mall | 1450 Ala Moana Boulevard #3053 | Honolulu | HI |
| 94 | 1057 | Windward Mall | Factory | 46-056 Kamehameha Highway | Kaneohe | HI |
| 95 | 1105 | Fashion Outlets of Santa Fe | Outlet | 8380 Cerrillos Road | Santa Fe | NM |
| 96 | 637 | Chico Mall | Mall | 1950 East 20th Street | Chico | CA |
| 97 | 1053 | Sunrise Mall | Mall | 6041 Sunrise Mall | Citrus Heights | CA |
| 98 | 606 | Oakridge Mall | Mall | 925 Blossom Hill Road | San Jose | CA |
| 99 | 930 | Mesa Mall | Factory | 2424 US Highway 6 & 50 | Grand Junction | CO |
| 100 | 632 | Bel Mar | Lifestyle | 7251 West Alaska Drive | Lakewood | CO |
| 101 | 1074 | Outlets of Silverthorne | Factory | 246-V Rainbow Drive | Silverthorne | CO |
| 102 | 1035 | Pine Ridge Mall | Factory | 4155 Yellowstone Highway | Pocatello | ID |
| 103 | 849 | Magic Valley Mall | Mall | 1485 Poleline Road East | Twin Falls | ID |
| 104 | 883 | Southgate Mall | Factory | 2901 Brooks Street | Missoula | MT |
| 105 | 927 | Town Square Las Vegas | Lifestyle | 6605 Las Vegas Blvd | Vegas | NV |
| 106 | 598 | Rushmore Mall | Factory | 2200 North Maple | Rapid City | SD |
| 107 | 1097 | Bellevue Square | Mall | 575 Bellevue Square | Bellevue | WA |
| 108 | 535 | Bellis Fair Mall | Factory | 1 Bellis Fair Parkway | Bellingham | WA |
| 109 | 1014 | Eastridge Mall | Factory | 601 SE Wyoming Rd | Casper | WY |
| 110 | 1067 | Dimond Center | Factory | 800 East Dimond Blvd. | Anchorage | AK |
| 111 | 1068 | Anchorage 5th Ave | Factory | 320 West 5th Avenue, Suite 219 | Anchorage | AK |
| 112 | 1115 | Bentley Mall | Factory | 32 College Road | Fairbanks | AK |
| 113 | 3326 | Foothills Mall | PS Kids | 7401 N. La Cholla Blvd. | Tucson | AZ |

11

**Exhibit B** – Budget

| Sale Expense | | HQ Team | U.S. Aero |
|---|---|---|---|
| Lead & F&A | (1) | 61,000 | |
| Advertising | (1) | | 70,000 |
| Miscellaneous | (1) | | 5,000 |
| Supervision | (1) | | 238,000 |

(1) Assumes a 6-week Sale Term.

12

**Exhibit C  -** Consultant's Fee Schedule

| Threshold | Fee |
|---|---|

Under 170% of cost    –    0.0% (no fee)

170% - 174.9% of cost    –        0.25%

175% - 179.9% of cost    –        0.50%

180% of cost and above – 0.75%

Maximum fee capped at 0.75% of sales.

WEIL:\95702434\3\11727.0012

## CONSULTING AGREEMENT

This Consulting Agreement, dated as of May 2, 2016 (together with all Schedules, Exhibits and attachments hereto, collectively, the "Agreement"), is made by and between Tiger Capital Group, LLC, a Massachusetts limited liability company ("Tiger"), Great American Retail Canada, ULC, a Canadian unlimited liability company ("GA"; together with Tiger, the "Consultant"), and Aéropostale Canada, Corp., a Nova Scotia, Canada corporation (the "Merchant").

### WITNESSETH:

WHEREAS, Merchant operates retail store locations and desires to retain Consultant to provide consulting services to Merchant with respect to the management and disposition of the Merchandise (as defined below) and FF&E (as defined below) in the context of a "Going Out of Business", "Store Closing Sale" (the "Sale") at the stores listed on Schedule A (the "Stores").

WHEREAS, Consultant is willing to serve as Merchant's consultant for the purpose of providing such consulting services, upon the terms and conditions and in the manner set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    DEFINITIONS

For the purposes of this Agreement, the terms listed below shall have the respective meanings indicated:

1.1    "FF&E" shall mean the furniture, fixtures and equipment owned by Merchant and located at the Stores.

1.2    "Leases" shall mean the leases, occupancy agreements, reciprocal easements or similar agreements pursuant to which Merchant has the right to occupy or utilize the Stores.

1.3    "Merchandise" shall mean all items of merchandise located in the Stores throughout the Sale Term, but excludes any furniture, fixtures (trade or other) or equipment.

1.4    "Proceeds" shall mean the aggregate of the total amount (in dollars) of all sales of Merchandise made under this Agreement, exclusive of sales taxes.

1.5    "Sale Commencement Date" shall mean on or around May 13, 2016. "Sale" shall have the meaning set forth in the recitals hereof.

1.6    "Sale Expenses" shall mean operating expenses incurred in connection with the Sale, including without limitation (i) advertising and signage costs, (ii) Supervisor fees and costs associated with performing the Services, and (iii) Miscellaneous Expenses, each of items (i)-(iii) as set forth in **Exhibit B**.

1.7    "Sale Term" shall mean the period of time beginning with the Sale Commencement Date and ending on the Sale Termination Date.

1.8    "Sale Termination Date" shall mean no later than June 30, 2016, or such other date mutually determined by Merchant and Consultant to terminate the Sale.

1.9    "Services" shall mean the services to be performed by Consultant pursuant to Section 2.2 of this Agreement.

1.10    "Store Employees" shall mean those individuals who Merchant employs and retains in the Stores to conduct the Sale.

1.11    "Supervisors" shall mean the individuals whom Consultant shall engage to provide Services in the Stores to Merchant in connection with the Sale.

2.    CONSULTING

2.1    Merchant hereby retains Consultant and Consultant hereby agrees to serve as an independent consultant to Merchant in connection with the conduct of the Sale as set forth herein.  With respect to the Sale, Consultant shall serve as Merchant's sole and exclusive consultant relative thereto at the Stores throughout the Sale Term;

2.2    On the terms and conditions set forth herein, commencing as of the Sale Commencement Date, Consultant shall provide Merchant with the following Services with respect to the conduct of the Sale at the Stores;

(i)    Provide qualified Supervisors to implement the Merchandise liquidation strategy in the Stores;

(ii)    Oversee the Sale of the Merchandise from the Stores in an effort to sell all of the Merchandise during the Sale Term;

(iii)    Determine and recommend appropriate point of purchase, point of sale and external advertising to effectively sell the Merchandise during the Sale Term, consistent with a "Store Closing" theme;

(iv)    Determine the appropriate pricing, display and discounting of Merchandise, as well as recommend appropriate staffing levels for the Stores (including Store Employees);

(v)    Recommend appropriate transfers of Merchandise among the Stores to maximize sales;

(vi)    Recommend shipping of additional Merchandise into and out of Stores to maximize sales;

(vii)    Sell all FF&E in the Stores pursuant to section 11.8 below;

2

(viii)    Advise and assist Merchant with respect to obtaining store closing permits in accordance with local laws, if applicable;

(ix)    Maintain the confidentiality of all proprietary or non-public information regarding Merchant or the Stores of which Consultant or its representatives become aware, except for information that is public as of the date hereof or becomes public through no fault of Consultant;

(x)    Coordinate sales and discounting reporting functions;

(xi)    Provide written reports to the Merchant during the Sale Term in such frequency as reasonably determined by the Merchant;

(xii)    Coordinate during the Sale Term with the Merchant at both the store and corporate level to insure that the Sale is conducted in an orderly and efficient manner, provided however, that the Merchant shall have the ultimate control of store personnel and shall handle the cash, debit, and charge card payments for all Merchandise sold in accordance with Merchant's customary cash management procedures;

(xiii)    As necessary, coordinate with the landlords and any other tenants or other subtenants on the property in which the Closing Stores are located to minimize any possible disruptions caused during the Sale Term;

(xiv)    Maintain housekeeping standards, including safekeeping and oversight of the Stores, and cleanup of premises prior to exit of Stores; and

(xv)    Comply with the respective provisions applicable to them in the Approval Order (as defined below).

(xvi)    Provide such other related services deemed necessary or prudent by Merchant and Consultant under the circumstances giving rise to the Sale.

2.3    In connection with the Sale, Consultant shall directly retain and engage the Supervisors. The Supervisors are independent contractors engaged by Consultant and are not and shall not be deemed to be employees or agents of Merchant in any manner whatsoever; nor shall the Supervisors have any relationship with Merchant by virtue of this Agreement or otherwise which creates any liability or responsibility on behalf of Merchant for the Supervisors. During the Sale Term, the Supervisors shall perform Services during normal Store operating hours and for the period of time prior to the Store opening and subsequent to the Store closing as required in connection with the Sale in Consultant's reasonable business judgment.

2.4    Title to all Merchandise shall remain with Merchant at all times during the Sale Term until such Merchandise is sold by or on behalf of Merchant. All sales of Merchandise in the Stores shall be made on behalf of Merchant.

2.5    Should Merchant seek protection under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (the "CCAA") in the Ontario Superior Court of Justice or any other

3

appropriate court (such court, the "Superior Court") and an order is entered in the United States Bankruptcy Court for the Southern District of New York or other appropriate court (the "U.S. Court") (i) authorizing and approving Merchant and Consultant to continue to conduct the Sale under the terms of this Agreement pursuant to the CCAA or otherwise applicable law *nunc pro tunc* to the Commencement Date, and (2) authorizing Merchant to continue to promote the Sale as a "Going Out of Business Sale," "Liquidation Sale," or "Store Closing Sale" as applicable (the "Approval Order") Merchant shall serve an application or motion seeking an order from the Superior Court recognizing and giving full force and effect to the Approval Order within two days of the entry of the Approval Order. To the extent that the Approval Order is entered on a preliminary basis, the Merchant shall seek recognition of any further Approval Order(s) within 2 days of the entry of such further order.

3.    EXPENSES

3.1    In connection with the Sale, Merchant shall be responsible for the payment of all expenses incurred in operating the Stores and conducting the Sale, including all occupancy expenses for the Stores and all Sale Expenses; provided, however, that with respect to Sale Expenses of the type listed on Attachment B, Merchant's responsibility shall be capped at the aggregate amount set forth for such Sale Expenses on Attachment B unless mutually agreed, in writing between Merchant and Consultant.

4.    CONSULTANT'S FEES

4.1    Consultant shall receive a fee based on meeting certain thresholds as set forth on Exhibit C.  The applicable fee shall be earned on the aggregate Proceeds.  The thresholds percentages set forth on Exhibit C represent the aggregate Proceeds divided by the cost of all Merchandise sold during the Sale (i.e., the "cost of goods sold").  Merchant shall provide Consultant with the cost of each item of Merchandise.

4.2    Consultant shall submit reasonably detailed invoices accompanied by reasonable backup documentation to Merchant every week beginning the week of May 16, 2016, setting forth any Sale Expenses that have been incurred directly by Consultant, and commissions earned on the sale of FF&E, during the prior one-week period.  Within five business days of the submission of such invoices accompanied by reasonable backup documentation, such invoices shall be paid in full by Merchant via wire transfer to the extent Merchant is responsible therefor pursuant to Section 3.1 hereof.

5.    STORE EMPLOYEES

5.1    Consultant shall consult with Merchant, and Merchant shall select and retain all Store Employees to be utilized as part of the Sale during the Sale Term.

5.2    Merchant has applied, and Merchant shall through the Sale Commencement Date continue to apply, historic practices and policies regarding its Store Employees, including, without limitation, as to hiring, termination, promotion and compensation. Merchant agrees to use its reasonable commercial efforts to insure that as of the Sale Commencement Date the Stores will be staffed with historical levels of Store Employees.

WEIL:\95702994\2\11727.0012

5.3     Subject to paragraph 8.1 hereof, Consultant shall have no liability to the Store Employees (including any of Merchant's former employees) of any kind or nature whatsoever, including without limitation, with respect to severance pay, termination pay, vacation pay, pay in lieu of reasonable notice of termination, or any other expenses or liability arising from Merchant's employment of such Store Employees prior to, during, and subsequent to the Sale.

6.     REPRESENTATION AND WARRANTIES OF CONSULTANT

6.1     Consultant hereby represents warrants and covenants in favor of merchant as follows:

(a)     Consultant has taken all necessary action required to authorize the execution, performance and delivery of this agreement, and to consummate the transactions contemplated hereby.

(b)     This Agreement is a valid binding obligation of Consultant enforceable in accordance with its terms, subject only to any applicable bankruptcy, insolvency or similar laws affecting the rights of creditors generally and the availability of equitable remedies.

(c)     No action or proceeding has been instituted or, to Consultant's knowledge, threatened, affecting the consummation of this Agreement or the transactions contemplated herein.

(d)     Consultant acknowledges and agrees that it is being retained by Merchant because of its expertise in assisting debtors in liquidation matters during the course of a bankruptcy proceeding, and that Consultant has such expertise. Consultant will perform its obligations under this Agreement according to the highest professional level of standard of care.

7.     REPRESENTATIONS AND WARRANTIES OF MERCHANT

7.1     Merchant hereby represents warrants and covenants in favor of Consultant as follows:

(a)     Merchant has taken all necessary action required to authorize its execution, performance and delivery of this Agreement, and to consummate the transactions contemplated hereby.

(b)     This Agreement is a valid and binding obligation of Merchant enforceable in accordance with its terms, subject only to any applicable bankruptcy, insolvency or similar laws affecting the rights of creditors generally and the availability of equitable remedies.

(c)     No action or proceeding has been instituted or, to Merchant's knowledge, threatened, affecting the consummation of this Agreement or the transactions contemplated herein.

8.     AFFIRMATIVE DUTIES OF CONSULTANT

5

8.1   Consultant shall reimburse, indemnify, defend and hold Merchant and its officers, directors, agents, and employees, harmless from and against any damage, loss, expense (including reasonable attorneys' fees) or penalty, or any claim or action therefor, by or on behalf of any person, arising out of the performance or failure of performance of this Agreement, or due to any acts or omissions by the Consultant or its employees, Supervisor or other agents ("Employees"), including but not limited to breaches or violations of human rights legislation and, the Consultant's Employees' payroll claims (wage claims, claims for taxes required to be withheld from wages, social security, etc.), unemployment compensation claims, or actions taken by Consultant or its Employees8.2   At the conclusion of the Sale, Consultant shall leave the Stores in broom clean condition, except for existing unsold fixtures.

8.3   Consultant, at no charge to Merchant, shall reasonably cooperate and work with all interested parties in connection with the Merchant's bankruptcy case, including without limitation, any postpetition debtor-in-possession financing lenders, statutory committee of creditors appointed in the Merchant's bankruptcy case, the prepetition secured parties that comprise the Merchant's capital structure, the Merchant's other advisors, and if requested Merchant, Consultant shall, at no charge to Merchant, provide written reports, meet with or participate in telephone conferences with such parties, and provide oral testimony or written affidavits for the Bankruptcy Court regarding its activities under this Agreement; provided, that Consultant shall not communicate with any such parties or their advisors regarding this Agreement without the prior written instruction of the Merchant. The Merchant acknowledges that the Consultant and/or its affiliates may have, or may have had, certain relationships with such interested parties that may need to be disclosed to the Bankruptcy Court as part of the retention by the Merchant of the Consultant, and the parties will work cooperatively to make all such required disclosures.

9.    AFFIRMATIVE DUTIES OF MERCHANT

9.1    Merchant shall be solely liable for, and shall pay when due, all Sale Expenses as well as all taxes, costs, expenses, accounts payable and other liabilities relating to the Sale, the Stores, Store Employees and Merchant's business operations during the Sale, in each case to the extent Merchant is responsible for such Sale Expenses pursuant to Section 3.1.

9.2    Merchant shall prepare and process all reporting forms, certificates, reports and other documentation required in connection with the payment of all applicable taxes for the Stores to the appropriate taxing authorities.  Merchant shall collect all sales taxes and Merchant shall pay the same to the appropriate taxing authorities in accordance with the applicable law.

9.3    Merchant shall indemnify and hold Consultant and its agents, employees, principals and Supervisor harmless from and against any and all damages, fines, penalties, losses, claims or expenses (including, without limitation, reasonable attorneys' fees) that Consultant may incur or sustain arising out of Merchant's failure to pay over to the appropriate taxing authority any taxes required to be paid by Merchant during the Sale Term in accordance with applicable law or to pay any liability referred to in Section 10.1 hereof.

WEIL:\95702994\2\11727.0012

9.4    Merchant shall use all reasonable efforts to cause all Store Employees, and all other representatives and agents of Merchant to cooperate fully with Consultant and its Supervisor in connection with the Sale during the Sale Term.

9.5    Merchant shall indemnify and hold Consultant and its agents, employees, principals and Supervisor harmless from and against all liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to the (i) negligent acts or omissions of Merchant or its agents, employees, in connection with the Sale, or (ii) the breach by Merchant of any of its obligations under this Agreement.

10.    INSURANCE

10.1    Merchant shall maintain throughout the Sale Term, liability insurance policies (including, but not limited to, product liability, comprehensive public liability insurance and auto liability insurance) covering injuries to persons and property in or in connection with Merchant's operation of the Stores, and shall cause Consultant to be an additional insured with respect to all such policies. Merchant shall be responsible for the payment of all deductibles, self-insurance and other amounts payable in connection with any claim asserted under such policies, except for any claims arising directly from an act or omission of, or breach of this agreement by, Consultant, or its employees, representatives, agents or Supervisor.

10.2    Consultant shall maintain throughout the Sale Term, liability insurance policies (including, but not limited to, comprehensive public liability and auto liability insurance) covering injuries to persons and property in or in connection with Consultant's provision of Services at the Stores, and shall cause Merchant to be named an additional insured with respect to such policies.

11.    MISCELLANEOUS

11.1    Any notice or other communication under this Agreement shall be in writing and may be delivered personally or sent by prepaid registered or certified mail or by nationally recognized overnight courier or by electronic mail, addressed as follows:

(i)    In the case of Consultant:

Great American Retail Canada, ULC
21860 Burbank Blvd
Woodland Hills, CA 91367
Attn:   Scott Carpenter, President GA Retail
        Alan N. Forman, EVP & GC

and

Tiger Capital Group
60 State Street, 11th Floor
Boston, MA 02109
Attn:    Michael McGrail, Chief Operating Officer

7

        (ii)     in the case of Merchant:

             Aéropostale, Inc.
             112 West 34th Street, 22nd Floor
             New York, New York 10120

             Attn: Marc Schuback and David Dick

11.2    This Agreement shall be governed by and interpreted in accordance with the internal laws of the State of New York, without reference to any conflict of laws provisions, and the United States Bankruptcy Code to the extent applicable.

11.3    In the event any term or provision contained within this Agreement shall be deemed illegal or unenforceable, then such offending term or provision shall be considered deleted from this Agreement and the remaining terms shall continue to be in full force and effect.

11.4    This Agreement constitutes the entire agreement between the parties with respect of the subject matter hereof and supersedes all prior negotiations and understandings, and can only be modified by a writing signed by Merchant and Consultant.

11.5    This Agreement shall inure to the benefit of, and be binding upon, the parties and their respective successors and permitted assigns.

11.6    This Agreement may be executed in several counterparts, each of which when so executed shall be deemed to be an original and such counterparts, together, shall constitute one and the same instrument. Delivery by facsimile of this Agreement or an executed counterpart hereof shall be deemed a good and valid execution and delivery hereof or thereof.

11.7    Nothing contained herein shall be deemed to create any relationship between Consultant and Merchant other than that of an independent contractor. It is stipulated that the parties are not partners or joint venturers.

11.8    Consultant may sell FF&E at a particular store after receiving written consent from Merchant. Consultant will receive a 15% commission of the proceeds generated from the sale of such assets. Consultant shall have the right to abandon any unsold fixtures at the Stores at the conclusion of the Sale.

11.9    Merchant or Consultant may terminate this Agreement, effective upon thirty (30) days prior written notice to the other party to this Agreement, if the other party has materially breached this Agreement, and such breach is incapable of cure, or with respect to a material breach capable of cure, the other party does not cure such breach within three (3) days after receipt of written notice of such breach. The terms and conditions of this Section 11 and Sections 1,3,4,5,8,9 and 11 shall survive the expiration or termination of this Agreement.

WEIL:\95702994\2\11727.0012

(THE REST OF THIS PAGE IS LEFT BLANK INTENTIONALLY)

WEIL:\95702994\2\11727.0012

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

TIGER CAPITAL GROUP, LLC


By:      */s/ Michael McGrail*
Name: Michael McGrail
Title: Chief Operating Officer


GREAT AMERICAN RETAIL CANADA, ULC


By:      */s/ Scott K. Carpenter*
Name: Scott K. Carpenter
Title: President, GA Retail


AÉROPOSTALE CANADA, CORP.


By: */s/ David J. Dick*
Name:  David J. Dick
Title:  Chief Financial Officer

WEIL:\95702994\2\11727.0012

# Exhibit A – Store List

| Count | Store Number | Mall | Location Type | Address | City | ST | Country |
|---|---|---|---|---|---|---|---|
| 1 | 3053 | Chinook Mall | Mall | 6455 Macleod Trail SW | Calgary | AB | CA |
| 2 | 3032 | West Edmunton Mall | Mall | 8882 170 Street Suite 2680 | Edmonton | AB | CA |
| 3 | 3038 | Kingsway Mall | Mall | 109 Street and Kingsway | Edmonton | AB | CA |
| 4 | 3043 | South Edmonton Commons | Mall | 1441 99 St NW #3 | Edmonton | AB | CA |
| 5 | 3078 | Grand Prairie | Mall | 11801 100 Street | Grand Prairie | AB | CA |
| 6 | 3062 | Bower Place | Mall | 4900 Molly Bannister Drive | Red Deer | AB | CA |
| 7 | 3044 | CrossIron Mills | Mall | 261005 CrossIron Blvd. | Rocky View | AB | CA |
| 8 | 3011 | Metropolis at Metrotown | Mall | #268-4820 Kingsway | Burnaby | BC | CA |
| 9 | 3075 | Queensboro Landing | Mall | 805 Boyd Street | New Westminister | BC | CA |
| 10 | 3048 | Richmond Centre | Mall | #1838 (Unit T-19)6060 Minoru Blvd. | Richmond | BC | CA |
| 11 | 3012 | Guildford TC | Mall | 10355-152nd Street, Suit 2608 | Surrey | BC | CA |
| 12 | 3079 | Kildonan Place | Mall | 1555 Regent Avenue West | Winnepeg | MB | CA |
| 13 | 3074 | St. Vital Center | Mall | 1225 St. Mary's Road | Winnipeg | MB | CA |
| 14 | 3091 | Polo Park | Mall | 1485 Portage Avenue | Winnipeg | MB | CA |
| 15 | 3081 | Midtown Plaza | Mall | 1st Ave South | Saskatoon | SK | CA |
| 16 | 3068 | Bramalea City Center | Mall | 25 Peel Centre Drive | Brampton | ON | CA |
| 17 | 3094 | Toronto Premium Outlets | Mall | 13850 Steeles Avenue West | Halton Hills | ON | CA |
| 18 | 3022 | Lime Ridge Mall | Mall | 999 Upper Wentworth Street | Hamilton | ON | CA |
| 19 | 3015 | Fairview Park | Mall | 2960 Kingsway Drive | Kitchener | ON | CA |
| 20 | 3013 | White Oaks Mall | Mall | 1105 Wellington Road | London | ON | CA |
| 21 | 3021 | Square One | Mall | 100 City Centre Drive | Mississauga | ON | CA |
| 22 | 3028 | Dixie Outlets | Mall | 1250 South Service Road | Mississauga | ON | CA |
| 23 | 3057 | Pen Centre | Mall | 221 Glendale Avenue | St. Catharine's | ON | CA |
| 24 | 3024 | The Promenade | Mall | 1 Promenade Circle | Thornhill | ON | CA |
| 25 | 3026 | Toronto Eaton Center | Mall | 220 Yonge Street Box 511 | Toronto | ON | CA |
| 26 | 3039 | Fairview | Mall | 1800 Shepard Avenue East | Toronto | ON | CA |
| 27 | 3034 | Champlain Place | Mall | 550 King Street North | Waterloo | ON | CA |
| 28 | 3033 | Devonshire Mall | Mall | 3100 Howard Avenue | Windsor | ON | CA |
| 29 | 3058 | Champlain Place | Mall | 477 Paul Street | Dieppe | NB | CA |
| 30 | 3055 | Avalon Mall | Mall | 48 Kenmount Rd | St John's | NL | CA |
| 31 | 3031 | Mic Mac Mall | Mall | 21 Mic Mac Blvd. | Halifax | NS | CA |
| 32 | 3016 | Georgian Mall | Mall | 509 Bayfield Street | Barrie | ON | CA |
| 33 | 3046 | Quinte Mall | Mall | 390 North Front Street | Bellville | ON | CA |
| 34 | 3027 | Upper Canada Mall | Mall | 17600 Yonge Street | Newmarket | ON | CA |
| 35 | 3071 | Oshawa Centre | Mall | 419 King Street | Oshawa | ON | CA |
| 36 | 3049 | Bayshore Shopping Centre | Mall | 100 Bayshore Drive Unit T35 | Ottawa | ON | CA |
| 37 | 3095 | Tanger Ottawa | Mall | 8555 Campeau Drive | Ottawa | ON | CA |
| 38 | 3067 | Lansdowne Place | Mall | 645 Lansdowne Street West | Peterborough | ON | CA |
| 39 | 3023 | Scarborough TC | Mall | 300 Borough Drive | Scarborough | ON | CA |
| 40 | 3040 | New Sudbury | Mall | 1349 LaSalle Boulevard | Sudbury | ON | CA |
| 41 | 3018 | Vaughn Mills | Mall | 1 Bass Pro Mills Drive | Vaughn | ON | CA |

WEIL:\95702994\2\11727.0012

# Exhibit B – Budget

| Sale Expense | | Aéropostale Canada |
|---|---|---|
| Lead & F&A | (1) (2) | 10,180 |
| Advertising | (1) (3) | 25,000 |
| Miscellaneous | (1) (3) | 3,000 |
| Supervision | (1) (3) | 60,000 |

(1) Amounts are in U.S. Dollars.

(2) Assumes 1 week of expenses for Lead & F&A.

(3) Assumes 6-week Store Sale Term.

WEIL:\95702994\2\11727.0012

**Exhibit C -** Consultant's Fee Schedule

| Threshold | Fee |
|---|---|

Under 170% of cost      –    0.0% (no fee)

170% - 174.9% of cost    –      0.25%

175% - 179.9% of cost    –      0.50%

180% of cost and above – 0.75%

Maximum fee capped at 0.75% of sales.

13

**<u>Exhibit D</u>**

**Proposed Interim Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                                            :
In re                                       :          **Chapter 11**
                                            :
**AÉROPOSTALE, INC.,** *et al.*,            :          **Case No. 16-_____ (___)**
                                            :
            **Debtors.**[1]                 :          **Jointly Administered**
                                            :
---------------------------------------------------------x

## INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 363, AND 365 APPROVING (I) PROCEDURES FOR STORE CLOSING SALES, AND (II) THE ASSUMPTION OF THE LIQUIDATION CONSULTING AGREEMENTS

Upon the motion [ECF No. __] (the "***Motion***")[2] of Aéropostale, Inc. and its

subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "***Debtors***"), pursuant to sections 105(a), 363, and 365 of title 11 of the

*Bankruptcy Code*, for an order authorizing, but not directing, the Debtors to (i) implement the

Store Closing Procedures, and (ii) assume the Liquidation Consulting Agreements, as more

fully set forth in the Motion; and the Court having jurisdiction to decide the Motion and the

relief requested therein in accordance with 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the

*Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.);

consideration of the Motion and the interim relief requested therein being a core proceeding

pursuant to 28 U.S.C. § 157(b), and venue is proper before this Court pursuant to 28 U.S.C.

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows:  Aéropostale, Inc. (3880); Aéropostale West, Inc. (7013); Jimmy'Z Surf Co., LLC (0461); Aero GC Management LLC (4257); Aeropostale Procurement Company, Inc. (8518); Aeropostale Licensing, Inc. (8124); P.S. from Aeropostale, Inc. (5900); GoJane LLC (4923); Aeropostale Canada Corp. (N/A); Aeropostale Holdings, Inc. (7729); and Aeropostale Puerto Rico, Inc. (6477).  The Debtors' corporate headquarters is located at 112 West 34th Street, 22nd Floor, New York, NY 10120.

[2] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the Motion or the First Day Declaration, as applicable.

§§ 1408 and 1409; and notice of the Motion having been given as provided in the Motion, and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice of the Motion need be provided; and the Court having held a hearing to consider the relief requested in the Motion (the "*Hearing*"); and upon the upon the *Declaration of David J. Dick Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York* (the "*First Day Declaration*") and the *Declaration of Timothy McDonagh*, each contemporaneously with the Motion, the record of the Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion and granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule 6003, and is in the best interests of the Debtors, their respective estates and creditors, and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted, as set forth herein.

2.      The Debtors are authorized, but not directed, pursuant to sections 105(a), and 363(b) and (f) of the Bankruptcy Code, to proceed with Store Closing Sales at the stores listed on Exhibit 1 to this Interim Order (the "*Closing Stores*"), and take all actions reasonably related thereto or arising in connection therewith, in each case in accordance with this Interim Order and the store closing sale procedures attached to this Interim Order as Exhibit 2 (the "*Store Closing Procedures*"), which Store Closing Procedures are hereby approved in their entirety.  The failure to include specifically any particular provision of the Store Closing

Procedures in this Interim Order shall not diminish or impair the effectiveness of such provisions.

3.      The Store Closing Procedures shall apply to all sales of Store Closing Asset at the Closing Stores.  Upon entry of a final order approving the Store Closing Procedures, the Debtors and the Liquidation Consultant may apply these Store Closing Procedures to, and commence Store Closing Sales at, any Additional Closing Stores upon five (5) days written notice by e-mail or overnight delivery to (a) the Office of the United States Trustee for Region 2 (the "*U.S. Trustee*"); (b) counsel or proposed counsel to the Creditors' Committee, if any; (c) any known affected creditor(s), including any affected landlord and its counsel, if known; (d) those parties requesting notice pursuant to Bankruptcy Rule 2002; and (e) counsel for the DIP Agent (collectively, the "*Notice Parties*").

4.      Unless otherwise ordered by the Court, all newspapers and other advertising media in which the Store Closing Sales may be advertised and all landlords are directed to accept this Interim Order as binding authority so as to authorize the Debtors to conduct and advertise the Store Closing Sales in accordance with the Store Closing Procedures.

5.      Pursuant to section 363(f) of the Bankruptcy Code, the Store Closing Assets being sold shall be sold free and clear of any and all mortgages, security interests, conditional sales or title retention agreements, pledges, hypothecations, liens, judgments, encumbrances or claims of any kind or nature (including, without limitation, any and all "claims" as defined in section 101(5) of the Bankruptcy Code) (collectively, the "*Liens and Claims*"), with such Liens and Claims, if any, to attach to the proceeds of such assets with the same validity and enforceability, to the same extent, subject to the same defenses, and with the same amount and priority as they attached to such assets immediately prior to the closing of the applicable sale.

WEIL:\95641370\15\11727.0012

6.      Any and all bulk sale laws, to the extent applicable, are hereby waived since creditors are protected by the notice provided by the Motion and the jurisdiction of the Court.

7.      Nothing in this Interim Order releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Interim Order.  Nothing contained in this Interim Order or in the Liquidation Consulting Agreements shall in any way (i) diminish the obligation of any entity to comply with environmental laws, or (ii) diminish the obligations of the Debtors to comply with environmental laws consistent with its rights and obligations as debtor in possession under the Bankruptcy Code.  The Store Closing Sales shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "*General Laws*").  Nothing in this Interim Order shall alter or affect obligations to comply with all applicable federal safety laws and regulations. Nothing in this Interim Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(47) of the Bankruptcy Code) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtor's right to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Interim Order, or otherwise. Notwithstanding any other provision in this Interim Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Interim Order

4

and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Interim Order shall be deemed to have made any rulings on any such issues.

        8.     To the extent that the Store Closing Sales are subject to any federal, state or local statute, ordinance, or rule, or licensing requirement solely directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or bulk sale laws, including laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection with the Store Closing Sales and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply solely to store closing or liquidation sales (each a "*Liquidation Sale Law*" and together, the "*Liquidation Sale Laws*"), the following provisions shall apply:

        a.     Provided that the Store Closing Sales are conducted in accordance with the terms of this Interim Order and the Store Closing Procedures, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the Debtor shall be presumed to be in compliance with any Liquidation Sale Laws and is authorized to conduct the Store Closing Sales in accordance with the terms of this Interim Order and the Store Closing Procedures without the necessity of further showing compliance with any Liquidation Sale Laws.

        b.     Within three (3) business days after entry of this Interim Order, the Debtor shall serve copies of this Interim Order, the Liquidation Consulting Agreements and the Store Closing Procedures via email, facsimile, or regular mail, on the following: (i) the Attorney General's office for each state where the Store Closing Sales are being held, (ii) the county

5

consumer protection agency or similar agency for each county where the Store Closing Sales will be held, (iii) the division of consumer protection for each state where the Store Closing Sales will be held, and (iv) the chief legal counsel for the local jurisdiction.

c.      To the extent there is a dispute arising from or relating to the Store Closing Sales, this Interim Order, the Liquidation Consulting Agreements, or the Store Closing Procedures, which dispute relates to any Liquidation Sale Laws (a "***Reserved Dispute***"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute.  Any time within ten (10) days following entry of a final order approving the Store Closing Procedures, any Governmental Unit may assert that a Reserved Dispute exists by serving written notice of such Reserved Dispute to counsel for the Debtor so as to ensure delivery thereof within one (1) business day thereafter.  If the Debtor and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen (15) days after service of the notice, the aggrieved party may file a motion with this Court requesting that this Court resolve the Reserved Dispute (a "***Dispute Resolution Motion***").

d.      In the event a Dispute Resolution Motion is filed, nothing in this Interim Order shall preclude the Debtor, a landlord, or other interested party from asserting (i) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code or (ii) that neither the terms of this Interim Order nor the conduct of the Debtor pursuant to this Interim Order, violates such Liquidation Sale Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of any Order or to limit or interfere with the Debtor's or the Liquidation Consultant's ability to conduct or to continue to conduct the Store Closing Sales pursuant to this Interim Order, absent further order of this Court.  The Court grants authority for the Debtor and the Liquidation Consultant to conduct the Store Closing Sales

6

pursuant to the terms of this Interim Order, the Liquidation Consulting Agreements, and/or the Store Closing Procedures and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit shall be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code. Nothing in this Interim Order shall constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

        e.      If, at any time, a dispute arises between the Debtor and/or the Liquidation Consultant and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in this Interim Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (b) and (c) hereunder by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs. Any determination with respect to whether a particular law is a Liquidation Sale Laws shall be made *de novo*.

        9.      Except as expressly provided for herein or in the Store Closing Procedures, and except with respect to any Governmental Unit (as to which Paragraphs 6 and 7 shall apply), no person or entity, including but not limited to any landlord, licensor, or creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Store Closing Sales, or the advertising and promotion (including the posting of signs or the use of signwalkers) of the Store Closing Sales, and all such parties and persons of every nature and description, including landlords, licensors, creditors and utility companies and all those acting for or on behalf of such parties, are prohibited and enjoined from (i) interfering in any way with, or otherwise impeding, the conduct of the Store Closing Sales

WEIL:\95641370\15\11727.0012

and/or (ii) instituting any action or proceeding in any court or administrative body seeking an order or judgment against, among others, the Debtor, Liquidation Consultant, or the landlords at the Debtor's stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closing Sales and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease or license based upon any relief authorized herein.

10.     The Liquidation Consultant shall have the right to use the Debtor's stores and all related store services, furniture, fixtures, equipment and other assets of the Debtor for the purpose of conducting the Store Closing Sales, free of any interference from any entity or person, subject to compliance with the Store Closing Procedures and this Interim Order.

11.     Any restrictions in any lease agreement, restrictive covenant, or similar documents purporting to limit, condition, or impair the Debtors' ability to conduct the Store Closing Sales shall not be enforceable, nor shall any breach of such provisions in these chapter 11 cases constitute a default under a lease or provide a basis to terminate the lease; provided, the Store Closing Sales are conducted in accordance with the terms of this Interim Order and the Store Closing Procedures.

12.     The Closing Stores may "go-dark" during the Store Closing Sales and remain "dark" despite any lease restriction, real estate local act, local law, or ordinance to the contrary, and any "continuous operation" or similar clause in any of the leases (or any lease provision that purports to increase the rent or impose any penalty for "going dark") may not be enforced to hinder or interrupt the Store Closing Sales (and the "going dark" under such leases shall not be a basis to cancel or terminate the leases).

8

13.     Each and every federal, state, or local agency, departmental or governmental unit with regulatory authority over the Store Closing Sales and all newspapers and other advertising media in which the Store Closing Sales are advertised shall consider this Interim Order as binding authority that no further approval, license, or permit of any governmental unit shall be required, nor shall the Debtors be required to post any bond, to conduct the Store Closing Sales.

14.     State and/or local authorities shall not fine, assess, or otherwise penalize the Debtors or any of the landlords of the Closing Stores for conducting or advertising the Store Closing Sales in a manner inconsistent with state or local law; <u>provided</u>, that the Store Closing Sales are conducted and advertised in a manner contemplated by this Interim Order.

15.     Nothing in this Interim Order in any way limits the Debtors' ability to (a) seek assumption, assignment, or rejection of the Stores' leases, (b) determine that additional stores should be closed and Store Closing Sales or the like be conducted in advance thereof, (c) abandon assets in connection with Store Closing Sales, lease rejections, or otherwise, and the Debtors' rights are fully reserved in these regards.

### <u>Liquidation Consulting Agreements</u>

16.     The Debtor's assumption of the Liquidation Consulting Agreements are hereby approved pursuant to section 365 of the Bankruptcy Code, and the Liquidation Consulting Agreements are hereby assumed on a final basis.

17.     All existing defaults under the Liquidation Consulting Agreements are hereby deemed to be cured.

18.     All amounts payable to the Liquidation Consultant under the Liquidation Consulting Agreements shall be payable to the Liquidation Consultant without the need for any application of the Liquidation Consultant therefor or any further order of the Court.

9

## **Other**

19.     Any payment made or to be made under this Interim Order, and any authorization contained in this Interim Order, shall be subject to the terms of any interim and final orders (together, the "DIP Orders") approving entry into debtor-in-possession financing and authorizing the use of cash collateral entered by this Court in these chapter 11 cases, including, without limitation, all terms of the DIP Orders relating to the application and or segregation of proceeds of the Store Closing Sales.

20.     Without limiting or otherwise altering any requirements under the DIP Orders, the Debtors shall consult with the DIP Agent (as defined in the DIP Orders), including providing information requested by the DIP Agent, in connection with (a) Store Closing Sales and proceeds thereof, and (b) any modification of the Store Closing Procedures.

21.     Nothing contained in the Motion or this Interim Order or any payment made pursuant to the authority granted by this Interim Order is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code, other than the Liquidation Consulting Agreements.

22.     Notwithstanding entry of this Interim Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

23.     The requirements of Bankruptcy Rule 6003(b) have been satisfied.

24.     The requirements of Bankruptcy Rule 6004(a) are waived.

WEIL:\95641370\15\11727.0012

25.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

26.    Cause exists to shorten the notice period set forth in Bankruptcy Rule 2002, to the extent applicable.

27.    The Final Hearing on the Motion shall be held on _____, **2016, at _____ (Eastern Time)** and any objections or responses to the Motion shall be in writing, filed with the Court, with a copy to chambers, and served upon (i) the proposed attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153 (Attn: Ray C. Schrock, P.C., Jacqueline Marcus, Esq., and Garrett A. Fail, Esq.); (ii) the Office of the United States Trustee for Region 2, 201 Varick Street, Suite 1006, New York, NY 10014; (iii) the attorneys for Aero Investors LLC, as agent under the Loan and Security Agreement, dated May 23, 2014, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, IL 60654 (Attn: James A. Stempel, Esq.); (iv) attorneys for Bank of America, N.A., as agent under the Third Amended and Restated Loan and Security Agreement, as amended on August 18, 2015, Riemer & Braunstein LLP, Three Center Plaza, Boston, MA 02108 (Attn: David S. Berman, Esq.); and (v) the attorneys for the DIP Agent, Proskauer Rose LLP, Eleven Times Square, New York, NY 10036 (Attn: Scott Rutsky and Peter Antoszyk, Esq.), in each case so as to be received no later than **4:00 p.m. (Eastern Time) on _____, 2016**.

28.    Except with respect to the Debtors' assumption of the Liquidation Consulting Agreements, which is approved on a final basis effective immediately, this Interim Order is effective only from the date of entry through this Court's disposition of the Motion on a final basis; provided that the Court's ultimate disposition of the Motion on a final basis shall not impair or otherwise affect any action taken pursuant to this Interim Order.

11

29.     The Debtors are authorized to take all action necessary to carry out this

Interim Order.

30.     This Court shall retain jurisdiction to hear and determine all matters arising

from or related to the implementation, interpretation and/or enforcement of this Interim Order and

any Landlord Agreement.

Dated: May_____, 2016
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit E</u>**

**Proposed Final Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                                        :
In re                                   :        **Chapter 11**
                                        :
AÉROPOSTALE, INC., *et al.*,            :        **Case No. 16-_____ (___)**
                                        :
            **Debtors**[1]                  :        **Jointly Administered**
                                        :
---------------------------------------------------------x

## FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 363 APPROVING (I) PROCEDURES FOR STORE CLOSING SALES, AND (II) THE ASSUMPTION OF THE LIQUIDATION CONSULTING AGREEMENTS

Upon the motion [ECF No. __] (the "***Motion***")[2] of Aéropostale, Inc. and its

subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "***Debtors***"), pursuant to sections 105(a) and 363 of title 11 of the *Bankruptcy*

*Code*, for an order authorizing, but not directing, the Debtors to (i) implement the Store Closing

Procedures, and (ii) assume the Liquidation Consulting Agreements, all as more fully set forth

in the Motion; and the Court having jurisdiction to decide the Motion and the relief requested

therein in accordance with 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the *Amended Standing*

*Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); consideration of the Motion

and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b), and

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows:  Aéropostale, Inc. (3880); Aéropostale West, Inc. (7013); Jimmy'Z Surf Co., LLC (0461); Aero GC Management LLC (4257); Aeropostale Procurement Company, Inc. (8518); Aeropostale Licensing, Inc. (8124); P.S. from Aeropostale, Inc. (5900); GoJane LLC (4923); Aeropostale Canada Corp. (N/A); Aeropostale Holdings, Inc. (7729); and Aeropostale Puerto Rico, Inc. (6477).  The Debtors' corporate headquarters is located at 112 West 34th Street, 22nd Floor, New York, NY 10120.

[2] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the Motion or the First Day Declaration, as applicable.

venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the

Motion having been given as provided in the Motion, and such notice having been adequate and

appropriate under the circumstances; and it appearing that no other or further notice of the

Motion need be provided; and the Court having held hearings to consider the relief requested in

the Motion on an interim (the "*Interim Hearing*") and final basis (the "*Final Hearing*"), and

the Court having entered an order granting the relief requested in the Motion on an interim

basis; and upon the *Declaration of David J. Dick Pursuant to Rule 1007-2 of the Local

Bankruptcy Rules for the Southern District of New York* (the "*First Day Declaration*") and the

*Declaration of Timothy McDonagh*, each contemporaneously with the Motion, the record of the

Interim Hearing, the Final Hearing, and all of the proceedings had before the Court; and the

Court having found and determined that the relief sought in the Motion and granted herein, is in

the best interests of the Debtors, their respective estates and creditors, and all parties in interest,

and that the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefor,

## IT IS HEREBY ORDERED THAT:

1.    The Motion is granted on a final basis.

2.    The Debtors are authorized, but not directed, pursuant to sections 105(a),

and 363(b) and (f) of the Bankruptcy Code of the Bankruptcy Code, to proceed with Store Closing

Sales at the stores listed on Exhibit 1 to this Final Order (the "*Closing Stores*"), and take all actions

reasonably related thereto or arising in connection therewith, in each case in accordance with this

Final Order and the store closing sale procedures attached to this Final Order as Exhibit 2 (the "*Store

Closing Procedures*"), which Store Closing Procedures are hereby approved in their entirety.  The

failure to include specifically any particular provision of the Store Closing Procedures in this

Final Order shall not diminish or impair the effectiveness of such provisions.

15

3.        The Store Closing Procedures shall apply to all sales of Store Closing Asset, regardless of whether such assets are located in the Closing Stores or the Additional Closing Stores.   The Debtors and the Liquidation Consultant may apply these Store Closing Procedures to, and commence Store Closing Sales at, any Additional Closing Stores, without further order of the Court, upon five (5) days' written notice by e-mail or overnight delivery to (a) the Office of the United States Trustee for Region 2 (the "*U.S. Trustee*"); (b) counsel or proposed counsel to the Creditors' Committee, if any; (c) any known affected creditor(s), including any affected landlord and its counsel, if known; (d) those parties requesting notice pursuant to Bankruptcy Rule 2002; and (e) counsel for the DIP Agent (collectively, the "*Notice Parties*").

4.        Unless otherwise ordered by the Court, all newspapers and other advertising media in which the Store Closing Sales may be advertised and all landlords are directed to accept this Final Order as binding authority so as to authorize the Debtors to conduct and advertise the Store Closing Sales in accordance with the Store Closing Procedures.

5.        Pursuant to section 363(f) of the Bankruptcy Code, the Store Closing Assets being sold shall be sold free and clear of any and all mortgages, security interests, conditional sales or title retention agreements, pledges, hypothecations, liens (including, without limitation, all consensual, judicial and statutory liens), judgments, encumbrances or claims of any kind or nature (including, without limitation, any and all "claims" as defined in section 101(5) of the Bankruptcy Code) (collectively, the "*Liens and Claims*"), with such Liens and Claims, if any, to attach to the proceeds of such assets with the same validity and enforceability, to the same extent, subject to the same defenses, and with the same amount and priority as they attached to such assets immediately prior to the closing of the applicable sale.

WEIL:\95641370\15\11727.0012

6.      Any and all bulk sale laws, to the extent applicable, are hereby waived since creditors are protected by the notice provided by the Motion and the jurisdiction of the Court.

7.      Nothing in this Final Order releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Final Order.  Nothing contained in this Final Order or in the Liquidation Consulting Agreements shall in any way (i) diminish the obligation of any entity to comply with environmental laws, or (ii) diminish the obligations of the Debtors to comply with environmental laws consistent with its rights and obligations as debtors in possession under the Bankruptcy Code.  The Store Closing Sales shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "*General Laws*").  Nothing in this Final Order shall alter or affect obligations to comply with all applicable federal safety laws and regulations. Nothing in this Final Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(47) of the Bankruptcy Code) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' right to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Final Order, or otherwise.  Notwithstanding any other provision in this Final Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Final Order and/or any applicable law, or

17

that enforcement of such applicable law is preempted by the Bankruptcy Code.  Nothing in this Final Order shall be deemed to have made any rulings on any such issues.

8.    To the extent that the Store Closing Sales are subject to any federal, state or local statute, ordinance, or rule, or licensing requirement solely directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or bulk sale laws, including laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection with the Store Closing Sales and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply solely to store closing or liquidation sales (each a "*Liquidation Sale Law*" and together, the "*Liquidation Sale Laws*"), the following provisions shall apply:

a.    Provided that the Store Closing Sales are conducted in accordance with the terms of the Interim Order, this Final Order, and the Store Closing Procedures, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the Debtor shall be presumed to be in compliance with any Liquidation Sale Laws and is authorized to conduct the Store Closing Sales in accordance with the terms of this Final Order and the Store Closing Procedures without the necessity of further showing compliance with any Liquidation Sale Laws.

b.    To the extent there is a dispute arising from or relating to the Store Closing Sales, this Final Order, the Liquidation Consulting Agreements, or the Store Closing Procedures, which dispute relates to any Liquidation Sale Laws (a "*Reserved Dispute*"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute.  Any time within ten (10) days following entry of this Final Order, any Governmental Unit may assert that a Reserved

18

Dispute exists by serving written notice of such Reserved Dispute to counsel for the Debtor so as to ensure delivery thereof within one (1) business day thereafter. If the Debtor and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen (15) days after service of the notice, the aggrieved party may file a motion with this Court requesting that this Court resolve the Reserved Dispute (a "**_Dispute Resolution Motion_**").

c. In the event a Dispute Resolution Motion is filed, nothing in this Final Order shall preclude the Debtor, a landlord, or other interested party from asserting (i) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code or (ii) that neither the terms of this Final Order nor the conduct of the Debtor pursuant to this Final Order, violates such Liquidation Sale Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of any Final Order or to limit or interfere with the Debtor's or the Liquidation Consultant's ability to conduct or to continue to conduct the Store Closing Sales pursuant to this Final Order, absent further order of this Court. The Court grants authority for the Debtor and the Liquidation Consultant to conduct the Store Closing Sales pursuant to the terms of this Final Order, the Liquidation Consulting Agreements, and/or the Store Closing Procedures and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit shall be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code. Nothing in this Final Order shall constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

d. If, at any time, a dispute arises between the Debtor and/or the Liquidation Consultant and a Governmental Unit as to whether a particular law is a Liquidation

19

Sale Law, and subject to any provisions contained in this Final Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (b) and (c) hereunder by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs. Any determination with respect to whether a particular law is a Liquidation Sale Laws shall be made *de novo*.

9.      Except as expressly provided for herein or in the Store Closing Procedures, and except with respect to any Governmental Unit (as to which Paragraphs 7 and 8 shall apply), no person or entity, including but not limited to any landlord, licensor, or creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Store Closing Sales, or the advertising and promotion (including the posting of signs or the use of signwalkers) of the Store Closing Sales, and all such parties and persons of every nature and description, including landlords, licensors, creditors and utility companies and all those acting for or on behalf of such parties, are prohibited and enjoined from (i) interfering in any way with, or otherwise impeding, the conduct of the Store Closing Sales and/or (ii) instituting any action or proceeding in any court or administrative body seeking an order or judgment against, among others, the Debtor, Liquidation Consultant, or the landlords at the Debtor's stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closing Sales and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease or license based upon any relief authorized herein.

10.      The Liquidation Consultant shall have the right to use the Debtor's stores and all related store services, furniture, fixtures, equipment and other assets of the Debtor for the

20

purpose of conducting the Store Closing Sales, free of any interference from any entity or person, subject to compliance with the Store Closing Procedures and this Final Order.

11.    Any restrictions in any lease agreement, restrictive covenant, or similar documents purporting to limit, condition, or impair the Debtors' ability to conduct the Store Closing Sales shall not be enforceable, nor shall any breach of such provisions in these chapter 11 cases constitute a default under a lease or provide a basis to terminate the lease; provided, the Store Closing Sales are conducted in accordance with the terms of this Final Order and the Store Closing Procedures.

12.    The Closing Stores may "go-dark" during the Store Closing Sales and remain "dark" despite any lease restriction, real estate local act, local law, or ordinance to the contrary, and any "continuous operation" or similar clause in any of the leases (or any lease provision that purports to increase the rent or impose any penalty for "going dark") may not be enforced to hinder or interrupt the Store Closing Sales (and the "going dark" under such leases shall not be a basis to cancel or terminate the leases).

13.    Each and every federal, state, or local agency, departmental or governmental unit with regulatory authority over the Store Closing Sales and all newspapers and other advertising media in which the Store Closing Sales are advertised shall consider this Final Order as binding authority that no further approval, license, or permit of any governmental unit shall be required, nor shall the Debtors be required to post any bond, to conduct the Store Closing Sales.

14.    State and/or local authorities shall not fine, assess, or otherwise penalize the Debtors or any of the landlords of the Closing Stores for conducting or advertising the Store

WEIL:\95641370\15\11727.0012

Closing Sales in a manner inconsistent with state or local law; provided, that the Store Closing Sales are conducted and advertised in a manner contemplated by this Final Order.

15.     Nothing in this Final Order in any way limits the Debtors' ability to (a) seek assumption, assignment, or rejection of the Stores' leases, (b) determine that additional stores should be closed and Store Closing Sales or the like be conducted in advance thereof, (c) abandon assets in connection with Store Closing Sales, lease rejections, or otherwise, and the Debtors' rights are fully reserved in these regards.

**Other**

16.     Any payment made or to be made under this Final Order, and any authorization contained in this Final Order, shall be subject to the terms of any interim and final orders (together, the "DIP Orders") approving entry into debtor-in-possession financing and authorizing the use of cash collateral entered by this Court in these chapter 11 cases, including, without limitation, all terms of the DIP Orders relating to the application and or segregation of proceeds of the Store Closing Sales.

17.     Without limiting or otherwise altering any requirements under the DIP Orders, the Debtors shall consult with the DIP Agent (as defined in the DIP Orders), including providing information requested by the DIP Agent, in connection with (a) Store Closing Sales and proceeds thereof, and (b) any modification of the Store Closing Procedures.

18.     Nothing contained in the Motion or this Final Order or any payment made pursuant to the authority granted by this Final Order is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code, other than the Liquidation Consulting Agreements.

WEIL:\95641370\15\11727.0012

19.     Notwithstanding entry of this Final Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

20.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

21.     Except with respect to the Debtors' assumption of the Liquidation Consulting Agreements, which is approved on a final basis effective immediately, this Final Order is effective only from the date of entry through this Court's disposition of the Motion on a final basis; provided that the Court's ultimate disposition of the Motion on a final basis shall not impair or otherwise affect any action taken pursuant to this Final Order.

22.     The Debtors are authorized to take all action necessary to carry out this Final Order.

23.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Final Order and any Landlord Agreements.

Dated: May____, 2016
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

WEIL:\95641370\15\11727.0012