WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail

*Proposed Attorneys for Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x
                                                          :
**In re**                                                 :          **Chapter 11**
                                                          :
**AÉROPOSTALE, INC.,** *et al.*,                          :          **Case No. 16-_____ (___)**
                                                          :
            **Debtors.**[1]                               :          **Joint Administration Requested**
                                                          :
--------------------------------------------------------x

**MOTION OF DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a),
363(b), AND 503(b)(9) FOR INTERIM AND FINAL AUTHORITY TO
PAY CERTAIN PREPETITION OBLIGATIONS TO CRITICAL VENDORS,
APPROVAL OF RELATED PROCEDURES, AND RELATED RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Aéropostale, Inc. and its subsidiaries, as debtors and debtors in possession in the

above-captioned chapter 11 cases (collectively, the "***Debtors***"), respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows:  Aéropostale, Inc. (3880); Aéropostale West, Inc. (7013); Jimmy'Z Surf Co., LLC (0461); Aero GC Management LLC (4257); Aeropostale Procurement Company, Inc. (8518); Aeropostale Licensing, Inc. (8124); P.S. from Aeropostale, Inc. (5900); GoJane LLC (4923); Aeropostale Canada Corp. (N/A); Aeropostale Holdings Inc. (7729); and Aeropostale Puerto Rico, Inc. (6477).  The Debtors' corporate headquarters is located at 112 West 34th Street, 22nd Floor, New York, NY 10120.

## Preliminary Statement

1.      It is absolutely essential to the success of these chapter 11 cases that the Debtors' supply chain remains uninterrupted.  Even a short-term disruption could be catastrophic to the Debtors' operations and businesses.  To enable the Debtors to maintain access to necessary inventory on commercially reasonable terms, the Debtors request "critical vendor" relief to preserve the going-concern value of their businesses.

2.      The relief requested is consistent with the relief granted by courts in this district to other distressed companies heavily reliant on supply chain continuity (*e.g.*, clothing stores, other retailers, and auto supply companies).  The requested authority will enable the Debtors to pay the prepetition claims (up to a cap) of only those vendors verified as "critical" to the Debtors' operations, pursuant to a carefully-designed protocol overseen by a core, centralized team consisting of senior members of the Debtors' management and professional advisors.  The *quid pro quo* for the Debtors' payment of a vendor's prepetition claim will be that vendor's commitment to continue providing goods and services to the Debtors on trade terms at least as favorable as those terms in effect before the Commencement Date.

3.      In support of the Motion, the Debtors submit the Declaration of Timothy McDonagh (the "***McDonagh Declaration***"), a Managing Director at FTI Consulting, Inc. ("***FTI***"), which has been filed contemporaneously herewith.

## Relief Requested

4.      Pursuant to sections 105(a), 363(b), and 503(b)(9) of title 11 of the United States Code (the "***Bankruptcy Code***"), the Debtors request entry of an order (i) authorizing, but not directing, the Debtors to pay up to $4 million (the "***Critical Vendor Cap***") in prepetition claims of certain vendors, suppliers, service providers, and other similar entities that the Debtors determine, in their sole discretion and based on their sound business judgment, and subject to the

2

procedures and conditions set forth in the Critical Vendor Payment Protocol (defined below), are essential to their ongoing business operations (the "***Critical Vendors***" whose prepetition claims shall be defined as the "***Critical Vendor Claims***"), (ii) approving a procedure to address those vendors who repudiate and refuse to honor their contractual obligations to the Debtors; and (iii) granting related relief.[2]

5.       The Debtors also seek approval of (i) their protocol for reviewing and approving requests for payment of Critical Vendor Claims, annexed hereto as **Exhibit C** (the "***Critical Vendor Payment Protocol***"); (ii) the Form of Notice of Critical Vendor Payment Protocol that will be provided to any vendors requesting Critical Vendor status and payment of Critical Vendor Claims, annexed hereto as **Exhibit D** (the "***Critical Vendor Notice***"); (iii) the Form of Vendor Agreement, annexed to the Critical Vendor Notice as **Exhibit 1** (the "***Vendor Agreement***"); (iv) the Form of Notice of Repudiating Vendor, annexed hereto as **Exhibit E** (the "***Notice of Repudiating Vendor***"); and (v) the Form of Order to Show Cause, annexed hereto as **Exhibit F** (the "***Order to Show Cause***").

6.       A proposed form of order granting the relief requested herein on an interim basis is annexed hereto as **Exhibit A** (the "***Proposed Interim Order***") and, pending a final hearing on the relief requested herein, on a final basis is annexed hereto as **Exhibit B** (the "***Proposed Final Order***").

7.       The Proposed Interim Order and the Proposed Final Order authorize and direct financial institutions to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing to the extent the Debtors have

---

[2] Contemporaneously herewith, the Debtors have sought authority, by separate motion, to pay claims held by certain shippers, warehousemen, and miscellaneous lien claimants (the "***Shippers, Warehousemen, and Lien Claimant Motion***").  Through this Motion, the Debtors do not seek authority to satisfy any prepetition claim that may be paid pursuant to the Shippers, Warehousemen, and Lien Claimant Motion.

sufficient funds standing to their credit with such bank, whether such checks were presented or electronic requests were submitted before or after the Commencement Date, and provides that all such financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as appropriate pursuant to this Motion without any duty of further inquiry and without liability for following the Debtors' instructions.

## **Jurisdiction**

8.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## **Background**

9.    On the date hereof (the "***Commencement Date***"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

10.    Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

11.    Information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of David J. Dick Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the*

*Southern District of New York*, sworn to on the date hereof (the "***First Day Declaration***"), which

has been filed with the Court contemporaneously herewith.[3]

## The Debtors' Supply Chain

12.    To successfully operate their business, the Debtors must ensure that their

stores and distribution centers are continuously replenished with a supply of goods for sale to

the Debtors' customers.  The Debtors do not manufacture their own merchandise and, therefore,

they are entirely dependent upon their vendors to ensure a continuous supply of goods.

13.    The filing of these chapter 11 cases has the potential to cause a disruption

in the flow of necessary goods, as vendors may attempt to contract trade terms, particularly

those vendors that do not have executed supply agreements with the Debtors.  A contraction in

trade terms, in turn, has the potential to impact the Debtors' liquidity.  Any disruption to the

flow of goods, and any significant contraction in trade terms, could prove devastating to the

Debtors' operations and their efforts to maximize value.  Accordingly, the Critical Vendor

Payment Protocol is crucial to the success of these chapter 11 cases and to maximizing creditor

recoveries.

## Critical Vendor Pre-Screening Process

14.    The Debtors and their advisors engaged in a process (the "***Critical

Vendor Pre-Screening Process***") to identify those vendors, suppliers, and/or service-providers

that are likely "critical" to the Debtors' businesses and estimate the aggregate amounts owed to

such vendors as of the Commencement Date to establish the Critical Vendor Cap.

15.    More specifically, the Debtors and their advisors spent significant time

and effort reviewing and analyzing the Debtors' books and records, consulting operations

---

[3] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the
First Day Declaration.

management and purchasing personnel, reviewing contracts and supply agreements, and analyzing applicable laws, regulations, and historical practices to identify business relationships which, if lost, could materially harm the Debtors' businesses, shrink their market share, reduce their enterprise value, and/or affect their reorganization strategy.  In this Critical Vendor Pre-Screening Process, the Debtors and their advisors considered a variety of factors, including the following:

- General

  o the goods or services provided;

  o general terms of vendor performance within the year;

  o the Debtors' business needs for the goods or services provided;

- Consequences of Non-Payment

  o whether goods or services are provided pursuant to a contract or on a purchase order basis;

  o whether failure to pay all or part of a particular vendor's claim could cause the vendor to refuse to ship inventory or provide critical services on a postpetition basis;

  o whether failure to pay a particular vendor could result in contraction of trade terms as a matter of applicable non-bankruptcy law or regulation;

  o whether a particular vendor is a foreign creditor that has little or no connection to the United State or that may attach, seize, or otherwise pursue self-help or legal remedies against the Debtors in violation of the automatic stay.

- Potential to Move to Alternative Vendor

  o whether alternative vendors are available that could provide requisite volumes of similar goods or services on equal (or better) terms and, if so, whether the Debtors would be able to continue operating while transitioning business thereto;

  o the degree to which replacement costs (including, pricing, transition expenses, professional fees and lost sales or future revenue) would exceed the amount of vendor's prepetition claim;

and

  o   whether the Debtors' inability to pay all or part of the vendor's
       prepetition claim could trigger financial distress for the applicable
       vendor.

Based on their consideration of the above factors, the Debtors anticipate that most Critical

Vendors will be clothing and accessories vendors that (i) do not have a contractual relationship

with the Debtors and (ii) are either (a) sole-source providers or (b) cannot be replaced in a cost-

efficient manner or without causing irreparable harm to the Debtors' operations.

16.    Through the Critical Vendor Pre-Screening Process, the Debtors

reviewed a universe of approximately 5,700 separate accounts in their accounts payable system.

Based on the Debtors' review, the Debtors believe that a $4 million Critical Vendor Cap will

enable the Debtors to satisfy the prepetition claims of Critical Vendors.  The Critical Vendor

Cap is 13.33 percent of the Debtors' total accrued payables of approximately $30 million, and

approximately eight percent of the Debtors' average monthly disbursements to vendors over the

last ten weeks.  The Debtors anticipate that approximately twenty percent of the Critical Vendor

Cap will be used to pay claims that may be entitled to priority pursuant to 503(b)(9) of the

Bankruptcy Code.

**Critical Vendor Payment Protocol**

17.    Given the size, scope, and nature of their operations, it is essential that

the Debtors implement a process for assessing each request for treatment as a Critical Vendor

and payment of a Critical Vendor Claim on a case-by-case basis.  To that end, the Debtors

request approval of the Critical Vendor Payment Protocol, which will ensure that the Debtors

make payments with respect to Critical Vendor Claims only to the extent necessary to preserve

business stability during these chapter 11 cases and maintain liquidity or access to essential

goods or services.  Payments made pursuant to the relief requested herein will be made in the ordinary course of business when due, and not on an accelerated basis.[4]

18.    The Critical Vendor Payment Protocol can be generally summarized as follows:[5]

- The Debtors will establish a centralized team (the "***Vendor Contingency Team***") consisting of executives and other employees of the Debtors and professionals from FTI and Weil, Gotshal & Manges LLP.

- All requests for treatment as a Critical Vendor and payment of a Critical Vendor Claim will be emailed to and reviewed by the Vendor Contingency Team.

- The Vendor Contingency Team will evaluate whether a requesting vendor is eligible for Critical Vendor status based on the Critical Vendor Pre-Screening Process and the factors identified in paragraph 15 above.

- If the Vendor Contingency Team determines that a requesting vendor is eligible for treatment as a Critical Vendor, all proposed payments to such Critical Vendor must be documented pursuant to an executed Vendor Agreement (defined and explained in greater detail below), with any specific exception from this requirement to be made only with the express authorization of FTI.

- If the Vendor Contingency Team determines that a requesting vendor is eligible for treatment as a Critical Vendor, one or more members of the Vendor Contingency Team will provide notice to, and consult with, the professionals for any statutory committee of unsecured creditors appointed in these chapter 11 cases prior to making any payment to such Critical Vendor.

- All proposed payments in excess of $100,000 require the express authorization of FTI;

- Once a Vendor Agreement is finalized, payment may only be physically executed by designated members of the Debtors' accounts

---

[4] Nothing in this Motion should be construed as a waiver of any of the Debtors' rights to contest any invoices or amounts otherwise claimed as owed by any Critical Vendor under applicable law.

[5] The Debtors reserve all rights to amend, supplement, revise, or modify the Critical Vendor Payment Protocol in their reasonable business judgment.

payable and treasury departments, upon presentation of completed documentation.

- The Debtors will maintain a "***Critical Vendor Matrix***" summarizing (i) the name of each vendor requesting Critical Vendor status, (ii) the amount and timing of any Critical Vendor payment, (iii) the amount of the Critical Vendor's claim satisfied by the Critical Vendor payment, including any amount entitled to priority under section 503(b)(9) of the Bankruptcy Code, and (iv) a summary of the material payment terms. The Critical Vendor Matrix will be provided on a monthly basis (or such other agreed-upon time period) to: (a) the U.S. Trustee; (b) the attorneys for the DIP Agent, <u>provided</u> that such attorneys keep the Critical Vendor Matrix confidential and shall not disclose any of the information in the matrix to anyone without prior written consent of the Debtors; and (c) the professionals retained by any official committee of unsecured creditors appointed in these chapter 11 cases, <u>provided</u> that the professionals for any such committee shall keep the Critical Vendor Matrix confidential and shall not disclose any of the information in the matrix to anyone without prior written consent of the Debtors.

19.    The Debtors and their advisors have already taken steps to ensure a seamless implementation of the Critical Vendor Payment Protocol, subject to the Court's approval.  Specifically, the Debtors' advisors have begun educating the Debtors' personnel on critical vendor issues to ensure compliance with the Critical Vendor Payment Protocol.

## A.    Critical Vendor Notice

20.    To timely implement the Critical Vendor Payment Protocol, the Debtors also seek approval of the Critical Vendor Notice.  The Critical Vendor Notice, along with a copy of the Proposed Interim Order or the Proposed Final Order (as entered, the "***Interim Order***" and "***Final Order***", respectively), as applicable, will be provided to any vendors requesting treatment as a Critical Vendor and payment of Critical Vendor Claims and will also be available on the Debtors' claims agent's website.  The Critical Vendor Notice summarizes key aspects of the Critical Vendor Payment Protocol and key terms of the Interim Order and/or the Final Order, and includes as an exhibit a copy of the Vendor Agreement.

**B.      Vendor Agreement**

21.      As explained above, as the *quid pro quo* for payment of Critical Vendor Claims, the Debtors will require Critical Vendors to continue to provide trade terms in line with historical practice.  Thus, in accordance with the Critical Vendor Payment Protocol, the Debtors seek authority to require as a condition to a payment of a Critical Vendor Claim that the applicable Critical Vendor (including a Critical Vendor whose Critical Vendor Claim may be entitled to priority under section 503(b)(9) of the Bankruptcy Code) enter into a Vendor Agreement.  The Vendor Agreement requires a Critical Vendor to continue to supply goods or services to the Debtors with which the Critical Vendor conducts business on "Customary Trade Terms" until the earlier of (i) the effective date of a chapter 11 plan for the Debtors and (ii) two (2) years from the date of such agreement.  As defined in the Vendor Agreement, "Customary Trade Terms" means trade terms at least as favorable to the Debtors as those terms governing practices and programs (including, without limitation, credit limits, pricing, cash discounts, timing of payments, allowances, coupon reconciliation, product mix, availability, processing of vendor receivables, such as rebates and volume credits, and other programs) within the year prior to the Commencement Date, or such other trade terms that are acceptable to the Debtors in their sole discretion.  The Vendor Agreement, once agreed to and accepted by a Critical Vendor, shall be the legally binding contractual relationship between the parties governing the commercial trade relationship as provided therein.

22.      The Debtors also seek the authority, to be exercised in rare circumstances, to pay a Critical Vendor Claim in the event that no Vendor Agreement has been executed, <u>only</u> if the Debtors' determine, in their reasonable business judgment, that a Vendor Agreement is

unnecessary to ensure the applicable Critical Vendor's continued performance on Customary Trade Terms, subject to the express approval of FTI.

## C.    Additional Payment Terms and Conditions

23.    Some of the Critical Vendors also may possess mechanics' liens, possessory liens, or similar state law trade liens (the "***Trade Liens***") on the Debtors' assets based upon the Critical Vendor Claims.  As a further condition of receiving payment on a Critical Vendor Claim, the Debtors propose that a Critical Vendor must agree to take all necessary actions to remove any such Trade Lien at the Critical Vendor's sole expense.

24.    In the event that (i) a Critical Vendor breaches the terms or conditions of a Vendor Agreement or (ii) regardless of whether a Vendor Agreement has been executed, a Critical Vendor accepts payment with respect to a Critical Vendor Claim and does not continue supplying goods or services to the Debtors on Customary Trade Terms, the Debtors request authority, in their discretion, to (a) declare that the payment of the Critical Vendor Claim is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtors may recover in cash or in goods from such Critical Vendor (including by setoff against postpetition obligations), (b) declare that the Critical Vendor shall immediately return the payment received on its Critical Vendor Claim to the Debtors without giving effect to any alleged setoff rights, recoupment rights, adjustments, or other offsets of any type whatsoever, and the Critical Vendor Claim shall be reinstated to such amount so as to restore the Debtors and the Critical Vendor to their original positions as if the Vendor Agreement had never been entered into and no payment of the Critical Vendor Claim had been made, and/or (c) if there exists an outstanding postpetition balance due from the Debtors to such Critical Vendor, recharacterize and apply any payment made pursuant to the relief requested in the Motion to such outstanding

postpetition balance and such Critical Vendor shall be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

### Repudiating Vendor Procedures

25.    Certain of the Debtors' suppliers and most of the Debtors' service-providers are parties to contracts with the Debtors.  Section 365 of the Bankruptcy Code requires such parties to perform their postpetition contractual obligations to the Debtors.  *See e.g. City of Covington v. Covington Landing Ltd.*, 71 F.3d 1221, 1226 (6th Cir. 1995) (citing *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 11303, 1310 (5th Cir. 1985)) ("Section 365 is intended to provide a means whereby a debtor can force another party to an executory contract to continue to perform under the contract . . . . This provision provides a means whereby a debtor can force others to continue to do business with it when the bankruptcy filing might otherwise make them reluctant to do so."); *see also CIT Commcn's Fin. Corp. v. Midway Airlines Cor. (In re Midway Airlines Corp.)*, 406 F.3d 229, 234 (4th Cir. 2005) ("the [debtor] can force the lessor to continue performing under the lease"); *Gwinnett Prado, L.P. v. Rhodes, Inc. (In re Rhodes, Inc.)*, 321 B.R. 80, 91 (Bankr. N.D. Ga. 2005) ("As a general proposition, the non-debtor party to an unexpired lease or other executory contract is obliged to perform it until it is assumed or rejected."); *In re Nat'l Steel Corp.*, 316 B.R. 287, 305 (Bankr. N.D. Ill. 2004) (stating that "before an executory contract is assumed or rejected under § 365(a), that contract continues to exist, enforceable by the debtor-in-possession, but not enforceable against the debtor-in-possession"); *McLean Indus., Inc. v. Medical Lab. Automation, Inc. (In re McLean Indus., Inc.)*, 96 B.R. 440, 447-50 (Bankr. S.D.N.Y. 1989) (same).  Further, section 362 of the Bankruptcy Code prohibits such vendors from ceasing performance or threatening to do so, based on the Debtors' failure to pay prepetition claims, or altering or restricting payment terms as a result of

the bankruptcy filing or the Debtors' financial condition. *See generally Collier on Bankruptcy* ¶ 362.03 (Alan N. Resnick and Henry J. Somme reds. 15th ed. Rev. 2008) ("As property of the estate, the debtor's interests in . . . [executory] contracts or leases are protected against termination or other interference that would have the effect of removing or hindering the debtor's rights in violation of section 362(a)(3)").

26.    The Debtors anticipate that, notwithstanding these clear Bankruptcy Code provisions, some contract counterparties may threaten or refuse to perform their postpetition contractual obligations unless the Debtors pay their prepetition claims or may seek to impose different or more restrictive payment terms (any such counterparty, a "***Repudiating Vendor***"). The Debtors intend to resist these threats and take actions to enforce their rights under the Bankruptcy Code to require any such Repudiating Vendors to continue providing goods and services to the Debtors in accordance with their contractual commitments.  However, in light of the severity of disruptions to the Debtors' businesses that could be caused by certain Repudiating Vendors, the Debtors seek the authority, but not the direction, to implement the following procedures (the "***Repudiating Vendor Procedures***"):

- If, because the Debtors have not paid the prepetition claim of a Repudiating Vendor, such Repudiating Vendor refuses to perform its postpetition obligations pursuant to an executory contract with one or more of the Debtors, the Debtors are authorized, but not directed, to pay such claim provisionally (and such payment will not count against the Critical Vendor Cap); <u>provided</u> that that such payment is expressly authorized by FTI as necessary to preserve the Debtors' business stability during the chapter 11 cases, maintain the Debtors' liquidity, or maintain the Debtors' access to essential goods or services.

- Regardless of whether a payment has been made, if a Repudiating Vendor refuses to perform its postpetition obligations pursuant to an executory contract with one or more of the Debtors, the Debtors may (i) file a Notice of Repudiating Vendor, substantially in the form attached hereto as **<u>Exhibit E</u>**, setting forth (a) the name of the Repudiating Vendor, (b) the identity of the agreement governing the

13

Debtors' relationship with the Repudiating Vendor, (c) the Debtors' belief that the Repudiating Vendor is in violation of the Bankruptcy Code, and (d) the amount(s) and date(s) of any prepetition amounts paid; and (ii) seek entry of an Order to Show Cause, substantially in the form attached hereto as **Exhibit F**, requiring the Repudiating Vendor to show cause at a hearing to be scheduled by the Court why it should not be found to have willfully violated sections 362 and 365 of the Bankruptcy Code and why it should not be required return any payments made to it by the Debtors, plus accumulated interest.

27.     The Repudiating Vendor Procedures are substantially similar to procedures previously approved by courts in this district with respect to repudiating vendors. *See e.g. In re The Great Atl. & Pac. Tea Comp., Inc.*, Case No. 15-23007 ("*A&P II*") (July 21, 2015 and August 11, 2015) [Docket Nos. 95 and 503]*; In re Hostess Brands, Inc.*, Case No. 12-22052  (Jan. 13, 2012 and Jan. 27, 2012) [Docket Nos. 76 and 196] (interim and final orders authorizing repudiating vendor procedures); *In re Metaldyne Corp.*, Case No. 09-13412 (MG) (Bankr. S.D.N.Y. May 29, 2009 and June 22, 2009) [Docket Nos. 66 and 275] (same); *In re Chrysler LLC*, Case No. 09-50002 (AJG) (Bankr. S.D.N.Y. May 6, 2009 and May 20, 2009) [Docket Nos. 358 and 1318] (same); *In re Dana Corp.*, No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 3, 2006 and Mar. 29, 2006) [Docket Nos. 54 and 722] (order and amended final order authorizing repudiating vendor procedures); *In re Delphi Corp.*, No. 05-44481 (RDD) (Bankr. S.D.N.Y. Oct. 13, 2005) (order authorizing the debtors to make provisional payments to "Non-Conforming Suppliers" subject to conditions similar to those outlined above).

## Basis for Relief Requested

28.     The Court has authority to grant the relief requested pursuant to sections 105(a), 363(b), and 503(b)(9) of the Bankruptcy Code.

A.      **Payment of the Critical Vendor Claims and the Provisional Payments Pursuant to the Procedures Set Forth Herein Is Necessary and Appropriate**

29.     A court may authorize a debtor to pay certain prepetition obligations pursuant to section 363(b) of the Bankruptcy Code.  Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that, "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1).  This provision grants a court broad flexibility to authorize a debtor to pay prepetition claims where a sound business purposes exists.  *See In re Ionosphere Clubs, Inc*., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

30.     Further, section 105(a) provides, in relevant part, that, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a).  This provision codifies the inherent equitable powers of the bankruptcy court, including the power to authorize payment of prepetition claims under what is known as the "doctrine of necessity" when such payment is critical to a debtor's reorganization or necessary for the preservation of the value of the debtor's estate.  *See, e.g., In re C.A.F. Bindery, Inc*., 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996); *In re Fin. News Network Inc.*, 134 B.R. 732, 735–36 (Bankr. S.D.N.Y. 1991) ("The "doctrine of necessity" stands for the principle that a bankruptcy court may allow pre-plan payments of prepetition obligations where such payments are critical to the debtor's reorganization"); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("[I]t is only logical that the bankruptcy court be able to use [s]ection 105(a) of the Bankruptcy Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate.").

31.     The payment of prepetition claims under the doctrine of necessity is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code:  preserving

15

going concern value and maximizing property available to satisfy creditors.  *See Bank of Am. Nat'l Trust & Sav. Assoc. v. 203 N. LaSalle St. P'Ship*, 526 U.S. 434, 453 (1999).  It is consistent with Bankruptcy Rule 6003, which implies that the payment of prepetition obligations may be permissible within the first twenty-one (21) days of a case where doing so is "necessary to avoid immediate and irreparable harm."

32.    Furthermore, section 503(b)(9) provides administrative priority for the "value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which goods have been sold to the debtor in the ordinary course of such debtor's business."  These claims must be paid in full for the Debtors to confirm a chapter 11 plan, s*ee* 11 U.S.C. § 1129(a)(9)(A), and the Bankruptcy Code does not prohibit a debtor from paying such claims prior to confirmation.  Courts in this district and others have regularly authorized the payment of claims arising under section 503(b)(9) of the Bankruptcy Code in the ordinary course of business.  *See, e.g.*, *A&P II*, Case No. 15-23007 (July 21, 2015 and August 11, 2015) [Docket Nos. 95 and 503]; *In re Chassix Holdings, Inc.*, Case No. 15-10578 (Bankr. S.D.N.Y. Apr. 14, 2015) [Docket No. 275] (authorizing debtors to pay vendors' claims entitled to priority under section 503(b)(9) of the Bankruptcy Code "in the ordinary course if the Debtors determine it is in the estates' best interests to do so"); *In re The Great Atl. & Pac. Tea Co.* ("*A&P I*")*,* Case No. 10-24549 (Bankr. S.D.N.Y. Dec. 14, 2010 and Jan. 13. 2011) [Docket Nos. 55 and 504] (interim and final orders authorizing payment of claims entitled to administrative priority pursuant to section 503(b)(9) up to $5 million); *In re Lear Corp.*, No. 09-14326 (Bankr. S.D.N.Y. July 8, 2009 and July 31, 2009) [Docket Nos. 68 and 245] (interim and final orders authorizing payment of claims entitled to administrative priority pursuant to section 503(b)(9) up to $23.15 million and $46.3 million, respectively).

16

33.    The relief requested by this Motion represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is justified under sections 105(a), 363(b), and 503(b)(9) of the Bankruptcy Code.  Recognizing that, as here, payment of certain prepetition claims may be required to avoid immediate and irreparable harm, courts in this district have regularly granted relief consistent with the relief requested herein for similarly-situated debtors.  *See*, *e.g.*, *Chassix*, Case No. 15-10578 (Bankr. S.D.N.Y. Mar. 13, 2015 and Apr. 14, 2015) [Docket Nos. 85 and 275] (interim and final orders authorizing payment of up to $5 million and $40 million, respectively, on account of claims held by critical vendors); *Hostess*, Case No. 12-22052 (Jan. 13, 2012 and Jan. 27, 2012) [Docket Nos. 76 and 196] (interim and final orders authorizing payment of up to $14 million on account of claims held by critical vendors); *A&P I*, Case No. 10-24549 (Bankr. S.D.N.Y. Dec. 14, 2010 and Jan. 13, 2011) [Docket Nos. 55 and 504] (interim and final orders authorizing payment of up to $62 million on account of claims held by critical vendors); *In re The Readers Digest Ass'n, Inc.*, Case No. 09-23529 (Bankr. S.D.N.Y. Sept. 17, 2009) (authorizing payment of up to $25 million on account of claims held by critical vendors).

**B.    Payment of the Critical Vendor Claims as Provided Herein Is Necessary And Appropriate to Ensure the Success of These Chapter 11 Cases**

34.    The Debtors' ongoing ability to obtain goods and services from their Critical Vendors as provided herein is necessary to preserve the value of their estates.  Absent payment of the Critical Vendor Claims, the Debtors might be unable to maintain sufficient levels of inventory with the variety and quality their customers have come to expect.  Similarly, a Repudiating Vendor's refusal to provide goods or services to the Debtors could be devastating to the Debtors' business.  The Debtors must be able to continue to operate their stores in the ordinary course of business in order to maximize the value available for distribution to creditors,

17

which requires cooperation from certain key vendors.  Consequently, the Debtors' requests for authority to honor the Critical Vendor Claims pursuant to the Critical Vendor Payment Protocol, and implement the Repudiating Vendor Procedures, are both consistent with the priorities established by the Bankruptcy Code and necessary to preserve the value of their business.

35.    The Debtors' authority to address their Critical Vendor Claims and implement the Repudiating Vendor Procedures in the initial days of these cases will send a clear signal to their suppliers *and* customers that the Debtors are both willing and, importantly, able to conduct business as usual after the Commencement Date.  The Debtors will also use this authority to secure Customary Trade Terms from their vendors.  Absent such relief, Critical Vendors may have no incentive to continue to provide the Debtors with trade credit.  The preservation of working capital through the retention of trade credit in sufficient amounts and on favorable terms will conserve liquidity and facilitate the Debtors' restructuring efforts.

C.    **Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfer Requests**

36.    The Debtors believe they have sufficient availability of funds to satisfy their payment obligations as described herein by virtue of their contemplated debtor-in-possession financing, cash reserves, and expected cash flows from ongoing business operations. In addition, the Debtors believe that they will have sufficient liquidity to satisfy their payment obligations as described herein without violating any limits imposed by their postpetition financing facility.  Under the Debtors' existing cash management system, the Debtors can identify checks or wire transfer requests as relating to an authorized payment made pursuant to a Critical Vendor Claim.

37.    Accordingly, the Debtors believe that checks or wire transfer requests made on account of prepetition obligations, other than those relating to the these claims or as

18

otherwise permitted by the Court, will not be honored inadvertently. The Debtors, therefore, request that all applicable financial institutions should be authorized, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested herein, solely to the extent the Debtors have sufficient funds standing to their credit with such financial institution, and that such financial institution may rely on the representations of such Debtors as to which checks are issued and authorized to be paid in accordance with this Motion without any duty of further inquiry and without liability for following the Debtors' instructions.

## Reservation of Rights

38.     Nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## Bankruptcy Rule 6003 Has Been Satisfied

39.     Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one (21) days after filing of the petition. Fed. R. Bankr. P. 6003(b). The Debtors require smooth coordination across their supply chain to provide customers with the quality, quantity, and variety of goods they have come to expect from the Debtors. To do so, the Debtors depend

19

heavily on the goods and services provided by the Critical Vendors.  Non-payment of Critical

Vendor Claims could jeopardize these chapter 11 cases, exposing the Debtors to immediate and

irreparable harm far in excess of the relief requested herein.  Accordingly, the Debtors have

satisfied the requirements of Bankruptcy Rule 6003.

### Request for Bankruptcy Rule 6004 Waivers

40.    To implement the foregoing successfully, the Debtors request a waiver of

the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by

Bankruptcy Rule 6004(h), to the extent such stay applies.

### Notice

41.    Notice of this Motion has been provided to (i) the Office of the United

States Trustee for Region 2; (ii) the holders of the forty (40) largest unsecured claims against the

Debtors (on a consolidated basis); (iii) the holders of the five (5) largest secured claims against

the Debtors (on a consolidated basis); (iv) the attorneys for Aero Investors LLC, as agent under

the Loan and Security Agreement, dated May 23, 2014; (v) the attorneys for Bank of America,

N.A., as agent under the Third Amended and Restated Loan and Security Agreement, as

amended on August 18, 2015; (vi) the Securities and Exchange Commission; (vii) the Internal

Revenue Service; (viii) the United States Attorney's Office for the Southern District of New

York; and (ix) the attorneys for the DIP Agent.  The Debtors submit that, in view of the facts and

circumstances, such notice is sufficient and no other or further notice need be provided.

42.    No previous request for the relief sought herein has been made by the

Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of the Proposed Interim Order and the Proposed Final Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: May 4, 2016
      New York, New York

                              */s/ Garrett A. Fail*
                              WEIL, GOTSHAL & MANGES LLP
                              767 Fifth Avenue
                              New York, New York  10153
                              Telephone:  (212) 310-8000
                              Facsimile:  (212) 310-8007
                              Ray C. Schrock, P.C.
                              Jacqueline Marcus
                              Garrett A. Fail

                              *Proposed Attorneys for Debtors*
                              *and Debtors in Possession*

**Exhibit A**

**Interim Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re                                :       Chapter 11
                                     :
AÉROPOSTALE, INC., *et al.*,         :       Case No. 16-_____ (___)
                                     :
         Debtors.[1]                 :       Jointly Administered
                                     :

---------------------------------------------------------------x

### INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), AND 503(b)(9) AUTHORIZING DEBTORS TO PAY CERTAIN PREPETITION OBLIGATIONS TO CRITICAL VENDORS, APPROVING RELATED PROCEDURES, AND GRANTING RELATED RELIEF

Upon the motion [ECF No. __] (the "***Motion***")[2] of Aéropostale, Inc. and its subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "***Debtors***"), pursuant to sections 105(a), 363(b), and 503(b)(9) of the Bankruptcy Code, for an order (i) authorizing the Debtors to pay up to $4 million (the "***Critical Vendor Cap***") in prepetition claims of certain vendors, suppliers, service providers, and other similar entities that the Debtors determine, in their sole discretion and based on their sound business judgment, are essential to their ongoing business operations (the "***Critical Vendors***" whose prepetition claims shall be defined as the "***Critical Vendor Claims***"), subject to the procedures and conditions described in the Motion, (ii) approving (a) the Critical Vendor Payment Protocol, substantially in the form attached to the Motion as **Exhibit C**, (b) the Notice

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows:  Aéropostale, Inc. (3880); Aéropostale West, Inc. (7013); Jimmy'Z Surf Co., LLC (0461); Aero GC Management LLC (4257); Aeropostale Procurement Company, Inc. (8518); Aeropostale Licensing, Inc. (8124); P.S. from Aeropostale, Inc. (5900); GoJane LLC (4923); Aeropostale Canada Corp. (N/A); Aeropostale Holdings Inc. (7729); and Aeropostale Puerto Rico, Inc. (6477).  The Debtors' corporate headquarters is located at 112 West 34th Street, 22nd Floor, New York, NY 10120.

[2] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

of Critical Vendor Payment Protocol, substantially in the form attached to the Motion as

**Exhibit D**, (c) the Vendor Agreement, substantially in the form attached to the Form of Notice of

Critical Vendor Payment Protocol as **Exhibit 1**, (d) the Repudiating Vendor Procedures, (e) the

Form of Notice of Repudiating Vendor, substantially in the form attached to the Motion as

**Exhibit E**, and (f) the Form of Order to Show Cause, substantially in the form attached to the

Motion as **Exhibit F**, and (iii) granting related relief, as more fully set forth in the Motion; and

the Court having jurisdiction to decide the Motion and the relief requested therein in accordance

with 28. U.S.C. §§ 157(a)-(b) and 1334(b) and the *Amended Standing Order of Reference M-*

*431*, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion

having been given as provided in the Motion, and such notice having been adequate and

appropriate under the circumstances; and it appearing that no other or further notice of the

Motion need be provided; and the Court having held a hearing to consider the relief requested in

the Motion (the "**Hearing**"); and upon (i) the *Declaration of David J. Dick Pursuant to Rule*

*1007-2 of the Local Bankruptcy Rules for the Southern District of New York* (the "**First Day**

**Declaration**"), filed contemporaneously with the Motion, (ii) the Declaration of Timothy

McDonagh (the "**McDonagh Declaration**"), a Managing Director at FTI Consulting, Inc.

("**FTI**"), filed contemporaneously with the Motion, and (iii) the record of the Hearing, and all of

the proceedings had before the Court; and the Court having found and determined that the relief

sought in the Motion and granted herein is necessary to avoid immediate and irreparable harm to

the Debtors and their estates as contemplated by Bankruptcy Rule 6003, is in the best interests of

the Debtors, their respective estates and creditors, and all parties in interest, and provides a net

benefit to the Debtors and their estates after taking into account the priority scheme of the Bankruptcy Code, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted on an interim basis.

2.      The Critical Vendor Payment Protocol is approved in its entirety.

3.      The Form of Notice of Critical Vendor Payment Protocol is approved in its entirety.

4.      The Vendor Agreement is approved in its entirety.

5.      The Repudiating Vendor Procedures are approved in their entirety.

6.      The Form of Notice of Repudiating Vendor is approved in its entirety.

7.      The Form of Order to Show Cause is approved in its entirety.

8.      The Debtors are authorized, but not directed, pursuant to sections 105(a), 363(b), and 503(b)(9) of the Bankruptcy Code, to pay Critical Vendor Claims in accordance with the Critical Vendor Payment Protocol, upon such terms and in the manner provided in this Interim Order and the Motion; <u>provided</u> that (i) the Debtors are authorized, but not directed, to pay only amounts due and payable as of the Commencement Date and amounts that are or become due and payable between the Commencement Date and the date that a final order on the Motion is entered, unless otherwise ordered by this Court, and (ii) prior to a final hearing to consider the relief requested in the Motion (the "***Final Hearing***") the amount paid with respect to Critical Vendor Claims shall not exceed the aggregate amount of $4 million.

9.      With respect to Vendor Agreements, (i) the Debtors shall condition payment of Critical Vendor Claims pursuant to this Interim Order upon the execution of a Vendor Agreement, (ii) the Debtors are authorized, but not directed, to enter into such Vendor

3

Agreements when and if the Debtors determine, in the exercise of their sole reasonable business judgment, that it is appropriate to do so, and (iii) a Vendor Agreement, once agreed to and accepted by a Critical Vendor, shall be the legally binding contractual relationship between the parties governing the commercial trade relationship as provided therein; provided that the Debtors may agree to implement such modifications to the form of Vendor Agreement the Debtors deem necessary or advisable in the reasonable exercise of their business judgment to obtain Customary Trade Terms (defined below) from the applicable Critical Vendor; provided further that the Debtors may pay a Critical Vendor Claim without the applicable Critical Vendor having executed a Vendor Agreement only if the Debtors determine, in their reasonable business judgment that a Vendor Agreement is unnecessary to ensure the applicable Critical Vendor's continued performance on Customary Trade Terms (defined below), subject to the express authorization of FTI.

10.     Any party who accepts payment from the Debtors of a Critical Vendor Claim (regardless of whether a Vendor Agreement has been executed) shall take all actions necessary to remove any mechanics' liens, possessory liens, or similar state law trade liens on the Debtors' assets such party may have based upon such Critical Vendor Claim at such party's sole expense.

11.     Any party who accepts payment from the Debtors of a Critical Vendor Claim (regardless of whether a Vendor Agreement has been executed) shall be deemed to have agreed to the terms and provisions of the Order and shall be deemed to have waived, to the extent so paid, any and all prepetition claims, of whatever type, kind or priority, against the Debtors, their properties and estates, their directors, officers and employee up to the amount paid.

4

12.     In the event (i) a Critical Vendor breaches the terms or conditions of a Vendor Agreement or (ii) regardless of whether a Vendor Agreement has been executed, a Critical Vendor accepts payment from the Debtors of a Critical Vendor Claim and does not continue supplying goods or services to the Debtors on trade terms at least as favorable to the Debtors as those terms governing practices and programs (including, without limitation, credit limits, pricing, cash discounts, timing of payments, allowances, coupon reconciliation, product mix, availability, processing of vendor receivables, such as rebates and volume credits, and other programs) within the year prior to the Commencement Date, or such other trade terms that are acceptable to the Debtors in their sole discretion (collectively, the "***Customary Trade Terms***"), the Debtors may, in their discretion, (a) declare that the payment of the Critical Vendor Claim is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtors may recover in cash or in goods from such Critical Vendor (including by setoff against postpetition obligations), (b) declare that the Critical Vendor shall immediately return the payment received on its Critical Vendor Claim to the Debtors without giving effect to any alleged setoff rights, recoupment rights, adjustments, or other offsets of any type whatsoever, and the Critical Vendor Claim shall be reinstated to such amount so as to restore the Debtors and the Critical Vendor to their original positions as if the Vendor Agreement had never been entered into and no payment of the Critical Vendor Claim had been made, and/or (c) if there exists an outstanding postpetition balance due from the Debtors to such Critical Vendor, recharacterize and apply any payment made pursuant to the relief requested in the Motion to such outstanding postpetition balance and such Critical Vendor shall be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

5

13.    All Vendor Agreements will terminate upon entry of an order converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.

14.    In the event a Critical Vendor breaches the terms or conditions of its Vendor Agreement, the Debtors may, in their discretion, declare that such Vendor Agreement has terminated; provided that the Vendor Agreement may be reinstated if:

    i.    after notice and a hearing (following a motion filed by the respective Critical Vendor), the Bankruptcy Court reverses the Debtors' decision to terminate the Vendor Agreement for good cause shown that the Debtors' determination was materially incorrect;

    ii.    the Critical Vendor fully cures the underlying default of the Vendor Agreement within five (5) business days from the date of receipt of notice of termination of the Trade Agreement; or

    iii.    the Debtors, in their sole discretion, reach a commercially acceptable agreement with the breaching party.

15.    Nothing herein shall impair or prejudice the Debtors' ability to contest, in their sole discretion, the extent, perfection, priority, validity, or amounts of any claims or liens held by any Critical Vendor and the Debtors' rights to contest the extent, validity, or perfection or seek the avoidance of all such liens or the priority of such claims are fully preserved.

16.    The Debtors shall maintain a "*Critical Vendor Matrix*" summarizing (i) the name of each vendor requesting Critical Vendor status, (ii) the amount and timing of any Critical Vendor payment, (iii) the amount of the Critical Vendor's claim satisfied by the Critical Vendor payment, including any amount entitled to priority under section 503(b)(9) of the Bankruptcy Code, and (iv) a summary of the material payment terms.  The Critical Vendor Matrix will be provided on a monthly basis (or such other agreed-upon time period) to: (a) the U.S. Trustee; (b) and the attorneys for the DIP Agent, provided that such attorneys keep the Critical Vendor Matrix confidential in accordance with the confidentiality provisions of the applicable credit agreements to which the Debtors are a party; and (c) the professionals retained

6

by any official committee of unsecured creditors appointed in these chapter 11 cases, <u>provided</u> that the professionals for any such committee shall keep the Critical Vendor Matrix confidential and shall not disclose any of the information in the matrix to anyone without prior written consent of the Debtors.

17.    If a Repudiating Vendor refuses to perform its postpetition obligations pursuant to an executory contract with one or more of the Debtors, the Debtors are authorized, but not directed, to pay such claim provisionally (and such payment shall not count against the Critical Vendor Cap); <u>provided</u> that such payment is expressly authorized by FTI as necessary to preserve the Debtors' business stability during the chapter 11 cases, maintain the Debtors' liquidity, or maintain the Debtors' access to essential goods or services.

18.    Regardless of whether a payment has been made, if a Repudiating Vendor refuses to perform its postpetition obligations pursuant to an executory contract with one or more of the Debtors, the Debtors may (i) file a Notice of Repudiating Vendor setting forth (a) the name of the Repudiating Vendor, (b) the identity of the agreement governing the Debtors' relationship with the Repudiating Vendor, (c) the Debtors' belief that the Repudiating Vendor is in violation of the Bankruptcy Code, and (d) the amount(s) and date(s) of any prepetition amounts paid; and (ii) seek entry of an Order to Show Cause requiring the Repudiating Vendor to show why it should not be found to have willfully violated sections 362 and 365 of the Bankruptcy Code and why it should not be required return any payments made to it by the Debtors, plus any accumulated interest.

19.    In accordance with this Interim Order (or other order of this Court), each of the financial institutions at which the Debtors maintain their accounts relating to the payment of the obligations described in the Motion is authorized and directed to (i) receive, process,

honor, and pay all checks presented for payment and to honor all fund transfer requests made by the Debtors related thereto, to the extent that sufficient funds are on deposit in those accounts and (ii) accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of this Court, whether such checks, drafts, wires, or transfers are dated prior to, on, or subsequent to the Commencement Date, without any duty to inquire otherwise.

20.      The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of prepetition Critical Vendor Claims to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases.

21.      Any payment made or to be made under this Interim Order, and any authorization contained in this Interim Order, shall be subject to the terms of any orders approving entry into debtor-in-possession financing and authorizing the use of cash collateral entered by this Court in these chapter 11 cases.

22.      Nothing in the Motion or this Interim Order shall be deemed to authorize the Debtors to accelerate any payments not otherwise due prior to the date of the Final Hearing.

23.      Nothing contained in the Motion or this Interim Order or any payment made pursuant to the authority granted by this Interim Order is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

8

24.     Notwithstanding entry of this Interim Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

25.     The requirements of Bankruptcy Rule 6003(b) have been satisfied.

26.     The requirements of Bankruptcy Rule 6004(a) are waived.

27.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

28.     The Final Hearing on the Motion shall be held on _____, **2016, at _____ (Eastern Time)** and any objections or responses to the Motion shall be in writing, filed with the Court, with a copy to chambers, and served upon (i) the proposed attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153 (Attn: Ray C. Schrock, P.C., Jacqueline Marcus, Esq., and Garrett A. Fail, Esq.); (ii) the Office of the United States Trustee for Region 2, 201 Varick Street, Suite 1006, New York, NY 10014; (iii) the attorneys for Aero Investors LLC, as agent under the Loan and Security Agreement, dated May 23, 2014, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, IL 60654 (Attn: James A. Stempel, Esq.); (iv) the attorneys for Bank of America, N.A., as agent under the Third Amended and Restated Loan and Security Agreement, as amended on August 18, 2015, Riemer & Braunstein LLP, Three Center Plaza, Boston, MA 02108 (Attn:  David S. Berman, Esq.); and (v) the attorneys for the DIP Agent, in each case so as to be received no later than **4:00 p.m. (Eastern Time) on _____, 2016**.

29.     This Interim Order is effective only from the date of entry through this Court's disposition of the Motion on a final basis; <u>provided</u> that the Court's ultimate disposition

of the Motion on a final basis shall not impair or otherwise affect any action taken pursuant to this Interim Order.

30.    The Debtors are authorized to take all action necessary to carry out this Interim Order.

31.    This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Interim Order.

Dated: May _____, 2016
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Proposed Final Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                                    :
In re                               :        Chapter 11
                                    :
AÉROPOSTALE, INC., *et al.*,        :        Case No. 16-_____ (___)
                                    :
        Debtors.[1]                 :        Jointly Administered
                                    :
---------------------------------------------------------x

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105(a),
363(b), AND 503(b)(9) AUTHORIZING DEBTORS TO PAY
CERTAIN PREPETITION OBLIGATIONS TO CRITICAL VENDORS,
APPROVING RELATED PROCEDURES, AND GRANTING RELATED RELIEF**

Upon the motion [ECF No. __] (the "***Motion***")[2] of Aéropostale, Inc. and its

subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "***Debtors***"), pursuant to sections 105(a), 363(b), and 503(b)(9) of the

Bankruptcy Code, for an order (i) authorizing the Debtors to pay up to $4 million (the "***Critical***

***Vendor Cap***") in prepetition claims of certain vendors, suppliers, service providers, and other

similar entities that the Debtors determine, in their sole discretion and based on their sound

business judgment, are essential to their ongoing business operations (the "***Critical Vendors***"

whose prepetition claims shall be defined as the "***Critical Vendor Claims***"), subject to the

procedures and conditions described in the Motion; (ii) approving (a) the Critical Vendor

Payment Protocol, substantially in the form attached to the Motion as **Exhibit C**, (b) the Notice

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: Aéropostale, Inc. (3880); Aéropostale West, Inc. (7013); Jimmy'Z Surf Co., LLC (0461); Aero GC Management LLC (4257); Aeropostale Procurement Company, Inc. (8518); Aeropostale Licensing, Inc. (8124); P.S. from Aeropostale, Inc. (5900); GoJane LLC (4923); Aeropostale Canada Corp. (N/A); Aeropostale Holdings Inc. (7729); and Aeropostale Puerto Rico, Inc. (6477). The Debtors' corporate headquarters is located at 112 West 34th Street, 22nd Floor, New York, NY 10120.

[2] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

of Critical Vendor Payment Protocol, substantially in the form attached to the Motion as **Exhibit D**, (c) the Vendor Agreement, substantially in the form attached to the Form of Notice of Critical Vendor Payment Protocol as **Exhibit 1**, (d) the Repudiating Vendor Procedures, (e) the Form of Notice of Repudiating Vendor, substantially in the form attached to the Motion as **Exhibit E**, and (f) the Form of Order to Show Cause, substantially in the form attached to the Motion as **Exhibit F**;  and (iii) granting related relief, as more fully set forth in the Motion; and the Court having jurisdiction to decide the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion having been given as provided in the Motion, and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice of the Motion need be provided; and the Court having held hearings to consider the relief requested in the Motion on an interim (the "***Interim Hearing***") and final basis (the "***Final Hearing***"), and the Court having entered an order granting the relief requested in the Motion on an interim basis (the "***Interim Order***"); and upon (i) the *Declaration of David J. Dick Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York* (the "***First Day Declaration***"), filed contemporaneously with the Motion, (ii) the Declaration of Timothy McDonagh (the "***McDonagh Declaration***"), a Managing Director at FTI Consulting, Inc. ("***FTI***"), filed contemporaneously with the Motion, and (iii) the record of the Interim Hearing, the Final Hearing, and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion and granted herein is in the best interests of the

2

Debtors, their respective estates and creditors, and all parties in interest and provides a net

benefit to the Debtors and their estates after taking into account the priority scheme of the

Bankruptcy Code, and that the legal and factual bases set forth in the Motion establish just cause

for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted on a final basis.

2.      The Critical Vendor Payment Protocol is approved in its entirety.

3.      The Form of Notice of Critical Vendor Payment Protocol is approved in

its entirety.

4.      The Vendor Agreement is approved in its entirety.

5.      The Repudiating Vendor Procedures are approved in their entirety.

6.      The Form of Notice of Repudiating Vendor is approved in its entirety.

7.      The Form of Order to Show Cause is approved in its entirety.

8.      The Debtors are authorized, but not directed, pursuant to sections 105(a),

363(b), and 503(b)(9) of the Bankruptcy Code, to pay Critical Vendor Claims in accordance with

the Critical Vendor Payment Protocol, upon such terms and in the manner provided in this Final

Order and the Motion; provided that the amount paid with respect to Critical Vendor Claims

shall not exceed the aggregate amount of $4 million (inclusive of any Critical Vendor Claims

paid pursuant to the Interim Order).

9.      With respect to Vendor Agreements, (i) the Debtors shall condition

payment of Critical Vendor Claims pursuant to this Order upon the execution of a Vendor

Agreement, (ii) the Debtors are authorized, but not directed, to enter into such Vendor

Agreements when and if the Debtors determine, in the exercise of their sole reasonable business

judgment, that it is appropriate to do so, and (iii) a Vendor Agreement, once agreed to and

3

accepted by a Critical Vendor, shall be the legally binding contractual relationship between the parties governing the commercial trade relationship as provided therein; provided that the Debtors may agree to implement such modifications to the form of Vendor Agreement the Debtors deem necessary or advisable in the reasonable exercise of their business judgment to obtain Customary Trade Terms (defined below) from the applicable Critical Vendor; provided further that the Debtors may pay a Critical Vendor Claim without the applicable Critical Vendor having executed a Vendor Agreement only if the Debtors' determine, in their reasonable business judgment that a Vendor Agreement is unnecessary to ensure the applicable Critical Vendor's continued performance on Customary Trade Terms (defined below), subject to the express authorization of FTI.

10.     Any party who accepts payment from the Debtors of a Critical Vendor Claim (regardless of whether a Vendor Agreement has been executed) shall take all actions necessary to remove any mechanics' liens, possessory liens, or similar state law trade liens on the Debtors' assets such party may have based upon its Critical Vendor Claims at such party's sole expense.

11.     Any party who accepts payment from the Debtors of a Critical Vendor Claim (regardless of whether a Vendor Agreement has been executed) shall be deemed to have agreed to the terms and provisions of the Order and shall be deemed to have waived, to the extent so paid, any and all prepetition claims, of whatever type, kind or priority, against the Debtors, their properties and estates, their directors, officers and employee up to the amount paid.

12.     In the event (i) a Critical Vendor breaches the terms or conditions of a Vendor Agreement or (ii) regardless of whether a Vendor Agreement has been executed, a

4

Critical Vendor accepts payment from the Debtors of a Critical Vendor Claim and does not continue supplying goods or services to the Debtors on trade terms at least as favorable to the Debtors as those terms governing practices and programs (including, without limitation, credit limits, pricing, cash discounts, timing of payments, allowances, coupon reconciliation, product mix, availability, processing of vendor receivables, such as rebates and volume credits, and other programs) within the year prior to the Commencement Date, or such other trade terms that are acceptable to the Debtors in their sole discretion (collectively, the "*Customary Trade Terms*"), the Debtors may, in their discretion, (a) declare that the payment of the Critical Vendor Claim is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtors may recover in cash or in goods from such Critical Vendor (including by setoff against postpetition obligations), (b) declare that the Critical Vendor shall immediately return the payment received on its Critical Vendor Claim to the Debtors without giving effect to any alleged setoff rights, recoupment rights, adjustments, or other offsets of any type whatsoever, and the Critical Vendor Claim shall be reinstated to such amount as so to restore the Debtors and the Critical Vendor to their original positions as if the Vendor Agreement had never been entered into and no payment of the Critical Vendor Claim had been made, and/or (c) if there exists an outstanding postpetition balance due from the Debtors to such Critical Vendor, recharacterize and apply any payment made pursuant to the relief requested in the Motion to such outstanding postpetition balance and such Critical Vendor shall be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

13.     All Vendor Agreements will terminate upon entry of an order converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.

14.     In the event a Critical Vendor breaches the terms or conditions of its Vendor Agreement, the Debtors may, in their discretion, declare that such Vendor Agreement has terminated; <u>provided</u> that the Vendor Agreement may be reinstated if:

    i.    after notice and a hearing (following a motion filed by the respective Critical Vendor), the Bankruptcy Court reverses the Debtors' decision to terminate the Vendor Agreement for good cause shown that the Debtors' determination was materially incorrect;

    ii.    the Critical Vendor fully cures the underlying default of the Vendor Agreement within five (5) business days from the date of receipt of notice of termination of the Trade Agreement; or

    iii.    the Debtors, in their sole discretion, reach a commercially acceptable agreement with the breaching party.

15.     Nothing herein shall impair or prejudice the Debtors' ability to contest, in their sole discretion, the extent, perfection, priority, validity, or amounts of any claims or liens held by any Critical Vendor and the Debtors' rights to contest the extent, validity, or perfection or seek the avoidance of all such liens or the priority of such claims are fully preserved.

16.     The Debtors shall maintain a "***Critical Vendor Matrix***" summarizing (i) the name of each vendor requesting Critical Vendor status, (ii) the amount and timing of any Critical Vendor payment, (iii) the amount of the Critical Vendor's claim satisfied by the Critical Vendor payment, including any amount entitled to priority under section 503(b)(9) of the Bankruptcy Code, and (iv) a summary of the material payment terms.  The Critical Vendor Matrix will be provided on a monthly basis (or such other agreed-upon time period) to: (a) the U.S. Trustee; (b) and the attorneys for the DIP Agent, <u>provided</u> that such attorneys keep the Critical Vendor Matrix confidential in accordance with the confidentiality provisions of the applicable credit agreements to which the Debtors are a party; and (c) the professionals retained by any official committee of unsecured creditors appointed in these chapter 11 cases; <u>provided</u> that the professionals for any such committee shall keep the Critical Vendor Matrix confidential

and shall not disclose any of the information in the matrix to anyone without prior written consent of the Debtors.

17.    If a Repudiating Vendor refuses to perform its postpetition obligations pursuant to an executory contract with one or more of the Debtors, the Debtors are authorized, but not directed, to pay such claim provisionally (and such payment shall not count against the Critical Vendor Cap); provided that such payment is expressly authorized by FTI as necessary to preserve the Debtors' business stability during the chapter 11 cases, maintain the Debtors' liquidity, or maintain the Debtors' access to essential goods or services.

18.    Regardless of whether a payment has been made, if a Repudiating Vendor refuses to perform its postpetition obligations pursuant to an executory contract with one or more of the Debtors, the Debtors may (i) file a Notice of Repudiating Vendor setting forth (a) the name of the Repudiating Vendor, (b) the identity of the agreement governing the Debtors' relationship with the Repudiating Vendor, (c) the Debtors' belief that the Repudiating Vendor is in violation of the Bankruptcy Code, and (d) the amount(s) and date(s) of any prepetition amounts paid; and (ii) seek entry of an Order to Show Cause requiring the Repudiating Vendor to show why it should not be found to have willfully violated sections 362 and 365 of the Bankruptcy Code and why it should not be required return any payments made to it by the Debtors, plus any accumulated interest.

19.    In accordance with this Final Order (or other order of this Court), each of the financial institutions at which the Debtors maintain their accounts relating to the payment of the obligations described in the Motion is authorized and directed to (i) receive, process, honor, and pay all checks presented for payment and to honor all fund transfer requests made by the Debtors related thereto, to the extent that sufficient funds are on deposit in those accounts and

7

(ii) accept and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or automated clearing house transfers should be honored or dishonored in accordance with this or any other order of this Court, whether such checks, drafts, wires, or transfers are dated prior to, on or subsequent to the Commencement Date, without any duty to inquire otherwise.

20.    The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of prepetition Critical Vendor Claims to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases.

21.    Any payment made or to be made under this Final Order, and any authorization contained in this Final Order, shall be subject to the terms of any orders approving entry into debtor-in-possession financing and authorizing the use of cash collateral entered by this Court in these chapter 11 cases.

22.    Nothing contained in the Motion or this Final Order or any payment made pursuant to the authority granted by this Final Order is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

23.    Notwithstanding entry of this Final Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by, any party.

24.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

8

25.     The Debtors are authorized to take all action necessary to carry out this Final Order.

26.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Final Order.

Dated: May ____, 2016
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit C</u>**

**Critical Vendor Payment Protocol**

## Summary of Critical Vendor Payment Protocol

*For ease of reference, the below is a summary reflecting the Critical Vendor Payment Protocol.*



## CRITICAL VENDOR PAYMENT PROTOCOL

### I.    Critical Vendor Payment Protocol Objective

- Establish and understand the review and approval process (the "**Critical Vendor Payment Protocol**") for paying prepetition claims of those vendors the Company determines to be "critical" (the "**Critical Vendors**," whose prepetition claims shall be referred to as "**Critical Vendor Claims**") pursuant to the Critical Vendor Motion and the Bankruptcy Court orders approving the same.

### II.    The Vendor Contingency Team

- The Company has established a centralized team consisting of employees from the Company, professionals from FTI Consulting, Inc. ("**FTI**"), and attorneys from Weil, Gotshal & Manges LLP ("**Weil**") (the "**Vendor Contingency Team**").

### III.    Critical Vendor Payment Process

A.  Receive

B.  Evaluate

C.  Negotiate

D.  Pay

| Receive Request | Evaluate Request | Negotiate Vendor Agreement | Pay Approved Amount and update Vendor Matrix |
|---|---|---|---|

### A.  Receive Request

*All Requests will be forwarded to the Vendor Contingency Team.*

**(1)** The payment review and approval process begins when a vendor (the "**Requesting Vendor**") contacts the Company to request payment of its prepetition claim(s).
- All Requests must be emailed or forwarded to the Vendor Contingency Team at AROvendor@fticonsulting.com.

**(2)** Upon receiving a Request, a member of the Vendor Contingency Team will (i) send the Requesting Vendor copies of (a) the notice attached to the Critical Vendor Motion as Exhibit D (the "**Notice**"), the (b) the interim or final order (as applicable) approving the Critical Vendor Motion, and (c) a copy of the Vendor Request Form, attached hereto as Schedule 1, and (ii) communicate in writing (with email being sufficient) to the Requesting Vendor that it must continue shipping on then-current payment terms in order to be considered for Critical Vendor status.

2

**B.  Evaluate Request**

*Members of the Vendor Contingency Team will meet to evaluate all Requests.*

**(3)** The Vendor Contingency Team will review the completed Vendor Request form, along with all information collected with respect to such Requesting Vendor during the Critical Vendor Pre-Screening Process, and request any additional information needed from the Requesting Vendor to enable the Vendor Contingency Team to:

- Confirm the total amount owed by the Company to the Requesting Vendor as of the Commencement Date;

- Confirm the value of any goods delivered by the Requesting Vendor to the Company within 20 days of the Commencement Date;

- Compute the cash flow impact to the Company of the Requesting Vendor returning to the most favorable payment terms provided to the Company in the past year; and

- Assess the Request pursuant to the "Critical Vendor Factors" identified below.

**(4)** In evaluating a Request, the Vendor Contingency Team will consider (i) whether the Requesting Vendor was identified as a potential Critical Vendor during the Critical Vendor Pre-Screening Process, and (ii) the following factors (the "**Critical Vendor Factors**"):

- General

    o  the goods or services provided;

    o  general terms of vendor performance over the prior year; and

    o  the Debtors' business needs for the goods or services provided;

- Consequences of Non-Payment

    o  whether goods or services are provided pursuant to a contract or on a purchase order basis;

        - *If the Requesting Vendor is party to a contract with the Company, the Vendor Contingency Team will inform the Requesting Vendor that it must continue to perform under its contract and the Company will take legal action if the Requesting Vendor does not comply.*

    o  whether failure to pay all or part of a particular vendor's claim could cause the vendor to refuse to ship inventory or provide critical services on a postpetition basis;

    o  whether failure to pay a particular vendor could result in contraction of trade terms as a matter of applicable non-bankruptcy law or regulation;

3

- Potential to Move to Alternative Vendor

  - whether alternative vendors are available that could provide requisite volumes of similar goods or services on equal (or better) terms and, if so, whether the Debtors would be able to continue operating while transitioning business thereto;

  - the degree to which replacement costs (including, pricing, transition expenses, professional fees, and lost sales or future revenue) would exceed the amount of a vendor's prepetition claim; and

  - whether the Debtors' inability to pay all or part of the vendor's prepetition claim could trigger financial distress for the applicable vendor.

If the Vendor Contingency Team determines that a requesting vendor is eligible for treatment as a Critical Vendor, one or more members of the Vendor Contingency Team will provide notice to, and consult with, the professionals for any statutory committee of unsecured creditors appointed in these chapter 11 cases prior to making any payments to such Critical Vendor.

## C.  Negotiate Terms of Vendor Agreement

*Members of the Vendor Contingency Team will Negotiate all Vendor Agreements.*

**(5)** If, pursuant to the Critical Vendor Factors, the Vendor Contingency Team determines that a Requesting Vendor is eligible for Critical Vendor status, the Vendor Contingency Team will designate a member of the team to negotiate the terms of a Vendor Agreement.  A form of the Vendor Agreement is attached as Exhibit 1 to the Notice.

- The Company may make a payment to a Critical Vendor that has not executed a Vendor Agreement, only if (i) such payment is expressly authorized by FTI and (ii) FTI determines that a Vendor Agreement is unnecessary to ensure that Critical Vendor's continued performance on customary trade terms.

- Any proposed payment in excess of $100,000 requires prior written approval from FTI.

**(6)** Upon attaining all requisite approvals, the Vendor Contingency Team will memorialize the terms of their agreement with a Critical Vendor.

## D.  Pay Critical Vendor Claim and Maintain Database

**(7)** The Vendor Contingency Team will send payment instructions to a designated member of the Company's treasury department to ensure payments are processed timely and in accordance with the Vendor Agreement (if applicable).

**(8)** The Vendor Contingency Team will maintain a database (the "**Critical Vendor Matrix**") listing all Requesting Vendors and all Critical Vendors with which the Company has entered into Vendor Agreements.

- The Critical Vendor Matrix will include, among other things, the (i) name of the Requesting Vendor, (ii) amount and timing of any Critical Vendor payment, (iii) amount of the Critical

4

Vendor's claim satisfied by the Critical Vendor payment, including ay amount entitled to priority under section 503(b)(9) of the Bankruptcy Code, and (iv) a summary of the material payment terms.

## Schedule 1
## Vendor Request Form

Vendor Name: _____

Contact Person: _____

Contact Person's Phone and Email: _____

Total Claim Amount Outstanding: _____

    Amount Invoiced: _____

    Amount Not Yet Invoiced: _____

Contract with Company, if applicable (include name of contract, date executed, and dates of any amendments): _____

Value of goods delivered to Company in the 20 days prior to the Commencement Date, if applicable: _____

Payment terms provided to Company in the past year (include dates that payment terms changed, if applicable): _____

Vendor's 2015 annual sales: _____

Vendor's 2015 annual sales to the Company: _____

Please also provide the following information in support of the responses above:

- Copy of contract with Company (if applicable);

- Supporting information for total claim amount outstanding (including amounts invoiced and not yet invoiced) and value of goods delivered in 20 days prior to Commencement Date (if applicable) including, without limitation, invoices.

***The Company reserves the right to request any additional information that may be necessary for the Company to evaluate Vendor's request for payment of a claim pursuant to the Critical Vendor Payment Protocol.***

**Schedule 2**
**<u>Critical Vendor Payment – Approval Form</u>**


Vendor Name:                    _____

Amount of Payment:              _____

Payment Date:                   _____

Trade Terms Received:           _____

Vendor Agreement Executed:          YES/NO

☐      I have determined that a Vendor Agreement is unnecessary to ensure continued performance on customary trade terms.

☐      I approve this payment, which exceeds $100,000.

_____      Date: _____
FTI Consulting, Inc.


Company Authorization:          _____      Date: _____


ACH/Wire Instructions:          _____

                                _____

                                _____

## **<u>Exhibit D</u>**

**Form of Notice of Critical Vendor Payment Protocol**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------x
                                                         :
In re                                                    :       **Chapter 11**
                                                         :
**AÉROPOSTALE, INC.**, *et al.*,                         :       **Case No. 16-_____ (___)**
                                                         :
                              Debtors.[1]                :       **Jointly Administered**
                                                         :
----------------------------------------------------------x

### Notice of Critical Vendor Payment Protocol

On May____, 2016 (the "**Commencement Date**"), Aéropostale, Inc. and its subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), filed voluntary petitions for relief under title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

On the Commencement Date, the Debtors filed the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 503(b)(9) for Interim and Final Orders Authorizing the Debtors to Pay Certain Prepetition Obligations to Critical Vendors, Approving Related Procedures, and Granting Related Relief* [Docket No. 9] (the "**Motion**").[2]

On _____, 2016, the Bankruptcy Court entered an order [Docket No. __] granting the relief requested in the Motion on **[an interim/a final]** basis (the "**Order**").

To ensure the continued postpetition delivery of goods and services to the Debtors on market terms following the Commencement Date, including credit terms, and to facilitate orderly negotiations relating thereto, pursuant to the Order, among other things, the Bankruptcy Court approved certain procedures for the Debtors' review and authorization to pay certain prepetition claims of certain vendors, suppliers, service providers, and other similar entities that the Debtors determine, in their sole discretion and based on their sound business judgment, are essential to their ongoing business operations (the "**Critical Vendors**" whose prepetition claims shall be referred to as the "**Critical Vendor Claims**") who agree to, among other things, provide

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows:  Aéropostale, Inc. (3880); Aéropostale West, Inc. (7013); Jimmy'Z Surf Co., LLC (0461); Aero GC Management LLC (4257); Aeropostale Procurement Company, Inc. (8518); Aeropostale Licensing, Inc. (8124); P.S. from Aeropostale, Inc. (5900); GoJane LLC (4923); Aeropostale Canada Corp. (N/A); Aeropostale Holdings Inc. (7729); and Aeropostale Puerto Rico, Inc. (6477).  The Debtors' corporate headquarters is located at 112 West 34th Street, 22nd Floor, New York, NY 10120.

[2] Capitalized terms used but not defined herein shall have the meaning set forth in the Motion.

2

postpetition goods and/or services to the Debtors on Customary Trade Terms (as defined herein).

This Notice summarizes certain key provisions of the Order and the Critical Vendor Payment Protocol.  In the event of any inconsistency between this Notice and the Order, the Order shall control in all respects.

1.      Payment Requests.  All requests for payment of a Critical Vendor Claim must be emailed to AROvendor@fticonsulting.com.

2.      Vendor Agreement.  The Debtors will condition the payment of Critical Vendor Claims on the execution by each Critical Vendor of a vendor agreement substantially in the form attached hereto as **Exhibit 1** (each, a "**Vendor Agreement**"), which agreement shall constitute a legally binding contractual relationship between the parties.

3.      Customary Trade Terms.  Pursuant to the Vendor Agreement, in order to receive payment of a Critical Vendor Claim, a Critical Vendor must agree to continue supplying goods or services to the Debtors on trade terms at least as favorable to the Debtors as those terms governing practices and programs (including, without limitation, credit limits, pricing, cash discounts, timing of payments, allowances, coupon reconciliation, product mix, availability, processing of vendor receivables, such as rebates and volume credits, and other programs) within the year prior to the Commencement Date, or such other trade terms that are acceptable to the Debtors in their sole discretion (collectively, the "**Customary Trade Terms**").

4.      Debtors' Remedies.  If a Critical Vendor breaches its Vendor Agreement or otherwise accepts payment from the Debtors of a Critical Vendor Claim and does not continue supplying goods or services to the Debtors on Customary Trade Terms, the Debtors may, in their discretion, (i) declare that any payment of the Critical Vendor Claim is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtors may recover in cash or in goods from such Critical Vendor (including by setoff against postpetition obligations), (ii) declare that the Critical Vendor shall immediately return the payment of its Critical Vendor Claim to the Debtors without giving effect to any alleged setoff rights, recoupment rights, adjustments, or other offsets of any type whatsoever, and the Critical Vendor Claim shall be reinstated to such amount so as to restore the Debtors and the Critical Vendor to their original positions as if the Vendor Agreement had never been entered into and no payment of the Critical Vendor Claim had been made, and/or (iii) if there exists an outstanding postpetition balance due from the Debtors to such Critical Vendor, recharacterize and apply any payment of a Critical Vendor Claim to such outstanding postpetition balance and such Critical Vendor shall be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

5.      Termination and Reinstatement.  All Vendor Agreements will terminate upon entry of an order converting the Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.  In addition, if a Critical Vendor breaches its Vendor Agreement, the Debtors may, in their discretion, declare that such Vendor Agreement has terminated.  To the extent a Vendor Agreement is terminated on account of breach of the terms or conditions thereof by a Critical Vendor, such terminated Vendor Agreement may nevertheless be reinstated as the result

of one or more of the following: (i) after notice and a hearing (following a motion filed by the applicable Critical Vendor), the Bankruptcy Court reverses the Debtors' decision to terminate the Vendor Agreement for good cause shown that the Debtors' determination was materially incorrect; (ii) the Critical Vendor fully cures the underlying default of the Vendor Agreement within five (5) business days from the date of receipt of notice of termination of the Vendor Agreement; or (iii) the Debtors, in their sole discretion, reach a commercially acceptable agreement with the breaching party.

6.       <u>Effect of Acceptance</u>.  Any party who accepts a payment from the Debtors on account of a Critical Vendor Claim (regardless of whether a Vendor Agreement has been executed) shall be deemed to have agreed to the terms and provisions of the Order and shall be deemed to have waived, to the extent so paid, any and all prepetition claims, of whatever type, kind or priority, against the Debtors, their properties and estates, their directors, officers and employee up to the amount paid.

7.       <u>Reservation of Rights</u>.  Nothing contained herein, in the Order, or as a result of any payment made pursuant thereto is intended to or should be construed as (a) an admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (c) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.  The Debtors expressly reserve the right to contest any demand for payment made with respect to Critical Vendor Claims pursuant to the Bankruptcy Code, any order of the Court, or applicable non-bankruptcy law.  Any payment made pursuant to the relief requested in the Motion is not intended to and should not be construed as an admission of the validity of any claim or a waiver of the Debtors' right to dispute such claim subsequently.

Dated: _____, 2016
         New York, New York

                                        _____
                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York  10153
                                        Telephone:  (212) 310-8000
                                        Facsimile:  (212) 310-8007
                                        Ray C. Schrock, P.C.
                                        Garrett A. Fail

                                        *Proposed Attorneys for Debtors
                                        and Debtors in Possession*

**<u>Exhibit 1</u>**

**<u>Form of Vendor Agreement</u>**

### Vendor Agreement

The Debtors (as defined herein) and **[_____]** ("**Vendor**") hereby enter into the following vendor agreement (this "**Vendor Agreement**") dated as of this _____, **2016**.

### Recitals

WHEREAS on May ___, 2016 (the "**Commencement Date**"), Aéropostale, Inc. and its subsidiaries (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of New York (the "**Court**").

WHEREAS on _____, 2016, the Court entered the [*Interim/Final*] *Order Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 503(b)(9) Authorizing the Debtors to Pay Certain Prepetition Obligations to Critical Vendors, Approving Related Procedures, and Granting Related Relief* (the "**Critical Vendor Order**") [Docket No. ___] authorizing the Debtors, under certain conditions, to pay the prepetition claims of certain vendors, including Vendor, subject to the terms and conditions set forth therein.[1]

WHEREAS pursuant to the Critical Vendor Order, the Court approved certain payment procedures, substantially in the form attached to the *Debtors' Motion for Entry of Interim and Final Orders Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 503(b)(9) Authorizing the Debtors to Pay Certain Prepetition Obligations to Critical Vendors, Approving Related Procedures, and Granting Related Relief* [Docket No. ___] as Exhibit C (the "**Critical Vendor Payment Protocol**").

WHEREAS pursuant to the Critical Vendor Order, to receive payment on account of prepetition claims, each Critical Vendor must agree to continue to supply goods or services to

---

[1]    Capitalized terms used but not defined herein shall have the meanings set forth in the Critical Vendor Order.

the Debtors on "Customary Trade Terms."   As used herein and in the Critical Vendor Order,

"**Customary Trade Terms**" are trade terms at least as favorable to the Debtors as those terms

governing practices and programs (including, without limitation, credit limits, pricing, cash

discounts, timing of payments, allowances, coupon reconciliation, product mix, availability,

processing of vendor receivables, such as rebates and volume credits, and other programs) within

the year prior to the Commencement Date, or such other trade terms that are acceptable to the

Debtors in their sole discretion.

WHEREAS the Debtors and Vendor (collectively, the "**Parties**") agree to the

following terms as a condition of payment on account of certain prepetition claims Vendor may

hold against the Debtors.

### Agreement

1.       The Parties hereby agree that Vendor is a "Critical Vendor" (as defined in the

Critical Vendor Order).

2.       The balance of Vendor's aggregate prepetition claim(s) against the Debtors is $[•]

(the "**Agreed Critical Vendor Claim**").

3.       Following execution of this Vendor Agreement, the Debtors will pay Vendor $[•]

(the "**Payment Amount**") on account of the Agreed Critical Vendor Claim.  The Payment

Amount will be paid pursuant to the Customary Trade Terms set forth below, and will be applied

to any invoices previously received by the Debtors on account of the Agreed Critical Vendor

Claim as such invoices become due and payable.

4.       [The parties hereby agree that Vendor delivered to the Debtors, and the Debtors

received, goods valued at $[•] within 20 days before the Commencement Date, for which Vendor

did not receive payment (the "**Agreed 503(b)(9) Claim**").  $[•] of the Payment Amount will be

applied toward the Agreed 503(b)(9) Claim.]

2

5.      For a period from the date this agreement is executed until the earlier of (i) the effective date of a chapter 11 plan for the Debtors and (ii) two (2) years from the date of this Vendor Agreement, Vendor shall supply goods **[and/or services]** to the Debtors based on the following Customary Trade Terms: _____.

6.      The Parties further agree, acknowledge and represent that:

*(a)*      the Parties have reviewed the terms and provisions of the Critical Vendor Order and consent to be bound by such terms and that this Vendor Agreement is expressly subject to the Critical Vendor Order;

*(b)*      any payments made on account of the Agreed Critical Vendor Claim shall be subject to the terms and conditions of the Critical Vendor Order, including any orders of the Court granting the relief requested in the Critical Vendor Order on a final basis, as applicable;

*(c)*      if Vendor refuses to supply goods or services to the Debtors as provided herein or otherwise fails to perform any of its obligations hereunder, the Debtors may exercise all rights and remedies available under the Critical Vendor Order, the Bankruptcy Code, or applicable law;

*(d)*      Vendor will not separately seek payment for any claims pursuant to section 503(b)(9) of the Bankruptcy Code or other similar claims outside of the terms of the Critical Vendor Order or this Vendor Agreement unless Vendor's participation in the vendor payment program authorized by the Critical Vendor Order is terminated;

*(e)*      in consideration for receiving the Payment Amount, Vendor shall not file or otherwise assert against the Debtors, their estates, or any other person or entity, or any of their respective assets or property (real or personal) any lien (regardless of the statute or other legal authority upon which the lien is asserted) related to any remaining prepetition amounts allegedly owed to Vendor by the Debtors arising from agreements entered into before the Commencement Date.  Furthermore, if Vendor has taken steps to file or assert a lien before entering into this Vendor Agreement, Vendor agrees to take all necessary steps to remove the lien as soon as possible at its sole cost and expense;

*(f)*      if Vendor fails to comply with the terms and provisions of this Vendor Agreement, the Debtors may, in their discretion, and without further order of the Bankruptcy Court, (a) declare that any payment of the Payment Amount is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtors may recover in cash or in goods from Vendor (including by setoff against postpetition obligations),

3

(b) declare that Vendor shall immediately return the Payment Amount to the Debtors without giving effect to any alleged setoff rights, recoupment rights, adjustments, or other offsets of any type whatsoever, and Vendor's claim shall be reinstated to such amount so as to restore the Debtors and Vendor to their original positions as if the Vendor Agreement had never been entered into and the Payment Amount had not been paid, and/or (c) if there exists an outstanding postpetition balance due from the Debtors to Vendors, the Debtors may elect to recharacterize and apply the Payment Amount to such outstanding postpetition balance and Vendor shall be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise;

(g)    if Vendor fails to comply with the terms and provisions of this Vendor Agreement, the Debtors may, in their discretion, declare that such Vendor Agreement has terminated; provided that the Vendor Agreement may be reinstated if:

i)    after notice and a hearing (following a motion filed by the applicable Vendor), the Bankruptcy Court reverses the Debtors' decision to terminate the Vendor Agreement for good cause shown that the Debtors' determination was materially incorrect;

ii)    the Vendor fully cures the underlying default of the Vendor Agreement within five (5) business days from the date of receipt of notice of termination of the Vendor Agreement; or

iii)    the Debtors, in their sole discretion, reach a commercially acceptable agreement with the Vendor.

(h)    the Parties hereby submit to the exclusive jurisdiction of the Court to resolve any dispute arising under or in connection with this Vendor Agreement.

7.    Subject to the requirements of the Bankruptcy Code, further orders of the Court, or applicable law, and unless it otherwise becomes public without a breach of this Vendor Agreement, Vendor agrees to hold in confidence and not disclose to any party: (a) any and all payments made by the Debtors pursuant to this Vendor Agreement; (b) the terms of payment set forth herein; and (c) the Customary Trade Terms (collectively, the

"**Confidential Information**"); provided that if any party seeks to compel Vendor's disclosure of any or all of the Confidential Information, through judicial action or otherwise, or Vendor

4

intends to disclose any or all of the Confidential Information, Vendor shall immediately provide

the Debtors with prompt written notice so that the Debtors may seek an injunction, protective

order or any other available remedy to prevent such disclosure; provided further that if such

remedy is not obtained, Vendor shall furnish only such information as Vendor is legally required

to provide.

8.      The undersigned hereby represent and warrant that:  (a) they have full authority to

execute this Vendor Agreement on behalf of the respective Parties; (b) the respective Parties

have full knowledge of, and have consented to, this Vendor Agreement; and (c) they are fully

authorized to bind the Party to all of the terms and conditions of this Vendor Agreement.

9.      This Vendor Agreement sets forth the entire understanding of the Parties

regarding the subject matter hereof and supersedes all prior oral or written agreements between

them.  This Vendor Agreement may not be changed, modified, amended or supplemented, except

in a writing signed by both Parties.

10.      This Vendor Agreement may be executed in counterparts, each of which shall be

deemed to be an original, but all of which shall constitute one and the same agreement.

Signatures by facsimile or electronic signatures shall count as original signatures for all

purposes.


AGREED AND ACCEPTED AS OF THE DATE SET FORTH ABOVE:

**[Aéropostale, Inc.]**                          **[VENDOR]**


_____          _____

## **<u>Exhibit E</u>**

### **Form of Notice of Repudiating Vendor**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                                       :

In re                            :        Chapter 11
                                         :

AÉROPOSTALE, INC., *et al.*,   :        Case No. 16-_____ (___)
                                       :

        Debtors.[1]           :        Jointly Administered
                                       :
---------------------------------------------------------x

## NOTICE OF REPUDIATING VENDOR

PLEASE TAKE NOTICE OF THE FOLLOWING:

    1.    On [    ], 2016 (the "***Commencement Date***"), Aéropostale, Inc. and its subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "***Debtors***"), filed voluntary petitions for relief under title 11 of the United States Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the Southern District of New York (the "***Court***").

    2.    On the Commencement Date, the Debtors filed the *Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363(b), and 503(b)(9) for Interim and Final Authority to Pay Certain Prepetition Obligations to Critical Vendors, Approval of Related Procedures, and Related Relief* [Docket No. [___]] (the "***Motion***").[2]

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: Aéropostale, Inc. (3880); Aéropostale West, Inc. (7013); Jimmy'Z Surf Co., LLC (0461); Aero GC Management LLC (4257); Aeropostale Procurement Company, Inc. (8518); Aeropostale Licensing, Inc. (8124); P.S. from Aeropostale, Inc. (5900); GoJane LLC (4923); Aeropostale Canada Corp. (N/A); Aeropostale Holdings Inc. (7729); and Aeropostale Puerto Rico, Inc. (6477).  The Debtors' corporate headquarters is located at 112 West 34th Street, 22nd Floor, New York, NY 10120.

[2] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

3.      On [        ], 2016, the Court entered an order [Docket No. [____]] granting

the relief requested in the Motion on **[an interim/a final]** basis (the "*Order*").

4.      Pursuant to the Order, the Debtors have identified _____

(the "*Vendor*") as a Repudiating Vendor due to the Vendor's refusal to perform its obligations

under the [**NAME OF AGREEMENT**], in violation of the Bankruptcy Code.  [**The Debtors

have conditionally paid the Vendor's prepetition claim in the amount of $_____, on

_____, 2016 (the "*Provisional Payment*").]**

5.      Contemporaneously herewith, the Debtors are filing a proposed Order to

Show Cause requesting that the Court order the Vendor to appear before the Court at a hearing

to be held on _____, **2016, at _____ (Prevailing Eastern Time)**, in the Bankruptcy

Court, Courtroom _____, 1 Bowling Green, New York, New York 10004, and demonstrate why

the Vendor should not be held to have violated sections 362 and 365 of the Bankruptcy Code

**[and why the Vendor should not be required to return the Provisional Payment]**.

Dated: [_____], 2016
         New York, New York

                                    _____
                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York  10153
                                    Telephone:  (212) 310-8000
                                    Facsimile:  (212) 310-8007
                                    Ray C. Schrock, P.C.
                                    Jacqueline Marcus
                                    Garrett A. Fail

                                    *Proposed Attorneys for Debtors*
                                    *and Debtors in Possession*

## Exhibit F

**Form of Order to Show Cause**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
                                     :

In re                               :           **Chapter 11**
                                       :

**AÉROPOSTALE, INC.,** *et al.*,       :           **Case No. 16-_____ (___)**
                                       :

                  **Debtors.**[1]        :          **Jointly Administered**
                                       :
---------------------------------------------------------x

## ORDER TO SHOW CAUSE

Upon the Notice of Repudiating Vendor dated _____, 2016 [Docket No. ____] (the "***Notice***") filed by Aéropostale, Inc. and its subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"); and the Court having reviewed the Notice and the ***[Interim/Final]*** *Order Pursuant to §§ 105(a), 363(b), and 503(b)(9)Authorizing Debtors to Pay Certain Prepetition Obligations to Critical Vendors, Approving Related Procedures, and Granting Related Relief* [Docket No. ____] (the "***Order***"),[2] pursuant to which the Notice was filed; and the Court having jurisdiction over this matter in accordance with 28. U.S.C. §§ 157(a)-(b) and 1334(b) and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.); and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C.

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows:  Aéropostale, Inc. (3880); Aéropostale West, Inc. (7013); Jimmy'Z Surf Co., LLC (0461); Aero GC Management LLC (4257); Aeropostale Procurement Company, Inc. (8518); Aeropostale Licensing, Inc. (8124); P.S. from Aeropostale, Inc. (5900); GoJane LLC (4923); Aeropostale Canada Corp. (N/A); Aeropostale Holdings Inc. (7729); and Aeropostale Puerto Rico, Inc. (6477).  The Debtors' corporate headquarters is located at 112 West 34th Street, 22nd Floor, New York, NY 10120.

[2] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the Order.

§§ 1408 and 1409; and the Debtors having complied with the terms and conditions set forth in the Order,

### IT IS HEREBY ORDERED THAT:

1.              _____ (the "*Vendor*"), who is identified by Debtors as a Repudiating Vendor, is hereby ordered, at a hearing to be conducted before this Court on _____, **2016, at _____ (Prevailing Eastern Time)**, in the Bankruptcy Court, Courtroom _____, 1 Bowling Green, New York, New York 10004 (the "*Hearing*"), to show cause why the Vendor should not (i) be held to have violated sections 362 and 365 of the Bankruptcy Code for willfully threatening to withhold essential [**goods and/or services**] from the Debtors under one or more contracts between the Debtors and Vendor, as identified in the Notice **[and (ii) be required to return any payment(s) of a Critical Vendor Claim (as such term is defined in the Order) made to it by the Debtors, plus the accumulated interest].**

2.        Service of this Order to Show Cause is to be made by the Debtors upon (i) the Vendor, (ii) the Office of the United States Trustee for Region 2, (iii) the attorneys for the Debtors' proposed postpetition lenders; and (d) the attorneys retained by any official committee of unsecured creditors appointed in these chapter 11 cases.

3.        This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: May ____, 2016
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

2