WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock P.C.
Richard W. Slack
Jacqueline Marcus
Garrett A. Fail

*Proposed Attorneys for Debtors
and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re                                                          :   Chapter 11
                                                               :   CASE NO. 16-_____ (___)
AÉROPOSTALE, INC., *et al.*,                                   :
                                                               :   Joint Administration Requested
Debtors.[1]                                                    :
                                                               :
---------------------------------------------------------------x

**DECLARATION OF JULIAN R. GEIGER IN SUPPORT OF DEBTORS' EX PARTE
MOTION FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY RULE 2004,
AUTHORIZING DISCOVERY EXAMINATIONS OF SYCAMORE PARTNERS,
STEFAN KALUZNY, KENT KLEEBERGER, AERO INVESTORS LLC, AND OTHER
RELATED DISCOVERY**

I, Julian R. Geiger, make this declaration under 28 U.S.C. § 1746:

      1.    I am the Chief Executive Officer ("*CEO*") of Aéropostale, Inc.

("*Aéropostale*" or the "*Company*") and its subsidiaries, as debtors and debtors in possession

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: Aéropostale, Inc. (3880); Aéropostale West, Inc. (7013); Jimmy'Z Surf Co., LLC (0461); Aero GC Management LLC (4257); Aéropostale Procurement Company, Inc. (8518); Aéropostale Licensing, Inc. (8124); P.S. from Aéropostale, Inc. (5900); GoJane LLC (4923); Aéropostale Canada Corp. (N/A); Aéropostale Holdings Inc. (7729); and Aéropostale Puerto Rico, Inc. (6477). The Debtors' corporate headquarters is located at 112 West 34th Street, 22nd Floor, New York, NY 10120.

(collectively, the "*Debtors*") in the above-captioned chapter 11 cases (the "*Cases*"). I was appointed CEO on August 18, 2014.

2. I previously served as Aéropostale's Chairman and Chief Executive Officer from August 1998 to February 2010, and thereafter continued to serve as Chairman of the Board and as a part-time advisor to the Company until February 2012.

3. I make this Declaration in support of the Debtors' *Ex Parte Motion for Entry of an Order Pursuant to Bankruptcy Rule 2004, Authorizing Discovery Examinations of Sycamore Partners, Stefan Kaluzny, Kent Kleeberger, Aero Investors LLC, and Other Related Discovery* (the "*2004 Motion*").[2] If called upon to testify, I would testify competently to the facts set forth in this Declaration.

4. Stefan Kaluzny is Managing Director of Sycamore Partners ("*Sycamore*"). In May 2014, as part of the closing of certain transactions with the Company, Sycamore and its affiliates obtained the right to designate up to two directors to Aéropostale's board of directors. Sycamore owns TSAM (Delaware) LLC (d/b/a MGF Sourcing US, LLC) ("*MGF*"), one of two principal suppliers to the Debtors. Sycamore also owns Aero Investors LLC, which is a lender to the Company.

5. In the fall of 2013, and prior to Sycamore, MGF, and Aero Investors LLC entering into transactions with the Company, Kaluzny initiated a discussion with me about the possibility of appointing me to Aéropostale's board. During that discussion, I asked Kaluzny

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the 2004 Motion, which has been filed contemporaneously herewith.

2

how active a director he would want me to be. Kaluzny clearly told me that as a Sycamore-designated director, I should "do nothing" and "just observe", because his plan was to let Aéropostale deteriorate so that he could "buy the company in a bankruptcy, and, if he appointed me as CEO I could hit the ground running." I told Kaluzny that was not how I operated.

6.  In May of 2014 both Kaluzny and I became Sycamore-designated directors on the Aéropostale board.

7.  In August of 2014, when I accepted the position of CEO of Aéropostale, I made a courtesy telephone call to Kaluzny. Kaluzny told me that it was "clear we have different goals for the Company" but he wished me good luck in the job.

8.  We later met on February 27, 2015 to discuss the issues behind MGF's performance and the prices it quoted to Aéropostale for merchandise in connection with the Company's critical back-to-school period. At that time, I complained that the costs for goods MGF was quoting to Aéropostale were too high. Based on the prices MGF was quoting, Aéropostale could be paying on an annualized basis approximately $25 million more for merchandise sourced through MGF than it would for comparable merchandise sourced through MGF's competitors. Kaluzny responded by rationalizing that the amount of overpayment did not matter as long as Aéropostale "had enough money to pay the bills." Kaluzny suggested that I "just tell them you made a bad deal" and "explain to them that the costs are really the same and that there is just a $10 million tax on the goods." Kaluzny further stated that "[i]t is the price [Aéropostale] needed to pay Sycamore to prevent Aéro from going into bankruptcy." I remarked

that as board members of Aéropostale, we both owed fiduciary responsibilities to the Company, to which Kaluzny responded that "he had to make his numbers at MGF."

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated: May 3, 2016
       New York, New York

_____
Julian R. Geiger

4