**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

|  |  |  |
|---|---|---|
|  | : |  |
| In re | : | **Chapter 11** |
|  | : |  |
| **AÉROPOSTALE, INC.**, *et al.*, | : | **Case No. 16-11275 (SHL)** |
|  | : |  |
| **Debtors.**[1] | : | **Jointly Administered** |
|  | : |  |

------------------------------------------------------------x

## STATEMENT OF FINANCIAL AFFAIRS FOR
## AEROPOSTALE WEST, INC. (CASE NO. 16-11277)

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows:  Aéropostale, Inc. (3880); Aéropostale West, Inc. (7013); Jimmy'Z Surf Co., LLC (0461); Aero GC Management LLC (4257); Aeropostale Procurement Company, Inc. (8518); Aeropostale Licensing, Inc. (8124); P.S. from Aeropostale, Inc. (5900); GoJane LLC (4923); Aeropostale Canada Corp. (N/A); Aeropostale Holdings, Inc. (7729); and Aeropostale Puerto Rico, Inc. (6477).  The Debtors' corporate headquarters is located at 112 West 34th Street, 22nd Floor, New York, NY 10120.

## GLOBAL NOTES AND STATEMENTS OF LIMITATIONS, METHODOLOGY, AND DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

Aéropostale, Inc. ("*Aéropostale*") and certain of its subsidiaries, as debtors and debtors in possession (collectively, the "*Debtors*"), are filing their respective Schedules of Assets and Liabilities (each, a "*Schedule*," and collectively, the "*Schedules*") and Statement of Financial Affairs (each, a "*Statement*" or "*SOFA*" and collectively, the "*Statements*" or "*SOFAs*") in the Bankruptcy Court for the Southern District of New York (the "*Bankruptcy Court*") pursuant to section 521 of title 11 of the United States Code (the "*Bankruptcy Code*") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*").

These Global Notes and Statements of Limitations, Methodology, and Disclaimer Regarding the Debtors' Schedules and Statements (collectively, the "*Global Notes*") pertain to, and are incorporated by reference in, and comprise and integral part of all of the Schedules and Statements.  The Global Notes are in addition to the specific notes set forth below with respect to the Schedules and Statements (the "*Specific Notes*," and, together with the Global Notes, the "*Notes*").  These Notes should be referred to, and referenced in connection with, any review of the Schedules and Statements.

The Debtors' management prepared the Schedules and Statements with the assistance of their advisors and other professionals.  The Schedules and Statements are unaudited and subject to potential adjustment.  In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of preparation.  The Debtors' management team and advisors have made reasonable efforts to ensure that the Schedules and Statements are as accurate and complete as possible under the circumstances; however, subsequent information or discovery may result in material changes to the Schedules and Statements and errors or omissions may exist.  Notwithstanding any such discovery, new information, or errors or omissions, the Debtors do not undertake any obligation or commitment to update the Schedules and Statements.

The Debtors reserve all rights to amend or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including the right to dispute or otherwise assert offsets or defenses to any claim reflected on the Schedules and Statements as to amount, liability, classification, identity of debtor, or to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated."  Furthermore, nothing contained in the Schedules, Statements, or Notes shall constitute a waiver of any of the Debtors' rights or an admission with respect to their chapter 11 cases, including any issues involving objections to claims, substantive consolidation, equitable subordination, defenses, characterization or re-characterization of contracts and leases, assumption or rejection of contracts and leases under the provisions of chapter 3 of the Bankruptcy Code, causes of action arising under the provisions of chapter 5 of the Bankruptcy Code, or any other relevant applicable laws to recover assets or avoid transfers.

**The Schedules, Statements, and Notes should not be relied upon by any persons for information relating to current or future financial conditions, events, or performance of any of the Debtors or their affiliates.**

1.    **Description of the Cases**.  On May 4, 2016 (the "*Commencement Date*"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On May 4, 2016, the Bankruptcy Court entered an order authorizing the joint administration of these cases pursuant to Bankruptcy Rule 1015(b).  On May 11, 2016, the United States Trustee for Region 2 (the "*U.S. Trustee*") appointed an official committee of unsecured creditors pursuant to section 1102(a)(1) of the Bankruptcy Code (the "*Creditors' Committee*").

2.    **Basis of Presentation**.  For financial reporting purposes, the Debtors generally prepare consolidated financial statements, which include information for Aéropostale and its debtor affiliates.  The Schedules and Statements are unaudited and reflect the Debtors' reasonable efforts to report certain financial information of each Debtor on an unconsolidated basis.  These Schedules and Statements neither purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("*GAAP*"), nor are they intended to be fully reconciled with the financial statements of each Debtor.

The Debtors attempted to attribute the assets and liabilities, certain required financial information, and various cash disbursements to the particular Debtor entity.  However, because the Debtors' accounting systems, policies, and practices were developed for consolidated reporting purposes, rather than reporting by legal entity, it is possible that not all assets and liabilities have been recorded with the correct legal entity on the Schedules and Statements.  Accordingly, the Debtors reserve all rights to supplement and amend the Schedules and Statements in this regard.

Given, among other things, the uncertainty surrounding the valuation of certain assets and liabilities, a Debtor may report more assets than liabilities.  Such report shall not constitute an admission that such Debtor was solvent on the Commencement Date or at any time before or after the Commencement Date. Likewise, a Debtor's reporting more liabilities than assets shall not constitute an admission that such Debtor was insolvent at the Commencement Date or any time before or after the Commencement Date.

3.    **Reporting Date**.  Unless otherwise noted on the specific responses, the Schedules and Statements generally reflect the Debtors' books and records as of the close of business on May 3, 2016.  The Debtors completed a normal fiscal period close on April 30, 2016 (the "*Reporting Date*").  The reported asset values align with the asset values as of May 3, 2016 to the extent possible, although certain asset categories are valued as of the Reporting Date and the liability values are as of

May 3, 2016, adjusted for authorized payments under the First Day Orders (as defined below).

4.     **Current Values**.  The assets and liabilities of each Debtor are listed on the basis of the book value of the asset or liability in the respective Debtor's accounting books and records.  Unless otherwise noted, the carrying value on the Debtor's books, rather than the current market value, is reflected in the Schedules and Statements.

5.     **Confidentiality**.  There may be instances where certain information was not included or redacted due to the nature of an agreement between a Debtor and a third party, concerns about the confidential or commercially sensitive nature of certain information, or to protect the privacy of an individual.  The omissions and redactions are limited to only what is necessary to protect the Debtor or a third party and will provide interested parties with sufficient information to discern the nature of the listing.

6.     **Consolidated Entity Accounts Payable and Disbursement Systems**.  As described in the Cash Management Motion,[1] the Debtors utilize an integrated, centralized cash management system, in the ordinary course of business, to collect, concentrate, and disburse funds generated by their operations (the "***Cash Management System***").  The Debtors maintain a consolidated accounts payable and disbursements system to pay operating and administrative expenses through disbursement accounts.

In the ordinary course of business, the Debtors maintain business relationships among each other, which result in intercompany receivables and payables (the "***Intercompany Claims***") arising from intercompany transactions (the "***Intercompany Transactions***").  As set forth more fully in the Cash Management Motion, the primary Intercompany Transactions giving rise to Intercompany Claims are cash receipts activities, disbursement activities, inventory purchases, and expense allocations.  Historically, Intercompany Claims are not settled by actual transfers of cash among the Debtors.  Instead, the Debtors track all Intercompany Transactions in their accounting system, which concurrently are recorded on the applicable Debtors' balance sheets.  The Debtors' accounting system requires that all general-ledger entries be balanced at the legal-entity level.  Unless otherwise noted, the Debtors have reported the aggregate net intercompany balances among the Debtors as assets on Schedule A/B or as liabilities on Schedule E/F, as appropriate.

---

[1] *Motion of Debtors Pursuant to 11 U.S.C. §§ 105(a), 363, 364, 503, and 507 for Interim and Final Authority to (i) Continue Using Existing Cash Management System, Bank Accounts, and Business Forms, (ii) Implement Changes to the Cash Management System in the Ordinary Course of Business, (iii) Continue Intercompany Transactions, (iv) Provide Administrative Expense Priority for Postpetition Intercompany Claims and for Related Relief* [ECF No. 7] (the "***Cash Management Motion***").

7.      **Accuracy**.  The financial information disclosed herein was not prepared in accordance with federal or state securities laws or other applicable non-bankruptcy law or in lieu of complying with any periodic reporting requirements thereunder.  Persons and entities trading in or otherwise purchasing, selling, or transferring the claims against or equity interests in the Debtors should evaluate this financial information in light of the purposes for which it was prepared.  The Debtors are not liable for and undertake no responsibility to indicate variations from securities laws or for any evaluations of the Debtors based on this financial information or any other information.

8.      **Net Book Value of Assets**.  In many instances, current market valuations are not maintained by or readily available to the Debtors.  It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate resources for the Debtors to obtain current market valuations for all assets.  As such, wherever possible net book values as of the Reporting Date are presented for all assets other than cash, cash equivalents, inventory and FF&E.  Net book value for cash, cash equivalents, inventory and FF&E are generally presented as of May 3, 2016.  When necessary, the Debtors have indicated that the value of certain assets is "Unknown" or "Undetermined."  Amounts ultimately realized may vary materially from net book value (or other value so ascribed).  Accordingly, the Debtors reserve all rights to amend, supplement, and adjust the asset values set forth in the Schedules and Statements.  As applicable, fixed assets and leasehold improvement assets that fully have been depreciated or amortized, or were expensed for GAAP accounting purposes, have no net book value, and, therefore, are not included in the Schedules and Statements.

9.      **Currency**.  All amounts shown in the Schedules and Statements are in U.S. Dollars, unless otherwise indicated.

10.     **Payment of Prepetition Claims Pursuant to First Day Orders**.  Within the first two days of the Debtors' chapter 11 cases, the Bankruptcy Court entered orders (the "***First-Day Orders***") authorizing, but not directing, the Debtors to, among other things, pay certain prepetition (a) service fees and charges assessed by the Debtors' banks and debit and credit card companies; (b) claims of shippers, warehousemen, and miscellaneous lien claimants; (c) certain insurance obligations; (d) obligations to "critical vendors;" (e) customer programs obligations; (f) employee wages, salaries, and related items, including employee benefit programs; and (g) taxes and assessments.  Where the Schedules and Statements list creditors and set forth the Debtors' scheduled amounts attributable to such claims, such schedules amounts reflect balances owed as of the Commencement Date.  To the extent any adjustments are necessary for any payments made on account of such claims following the commencement of these chapter 11 cases pursuant to the authority granted to the Debtors by the Bankruptcy Court under the First Day Orders, such adjustments have been included in the Schedules and Statements unless otherwise noted on the applicable Schedule or Statement.  The Debtors reserve the right to update the

Schedules and Statements to reflect payments made pursuant to the First-Day Orders.

11.    **Other Paid Claims**.  To the extent the Debtors have reached any postpetition settlement with a vendor or other creditor, the terms of such settlement will prevail, supersede amounts listed in the Debtors' Schedules and Statements, and shall be enforceable by all parties, subject to Bankruptcy Court approval.  To the extent the Debtors pay any of the claims listed in the Schedules and Statements pursuant to any orders entered by the Bankruptcy Court, the Debtors reserve all rights to amend and supplement the Schedules and Statements and take other action, such as filing claims objections, as is necessary and appropriate to avoid overpayment or duplicate payment for such liabilities.

12.    **Setoffs**.  The Debtors routinely incur certain setoffs from customers and suppliers in the ordinary course of business.  Setoffs in the ordinary course can result from various items including, but not limited to, intercompany transactions, pricing discrepancies, customer programs, returns, promotional funding, and other disputes between the Debtors and their customers and/or suppliers.  These routine setoffs are consistent with the ordinary course of business in the Debtors' industry, and, therefore, can be particularly voluminous, unduly burdensome, and costly for the Debtors to regularly document.  Therefore, although such setoffs and other similar rights may have been accounted for when scheduling certain amounts, these ordinary course setoffs are not independently accounted for, and, as such, are excluded from the Debtors' Schedules and Statements.  Any setoff of a prepetition debt to be applied against the Debtors is subject to the automatic stay and must comply with section 553 of the Bankruptcy Code.

13.    **Inventory**.  Inventories are valued at cost on the company balance sheet using the average cost method.  Inventory reserves and adjustments are based on calculations of a sample store physical inventory results, product-mix adjustments, and other inventory reserves on the Debtors' books and records.  As such, individual inventory balances reported include inventory reserves.

14.    **Property, plant and equipment**.  Store furniture and fixtures and leasehold improvements are amortized over the lesser of their estimated useful lives or the remaining available lease terms, up to a maximum life of 10 years.  Computer equipment is amortized over their estimated useful lives, up to a maximum life of 5 years.  The inventories, property and equipment listed in these Schedules are presented without consideration of any mechanics' or other liens.

15.    **Debtors' Reservation of Rights**.  Nothing contained in the Schedules, Statements, or Notes shall constitute a waiver of rights with respect to these chapter 11 cases, including, but not limited to, the following:

a.    Any failure to designate a claim listed on the Debtors' Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such amount is not "disputed,"

"contingent," or "unliquidated."  The Debtors reserve the right to dispute and to assert setoff rights, counterclaims, and defenses to any claim reflected on its Schedules as to amount, liability, and classification, and to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated."

b.    The listing of a claim (a) on Schedule D as "secured," (b) on Schedule E/F (Part 1) as "priority," (c) on Schedule E/F (Part 2) as "unsecured," or (d) listing a contract or lease on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the claimant, or a waiver of the Debtors' rights to recharacterize or reclassify such claim or contract pursuant to a schedule amendment, claim objection or otherwise.  Moreover, although the Debtors may have scheduled claims of various creditors as secured claims for informational purposes, no current valuation of the Debtors' assets in which such creditors may have a security interest has been undertaken.  Except as provided in an order of the Court, the Debtors reserve all rights to dispute and challenge the secured nature or amount of any such creditor's claims or the characterization of the structure of any transaction, or any document or instrument related to such creditor's claim.

c.    In the ordinary course of their business, the Debtors may lease equipment from certain third-party lessors for use in the daily operation of its business.  Any such leases are set forth in Schedule G and any current amount due under such leases that were outstanding as of the Petition Date is listed on Schedule E/F.  The property subject to any of such leases is not reflected in Schedule A/B as either owned property or assets of the Debtors nor is such property or assets of third parties within the control of the Debtors.  Nothing in the Schedules is or shall be construed as an admission or determination as to the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all rights with respect to any of such issues, including the recharacterization thereof.

d.    The claims of individual creditors for, among other things, goods, products, services or taxes are listed as the amounts entered on the Debtors' books and records and may not reflect credits, allowances or other adjustments due from such creditors to the Debtors.  The Debtors reserve all of their rights with regard to such credits, allowances and other adjustments, including the right to assert claims objections and/or setoffs with respect to the same.

e.    The Debtors' businesses are part of a complex enterprise.  Although the Debtors have exercised their reasonable efforts to ensure the accuracy of their Schedules and Statements, they nevertheless may contain errors and omissions.  The Debtors hereby reserve all of their rights to dispute the validity, status, and enforceability of any contracts, agreements, and leases

set forth on the Debtors' Schedules and Statements, and to amend and supplement the Schedules and Statements as necessary.

f.     The Debtors further reserve all of their rights, claims, and causes of action with respect to the contracts and agreements listed on the Schedules and Statements, including, but not limited to, the right to dispute and challenge the characterization or the structure of any transaction, document, and instrument related to a creditor's claim.

g.     The Debtors exercised their reasonable efforts to locate and identify guarantees and other secondary liability claims (the "***Guarantees***") in their executory contracts, unexpired leases, secured financings, debt instruments, and other agreements. Where such Guarantees have been identified, they are included in the relevant Schedules and Statements. Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other agreements inadvertently may have been omitted. Thus, the Debtors reserve their rights to amend and supplement the Schedules and Statements to the extent that additional Guarantees are identified. In addition, the Debtors reserve the right to amend the Schedules and Statements to re-characterize and reclassify any such contract or claim.

h.     Listing a contract or lease on the Debtors' Schedules and Statements shall not be deemed an admission that such contract is an executory contract, such lease is an unexpired lease, or that either necessarily is a binding, valid, and enforceable contract. The Debtors hereby expressly reserve the right to assert that any contract listed on the Debtors' Schedules and Statements does not constitute an executory contract within the meaning of section 365 of the Bankruptcy Code, as well as the right to assert that any lease so listed does not constitute an unexpired lease within the meaning of section 365 of the Bankruptcy Code.

i.     In the past two years, the Debtors operated through certain entities that were subsequently dissolved prior to the Commencement Date. No revenue, assets or liabilities associated with these entities have been reported in the Debtors' Schedules or Statements.

16.    **Global Notes Control**. In the event that the Schedules or Statements differ from any of the foregoing Global Notes, the Global Notes shall control.

**Specific Notes with Respect to the Debtors' Schedules of Assets and Liabilities**

1.    **Schedule A/B.**

  a.  **A/B.3**.  As set forth more fully in the Cash Management Motion, the Debtors fund their operations through a series of disbursement accounts. The Debtors maintain certain of these disbursement accounts as zero-balance accounts, and, therefore, such accounts do not carry a cash balance at the close of each business day.  The values assigned to the Debtors' interest in these accounts are net of any disbursements made therefrom as of the close of business on the Reporting Date.  Accordingly, due to the timing of account reconciliations and the flow of funds in the Debtors' Cash Management System, the values assigned to the Debtors' interest in these accounts may be listed as negative dollar amounts.

  b.  **A/B.10-12**.  The Debtors' accounts receivable information includes receivables from the Debtors' customers or other parties, which are calculated net of any amounts that, as of the Reporting Date, may be owed to such customers or parties in the form of offsets or other price adjustments pursuant to the Debtors' customer programs and day-to-day operations or may, in the Debtors' opinion, be difficult to collect from such parties due to the passage of time or other circumstances.

  c.  **A/B.18-26.**  Schedule A/B items 18-26 identifies the estimated value of the Debtors' inventories.  The Debtors have estimated an amount of lost or damaged inventory and deducted such amount from their inventory balance.

  d.  **A/B.63, 67**.  Certain of the Debtors have customer information from gift card programs and credit card and online sales, which information includes personally identifiable information.  The Debtors do not sell or actively maintain these lists, but maintain certain records in the ordinary course of business.  Due to the need to protect confidential information and individual privacy, the Debtors have not furnished any customer lists on their Schedules.

  e.  **A/B.70-76.**  Despite exercising their reasonable efforts to identify all known assets, the Debtors may not have listed all of their causes of action or potential causes of action against third parties as assets in their Schedules including, but not limited to, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant non-bankruptcy laws to recover assets.  Unless otherwise noted on specific responses, items reported on Schedule A/B are reported from the Debtors' book and records as of the Commencement Date.  The Debtors reserve all of their rights with respect to any claims and causes of action they may have.  Neither these Notes nor the Schedules shall be deemed a waiver of

any such claims or causes of action or to prejudice or impair the assertion thereof in any way.

f.   **A/B. 77**.  Certain prepaid or amortized assets are listed on Schedule A/B, Item 77 in accordance with the Debtors' books and records.  These amounts do not necessarily reflect assets the Debtors will be able to collect or realize.

2.   **Schedule D**.  The claims listed on Schedule D, as well as the guarantees of those claims listed on Schedule H, arose and were incurred on various dates; a determination of the date upon which each claim arose or was incurred would be unduly burdensome and cost prohibitive.  Accordingly, not all such dates are included for each claim.  To the best of the Debtors' knowledge, all claims listed on Schedule D arose or were incurred before the Commencement Date.  The amounts in Schedule D are consistent with the Debtors' stipulations set forth in the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 364 and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (i) Authorizing Incurrence by the Debtors of Postpetition Secured Indebtedness, (ii) Granting Liens, (iii) Authorizing Use of Cash Collateral by the Debtors and Providing for Adequate Protection, and (iv) Modifying the Automatic Stay* [ECF No. 298] (the "**DIP Order**"), which are subject to investigation and challenge by the Creditors' Committee or other parties in interest, all as more fully set forth in the DIP Order.

Except as otherwise agreement or stated pursuant to a stipulation, agreed order, or general order entered by the Bankruptcy Court that is or becomes final, including the DIP Order, the Debtors and their estates reserve their right to dispute and challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a creditor listed on Schedule D of any Debtor and, subject to the foregoing limitations, note as follows: (a) although the Debtors may have scheduled claims of various creditors as secured claims for informational purposes, no current valuation of the Debtors' assets in which such creditors may have a lien has been undertaken; (b) the Debtors have included the results of UCC lien searches performed prior to the Commencement Date (the reporting of such results, however, shall not be deemed an admission as to the validity or existence of any such lien); (c) the Debtors reserve all rights to dispute and challenge the secured nature of any creditor's claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's claim; and (d) the descriptions provided on Schedule D only are intended to be a summary.  Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens.

Detailed descriptions of the Debtors' prepetition debt structure and descriptions of collateral relating to the debt contained on Schedule D are contained in the *Declaration of David J. Dick Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York* [ECF No. 4] (the "***First Day***

*Declaration*"). As described in the First Day Declaration, the priority of the Debtors' prepetition secured debt is set forth in that certain intercreditor agreement, dated as of May 23, 2014 (the "***Intercreditor Agreement***"). The Intercreditor Agreement was superseded, in part, pursuant to the DIP Order. Please see the DIP Order for additional detail.

Except as specifically stated herein, real property lessors, equipment lessors, utility companies, and other parties which may hold security deposits or other security interests have not been listed on Schedule D. The Debtors have not listed on Schedule D any parties whose claims may be secured through rights of setoff, deposits, or advance payments posted by, or on behalf of, the Debtors, or judgment or statutory lien rights.

3.    **Schedule E/F**

a.     **(Part 1)**. The claims listed on Schedule E/F (Part 1) arose and were incurred on various dates; a determination of the date upon which each claim arose or was incurred would be unduly burdensome and cost prohibitive. Accordingly, not all such dates are included for each claim. To the best of the Debtors' knowledge, all claims listed on Schedule E/F arose or were incurred before the Commencement Date.

The Debtors have not listed any tax, wage, or wage-related obligations which the Debtors have paid pursuant to First-Day Orders on Schedule E/F. The Debtors reserve the right to dispute or challenge whether creditors listed on Schedule E/F are entitled to priority claims.

Claims owing to various taxing authorities to which the Debtors potentially may be liable are included on the Debtors' Schedule E/F. Certain of such claims, however, may be subject to ongoing audits and/or the Debtors otherwise are unable to determine with certainty the amount of the remaining claims listed on Schedule E/F. Therefore, the Debtors have listed all such claims as unliquidated, pending final resolution of ongoing audits or other outstanding issues.

The Debtors reserve the right to assert that any claim listed on Schedule E/F does not constitute a priority claim under the Bankruptcy Code.

b.     **(Part 2)**. The Debtors have exercised their reasonable efforts to list all liabilities on Schedule E/F of each applicable Debtor. As a result of the Debtors' consolidated operations, however, the reader should review Schedule E/F for all Debtors in these cases for a complete understanding of the unsecured debts of the Debtors. Certain creditors listed on Schedule E/F may owe amounts to the Debtors, and, as such, the Debtors may have valid setoff and recoupment rights with respect to such amounts. The amounts listed on Schedule E/F may not reflect any such right of setoff or recoupment, and the Debtors reserve all rights to assert the same and to

dispute and challenge any setoff and/or recoupment rights that may be asserted against the Debtors by a creditor.  Additionally, certain creditors may assert mechanic's, materialman's, or other similar liens against the Debtors for amounts listed on Schedule E/F.  The Debtors reserve their rights to dispute and challenge the validity, perfection, and immunity from avoidance of any lien purported to be perfected by a creditor listed on Schedule E/F of any Debtor.  In addition, certain claims listed on Schedule E/F (Part 2) may be entitled to priority under 11 U.S.C. § 503(b)(9).

The Debtors have made reasonable efforts to include all unsecured creditors on Schedule E/F including, but not limited to, trade creditors, occupancy creditors, consultants, and other service providers; however, the Debtors believe that there are instances where creditors have yet to provide proper invoices for prepetition goods or services.  While the Debtors maintain general accruals to account for these liabilities in accordance with GAAP, these amounts are estimates and have not been included on Schedule E/F.

Schedule E/F also contains information regarding pending litigation involving the Debtors.  In certain instances, the relevant Debtor that is the subject of the litigation is unclear or undetermined.  To the extent that litigation involving a particular Debtor has been identified, however, such information is included on that Debtor's Schedule E/F.  The amounts for these potential claims are listed as undetermined and marked as contingent, unliquidated, and disputed in the Schedules.

Schedule E/F includes the aggregate net intercompany payable amounts that may or may not result in allowed or enforceable claims by or against a given Debtor, and listing these payables is not an admission on the part of the Debtors that the Intercompany Claims are enforceable or collectable.  The intercompany payables also may be subject to set off, recoupment, netting, or other adjustments made pursuant to intercompany policies and arrangements not reflected in the Schedules.

Schedule E/F does not include certain balances including deferred liabilities, accruals, or general reserves.  Such amounts are, however, reflected on the Debtors' books and records as required in accordance with GAAP.  Such accruals primarily represent general estimates of liabilities and do not represent specific claims as of the Commencement Date.  The Debtors have made reasonable efforts to include as contingent, unliquidated and/or disputed the claim of any party not included on the Debtors' open accounts payable that is associated with an account that has accrual or receipt not invoiced.

The claims of individual creditors may not reflect credits and/or allowances due from creditors to the applicable Debtor.  The Debtors reserve all of their rights with respect to any such credits and/or

allowances, including the right to assert objections and/or setoffs or recoupments with respect to same.

The Bankruptcy Court has authorized the Debtors to pay, in their discretion, certain non-priority unsecured claims, pursuant to the First-Day Orders. To the extent practicable, each Debtor's Schedule E/F is intended to reflect the balance as of May 3, 2016, adjusted for postpetition payments of some or all of the Court-approved payments. Each Debtor's Schedule E/F will reflect some of the Debtor's payments of certain claims pursuant to these orders, and, to the extent an unsecured claim has been paid or may be paid, it is possible such claim is not included on Schedule E/F. Certain Debtors may pay additional claims listed on Schedule E/F during these Chapter 11 cases pursuant to these and other orders of the Bankruptcy Court and the Debtors reserve all of their rights to update Schedule E/F to reflect such payments or to modify the claims register to account for the satisfaction of such claim. Additionally, Schedule E/F does not include potential rejection damage claims, if any, of the counterparties to executory contracts and unexpired leases that have been, or may be, rejected.

4.    **Schedule G**. Although reasonable efforts have been made to ensure the accuracy of Schedule G regarding executory contracts and unexpired leases (collectively, the "*Agreements*"), review is ongoing and inadvertent errors, omissions or over-inclusion may have occurred. The Debtors may have entered into various other types of Agreements in the ordinary course of their businesses, such as indemnity agreements, supplemental agreements, amendments/letter agreements, and confidentiality agreements which may not be set forth in Schedule G. In addition, as described herein, certain confidential information has been omitted or redacted.

The Debtors have not listed short-term purchase and sales orders because of their large number and transitory nature. Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or unexpired lease. Schedule G may be amended at any time to add any omitted Agreements. Likewise, the listing of an Agreement on Schedule G does not constitute an admission that such Agreement is an executory contract or unexpired lease or that such Agreement was in effect on the Petition Date or is valid or enforceable. The Agreements listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letter and other documents, instruments and agreements which may not be listed on Schedule G. Executory agreements that are oral in nature have not been included in Schedule G.

Any and all of the Debtors' rights, claims and causes of action with respect to the Agreements listed on Schedule G are hereby reserved and preserved, and as such, the Debtors hereby reserve all of their rights to (i) dispute the validity, status, or enforceability of any Agreements set forth on Schedule G, (ii) dispute or

challenge the characterization of the structure of any transaction, or any document or instrument related to a creditor's claim, including, but not limited to, the Agreements listed on Schedule G and (iii) to amend or supplement such Schedule as necessary.

Certain of the Agreements listed on Schedule G may have been entered into on behalf of more than one of the Debtors.  Additionally, the specific Debtor obligor(s) to certain of the Agreements could not be specifically ascertained in every circumstance.  In such cases, the Debtors have made reasonable efforts to identify the correct Debtors' Schedule G on which to list the agreement and, where a contract party remained uncertain, such Agreements may have been listed on a different Debtor's Schedule G.

5. **Schedule H**.  The debtors are party to various debt agreements which were executed by multiple Debtors and other domestic subsidiaries.  The obligations of guarantors under prepetition, secured credit agreements are noted on Schedule H for each individual debtor.  In the ordinary course of their businesses, the Debtors are involved in pending or threatened litigation and claims arising out of the conduct of their businesses.  Some of these matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counter-claims against other parties.  Because such claims are listed on each Debtor's Schedule E/F and SOFA 7, as applicable, they have not been set forth individually on Schedule H.  Further, the Debtors may not have identified certain guarantees that are embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments and other such agreements.  No claim set forth on the Schedules and Statements of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other Debtors or non-Debtors.  To the extent there are guarantees connected with any joint ventures to which the Debtors may be a party, such agreements are not identified in the Debtors' Schedules.  The Debtors reserve all of their rights to amend the Schedules to the extent that additional guarantees are identified or such guarantees are discovered to have expired or be unenforceable.

## Specific Notes With Respect to the Debtors' Statements of Financial Affairs

1.   **SOFA 1**.  The income stated in the Debtors' response to SOFA 1 is consistent with the consolidated sales disclosed in compliance with GAAP.   The Debtors did not make specific adjustments to sales to account for certain nuances such as vendor allowances that may result in incremental cash receipts, but are recognized as reductions to cost of goods sold.

   The Debtors' fiscal year ends on the last Saturday in January:

   FY 2014: Comprised of 52 weeks ending January 31, 2015, consisting of four 13-week periods.

   FY 2015: Comprised of 52 weeks ending January 30, 2016, consisting of four 13-week periods.

   FY 2016: Comprised of 52 weeks ending January 28, 2017, consisting of four 13-week periods.  This amount includes income in the 13-weeks ending April 30, 2016.

2.   **SOFA 3**.  The obligations of the Debtors are primarily paid by and through Aéropostale, notwithstanding the fact that certain obligations may be obligations of one or more of the affiliated debtors.  Certain negative amounts may appear in the Debtors' response to SOFA 3 as a result of allocating consolidated payments to the appropriate Debtor that may have incorporated ordinary course credits or offsets available to the Debtor at the time of payment.

   The payments disclosed in SOFA 3 are based on payments made by the Debtors with payment dates from February 4, 2016 to May 4, 2016.  The actual dates that cash cleared the Debtors' bank accounts were not considered.  The Debtors' accounts payable system does not include the corresponding payment clear dates and compiling this data would have required a significant manual review of individual bank statements.  It is expected, however, that many payments included in SOFA 3 have payment clear dates that are the same as payment dates (e.g., wires and other forms of electronic payments).

   The response to SOFA 3 excludes disbursements or transfers in SOFA 9, SOFA 11 and payments made relating to certain employee obligations including medical expenses.

   Amounts still owed to creditors will appear on the Schedules of Assets and Liabilities for each of the Debtors.

3.   **SOFA 4**.  For purposes of the Schedules and Statements, the Debtors define insiders as individuals that, based upon the totality of circumstances, have a controlling interest in, or exercise sufficient control over the respective Debtor so as to unqualifiably dictate corporate policy and the disposition of assets.  The Debtors do not take any position with respect to (i) such person's influence over

the control of the Debtors; (ii) the management responsibilities or functions of such individual; (iii) the decision-making or corporate authority of such individual; or (iv) whether such individual could successfully argue that he or she is not an "insider" under applicable law, including the federal securities law, or with respect to any theories of liability or any other purposes. As such, the Debtors reserve all rights to dispute whether someone identified in response to SOFA 4 is in fact an "insider" as defined in section 101(13) of the Bankruptcy Code. For more information regarding each Debtor's officers and directors, see SOFA 28 and SOFA 29.

The payroll-related amounts shown in response to this question for any salary, bonus or additional compensation, and/or severance payments are gross amounts that do not include reductions for amounts including employee tax or benefit withholdings.

In the ordinary course of business, certain corporate or personal credit cards utilized by an insider are used to pay for travel and business-related expenses for various other individuals employed by the Debtors. As it would be unduly burdensome for the Debtors to analyze which credit card expenses related to those incurred on behalf of an insider as opposed to another employee (or the Debtors), the Debtors have listed the aggregate amount paid for such expenses.

Amounts still owed to creditors will appear on the Schedules of Assets and Liabilities for each of the Debtors.

4.     **SOFA 5**. The operating Debtors occasionally return damaged, unsatisfactory or out of specification goods to vendors in the ordinary course of business. Other than ordinary course items, the Debtors are not aware of any property that has been returned to the seller.

5.     **SOFA 6**. The Debtors accept payment in their various locations in the form of credit cards. As a result of the relationship with the credit card processing companies, the Debtors are involved in setoff transactions every day. Further, the Debtors' relationships with their vendors require setoffs on regular cycles (weekly and monthly). Documentation of these setoff transactions for the 90 days prior to the Commencement Date would be onerous and unwieldy. Consequently, the Debtors have not attempted to report this information on these Statements.

The operating Debtors engage in certain customer programs, including return and refund programs pursuant to which customers may receive credits. Such transactions were not considered setoffs for the purpose of responding to SOFA 6, although the Debtors reserve all rights with respect thereto and make no admission of waiver thereby.

6.     **SOFA 7**. The actions described in response to SOFA 7 are the responsive proceedings or pending proceedings of which the Debtors are aware. The actions

described in SOFA 7 include patent infringement, employee matters, and personal injury suits.

The Debtors reserve all of their rights and defenses with respect to any and all listed lawsuits and administrative proceedings. The listing of any such suits and proceedings shall not constitute an admission by the Debtors of any liabilities or that the actions or proceedings were correctly filed against the Debtors or any affiliates of the Debtors. The Debtors also reserve their rights to assert that neither the Debtors nor any affiliate of the Debtors is an appropriate party to such actions or proceedings. Further, the Debtors own property in numerous jurisdictions and in the ordinary course of business have disputed property valuations/tax assessments. The Debtors have not listed such disputes on SOFA 7.

7.    **SOFA 9**. The donations and/or charitable contributions listed in response to SOFA 9 represent payments made to third parties during the applicable timeframe that were recorded as such within the Debtors' books and records.

8.    **SOFA 10**. The losses listed may exclude those incurred in the ordinary course of business or those where the amount is *de minimis*. Amounts listed may include the value of property or estimated claim amounts for shrinkage and damage, as well as other amounts.

9.    **SOFA 11**. All payments for services of any entities who provided consultation concerning debt counseling or restructuring services, relief under the Bankruptcy Code or preparation of a petition in bankruptcy within one year immediately preceding the Commencement Date were made by Aéropostale, Inc. and are, therefore, listed on that Debtor's response to SOFA 11. Additional information regarding the Debtors' retention of professional service firms is more fully described in the individual retention applications for those firms and related orders.

10.    **SOFA 13**. The Debtors may, from time to time and in the ordinary course of business, transfer equipment and other assets and/or sell certain equipment and other assets to third parties. These types of ordinary course transfers have not been disclosed in SOFA 13.

To the extent that the Debtors vacated store locations during the three years immediately preceding the Commencement Date, information on these former store locations is contained in the Debtors' response to SOFA 14. As part of the store closure process, the Debtors may sell equipment, hardware and other assets with value to interested parties such as the landlord and/or third party liquidators. The Debtors may also abandon assets in place at the locations for which they have no future use or have been unable to sell to a third party. Certain *de minimis* transfers of assets resulting from such actions may not have been captured in the Debtors' response to SOFA 13.

11.    **SOFA 21**.  In the ordinary course of business, the Debtors' retail locations contain various equipment and items owned by others including, but not limited to, copy machines and computer hardware.  Additionally, the Debtors may utilize leased property in their ordinary course of business.  Therefore, the Debtors may hold property subject to leases listed on the Debtors' Schedule G.

12.    **SOFA 25**.  The Debtors have used their reasonable efforts to identify the beginning and ending dates of all businesses in which the Debtors were a partner or owned five percent or more of the voting or equity securities within the six years immediately preceding the Commencement Date.  In certain instances, however, the dissolution dates of certain entities that are no longer in existence were not readily available and, therefore, are not included in SOFA 25.  All such entities were either merged with other entities owned by the Debtors or were dissolved prior to the Commencement Date.

13.    **SOFA 26(d)**.  The Debtors provided financial statements in the ordinary course of business to certain parties for business, statutory, credit, financing and other reasons.  Recipients have included regulatory agencies, financial institutions, investment banks, debtholders, and their legal and financial advisors.  Financial statements have also been provided to other parties as requested.

14.    **SOFA 29**.  Disclosures relate specifically to terminated job titles or positions and are not indicative of the individuals' current employment status with the Debtors.

15.    **SOFA 30**.  Any and all known disbursements to insiders of the Debtors, as defined above, have been listed in the response to SOFA 4.  The items listed under SOFA 30 incorporate by reference any items listed under SOFA 4, and vice versa.

**Fill in this information to identify the case:**

Debtor name  **Aéropostale West, Inc.**

United States Bankruptcy Court for the:  SOUTHERN DISTRICT OF NEW YORK

Case number (if known)  **16-11277**

☐ Check if this is an amended filing

## Official Form 207
## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy          04/16

**The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).**

**Part 1:**   **Income**

1.  **Gross revenue from business**

☐ None.

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
|---|---|---|
| **From the beginning of the fiscal year to filing date:**<br>From  **1/31/2016** to **Filing Date** | ☐ Operating a business<br>■ Other   **Stores Sales** | $47,701,434.00 |
| **For prior year:**<br>From  **2/01/2015** to  **1/30/2016** | ☐ Operating a business<br>■ Other   **Stores Sales** | $236,894,095.00 |
| **For year before that:**<br>From  **2/02/2014** to  **1/31/2015** | ☐ Operating a business<br>■ Other   **Stores Sales** | $264,429,604.00 |

2.  **Non-business revenue**
Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

■ None.

| | Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
|---|---|---|

**Part 2:**   **List Certain Transfers Made Before Filing for Bankruptcy**

3.  **Certain payments or transfers to creditors within 90 days before filing this case**
List payments or transfers--including expense reimbursements--to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,425. (This amount may be adjusted on 4/01/19 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☐ None.

| Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>Check all that apply |
|---|---|---|---|

| Debtor | **Aéropostale West, Inc.** | | Case number (if known) | **16-11277** |
|---|---|---|---|---|

| | Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>Check all that apply |
|---|---|---|---|---|
| 3.1. | **See SOFA Part 2, Quesiton 3 Attachment** | | **$11,119.23** | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other___ |

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,425. (This amount may be adjusted on 4/01/19 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

■ None.

| Insider's name and address<br>Relationship to debtor | Dates | Total amount of value | Reasons for payment or transfer |
|---|---|---|---|

5. **Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

■ None

| Creditor's name and address | Describe of the Property | Date | Value of property |
|---|---|---|---|

6. **Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☐ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|
| - | **Set offs: The Debtors accept payment in their various facilities in the form of credit cards. As a result of the relationship with the credit card processing companies, the Debtors are involved in setoff transactions every day. Further, the Debtors' relationships with their vendors require setoffs on regular cycles (weekly and monthly).  Documentation of these setoff transactions for the 90 days prior to the Commencement Date would be onerous and unwieldly.  Consequently, the Debtors have not attempted to report this information on these Statements.**<br>Last 4 digits of account number: _____ | | **$0.00** |

**Part 3:**    Legal Actions or Assignments

7. **Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

☐ None.

| Case title<br>Case number | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|

Debtor   **Aéropostale West, Inc.**                                           Case number *(if known)* **16-11277**

| Case title Case number | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| 7.1. **See SOFA Part 3, Question 7 Attachment** | | | ☐ Pending ☐ On appeal ☐ Concluded |

**8. Assignments and receivership**
List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

■ None

---

### Part 4:   Certain Gifts and Charitable Contributions

**9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

■ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|

---

### Part 5:   Certain Losses

**10. All losses from fire, theft, or other casualty within 1 year before filing this case.**

■ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received. List unpaid claims on Official Form 106A/B *(Schedule A/B: Assets – Real and Personal Property).* | Dates of loss | Value of property lost |
|---|---|---|---|

---

### Part 6:   Certain Payments or Transfers

**11. Payments related to bankruptcy**
List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

■ None.

| Who was paid or who received the transfer? Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|

**12. Self-settled trusts of which the debtor is a beneficiary**
List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

■ None.

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|

**13. Transfers not already listed on this statement**
List any transfers of money or other property by sale, trade, or any other means made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

---

Debtor    **Aéropostale West, Inc.**                                                            Case number (if known) **16-11277**

■ None.

| Who received transfer?<br>Address | Description of property transferred or<br>payments received or debts paid in exchange | Date transfer<br>was made | Total amount or<br>value |
| --- | --- | --- | --- |

| **Part 7:** | **Previous Locations** |
| --- | --- |

14. **Previous addresses**
    List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☐ Does not apply

| Address | Dates of occupancy<br>From-To |
| --- | --- |
| 14.1. **See SOFA Part 7, Question 14 Attachment** | |

| **Part 8:** | **Health Care Bankruptcies** |
| --- | --- |

15. **Health Care bankruptcies**
    Is the debtor primarily engaged in offering services and facilities for:
    - diagnosing or treating injury, deformity, or disease, or
    - providing any surgical, psychiatric, drug treatment, or obstetric care?

    ■ No. Go to Part 9.
    ☐ Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services<br>the debtor provides | If debtor provides meals<br>and housing, number of<br>patients in debtor's care |
| --- | --- | --- |

| **Part 9:** | **Personally Identifiable Information** |
| --- | --- |

16. **Does the debtor collect and retain personally identifiable information of customers?**

    ■ No.
    ☐ Yes. State the nature of the information collected and retained.

17. **Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

    ■ No. Go to Part 10.
    ☐ Yes. Does the debtor serve as plan administrator?

| **Part 10:** | **Certain Financial Accounts, Safe Deposit Boxes, and Storage Units** |
| --- | --- |

18. **Closed financial accounts**
    Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?
    Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

■ None

| Financial Institution name and<br>Address | Last 4 digits of<br>account number | Type of account or<br>instrument | Date account was<br>closed, sold,<br>moved, or<br>transferred | Last balance<br>before closing or<br>transfer |
| --- | --- | --- | --- | --- |

19. **Safe deposit boxes**
    List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

Debtor   **Aéropostale West, Inc.**                                    Case number *(if known)* **16-11277**

■ None

| Depository institution name and address | Names of anyone with access to it Address | Description of the contents | Do you still have it? |
|---|---|---|---|

20. **Off-premises storage**
List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☐ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Do you still have it? |
|---|---|---|---|
| **See SOFA Part 10, Question 20 Attachment** | **See SOFA Part 10, Question 20 Attachment** | | ☐ No<br>■ Yes |

**Part 11:    Property the Debtor Holds or Controls That the Debtor Does Not Own**

21. **Property held for another**
List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

■ None

**Part 12:    Details About Environment Information**

For the purpose of Part 12, the following definitions apply:
*Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

*Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

*Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

22.   **Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

   ■  No.
   ☐  Yes. Provide details below.

| Case title<br>Case number | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|

23.  **Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

   ■  No.
   ☐  Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

24.  **Has the debtor notified any governmental unit of any release of hazardous material?**

   ■  No.
   ☐  Yes. Provide details below.

Debtor   **Aéropostale West, Inc.**                                    Case number *(if known)* **16-11277**

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| | | | |

**Part 13:**   Details About the Debtor's Business or Connections to Any Business

**25. Other businesses in which the debtor has or has had an interest**
List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

■ None

| Business name address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
| | | |

**26. Books, records, and financial statements**
26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.
☐ None

| | Name and address | Date of service<br>From-To |
|---|---|---|
| 26a.1. | **David Dick**<br>**112 W 34th Street**<br>**22nd Floor**<br>**New York, NY 10120** | **CFO - February 2015**<br>**to present** |
| 26a.2. | **Marc Miller**<br>**112 W 34th Street**<br>**22nd**<br>**New York, NY 10120** | **CFO through**<br>**February 2015** |
| 26a.3. | **Joe Pachella**<br>**125 Chubb Ave**<br>**Lyndhurst, NJ 07071** | **GVP Finance - Full**<br>**Period** |
| 26a.4. | **Ross Citta**<br>**11 Heather Court**<br>**Dover, NJ 07801** | **CAO - through**<br>**January 2016** |
| 26a.5. | **Harrry Axt**<br>**125 Chubb Ave**<br>**Lyndhurst, NJ 07071** | **VP Controller - Full**<br>**Period** |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| | Name and address | Date of service<br>From-To |
|---|---|---|
| 26b.1. | **BDO USA, LLP**<br>**100 Park Ave**<br>**New York, NY 10017** | **8/2015 to present** |

| | Name and address | Date of service<br>From-To |
|---|---|---|
| 26b.2. | **Deloitte & Touche LLP**<br>**30 Rockefeller Plaza**<br>**New York, NY 10112-0015** | **2002 to 8/2015** |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None

Debtor   **Aéropostale West, Inc.**                                      Case number *(if known)* **16-11277**

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|
| 26c.1.   **Joe Pachella**<br>**125 Chubb Ave**<br>**Lyndhurst, NJ 07071** | |
| 26c.2.   **Harry Axt**<br>**125 Chubb Ave**<br>**Lyndhurst, NJ 07071** | |

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None

| Name and address |
|---|
| 26d.1.   **See SOFA Part 13 Question 26d Attachment** |

## 27. Inventories

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☐ No
■ Yes. Give the details about the two most recent inventories.

| | Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|---|
| 27.1. | **Washington Inventory Service** | **January 2016** | **$19,286,043** |
| | Name and address of the person who has possession of inventory records | | |
| | **Records held at Lyndhurst, NJ Corporate**<br>**P.O. BOX 200081**<br>**Dallas, TX 75320-0081** | | |
| 27.2. | **Washington Inventory Service** | **January 2015** | **$17,346,080** |
| | Name and address of the person who has possession of inventory records | | |
| | **Records held at Lyndhurst, NJ Corporate**<br>**P.O. BOX 200081**<br>**Dallas, TX 75320-0081** | | |

## 28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| **See SOFA Part 13, Question 28 Attachment** | | | |

## 29. Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?

☐ No
■ Yes. Identify below.

Debtor   **Aéropostale West, Inc.**                                    Case number *(if known)* **16-11277**

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|------|---------|-------------------------------------|---------------------------------------------------|
| **See SOFA Part 13, Question 29 Attachment** | | | |

**30. Payments, distributions, or withdrawals credited or given to insiders**
Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

■ No
☐ Yes. Identify below.

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|-------------------------------|------------------------------------------------------|-------|--------------------------------|

**31. Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☐ No
■ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|--------------------------------|----------------------------------------------------------|
| **Aeropostale, Inc.** | **EIN:   31-1443880** |

**32. Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

■ No
☐ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|--------------------------------|----------------------------------------------------------|

**Part 14:**   **Signature and Declaration**

**WARNING** -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   **June 17, 2016**

**/s/ David Dick**                                    **David Dick**
Signature of individual signing on behalf of the debtor          Printed name

Position or relationship to debtor   **Chief Financial Officer**

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**
☐ No
■ Yes

In re Aéropostale West, Inc.
Case No. 16-11277
SOFA Part 2, Question 3 - Payments or transfers made to creditors within 90 days of commencement of this case

| Creditor Name | Address1 | Address2 | Address3 | Address4 | City | State | Zip | Country | Reasons for payment or transfer | Dates of Payments | Total Amount or value |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Gretchen Feliz Rondez | 112 West 34th Street | 22nd Floor | | | New York | NY | 10120 | | Bonus - Sales | 2/19/2016 | $850.00 |
| Gretchen Feliz Rondez | 112 West 34th Street | 22nd Floor | | | New York | NY | 10120 | | Retention Pay | 2/19/2016 | $4,107.69 |
| Gretchen Feliz Rondez | 112 West 34th Street | 22nd Floor | | | New York | NY | 10120 | | Severance H/E | 2/19/2016 | $6,161.54 |
| **Gretchen Feliz Rondez Total** | | | | | | | | | | | **$11,119.23** |
| **Grand Total** | | | | | | | | | | | **$11,119.23** |

In re Aeropostale West, Inc.
Case No. 16-11277

SOFA Part 3, Question 7 - Legal actions, administrative proceedings, etc. to which the debtor is or was a party within one year of commencement of this case

| Case Title and Case Number | Nature of Case | Court or Agency and Location | Status of Case |
|---|---|---|---|
| Case Title: G&IVII Reno Operating, LLC v. Aeropostale West, Inc. and Aeropostale, Inc. Case Number: CV15-01189, Dept. No: 9 | Landlord | Second Judicial District ourt of the State of Nevada in and for the County of Washoe | Open |
| Case Title: Rodger Fadness v. Aeropostale, Inc., et al. Case Number: 30-2015-00795504-CU-CR-CJC | Civil Rights (Americans w/ Disabilities) | Superior Court of the State of California for the County of Orange | Settled as of October 9, 2015 |

1 of 1

In re Aeropostale West, Inc.
Case No. 16-11277

SOFA Part 7, Question 14 - Previous locations of debtor, all premises occupied and vacated within 3 years preceding commencement of this case

| Description of Location | Address1 | Address2 | City | State | Zip | Open Date | Closing Date |
|---|---|---|---|---|---|---|---|
| Store 38 - Valley Fair | 2855 Stevens Creek Boulevard | B577 | Santa Clara | CA | 95050 | 11/7/1988 | 2/13/2016 |
| Store 121 - Fiesta | 1445 West Southern | 1250 | Mesa | AZ | 85202 | 10/1/2004 | 1/27/2015 |
| Store 452 - West Valley | 3200 North Naglee Road | 254 | Tracy | CA | 95304 | 6/11/2002 | 1/28/2014 |
| Store 533 - NorthTown | 4750 North Division Street | 2216 | Spokane | WA | 99207 | 4/30/2003 | 1/27/2015 |
| Store 534 - Southwest Plaza | 8501 West Bowles Avenue | 2B-525 | Littleton | CO | 80123 | 6/19/2003 | 1/26/2014 |
| Store 539 - Alderwood | 3000 184th Street Southwest | 230 | Lynnwood | WA | 98037 | 5/14/2003 | 1/20/2015 |
| Store 540 - Kitsap | 10315 Silverdale Way Northw | A08 | Silverdale | WA | 98383 | 5/21/2003 | 1/27/2015 |
| Store 585 - Valley River Mall | 265 Valley River Center | B-8 | Eugene | OR | 97401 | 9/8/2003 | 2/25/2014 |
| Store 607 - Desert Ridge | 21001 North Tatum Boulevard | 53 | Phoenix | AZ | 85050 | 10/30/2003 | 1/27/2015 |
| Store 617 - Camino Real | 2525 El Camino Real | 120 | Carlsbad | CA | 92008 | 4/8/2004 | 1/27/2015 |
| Store 622 - North County Fair | 200 East Via Rancho Parkway | C417 | Escondido | CA | 92025 | 4/15/2004 | 4/25/2014 |
| Store 627 - Mission Valley | 1640 Camino Del Rio North | 221 | San Diego | CA | 92108 | 4/22/2004 | 10/15/2014 |
| Store 629 - Parkway Plaza | 359 Parkway Plaza | M-14 | El Cajon | CA | 92020 | 4/28/2004 | 4/25/2014 |
| Store 633 - Chandler Fashion Ctr | 3111 West Chandler Boulevar | 2158 | Chandler | AZ | 85226 | 5/5/2004 | 1/22/2014 |
| Store 648 - Salem Center | 480 Center Street Northeast | 2219 | Salem | OR | 97301 | 6/24/2004 | 1/27/2015 |
| Store 706 - Capital | 625 Black Lake Boulevard | G8 | Olympia | WA | 98502 | 9/23/2004 | 1/27/2015 |
| Store 711 - Paradise Valley | 4550 E. Cactus Road | F-020 | Phoenix | AZ | 85032 | 10/29/2004 | 5/29/2013 |
| Store 715 - Valencia Town Center | 24201 W. Valencia Boulevard | 1249 | Valencia | CA | 91355 | 10/29/2004 | 1/27/2015 |
| Store 743 - The Gateway | 86 South Rio Grand | 2086 | Salt Lake City | UT | 84102 | 4/29/2005 | 1/27/2015 |
| Store 760 - Rimrock | 300 S. 24th Street West | D-10 | Billings | MT | 59102 | 4/15/2005 | 6/28/2013 |
| Store 768 - Tacoma | 4502 S. Stelle Street | 432A | Tacoma | WA | 98409 | 9/9/2005 | 1/13/2016 |
| Store 781 - Irvine Spectrum | 71 Fortune Drive | 826 | Irvine | CA | 92618 | 4/21/2006 | 4/24/2016 |
| Store 821 - The Summit Sierra | 13987 South Virginia Street | 708 | Reno | NV | 89511 | 3/15/2006 | 1/27/2015 |
| Store 829 - Lincoln City | 1500 SE East Devils Lake Rd | 405 | Lincoln City | OR | 97367 | 3/31/2006 | 3/29/2016 |
| Store 863 - Brea Mall | 2065 Brea Mall | 2065 | Brea | CA | 92821 | 6/9/2006 | 1/27/2015 |
| Store 910 - Cache Valley | 1300 North Main | 1136 | Logan | UT | 84341 | 5/11/2007 | 1/27/2015 |
| Store 916 - Cascade Mall | 456 Cascade Mall Drive | D08 | Burlington | WA | 98233 | 6/15/2007 | 5/19/2013 |
| Store 922 - San Tan Village | 2200 East Williams Field Road | 656 | Gilbert | AZ | 85296 | 10/25/2007 | 5/18/2013 |
| Store 965 - The District | 11560 S. District Main Dr. | 0 | South Jordan | UT | 84047 | 4/4/2008 | 1/27/2015 |
| Store 968 - Promenade at Case Grande | 1269 N. Promenade Pkwy | 101 | Casa Grande | AZ | 85230 | 4/25/2008 | 5/8/2013 |
| Store 974 - Gallatin Valley Mall | 2825 West Main Street | 4-E1 | Bozeman | MT | 59718 | 5/2/2008 | 1/27/2015 |
| Store 984 - Streets Brentwood | 2535 Sand Creek Road | 124 | Brentwood | CA | 94513 | 10/24/2008 | 9/23/2015 |
| Store 986 - Everett Mall | 1402 SE Everett Mall Way | 175 | Everett | WA | 98208 | 8/22/2008 | 6/24/2014 |

In re Aeropostale West, Inc.
Case No. 16-11277

SOFA Part 7, Question 14 - Previous locations of debtor, all premises occupied and vacated within 3 years preceding commencement of this case

| Description of Location | Address1 | Address2 | City | State | Zip | Open Date | Closing Date |
|---|---|---|---|---|---|---|---|
| Store 990 - Oaks Mall | 222 W. Hillcrest Drive | E-123 | Thousand Oaks | CA | 91360 | 11/14/2008 | 7/8/2014 |
| Store 991 - Victoria Gardens Mall | 12394 Southmain Street | 1130 | Rancho Cucamonga | CA | 91739 | 4/18/2008 | 1/27/2015 |
| Store 993 - Downtown Plaza | 545 L Street | 2039 | Sacramento | CA | 95814 | 5/9/2008 | 3/22/2014 |
| Store 1013 - Aspen Grove | 7301 South Sante Fe Drive | 620 | Littleton | CO | 80120 | 8/1/2008 | 9/28/2013 |
| Store 1019 - Village at Riverstone | 2037 North Main Street | B-107 | Coeur D'Alene | ID | 83814 | 10/3/2008 | 4/28/2015 |
| Store 1030 - Shops at Lake Havasu | 5601 North State Route 95 | 814 | Lake Havasu | AZ | 86404 | 11/14/2008 | 1/14/2014 |
| Store 1032 - Simi Valley Town Center | 1555 Simi Valley Town Center | 730 | Simi Valley | CA | 93065 | 8/2/2008 | 1/28/2014 |
| Store 1036 - Redmond Town Center | 16571 NE 74th Street | F-235 | Redmond | WA | 98052 | 11/7/2008 | 5/19/2013 |
| Store 1052 - Shoppes at Mission Viejo | 555 Shops at Mission Viejo | 740A | Mission Viejo | CA | 92691 | 4/11/2009 | 8/11/2014 |

The Aeropostale West, LLC

SOFA Part 10, Question 20 - Off-premises storage  used within 1 year preceding commencement of this case

| Storage Facility Name | Address1 | Address2 | Address3 | City | State | Zip | Name of Those with Access to the Storage Facility | Description of Contents | Debtor Still in Possession (Yes / No) |
|---|---|---|---|---|---|---|---|---|---|
| Anchor Storage | 794-Seattle Premium Outlets | 10600 Quil Ceda Blvd. | 654 | Tulalip | WA | 98271 | Store management team | Merchandise, general supplies | Yes |
| I.V.Recycling Inc. Container Services | 688-Imperial Valley Mall | 3451 South Dogwood Avenue | 1468 | El Centro | CA | 92243 | Store management team | Merchandise, general supplies | Yes |
| Mobile Mini | 938-Las Vegas Outlet | 7400 Las Vegas Blvd South | 15 | Las Vegas | NV | 89123 | Store management team | Merchandise, general supplies | Yes |
| My Self Storage Space | 747-Camarillo Premium Outlets | 740 Ventura Blvd | 500 | Camarillo | CA | 93010 | Store management team | Merchandise, general supplies | Yes |
| PODS | 1059-Outlets at Anthem | 4250 West Anthem Way | 125 | Phoenix | AZ | 85086 | Store management team | Merchandise, general supplies | Yes |
| Synder Mini Storage | 572-Vintage Faire Mall | 3401 Dale Road | Q06 | Modesto | CA | 95356 | Store management team | Merchandise, general supplies | Yes |

**SOFA Part 13, Question 26d Footnote:**

The Debtors provided financial statements in the ordinary course of business to certain parties for business, statutory, credit, financing, and other reasons.  Recipients have included regulative agencies, financial institutions, investment banks, debtholders, and their legal and financial advisors.  Financial statements have also been provided to other parties as requested.

In re Aéropostale, Inc.
Case No. 16-11277
SOFA Part 13, Question 28 - Current Officers, Directors, Managing Members, Controlling Shareholders, etc.

| Name | Address1 | Address2 | City | State | Zip | Position and nature of any interest | Percentage of interest, if any |
|------|----------|----------|------|-------|-----|--------------------------------------|-------------------------------|
| Julian Geiger | 112 W 34th Street | 22nd Floor | New York | NY | 10120 | CEO | 0.22% |
| Marc Miller | 112 W 34th Street | 22nd Floor | New York | NY | 10120 | EVP COO | 0.20% |
| Marc Schuback | 112 W 34th Street | 22nd Floor | New York | NY | 10120 | SVP General Counsel | 0.02% |
| David Dick | 112 W 34th Street | 22nd Floor | New York | NY | 10120 | SVP CFO | 0.03% |
| Karin Hirtler-Garvey | 112 W 34th Street | 22nd Floor | New York | NY | 10120 | Chairman of Board of Directors | 0.24% |
| Evelyn Dilsaver | 112 W 34th Street | 22nd Floor | New York | NY | 10120 | Member of Board of Directors | 0.14% |
| Janet Grove | 112 W 34th Street | 22nd Floor | New York | NY | 10120 | Member of Board of Directors | 0.12% |
| Ronald Beegle | 112 W 34th Street | 22nd Floor | New York | NY | 10120 | Member of Board of Directors | 0.16% |
| Kenneth Gilman | 112 W 34th Street | 22nd Floor | New York | NY | 10120 | Member of Board of Directors | 0.13% |
| Michael Cunningham | 112 W 34th Street | 22nd Floor | New York | NY | 10120 | Member of Board of Directors | 0.23% |
| John Haugh | 112 W 34th Street | 22nd Floor | New York | NY | 10120 | Member of Board of Directors | 0.12% |
| John Howard | 112 W 34th Street | 22nd Floor | New York | NY | 10120 | Member of Board of Directors | 0.18% |
| David Vermylen | 112 W 34th Street | 22nd Floor | New York | NY | 10120 | Member of Board of Directors | 0.13% |
| Susquehanna Securities | 401 E. City Avenue | Suite 220 | Bala Cynwyd | PA | 19004 | Shareholder | 7.51% |
| Scopia Capital Management LLC | 152 West 57th Street | 33rd Fl | New York | NY | 10019 | Shareholder | 6.22% |

In re Aéropostale West, Inc.

Case No. 16-11277

SOFA Part 13, Question 29 - Officers, Directors, Managing Members, Controlling Shareholders, etc. who withdrew within 1 year preceding commencement of the case

| Name | Address1 | Address2 | City | State | Zip | Position and nature of any interest | Period during which position was held |
|---|---|---|---|---|---|---|---|
| BlackRock, Inc. | 40 East 52nd St. | | New York | NY | 10022 | Shareholder | 1/15/15 - 6/30/15 |
| Elm Ridge Management, LLC | 3 West Main Street | 2nd FL | Irvington | NY | 10533 | Shareholder | 2/12/2015 - 2/16/16 |
| Emilia Fabricant | 247 Oak Ridge Ave | | Summit | NJ | 07901 | EVP Design and Merchandising | 9/6/12 - 6/19/15 |
| FMR LLC | 245 Summer Street | | Boston | MA | 02210 | Shareholder | 2/13/15 - 10/9/15 |
| Kent Kleeberger | 848 Angel Wing Dr. | | Sanibel | FL | 33957 | Board of Directors member | 8/13/15 - 2/5/16 |
| Lemur, LLC | 9 W 57th St. #31 | | New York | NY | 10019 | Shareholder | 3/14/14 - 2/5/2016 |
| Mary Jo Pile | 123 Chambers St | | New York | NY | 10007 | EVP Customer Engagement | 5/16/05 - 12/31/15 |
| Robert Chavez | 377 Rector Place | | New York | NY | 10280 | Board of Directors member | 5/4/04 - 6/24/15 |
| Stephan Kaluzney | Sycamore Partners | c/o Aeropostale Inc | New York | NY | 10120 | Board of Directors member | 5/23/14 - 6/24/15 |