**Hearing Date and Time: December 20, 2017 at 11:00 a.m. (Eastern Time)**
**Objection Deadline: December 13, 2017 at 4:00 p.m. (Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
|  | : |  |
| --- | --- | --- |
| In re | : | **Chapter 11** |
|  | : |  |
| **ARO LIQUIDATION, INC.**, *et al.*, | : | **Case No. 16-11275 (SHL)** |
|  | : |  |
| **Debtors.**[1] | : | **Jointly Administered** |
|  | : |  |

---------------------------------------------------------x

**NOTICE OF HEARING ON PROPOSED FINAL ORDER PURSUANT TO
11 U.S.C. §§ 105, 361, 362, AND 363 AND FED. R. BANKR. P. 2002, 4001,
AND 9014 (I) AUTHORIZING USE OF CASH COLLATERAL BY THE
DEBTORS, (II) PROVIDING FOR ADEQUATE PROTECTION TO PREPETITION
TERM LOAN PARTIES, AND (III) MODIFYING THE AUTOMATIC STAY**

   **PLEASE TAKE NOTICE** that a hearing on the annexed proposed *Final Order*

*Pursuant to 11 U.S.C. §§ 105, 361, 362, and 363 and Fed. R. Bankr. P. 2002, 4001, and 9014 (I)*

*Authorizing Use of Cash Collateral by the Debtors, (II) Providing for Adequate Protection to*

*Prepetition Term Loan Parties, and (III) Modifying the Automatic Stay* (the "***Proposed Order***")

will be held before the Honorable Sean H. Lane, in the United States Bankruptcy Court for the

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number are as follows:  ARO Liquidation, Inc. (3880); ARO Liquidation West, Inc. (7013); ARO Liquidation Surf Co., LLC (0461); ARO Liquidation GC Management LLC (4257); ARO Liquidation Procurement Company, Inc. (8518); ARO Liquidation Licensing, Inc. (8124); ARO Liquidation (Kids), Inc. (5900); ARO Liquidation GJ LLC (4923); ARO Liquidation Holdings, Inc. (7729); and ARO Liquidation Puerto Rico, Inc. (6477).  The Debtors' corporate headquarters is located at 125 Chubb Avenue, Lyndhurst, NJ 07071.

Southern District of New York, located at One Bowling Green, New York, New York, 10004 (the "***Bankruptcy Court***"), on **December 20, 2017 at 11:00 a.m. (Eastern Time)** (the "***Hearing***").

PLEASE TAKE FURTHER NOTICE that any responses or objections ("***Objections***") to the Proposed Order shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall be filed with the Bankruptcy Court (i) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with General Order M-399 and the *Order Pursuant to 11 U.S.C. § 105(a) and (d) and Fed. R. Bankr. P. 1015(c), 2002(m) and 9007 Implementing Certain Notice and Case Management Procedures*, entered on June 3, 2016 [ECF No. 255], so as to be so filed and received no later than **December 13, 2017** at **4:00 p.m. (Eastern Time)** (the "***Objection Deadline***").

PLEASE TAKE FURTHER NOTICE that if an Objection to the Proposed Order is not received by the Objection Deadline, the Bankruptcy Court may enter an order granting the relief sought without further notice.

WEIL:\96371608\6\11727.0013

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

Dated: December 7, 2017
      New York, New York

          /s/ Jacqueline Marcus
          WEIL, GOTSHAL & MANGES LLP
          767 Fifth Avenue
          New York, New York 10153
          Telephone:  (212) 310-8000
          Facsimile:  (212) 310-8007
          Ray C. Schrock, P.C.
          Jacqueline Marcus
          Garrett A. Fail

          *Attorneys for Debtors*
          *and Debtors in Possession*

WEIL:\96371608\6\11727.0013

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
                            :

**In re**                              :          **Chapter 11**
                            :

**ARO LIQUIDATION, INC.,** *et al.,*    :          **Case No. 16-11275 (SHL)**
                            :

          **Debtors.**[1]          :          **Jointly Administered**
                            :

---------------------------------------------------------x

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105,**
**361, 362, AND 363 AND FED. R. BANKR. P. 2002, 4001, AND**
**9014 (I) AUTHORIZING USE OF CASH COLLATERAL BY THE**
**DEBTORS, (II) PROVIDING FOR ADEQUATE PROTECTION TO PREPETITION**
**TERM LOAN PARTIES, AND (III) MODIFYING THE AUTOMATIC STAY**

Upon the motion, dated October 21, 2016 [ECF No. 898] (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), seeking entry of interim and final orders providing for the following relief:

(i)      authorizing the Debtors' use of all property constituting "cash collateral" (as defined in section 363(a) of the Bankruptcy Code, and hereinafter, "Cash Collateral") in a manner consistent with and subject to the terms and conditions of this Final Order (as defined below) and in compliance with an approved budget, solely to pay or fund (a) certain costs, fees and expenses related to the Chapter 11 Cases, (b) the repayment of the Prepetition Term Loan

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number are as follows:  ARO Liquidation, Inc. (3880); ARO Liquidation West, Inc. (7013); ARO Liquidation Surf Co., LLC (0461); ARO Liquidation GC Management LLC (4257); ARO Liquidation Procurement Company, Inc. (8518); ARO Liquidation Licensing, Inc. (8124); ARO Liquidation (Kids), Inc. (5900); ARO Liquidation GJ LLC (4923); ARO Liquidation Holdings, Inc. (7729); and ARO Liquidation Puerto Rico, Inc. (6477).  The Debtors' corporate headquarters is located at 125 Chubb Avenue, Lyndhurst, NJ 07071.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Obligations (as defined below) as set forth herein, (c) the Carve-Out (as defined below), and (d) the working capital needs of the Debtors during the Chapter 11 Cases;

(ii)    providing adequate protection to the Prepetition Term Loan Parties (as defined below) for any Diminution in Value (as defined below) for their interests in the Prepetition Collateral (as defined below), including the Cash Collateral;

(iii)    vacating and modifying the automatic stay imposed by section 362 of title 11 of the United States Code (the "Bankruptcy Code") to the extent necessary to implement and effectuate the terms and provisions of the interim order;

(iv)    except to the extent of the Carve-Out, waiving all rights to surcharge any Prepetition Collateral or Postpetition Collateral (each, as defined below) under sections 506(c) or 552(b) of the Bankruptcy Code or any other applicable principle of equity or law;

(v)    scheduling a final hearing (the "Final Hearing") to consider entry of an order granting the relief requested in the Motion on a final basis (the "Final Order"), and to approve the form and manner of notice with respect to the Final Hearing;

(vi)    waiving any applicable stay as provided in the provisions of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and/or the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), and providing for the immediate effectiveness of this Final Order; and

(vii)    waiving Bankruptcy Rules 4001(b)(1)(B) and 4001(d)(1)(B) and Local Rule 4001-2.

The Court having considered the Motion and the declaration of William A. Brandt, Jr. [ECF No. 898] in support thereof, and the proceedings at the interim hearing held before the Court on October 25, 2016 (the "First Interim Hearing"), the second interim hearing

2

held before the Court on November 17, 2016 (the "Second Interim Hearing"), and the third

interim hearing held before the Court on December 20, 2016 (the "Third Interim Hearing"); and

the Final Hearing having been held before the Court on December 20, 2017; and in accordance

with Bankruptcy Rules 2002, 4001(b) and (d), and 9014 and Rule 4001-2 of the Local Rules, due

and proper notice of the Motion, the First Interim Hearing, the Second Interim Hearing, the Third

Interim Hearing, and the Final Hearing having been given; and the First Interim Hearing, the

Second Interim Hearing, the Third Interim Hearing, and the Final Hearing having been held and

concluded; and the Court having entered the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361,

362, and 363 and Fed. R. Bankr. P. 2002, 4001, and 9014 (I) Authorizing Use of Cash Collateral

by the Debtors, (II) Providing for Adequate Protection to Prepetition Term Loan Parties, (III)

Modifying the Automatic Stay, and (IV) Scheduling a Final Hearing*, dated October 26, 2016

[ECF No. 910] (the "First Interim Order"), the *Second Interim Order Pursuant to 11 U.S.C.

§§ 105, 361, 362, and 363 and Fed. R. Bankr. P. 2002, 4001, and 9014 (I) Authorizing Use of

Cash Collateral by the Debtors, (II) Providing for Adequate Protection to Prepetition Term Loan

Parties, (III) Modifying the Automatic Stay, and (IV) Scheduling a Final Hearing*, dated

November 17, 2016 [ECF No. 971] (the "Second Interim Order"), the *Third Interim Order

Pursuant to 11 U.S.C. §§ 105, 361, 362, and 363 and Fed. R. Bankr. P. 2002, 4001, and 9014 (I)

Authorizing Use of Cash Collateral by the Debtors, (II) Providing for Adequate Protection to

Prepetition Term Loan Parties, (III) Modifying the Automatic Stay, and (IV) Scheduling a Final

Hearing*, dated December 22, 2016 [ECF No. 1064] (the "Third Interim Order"), the *Fourth

Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, and 363 and Fed. R. Bankr. P. 2002,

4001, and 9014 (I) Authorizing Use of Cash Collateral by the Debtors, (II) Providing for

Adequate Protection to Prepetition Term Loan Parties, (III) Modifying the Automatic Stay, and*

3

*(IV) Scheduling a Final Hearing*, dated February 10, 2017 [ECF No. 1125] (the "<u>Fourth Interim</u>

<u>Order</u>"), the *Fifth Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, and 363 and Fed. R.*

*Bankr. P. 2002, 4001, and 9014 (I) Authorizing Use of Cash Collateral by the Debtors, (II)*

*Providing for Adequate Protection to Prepetition Term Loan Parties, (III) Modifying the*

*Automatic Stay, and (IV) Scheduling a Final Hearing*, dated March 3, 2017 [ECF No. 1160] (the

"<u>Fifth Interim Order</u>"), the *Sixth Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, and 363*

*and Fed. R. Bankr. P. 2002, 4001, and 9014 (I) Authorizing Use of Cash Collateral by the*

*Debtors, (II) Providing for Adequate Protection to Prepetition Term Loan Parties, (III)*

*Modifying the Automatic Stay, and (IV) Scheduling a Final Hearing*, dated April 19, 2017 [ECF

No. 1237] (the "<u>Sixth Interim Order</u>"), the *Seventh Interim Order Pursuant to 11 U.S.C. §§ 105,*

*361, 362, and 363 and Fed. R. Bankr. P. 2002, 4001, and 9014 (I) Authorizing Use of Cash*

*Collateral by the Debtors, (II) Providing for Adequate Protection to Prepetition Term Loan*

*Parties, (III) Modifying the Automatic Stay, and (IV) Scheduling a Final Hearing*, dated June 5,

2017 [ECF No. 1282] (the "<u>Seventh Interim Order</u>"), the *Eighth Interim Order Pursuant to 11*

*U.S.C. §§ 105, 361, 362, and 363 and Fed. R. Bankr. P. 2002, 4001, and 9014 (I) Authorizing*

*Use of Cash Collateral by the Debtors, (II) Providing for Adequate Protection to Prepetition*

*Term Loan Parties, (III) Modifying the Automatic Stay, and (IV) Scheduling a Final Hearing*,

dated August 10, 2017 [ECF No. 1394] (the "<u>Eighth Interim Order</u>"), and the *Ninth Interim*

*Order Pursuant to 11 U.S.C. §§ 105, 361, 362, and 363 and Fed. R. Bankr. P. 2002, 4001, and*

*9014 (I) Authorizing Use of Cash Collateral by the Debtors, (II) Providing for Adequate*

*Protection to Prepetition Term Loan Parties, (III) Modifying the Automatic Stay, and (IV)*

*Scheduling a Final Hearing*, dated October 12, 2017 [ECF No. 1451] (the "<u>Ninth Interim Order</u>"

and, together with the First Interim Order, Second Interim Order, Third Interim Order, Fourth

4

Interim Order, Fifth Interim Order, Sixth Interim Order, Seventh Interim Order, and Eighth Interim Order, the "Interim Orders"); and it appearing that approval of the relief requested in the Motion is fair and reasonable and in the best interests of the Debtors, their creditors and their estates, and is essential for the continued operation of the Debtors' business and to preserve and maximize the value of the Debtors' estates for the benefit of all stakeholders; and any objections to the entry of this Final Order having been withdrawn, resolved, or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

IT IS HEREBY FOUND AND CONCLUDED AS FOLLOWS:[3]

A.    **Petition Date**.  On May 4, 2016 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the "Court").  The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  Pursuant to an order of this Court, the Chapter 11 Cases have been consolidated for procedural purposes only.  No trustee or examiner has been appointed in the Chapter 11 Cases.

B.    **Jurisdiction and Venue**.  This Court has jurisdiction over these proceedings and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Chapter 11 Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[3] The findings and conclusions set forth in this Final Order constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

WEIL:\96371608\6\11727.0013

C.    **Statutory Committee**.  On May 11, 2016, the United States Trustee appointed a statutory committee of unsecured creditors (the "Committee") in these Chapter 11 Cases.

D.    **Final DIP Order**.  On June 13, 2016, this Court entered its *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364 and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Incurrence by the Debtors of Postpetition Secured Indebtedness, (II) Granting Liens, (III) Authorizing Use of Cash Collateral by the Debtors and Providing for Adequate Protection, and (IV) Modifying the Automatic Stay* [ECF No. 298] (the "Final DIP Order"), pursuant to which (among other things) the Debtors were authorized to borrow up to $160,000,000 of postpetition secured superpriority debtor in possession financing (the "DIP Facility").

E.    **Repayment of DIP Facility**.  On September 15, 2016, all obligations under the DIP Facility were repaid by the Debtors in full.  The Prepetition Term Loan Lenders and the Debtors have agreed upon the terms for the Debtors' use of Cash Collateral for the wind-down of the Chapter 11 Cases.

F.    **Notice**.  Notice of the Final Hearing and the proposed form of this Final Order was served by either first-class mail or e-mail on December [__], 2017 on certain parties in interest, including:  (i) the Office of the United States Trustee for the Southern District of New York (the "United States Trustee"); (ii) counsel to the Prepetition Term Loan Agent (as defined below); (iii) counsel to the Committee, (iv) the Internal Revenue Service; (v) the Securities and Exchange Commission; (vi) the United States Department of Justice; (vii) all parties requesting notice pursuant to Bankruptcy Rule 2002; (viii) all parties who were given notice of the First Interim Hearing, the Second Interim Hearing, and the Third Interim Hearing; (ix) applicable state taxing authorities; (x) the Debtors' current landlords; (xi) the Office of the Attorney General for

6

the State of New York; (xii) the United States Department of Justice, (xiii) the Buyer (as defined in the Sale Order (as defined below)); and (xiv) the Buyer Agent (as defined in the Agent Order). Under the circumstances, such notice of this Final Order and the Final Hearing is due and sufficient notice and complies with sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b), 4001(d), and the Local Rules, and no other or further notice of the relief granted pursuant to this Final Order is necessary or required.

G.    **The Debtors' Acknowledgements and Agreements**.    The Debtors admit, stipulate, acknowledge and agree that (collectively, paragraphs G(i) through G(iv) hereof shall be referred to herein as the "Debtors' Prepetition Secured Lien Stipulations"):

(i)    **Prepetition Term Loan Facility**.  Prior to the Petition Date, certain of the Debtors were parties to that certain Loan and Security Agreement, dated as of May 23, 2014 (as amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "Prepetition Term Loan Agreement" and together with all other agreements, documents, and instruments executed and/or delivered to or in favor of the parties thereto, the "Prepetition Term Loan Documents"), by and among the borrower and guarantors listed therein, Aero Investors LLC, as agent (the "Prepetition Term Loan Agent"), and the lender parties thereto (the "Prepetition Term Loan Lenders" and, together with the Prepetition Term Loan Agent, the "Prepetition Term Loan Parties").

(ii)    **Prepetition Term Loan Obligations**.  As of the Petition Date, the outstanding principal amount of all loans under the Prepetition Term Loan Documents was approximately $150,000,000 (such amount, together with any amounts paid, incurred or accrued prior to the Petition Date in accordance with the Prepetition Term Loan Documents, accrued and unpaid interest in the amount of $1,250,000, any fees, expenses and disbursements, indemnification obligations and other charges of whatever nature, whether or not contingent, whenever arising, due or owing in respect thereof, collectively, the "Prepetition Term Loan Obligations"). Pursuant to the Interim Orders, the Prepetition Term Loan Parties have been paid $126,500,000.  As of the date hereof, the Debtors are indebted to the Prepetition Term Loan Parties, pursuant to the Prepetition Term Loan Documents for Prepetition Term Loan Obligations, in the amount of $23,500,000, plus (A) all fees and expenses incurred prepetition by the Prepetition Term Loan Parties to which they may be entitled under the Prepetition Term Loan Documents; and (B) all postpetition interest, fees

7

and expenses to which they may be entitled under the Prepetition Term Loan Documents and the Bankruptcy Code.

(iii)   **Liens Securing and Claim Status of Prepetition Term Loan Obligations**. Prior and subsequent to the Petition Date, the Debtors granted to the Prepetition Term Loan Agent (for the benefit of itself and the other Prepetition Term Loan Lenders) liens upon and security interests, as follows:

a.   *Prepetition Term Loan.* Pursuant to the Prepetition Term Loan Documents, the Debtors granted to the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Lenders, liens (the "Prepetition Term Loan Liens") on all Prepetition Collateral (as defined in the Final DIP Order).

b.   *Priority of Liens in Prepetition Collateral.* As of the date hereof, the Prepetition Term Loan Liens constitute first priority, legal, valid, binding, enforceable, non-avoidable and properly perfected liens on and security interests in the Prepetition Collateral, subject only to certain liens, if any, otherwise permitted pursuant to the Prepetition ABL Credit Documents (as defined in the Final DIP Order). [4]

c.   *Adequate Protection Liens and Adequate Protection Claims.* Pursuant to the Final DIP Order and the Interim Orders, the Prepetition Term Loan Parties were granted, pursuant to sections 361, 363(e), 364(d), 503(b) and 507(b) of the Bankruptcy Code, as adequate protection against any Diminution in Value (defined below) of their interests in the Prepetition Collateral (i) continuing, valid, binding, enforceable and automatically perfected postpetition security interests in and liens on the DIP Collateral (as defined in the Final DIP Order) and the proceeds thereof, and (ii) an allowed superpriority administrative expense claim in the Chapter 11 Cases and any Successor Cases (collectively, the "Adequate Protection").

(iv)   **Interest in Cash Collateral**. The Prepetition Term Loan Parties have a valid security interest in Cash Collateral of the Debtors, including all amounts on deposit in the Debtors' banking, checking, or other deposit

---

[4] Nothing herein shall constitute a finding or ruling by this Court that any such permitted liens, if any, are valid, enforceable, perfected, non-avoidable or senior to the Prepetition ABL Liens. Nothing herein shall prejudice the rights of any party in interest, including, but not limited to, the Debtors, the Prepetition Term Loan Parties and the Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, extent or any other aspect of any such permitted liens.

8

accounts, notwithstanding the termination of any deposit account control agreements prior to or subsequent to the date hereof, and all proceeds of Collateral (as defined below) (but only to the extent of their respective security interests in such Collateral) to secure their respective prepetition claims, to the same extent and order of priority as that which was (a) held by each such party on the Petition Date, and (b) granted to the Prepetition Term Loan Parties as adequate protection pursuant to the Final DIP Order and the Interim Orders.

H.    **Findings Regarding the Use of Cash Collateral and Prepetition Collateral**.

(a)    **Use of Collateral**.    The Debtors require access to the Prepetition Collateral (including Cash Collateral) on the terms set forth herein (including in the amount and in the manner set forth in the Budget) to permit, among other things, the satisfaction of the costs and expenses of administering these Chapter 11 Cases. The terms of the use of the Prepetition Collateral (including the Cash Collateral) pursuant to this Final Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration. Additionally, each month the Debtors shall pay to the Prepetition Term Loan Agent all cash of the Debtors' estates (other than cash in the Carve-Out Account (as defined below)) in excess of $9,000,000, up to an amount which, when added to the aggregate amount paid to the Prepetition Term Loan Lenders, does not exceed the amount of the Prepetition Term Loan Obligations. Repayment of the Prepetition Term Loan Obligations in accordance with this Final Order is necessary, as the Prepetition Term Loan Parties will not otherwise consent to the Debtors' use of Cash Collateral or the subordination of their liens to the Carve-Out. Based on the records of the First Interim Hearing, the Second Interim Hearing, the Third Interim Hearing, and the Final Hearing, such payments will not prejudice the Debtors or their estates.

(b)    **Good Faith.**    The terms of the use of the Prepetition Collateral (including the Cash Collateral) have been the subject of negotiations conducted in good faith and at arm's

9

length among the Debtors and the Prepetition Term Loan Parties, and, pursuant to sections 105, 361 and 363 of the Bankruptcy Code, the Prepetition Term Loan Parties are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Final Order, and each is entitled to the protection provided under section 363(m) of the Bankruptcy Code on the terms set forth herein.

I.    **Use of Cash Collateral**.    Cash Collateral shall be used in a manner consistent with and subject to the terms and conditions of this Final Order, and in compliance with the Budget, solely to pay or fund (i) certain costs, fees and expenses related to the Chapter 11 Cases; (ii) the repayment of the Prepetition Term Loan Obligations; (iii) the Carve-Out (as defined below); and (iv) the working capital needs of the Debtors during the Chapter 11 Cases.

J.    **Adequate Protection for Prepetition Term Loan Lenders**.    The Prepetition Term Loan Agent has asserted a claim for diminution in the value of its interests in the Prepetition Collateral (including Cash Collateral), both before and after the entry of this Final Order, resulting from the subordination to the Carve-Out, the Debtors' use, sale or lease of such Prepetition Collateral, and the imposition of the automatic stay (collectively, and solely to the extent of any such diminution in value, the "Diminution in Value"), as to which the rights of other parties in interest to contest are preserved.    Upon the entry of an order of the Court approving a disclosure statement that is acceptable to the Debtors, the Prepetition Term Loan Agent, the Prepetition Term Loan Lenders, and the Committee, this Final Order shall be deemed amended to provide that the Prepetition Term Loan Agent's claim for Diminution in Value is allowed in an amount of not less than $25 million.    Pursuant to Sections 105, 361, 363, 503(b) and 507(b) of the Bankruptcy Code, as adequate protection to the extent of any Diminution in Value of its interests in the Prepetition Collateral (including Cash Collateral), the Prepetition

10

Term Loan Parties will receive the rights and protections set forth in this Final Order, including pursuant to paragraph 3 of this Final Order.

     **K.**     **Section 506(c) and Section 552(b)**.  In light of the subordination of the liens and superpriority claims of the Prepetition Term Loan Parties to the Carve-Out, and consistent with the terms of the Final DIP Order, the Debtors agree that the Prepetition Term Loan Parties are entitled to (a) all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply, but such agreement is not binding on the Court, and (b) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

     **L.**     **Relief Essential; Best Interest; Good Cause**.  Based on the record of the Chapter 11 Cases, the use of Cash Collateral is necessary, essential, and appropriate for continued operations, and for the management, maintenance and preservation of the Debtors' assets and property as it will, among other things, provide the Debtors with the necessary liquidity to preserve and maximize the value of their estates for the benefit of all creditors.  Good cause has been shown for the relief requested in the Motion and as granted in this Final Order.

     Based upon the foregoing findings and conclusions, and the record before the Court of the First Interim Hearing, the Second Interim Hearing, the Third Interim Hearing, and the Final Hearing with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

     **1.**     **Motion Granted**.  The Motion is hereby granted in accordance with the terms and conditions set forth in this Final Order.  Nothing contained in this Final Order shall be deemed to amend, modify, or limit the rights of the Buyer (as defined in the Sale Order) or the Buyer Agent (as defined in the Agent Order (defined below)).

     **2.**     **Use of Cash Collateral**.  Subject to the terms and conditions of this Final Order, and in compliance with the Budget (as defined below), the Debtors are authorized to use Cash

11

Collateral until the Termination Declaration Date in accordance with this Final Order. Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or the Debtors' use of Cash Collateral or other proceeds resulting therefrom, except as expressly permitted in this Final Order, and in compliance with the Budget. Cash Collateral shall be used in a manner consistent with and subject to the terms and conditions of this Final Order, and in compliance with the Budget, solely for the purposes set forth herein including to pay or fund (i) certain costs, fees and expenses related to the Chapter 11 Cases; (ii) the repayment of the Prepetition Term Loan Obligations; (iii) the Carve-Out; and (iv) the working capital needs of the Debtors during the Chapter 11 Cases.

(a)      **Budget**. All use of Cash Collateral shall be in compliance with the budget agreed to by the Debtors and the Prepetition Term Loan Parties, a copy of which is annexed hereto as **Exhibit A** (as the same may be modified and/or extended from time to time with the consent of the Prepetition Term Loan Parties in their sole and absolute discretion, the "Budget"). The Debtors shall not use any amount of Cash Collateral, directly or indirectly, in excess of the amounts set forth in the Budget. The Budget may be further updated and amended (with the consent and/or at the request of the Prepetition Term Loan Parties in their sole and absolute discretion) from time to time, provided that such updated or amended Budget shall be in form and substance acceptable to the Prepetition Term Loan Parties in their sole and absolute discretion and the Debtors shall be required to comply with the Budget. Notwithstanding any "first day" or subsequent orders entered by the Court authorizing the Debtors to pay any prepetition, administrative or other claims and expenses, all such payments shall be made only to the extent they are in compliance with the Budget.

12

(b)      **Protection of the Prepetition Term Loan Parties and Other Rights**. From and after the date hereof, the Debtors shall use the Cash Collateral only for the purposes specifically set forth in this Final Order and in compliance with the Budget.

3.      **Adequate Protection**.

(a)      **Adequate Protection Liens**.  Pursuant to sections 361 and 363(e) of the Bankruptcy Code, as adequate protection for the interests of the Prepetition Term Loan Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Lenders, continuing, valid, binding, enforceable, and automatically perfected postpetition security interests in and liens (the "Adequate Protection Liens") on all currently owned and hereafter acquired property and assets of the Debtors, whether real or personal, tangible or intangible, and wherever located (including, without limitation, all proceeds of insurance policies of the Debtors), and all proceeds, products, offspring, rents, proceeds of interests in leaseholds and profits thereof, and including, without limitation, the following (all collateral described in this paragraph 3(a), collectively, the "Collateral"):  (i) all Prepetition Collateral and (ii) all Collateral (as defined in the Final DIP Order) and the proceeds thereof.  For the avoidance of doubt, the Adequate Protection Liens shall not attach to the Debtors' real property leases but shall attach to all proceeds of such leases to the extent that the Debtors have any rights to such lease proceeds.

(b)      **Priority of Adequate Protection Liens**.  In accordance with the terms of this Final Order, the Adequate Protection Liens shall be junior only to (i) the Carve-Out, (ii) the Prepetition Term Loan Liens, and (iii) any Other Prepetition Senior Liens (as defined in the Final

13

DIP Order).  The Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the Collateral.

(c)    **Adequate Protection Superpriority Claims**.  As further adequate protection against any Diminution in Value of the Prepetition Term Loan Parties in the Prepetition Collateral, the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Lenders, is hereby granted, as and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, a separate allowed superpriority administrative expense claim in the Chapter 11 Cases and any Successor Cases (the foregoing superpriority claims shall be referred to as the "Adequate Protection Superpriority Claims").  Except with respect to the Carve-Out, the Adequate Protection Superpriority Claims (x) shall have priority in these Chapter 11 Cases under sections 105, 503(b), and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature of the kinds specified in or ordered pursuant to sections 503(b) or 507(b) of the Bankruptcy Code, and section 506(c) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, and (y) no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these Chapter 11 Cases, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to or on a parity with the Adequate Protection Superpriority Claims.

(d)    **Additional Funds**.  As further adequate protection against any Diminution in Value of the Prepetition Term Loan Parties in the Prepetition Collateral, the Debtors shall pay to the Prepetition Term Loan Agent (i) within three business days of the entry

14

of this Final Order, $3,500,000 and (ii) on the 20th day of each month thereafter (or if such date

is not a business day, the preceding business day), all cash of the Debtors' estates (other than

cash in the Carve-Out Account) in excess of $9,000,000, up to an amount which, when added to

the aggregate amount paid to the Prepetition Term Loan Lenders, does not exceed the amount of

the Prepetition Term Loan Obligations.

    (e)  **Section 507(b) Reservation**.  Nothing herein shall impair or modify the

Prepetition Term Loan Parties' rights under section 507(b) of the Bankruptcy Code in the event

that the adequate protection provided to the Prepetition Term Loan Parties hereunder is

insufficient to compensate for any Diminution in Value of their interests in the Prepetition

Collateral during these Chapter 11 Cases or upon the conversion of any of the Chapter 11 Cases

to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of

the foregoing (any "Successor Cases"), provided, however, that any section 507(b) claim granted

in these Chapter 11 Cases or any Successor Case to the Prepetition Term Loan Parties shall be

junior in the right of payment to the Carve-Out.

    **4.**  **Perfection of Adequate Protection Liens**.

    (a)  **No Filings Necessary to Perfect**.  All security interests, liens, mortgages,

deeds of trust and other interests and rights granted by the Debtors in favor of the Prepetition

Term Loan Parties pursuant to this Final Order shall be valid, binding, enforceable and

automatically perfected.  This Final Order shall be sufficient and conclusive evidence of the

validity, perfection, and priority of the Adequate Protection Liens without the necessity of filing

or recording any financing statement, deed of trust, mortgage, or other instrument or document

which may otherwise be required under the law of any jurisdiction or the taking of any other

action (including, for the avoidance of doubt, entering into any deposit account control

15

agreement or mortgage agreement) to validate or perfect the Adequate Protection Liens or to entitle the Adequate Protection Liens to the priorities granted in this Final Order. Notwithstanding the foregoing, the Prepetition Term Loan Agent may, in its sole discretion, file such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the Adequate Protection Liens, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code solely in order to do so, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date.

(b)    **Debtors' Cooperation With Perfection Filings**.  The Debtors shall execute and deliver to the Prepetition Term Loan Agent all such financing statements, mortgages, notices and other documents as such parties may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the Adequate Protection Liens.  The Prepetition Term Loan Agent, in its sole discretion, may file a photocopy of this Final Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the recording officer shall be authorized to file or record such copy of this Final Order.

5.    **Carve-Out Provisions**.

(a)    **Carve-Out**.  All liens and claims granted by this Final Order shall be subject to the Carve-Out.  As used in this Final Order, the "Carve-Out" shall mean:

(i)    quarterly fees required to be paid to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6), plus interest, if applicable, at the statutory rate, and any fees payable to the clerk of the Bankruptcy Court;

16

(ii)    all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an aggregate amount not to exceed $50,000;

(iii)    all accrued and unpaid claims for fees and expense reimbursements of Case Professionals (as defined below) retained by the Debtors (but not any success or transaction fees) incurred during the period prior to the Carve-Out Trigger Date (as defined below), subject to such accrued and unpaid fees and expense reimbursements becoming Allowed Fees (as defined below);

(iv)    all accrued and unpaid claims for fees and expense reimbursements of Case Professionals retained by the Committee incurred prior to the Carve-Out Trigger Date, subject to such accrued and unpaid fees and expense reimbursements becoming Allowed Fees; and

(v)    an aggregate amount for unpaid fees and expense reimbursements of all Case Professionals incurred after the Carve-Out Trigger Date not to exceed $1,000,000 (the "Professionals Expense Cap"), subject to such fees and expense reimbursements becoming Allowed Fees; provided, however, that any payments actually made to fund unpaid fees and expenses of Case Professionals incurred on or after the Carve-Out Trigger Date shall reduce the Professionals Expense Cap on a dollar for dollar basis.

The Professionals Expense Cap shall be automatically reduced, on a dollar for dollar basis, by (i) the amount of any unused retainers held by Case Professionals on the Carve-Out Trigger Date and (ii) the amount by which Estimated Professional Fee Escrow Deposits (as defined below) exceeds the actual amount of fees and expenses incurred by Case Professionals in the period prior to the Carve-Out Trigger Date.  Any unused retainers held by Case Professionals on the

17

Petition Date shall be used to pay any Allowed Fees of such Case Professionals before any payment of such Allowed Fees are made from the Carve-Out Account or otherwise from the Collateral.   As used herein, the terms:   (i) "Allowed Fees" shall mean fees and expense reimbursement of Case Professionals solely to the extent such fees and expenses have been approved, on a final basis, by an order of this Court that has not been vacated or stayed; (ii) "Case Professionals" shall mean attorneys, accountants, financial advisors, consultants and other professionals employed, pursuant to sections 327, 328 or 1103 of the Bankruptcy Code, as applicable, by the Debtors or any Committee; and (iii) "Carve-Out Trigger Date" shall mean the first business day after the Prepetition Term Loan Agent provides notice (the "Carve-Out Trigger Notice") to the Debtors of the occurrence of an Event of Default (as defined in paragraph 13 below).  The Carve-Out and any payments made in respect of the Carve-Out shall be entitled to the protections granted under this Final Order, the Bankruptcy Code, and applicable law.

(b)        **No Direct Payment Obligation**.  Without limiting (and solely to the extent of) its obligations to fund the Carve-Out, the Prepetition Term Loan Parties shall not be responsible for (i) the direct payment or reimbursement of any fees or disbursements of Case Professionals incurred in connection with the Chapter 11 Cases, any Successor Cases or otherwise, or (ii) the administration and maintenance of the Carve-Out Account or the disbursement of funds from the Carve-Out Account to pay Case Professionals.  Nothing in this Final Order or otherwise shall be construed:  (i) to obligate the Prepetition Term Loan Parties in any way to pay compensation to or to reimburse expenses of any Case Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement; or (ii) to increase the Carve-Out if Allowed Fees are higher in fact than the amounts subject to the Carve-Out as set forth in this Final Order.

18

(c)    **Carve-Out Account**. (i) The Debtors shall maintain the interest-bearing escrow account (the "Carve-Out Account") that was established in accordance with the terms of the Final DIP Order and the Interim Orders; provided that, on each Friday after the date hereof (or if such day is not a business day, then the next business day), the Debtors shall deposit into the Carve-Out Account an amount equal to 100% of the aggregate fees and expense reimbursements for Case Professionals for the next upcoming unfunded week set forth in the Budget (all amounts deposited into the Carve-Out Account, hereinafter the "Estimated Professional Fee Escrow Deposits").   All Allowed Fees for periods in which amounts were deposited into the Carve-Out Account shall be paid to the applicable Case Professional from the Carve-Out Account in accordance with the order or orders of the Court allowing such Allowed Fees; provided, however, that the initial $1,000,000 used to fund the Carve-Out Account pursuant to the First Interim Order shall not be used to pay any fees or expense reimbursements incurred prior to the Carve-Out Trigger Date, and such deposited amount shall be deemed segregated in a sub-account separate from the other Estimated Professional Fee Escrow Deposits. The Carve-Out Account and the proceeds on deposit in the Carve-Out Account shall be available and used only to satisfy obligations of Case Professionals benefitting from the Carve-Out. The Prepetition Term Loan Parties shall retain automatically perfected and continuing first priority security interests in any residual interest in the Carve-Out Account available following satisfaction in full of all obligations benefiting from the Carve-Out (the "Residual Carve-Out Amount").  The Debtors will provide, on every other Wednesday: (x) a bi-weekly accounting to the Prepetition Term Loan Agent of all deposits to and disbursements from the Carve-Out Account (together with copies of all current bank statements relating to the Carve-Out Account); and (y) a bi-weekly summary of all fees and expense reimbursements of all Case Professionals

19

actually accrued for the two week period ended (and on a cumulative basis since the Petition Date) the Saturday ten days prior to such date, together with a variance report comparing such fees and expense reimbursements to the Budget. Promptly (but in no event later than 5 business days) following the satisfaction in full of all obligations benefiting from the Carve-Out, the Debtor (or, if applicable, the trustee in any Successor Case), is hereby authorized and directed to deliver the Residual Carve-Out Amount, if any, to the Prepetition Term Loan Agent for application to the Prepetition Term Loan Obligations, if any.

(d)    **No Waiver of Right to Object to Fees; Payment of Compensation**. Nothing in this Final Order shall be construed as consent to the allowance of any fees or expense reimbursements of any Case Professionals or shall affect the right of the Prepetition Term Loan Parties to object to the allowance and payment of such fees and expense reimbursements or to permit the Debtors to pay any such amounts not set forth in the Budget.

6.    **Right to Credit Bid**. The Prepetition Term Loan Agent, on behalf of itself and the Prepetition Term Loan Lenders, shall have the right, to the extent consistent with applicable law, to credit bid the amount of all accrued and unpaid Prepetition Term Loan Obligations during any sale of the Collateral (which credit bid rights under section 363(k) of the Bankruptcy Code or otherwise shall not be impaired in any manner), including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any reorganization plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code or otherwise.

7.    **Limitations on Use of Cash Collateral and Carve-Out**. Except with respect to fees or expenses that were incurred prior to August 25, 2016, the Cash Collateral and Carve-Out may not be used: (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to the interests of the

20

Prepetition Term Loan Parties, or their respective rights and remedies under the Prepetition Term

Loan Documents or this Final Order, as applicable, including, without limitation, for the

payment of any services rendered by professionals retained by the Debtors or any Committee in

connection with the assertion of or joinder in any claim, counterclaim, action, proceeding,

application, motion, objection, defense or other contested matter, the purpose of which is to seek,

or the result of which would be to obtain, any order, judgment, determination, declaration or

similar relief, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the

Prepetition Term Loan Obligations, (iii) for monetary, injunctive or other affirmative relief

against any Prepetition Term Loan Party, or its collateral, or (iv) preventing, hindering or

otherwise delaying the exercise by any Prepetition Term Loan Party of any rights and/or

remedies under this Final Order or applicable law, or the enforcement or realization (whether by

foreclosure, credit bid, further order of the Court or otherwise) by the Prepetition Term Loan

Parties upon any of the Collateral (subject to applicable law); (b) to make any distribution under

a plan of reorganization or liquidation in any of the Chapter 11 Cases without the prior written

consent of the Prepetition Term Loan Parties; (c) to make any payment in settlement of any

claim, action or proceeding, before any court, arbitrator or other governmental body without the

prior written consent of the Prepetition Term Loan Parties; (d) to pay any fees or similar amounts

to any person who has proposed or may propose to purchase interests in the Debtors without the

prior written consent of the Prepetition Term Loan Parties; (e) to object to, contest, or interfere

with in any way the Prepetition Term Loan Parties' enforcement or realization upon any of the

Collateral once an Event of Default has occurred; (f) to use or seek to use Cash Collateral or to

sell or otherwise dispose of Collateral without the consent of the Prepetition Term Loan Parties;

(g) to object to or challenge in any way the claims, liens, or interests (including interests in the

21

Prepetition Collateral or Collateral) held by or on behalf of the Prepetition Term Loan Parties; (h) to assert, commence or prosecute any claims or causes of action whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the Prepetition Term Loan Parties; (i) to prosecute an objection to, contest in any manner, or raise any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Term Loan Obligations, Prepetition Term Loan Liens, or any other rights or interests of the Prepetition Term Loan Parties; (j) to seek the modification, stay, or amendment of this Final Order; (k) to prevent, hinder or otherwise delay the exercise by the Prepetition Term Loan Parties of any rights and remedies granted under this Final Order; or (l) to distribute or contribute to, or otherwise use for payments or liabilities of, for or on behalf of, directly or indirectly, any subsidiary of any Debtor other than in accordance with the Budget.  Nothing in this section shall impair the Debtors' ability to take actions in accordance with their fiduciary duties.

8.    **Additional Covenants and Protections**:  Without in any manner limiting the terms or requirements of this Final Order:

(a)    the Debtors shall not propose, file, support or pursue confirmation of a chapter 11 plan without the prior written consent of the Prepetition Term Loan Parties;

(b)    the Debtors shall provide the Prepetition Term Loan Agent and its representatives with all access to records, notices, reports and other information that they would have been required to deliver to the DIP Agent (as defined in the Final DIP Order) pursuant to the DIP Credit Agreement (as defined in the Final DIP Order) including (without limitation) pursuant to Sections 5-2, 5-3, 5-5, 5-6, 5-7, 5-10, 5-11, and 5-13 of the DIP Credit Agreement;

(c)    the Debtors shall provide the Prepetition Term Loan Agent and its representatives with full access to the Debtors' advisors, management personnel and the Chief

22

Restructuring Officer appointed in these Chapter 11 Cases upon reasonable prior notice, including regularly scheduled weekly (or more frequently at the Prepetition Term Loan Agent's request) telephonic update calls;

(d)    the Debtors shall provide the Prepetition Term Loan Agent and its representatives with (i) weekly written reports summarizing the results (including costs, goods sold, additional inventory acquired, cash proceeds and progress) of all store closing sales, and (ii) prompt notice of any notices or other material written or oral communications received by the Debtors from Buyer Agent under the Agency Agreement (each as defined in the Agent Order (defined below));

(e)    the Debtors shall not amend or enter into any settlement regarding any inventory adjustment mechanism under the Asset Purchase Agreement or Agency Agreement without the prior written consent of the Prepetition Term Loan Agent;

(f)    the Debtors shall not amend, in any material respect, the engagement letter, or the authority or duties of, or terminate without cause, the Chief Restructuring Officer appointed with the consent of the Prepetition Term Loan Agent, without the prior written consent of the Prepetition Term Loan Agent; and

(g)    the Debtors acknowledge and agree that, subject to maintaining any lawyer-client privilege or attorney work product privilege, and notwithstanding anything to the contrary in any engagement letter, the Debtors' Chief Restructuring Officer and the Debtors' professionals shall be entitled to, and shall promptly, provide the Prepetition Term Loan Agent with any and all information that it may reasonably request.

9.    **Section 506(c) Claims**.  The Debtors hereby waive any right they may have to seek to impose any charge, security interest, lien, assessment or claim against the Prepetition

23

Term Loan Parties' interests in the Collateral under section 506(c) of the Bankruptcy Code or otherwise. Except with respect to the Carve-Out, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or any Successor Cases at any time shall be charged against the Prepetition Term Loan Parties, their claims, or the Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the Prepetition Term Loan Parties, and no such consent shall be implied from any other action, inaction or acquiescence by the Prepetition Term Loan Parties.

10.    **Collateral Rights**. Unless the Prepetition Term Loan Parties have provided their prior written consent or (i) all Prepetition Term Loan Obligations have been indefeasibly paid in full in cash (or will be paid in full in cash upon entry of an order approving indebtedness described in subparagraph (a) below), and (ii) all indemnity obligations under the Prepetition Term Loan Agreement have been cash collateralized (the actions set forth in clauses (i) and (ii), collectively, "Repayment in Full of Prepetition Term Loan Obligations"), there shall not be entered in these Chapter 11 Cases, or in any Successor Cases, any order which authorizes any of the following:

(a)    the obtaining of credit or the incurring of indebtedness, pursuant to sections 364(c) or 364(d) of the Bankruptcy Code, that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the Collateral and/or entitled to priority administrative status which is equal or senior to those granted to the Prepetition Term Loan Parties; or

(b)    relief from stay by any person holding or asserting liens junior to the liens of the Prepetition Term Loan Parties on all or any portion of the Collateral.

24

11.    **Disposition of Collateral**.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral, without the prior written consent of the Prepetition Term Loan Parties (and no such consent shall be implied, from any other action, inaction or acquiescence by the Prepetition Term Loan Parties, or an order of this Court), except: (i) for sales of the Debtors' inventory in the ordinary course of business, (ii) as otherwise provided for in this Final Order, or (iii) as otherwise approved by the Court or consented to by the Prepetition Term Loan Parties, including pursuant to this Court's *Order (I) Approving the Purchase Agreement Among Sellers and Buyer Consortium, (II) Authorizing the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Leases in Connection Therewith, and (IV) Granting Related Relief* [ECF No. 809] (the "Sale Order") and *Order (I) Approving the Agency Agreement By and Among Sellers, Buyer Agent, and Buyer Consortium, (II) Authorizing Buyer Agent to Sell Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, and (III) Granting Related Relief* [ECF No. 808] (the "Agent Order").  Nothing in this section shall impair the Debtors' ability to take actions in accordance with their fiduciary duties.

12.    **Proceeds of Subsequent Financing**.  If at any time prior to the Repayment in Full of Prepetition Term Loan Obligations, any of the Debtors, any trustee, or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to section 364(b), 364(c), or 364(d) of the Bankruptcy Code whether or not in violation of this Final Order, then all of the cash proceeds derived from such credit or debt shall immediately be turned over to the Prepetition Term Loan Agent and applied to the Prepetition Term Loan Obligations.

25

13.    **Events of Default**.

The following shall constitute an event of default under this Final Order, unless expressly waived in writing by the Prepetition Term Loan Parties (collectively, the "Events of Default"):

(a)    the failure by the Debtors to observe or perform any of the terms, provisions, conditions, covenants or obligations under this Final Order (including the failure by the Debtors to comply at any time with the Budget);

(b)    the reversal, vacatur or modification of any provision of this Final Order;

(c)    the failure of the Debtors to obtain entry of this Final Order on or before December 22, 2017, or such later date as agreed to by the Debtors and the Prepetition Term Loan Parties;

(d)    the conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code;

(e)    the dismissal of the Chapter 11 Cases; or

(f)    the appointment of a trustee or examiner with expanded powers in the Chapter 11 Cases.

Until the Repayment in Full of Prepetition Term Loan Obligations, the Adequate Protection afforded to the Prepetition Term Loan Parties pursuant to this Final Order, and any actions taken pursuant thereto, shall survive the entry of any order confirming a plan of reorganization or converting any of these Chapter 11 Cases to a Successor Case, and the Adequate Protection shall continue in these Chapter 11 Cases and in any Successor Cases, and the Adequate Protection granted herein shall maintain the priorities provided by this Final Order.

WEIL:\96371608\6\11727.0013

14.    <u>**Rights and Remedies Upon Event of Default**</u>.

(a)    Immediately upon the occurrence and during the continuation of an Event of Default, the Prepetition Term Loan Agent may declare a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral (any such declaration by the Prepetition Term Loan Agent shall be referred to herein as a "<u>Termination Declaration</u>").  The Termination Declaration shall be given by email (or other electronic means) to counsel to the Debtors, counsel to the Prepetition Term Loan Parties, counsel to the Committee and the United States Trustee (the date any such Termination Declaration is made shall be referred to herein as the "<u>Termination Declaration Date</u>").  A copy of the Termination Declaration shall also be filed on the docket in the Chapter 11 Cases on the Termination Declaration Date.

(b)    From and after the Termination Declaration Date, the Debtors shall not have any right to use, and the Debtors and other parties in interest shall not seek authority to use, Cash Collateral without the express written consent of the Prepetition Term Loan Parties in their sole and absolute discretion.  Any automatic stay otherwise applicable to the Prepetition Term Loan Parties is hereby modified so that five (5) days after the Termination Declaration Date (the "<u>Remedies Notice Period</u>"), the Prepetition Term Loan Parties shall be entitled to exercise all rights and remedies against the Collateral in accordance with the Prepetition Term Loan Documents and this Final Order and shall be permitted to satisfy the Prepetition Term Loan Obligations, subject to the Carve-Out. During the Remedies Notice Period, the Debtors or the Committee shall be entitled to seek an emergency hearing with the Court for the sole purpose of contesting whether an Event of Default has occurred and/or is continuing, and seeking other relief in the event it is determined that an Event of Default has not occurred and/or is not continuing.  Unless the Court determines during the Remedies Notice Period that an Event of

27

Default has not occurred and/or is not continuing, the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice or order, and the Debtors (and all other parties in interest) shall have no right to use or seek to use Cash Collateral, and the Prepetition Term Loan Parties shall be permitted to exercise all remedies set forth herein and the Prepetition Term Loan Documents, as applicable, and as otherwise available at law against the Collateral, without further order of or application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interests in the Collateral or any other rights and remedies granted to the Prepetition Term Loan Parties with respect thereto pursuant to the Prepetition Term Loan Documents or this Final Order.  The rights and remedies of the Prepetition Term Loan Parties specified herein are cumulative and not exclusive of any rights or remedies that the Prepetition Term Loan Parties may have under the Prepetition Term Loan Documents or otherwise.  Unless the Court determines during the Remedies Notice Period that an Event of Default has not occurred and/or is not continuing, upon the expiration of the Remedies Notice Period, the Debtors shall cooperate fully with the Prepetition Term Loan Parties in their exercise of rights and remedies, whether against the Collateral or otherwise, including, without limitation, executing and delivering any documents or other instruments, or filing any motions, applications or pleadings requested by the Prepetition Term Loan Agent in furtherance of the exercise of any such rights and remedies.

(c)     If the Prepetition Term Loan Parties exercise any of their rights and remedies upon the occurrence of an Event of Default under this Final Order or the Prepetition Term Loan Documents, the Prepetition Term Loan Agent may retain one or more agents to sell, lease or otherwise dispose of the Collateral.  In any exercise of its rights and remedies upon an

28

Event of Default under the Prepetition Term Loan Documents, the Prepetition Term Loan Parties are authorized to proceed under or pursuant to the Prepetition Term Loan Documents.

(d)     Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the Prepetition Term Loan Agent (for the benefit of the Prepetition Term Loan Lenders) contained in this Final Order or the Prepetition Term Loan Documents, or otherwise available at law or in equity, and subject to the terms of the Prepetition Term Loan Documents and this Final Order, following the Remedies Notice Period, and upon written notice to the landlord of any leased premises that an Event of Default has occurred under this Final Order, the Prepetition Term Loan Agent may, subject to any separate agreement by and between such landlord and the Prepetition Term Loan Agent (including, without limitation, any prepetition collateral access agreement, landlord waiver, or similar agreement to which the Prepetition Term Loan Agent is party (each, a "Separate Agreement")), enter upon any leased premises of the Debtors for the purpose of exercising any remedy with respect to Collateral located thereon and, subject to any Separate Agreement, shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from such landlord; *provided, however*, that, subject to any such Separate Agreement, the Prepetition Term Loan Agent (on behalf of the Prepetition Term Loan Lenders) shall only be obligated to pay rent of the Debtors that first accrues after the written notice referenced above and that is payable during the period of such occupancy by the Prepetition Term Loan Agent (on behalf of the Prepetition Term Loan Lenders), calculated on a per diem basis.  For the avoidance of doubt, subject to (and without waiver of) the rights of the Prepetition Term Loan Agent and Prepetition Term Loan Lenders under applicable non-bankruptcy law, the Prepetition Term Loan Agent and/or Prepetition Term Loan Lenders can only enter upon a leased premises after an Event of Default

29

in accordance with:  (i) a Separate Agreement with the landlord for the applicable leased premises, or (ii) upon entry of an order of this Court obtained by motion of the Prepetition Term Loan Agent and/or Prepetition Term Loan Lenders on such notice to the landlord as shall be required by the Court.  Nothing herein shall require the Prepetition Term Loan Agent or the Prepetition Term Loan Lenders to assume any lease as a condition to the rights afforded to the Prepetition Term Loan Agent in this paragraph.

15.    **Other Rights and Obligations**.

(a)    **Binding Effect**.  All of the provisions of this Final Order shall be binding upon and inure to the benefit of the Prepetition Term Loan Parties, the Debtors, the Committee, all other creditors of the Debtors and all other parties-in-interest, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in these Chapter 11 Cases, in any Successor Cases, or upon dismissal of any of the Chapter 11 Cases or any Successor Cases.  Nothing in this Final Order is intended to, nor shall it diminish, invalidate or otherwise impair any of the rights, entitlements and protections provided to the Prepetition Term Loan Parties in the Final DIP Order.

(b)    **No Waiver**.  The failure of the Prepetition Term Loan Parties to seek relief or otherwise exercise their respective rights and remedies, as applicable, under the Prepetition Term Loan Documents, this Final Order or otherwise, shall not constitute a waiver of any of the Prepetition Term Loan Parties' rights hereunder, thereunder, or otherwise.  Except to the extent otherwise specifically and expressly provided in this Final Order, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the rights of the Prepetition Term Loan Parties under the Bankruptcy Code

30

or under non-bankruptcy law, including without limitation, the rights of the Prepetition Term Loan Parties to (i) request conversion of the Chapter 11 Cases to cases under chapter 7, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases; (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code and this Final Order, a plan of reorganization; and (iii) exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) the Prepetition Term Loan Parties may have pursuant to this Final Order, applicable law, or the Prepetition Term Loan Documents.

(c)     **No Third Party Rights**.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, landlord, lessor, equity holder or any direct, indirect, or incidental beneficiary.

(d)     **No Marshaling**.  The Prepetition Term Loan Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral.

(e)     **Section 552(b)**.  The Debtors agree that (i) the Prepetition Term Loan Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and (ii) the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Term Loan Parties with respect to proceeds, product, offspring or profits of any of the Collateral, but such agreement is not binding on the Court.

16.     **Limitation of Liability**.  The mere entry of this Final Order in no way deems the Prepetition Term Loan Parties to be in control of the operations or employment decisions, policies or practices of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response,

31

Compensation and Liability Act, 29 U.S.C. §§9601 *et seq.* as amended, or any similar federal statute). Furthermore, to the maximum extent permitted by law, nothing in this Final Order shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Term Loan Parties any liability for any claims arising from the prepetition or postpetition activities of the Debtors.

17.    **Survival of Final Order**.  All of the provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) confirming any chapter 11 plan in the Chapter 11 Cases, (b) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or any Successor Cases, (c) dismissing any of the Chapter 11 Cases, (d) withdrawing of the reference of any of the Chapter 11 Cases from this Court, or (e) providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases in this Court.  The terms and provisions of this Final Order, including the Adequate Protection granted pursuant to this Final Order, shall continue in full force and effect notwithstanding the entry of such order, and such Adequate Protection shall maintain its priority as provided by this Final Order until all of the Prepetition Term Loan Obligations of the Debtors to the Prepetition Term Loan Parties pursuant to the Prepetition Term Loan Documents, the Final DIP Order, the Interim Orders, and this Final Order have been indefeasibly paid in full and discharged.

18.    **Enforceability**.  This Final Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable immediately upon entry of this Final Order on the Court's docket.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and

32

enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

19. **Release**. Each Debtor, on behalf of itself and its estate, for the good and valuable consideration provided by each of the Released Parties (defined below), shall be deemed to provide a full release to each of the Prepetition Term Loan Parties and each of their predecessors, successors, assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, and other professionals, and each of such person's respective heirs, executors, estates, servants and nominees (collectively, the "Released Parties") (and each such Released Party shall be deemed released by each Debtor and its estate) and their respective property from any and all causes of action and any other debts, obligations, rights, suits, damages, actions, derivative claims, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the date of this Final Order, in law, at equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the date of this Final Order, arising from or related in any way to the Debtors, these Chapter 11 Cases, the Prepetition Term Loan Documents or any prepetition sourcing agreement, including those that the Debtors would have been legally entitled to assert or that any holder of a claim against or interest in the Debtors or any other entity could have been legally entitled to assert derivatively or on behalf of the Debtors or their estates, other than any claims arising from the violation of this Final Order.

33

20.    **Objections Overruled**.  All objections to entry of this Final Order to the extent not withdrawn or resolved, are hereby overruled.

21.    **No Waivers or Modification of Final Order**.  The Debtors irrevocably waive any right to seek any modification of this Final Order without the prior written consent of the Prepetition Term Loan Parties and no such consent shall be implied by any other action, inaction or acquiescence of the Prepetition Term Loan Parties.

22.    **Headings**.  All paragraph headings used in this Final Order are for ease of reference only and are not to affect the construction hereof or to be taken into consideration in the interpretation hereof.

23.    **Waiver of Bankruptcy Rules 4001(b)(1)(B) and 4001(d)(1)(B) and Local Rule 4001-2**.  Given that the provisions and terms for the Debtors' use of Cash Collateral contained herein are substantially similar to those approved by the Court in the Final DIP Order and the Interim Orders, Bankruptcy Rules 4001(b)(1)(B) and 4001(d)(1)(B) and Local Rule 4001-2 are hereby waived.

24.    **Retention of Jurisdiction**.  The Court has and will retain jurisdiction to enforce this Final Order.

Dated: December ___, 2017
       New York, New York

 

                                         _____
                                         UNITED STATES BANKRUPTCY JUDGE

WEIL:\96371608\6\11727.0013

## Exhibit A

**Budget**

**ARO Liquidation Holdings, Inc.**
**Cash Flow Budget**
**$ in 000s**

| Week Ended / Forecast / Actual | 9-Dec Est | Unallocated | 16-Dec Fcst | 23-Dec Fcst | 30-Dec Fcst | 6-Jan Fcst | 13-Jan Fcst | 20-Jan Fcst | 27-Jan Fcst | 3-Feb Fcst | 10-Feb Fcst | 17-Feb Fcst | 24-Feb Fcst | 3-Mar Fcst | 10-Mar Fcst | 17-Mar Fcst | Total Budget |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1) Purchase Price | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| _Non-Purchased Assets_ | | | | | | | | | | | | | | | | | |
| 2) Licensing A/R | - | - | - | - | - | - | - | - | - | - | - | 111 | - | - | - | - | 111 |
| 3) Return on Assets from Canada | - | - | - | - | - | - | - | - | - | 975 | - | - | - | - | - | - | 975 |
| 4) Proceeds from Judgment/Litigation | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 5) Utility Deposits | 4 | - | 88 | - | 55 | - | - | - | - | - | - | - | - | - | - | - | 143 |
| 6) Prepaid Rent | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 7) Tax Receivable | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 8) Credit Card Holdback | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 9) GOB Store (29 Tiger GOB Stores) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 10) Other Assets | - | - | - | - | - | - | - | 93 | - | - | - | - | - | - | - | - | 93 |
| **Total Receipts** | **4** | **-** | **88** | **-** | **55** | **-** | **-** | **93** | **-** | **975** | **-** | **111** | **-** | **-** | **-** | **-** | **1,321** |
| 11) DIP | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| _Transaction Costs_ | | | | | | | | | | | | | | | | | |
| 12) Non-Lease Cure Costs | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 13) Transaction Fee | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 14) KERP | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| _Admin Claims_ | | | | | | | | | | | | | | | | | |
| 15) 503(b)(9) | - | (200) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (200) |
| 16) Post-Petition Merch AP | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 17) Sales Tax Payable | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 18) Accrued Compensation | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 19) IBNR Health Claims | - | - | - | - | (15) | - | - | - | (15) | - | - | - | - | (15) | - | - | (45) |
| 20) Non-Merch AP | - | (750) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (750) |
| 21) Priority Claims | - | (1,000) | (320) | (20) | - | - | - | - | - | - | - | - | - | - | - | - | (1,340) |
| _Wind Down Claims_ | | | | | | | | | | | | | | | | | |
| 22) Professional Fees Escrow Acct | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 23) WARN | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 24) Severance/Retention | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 25) PTO | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 26) Tiger Store Expenses | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Disbursements** | **-** | **(1,950)** | **(320)** | **(20)** | **(15)** | **-** | **-** | **-** | **(15)** | **-** | **-** | **-** | **-** | **(15)** | **-** | **-** | **(2,335)** |
| 27) Reconciliation of Items Prior to 9/15 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Net Cash Flow** | **4** | **(1,950)** | **(232)** | **(20)** | **40** | **-** | **-** | **93** | **(15)** | **975** | **-** | **111** | **-** | **(15)** | **-** | **-** | **(1,014)** |
| Starting Cash Balance (Book) | 12,763 | 12,767 | 10,817 | 10,585 | 10,565 | 7,105 | 7,105 | 7,105 | 7,198 | 7,183 | 8,158 | 8,158 | 8,268 | 8,268 | 8,253 | 8,253 | 12,767 |
| Net Cash Flow | 4 | (1,950) | (232) | (20) | 40 | - | - | 93 | (15) | 975 | - | 111 | - | (15) | - | - | (1,014) |
| Sycamore Paydown | - | - | - | - | (3,500) | - | - | - | - | - | - | - | - | - | - | - | (3,500) |
| **Ending Balance (Book)** | **12,767** | **10,817** | **10,585** | **10,565** | **7,105** | **7,105** | **7,105** | **7,198** | **7,183** | **8,158** | **8,158** | **8,268** | **8,268** | **8,253** | **8,253** | **8,253** | **8,253** |