# Exhibit B

# Stalking Horse Agreement

# CLAIM PURCHASE AGREEMENT

THIS CLAIM PURCHASE AGREEMENT ("Agreement") is made and entered into this _____ day of _____, 201\_, by and between Optium Fund 2 LLC, a Delaware limited liability company ("Purchaser"), and ARO Liquidation, Inc. ("Parent Seller") and each of the other affiliated entities of Parent Seller listed on Exhibit C to this Agreement ("Affiliated Sellers" and, collectively, together with Parent Seller, the "Sellers").  Purchaser and Sellers are sometimes collectively referred to in this Agreement as "Parties" or individually as "Party."

## RECITALS

A.  Each Seller is a class member in, and a potential beneficiary of, the class action lawsuit known as <u>In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation</u> (Case No. 1:05 md-1720-JG-JO), filed in the United States District Court for the Eastern District of New York, and any other cases constituting a reformation of the causes of action therein or in which the same claims are alleged (the "Litigation" and the district court presiding over the Litigation is referred to as the "District Court").  Any capitalized term used but not defined in this Agreement shall have the meaning given to such term in the Litigation filings.

B.  As a member of the plaintiff class (the "Class") in the Litigation, each Seller has a claim for damages (the "Claim") against the defendant or defendants in the Litigation (the "Defendants") that is more particularly described on Exhibit A to this Agreement.  Sellers may be entitled to a monetary or other recovery with respect to the Claim upon the occurrence of any of the following events (each, a "Settlement Event"):  a final non-appealable judgment in favor of the plaintiffs or a voluntary final settlement or other final non-appealable disposition of the Litigation in favor of the plaintiffs.  Whether such recovery will occur may be unknown by Sellers and Purchaser at the time of this Agreement.

C.  Purchaser desires to purchase each Claim from Sellers, and Sellers desires to sell each Claim to Purchaser, subject to Bankruptcy Court approval and higher and better offers after an Auction, as provided for in this Agreement.

**NOW, THEREFORE**, in consideration of the mutual covenants, agreements, representations and warranties contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

## SECTION 1 – RECITALS INCORPORATED IN AGREEMENT

1.1    The above recitals are hereby incorporated herein by reference.

**SECTION 2 – TERMS OF PURCHASE AND SALE**

2.1   Sale and Purchase of Claim.

    (a)   Purchaser agrees to purchase all right, title and interest in each Claim from each Seller, and each Seller agrees to sell, transfer and assign all right, title and interest in each Claim to Purchaser for the aggregate sum of One Million Dollars ($1,000,000.00) ("Purchase Price"), such Purchase Price to be delivered by Purchaser to the Parent Seller (only) for the further benefit of all Sellers.

    (b)   Each Seller acknowledges and agrees that the sale, transfer and assignment of each Claim to Purchaser includes, without limitation, the sale, transfer and assignment to Purchaser of all of each Seller's direct and indirect rights, title and interest in and to the following:

        (1)  all agreements, instruments, invoices, purchase orders, proofs of delivery, correspondence (including, without limitation, correspondence with the District Court), counsel appointed for the Class ("Class Counsel") or the claims administrator appointed in the Litigation (the "CA")), and other documents (whether now existing or hereafter arising) evidencing, creating, relating or referred to in, the Claim (collectively, the "Claim Documents");

        (2)  all interest, fees, payments, credits, coupons, reimbursements or rights thereto or other distributions in any form whatsoever (whether cash, securities, instruments, or other property) made or to be made on account of or in respect of the Claim or distributions issued in respect or satisfaction of the Claim and any proceeds of any of the foregoing;

        (3)  all other claims, suits, causes of action, and other rights of any Seller or any predecessor in interest to any Seller, whether known or unknown, against the Defendants or any other party relating to or arising from or in connection with the Claim or the Claim Documents; and

        (4)  all of any Seller's right to receive any payment, distribution or proceeds in respect of, or in connection with, any of the foregoing; and, all of the foregoing items collectively being defined as the "Transferred Rights".

    (c)   From and after the Closing Date (as defined below), Purchaser shall be deemed to be the owner of each Claim and the Transferred Rights, and shall be entitled to identify itself as the owner of each Claim and the Transferred Rights for all purposes, and after the Closing no Seller shall identify itself as the owner of any Claim or the relevant Transferred Rights or object in any forum, including, without limitation, any court hearing in any Litigation, to the terms of this Agreement or the sale and purchase contemplated hereby.  The Parties acknowledge that the benefit of the bargain under this Agreement is, without

2

    limitation, the transfer of the full value of each Claim and the relevant Transferred Rights.

2.2  <u>Bankruptcy Court Approval</u>.

  (a)  Purchaser and Sellers acknowledge that this Agreement and the transactions contemplated hereby are subject to the approval of the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") and the entry by the Bankruptcy Court of a final order approving the transaction contained in the Agreement and affording Purchaser the protections under section 363 of the Bankruptcy Code as a good faith purchaser (the "Approval Order") and Sellers' obligation and Purchaser's obligation to consummate the transaction contemplated hereunder is subject to approval by the Bankruptcy Court. Within five (5) business days following exchange between the Parties of executed counterparts of this Agreement, Sellers, at Sellers' sole cost and expense, will file with the Bankruptcy Court a motion (the "Approval Motion") seeking, *inter alia*, entry of the Approval Order. Purchaser shall reasonably cooperate with the Sellers in the prosecution of the Approval Motion. Pursuant to the Approval Motion, the Sellers will seek a Bankruptcy Court order (the "Bidding Procedures Order") approving Purchaser as "stalking-horse bidder," a marketing period (the "Marketing Period") of no more than thirty (30) days after the date of the Bidding Procedure Order, and bidding procedures in order to subject the sale of the Property contemplated herein to higher and better offers. If qualifying over bids are received during the Marketing Period, a Bankruptcy Court supervised auction (an "Auction") will be held, and the Claim may be sold to an Alternative Buyer (defined below). Purchaser shall have the right to participate in the Auction and increase its bid.

  (b)  In order to be a "qualifying over bid", an offer must provide for a purchase price in excess of the minimum Purchase Price set forth in this Agreement (taking into consideration the purchase price payable to Sellers, all credits to such purchase price, the Break-Up Fee payable to Purchaser and any payments or consideration by Sellers to the purchaser).

  (c)  If for any reason whatsoever the Bankruptcy Court shall enter an order approving the sale of the Property to another buyer (an "Alternative Buyer") that does not contemplate consummation of the sale of the claim to the Purchaser pursuant to this Agreement, Sellers will pay to Purchaser a break-up fee equal to 3% of the Purchase Price (the "Break-Up Fee") within ten (10) days of Sellers' Selection of an Alternative Buyer.

  (d)  The Approval Motion will also seek approval of payment to Purchaser of the Break-Up Fee if Sellers accepts a higher or better offer from an Alternative Buyer at an Auction and the Bankruptcy Court enters a final order approving the sale of the Property to such Alternative Buyer.

3

(e) If the Approval Order is not obtained within ninety (90) days after the Effective Date, then unless otherwise agreed in writing by Purchaser and Sellers, this Agreement will automatically terminate.

2.3 Closing. The transaction contemplated by this Agreement will be consummated at a closing as follows:

(a) The closing of the purchase and sale of each Claim ("Closing") will take place on or before the 15th day following the entry of the Approval Order. The date and time the Closing actually occurs are referred herein to as the "Closing Date". The Closing will be effective as of 12:01 a.m., Eastern Time, on the Closing Date.

(b) Provided that each Seller has executed and delivered to Purchaser this Agreement, all known Claim Documents in its possession and a Notice of Assignment in the form attached hereto as Exhibit B to this Agreement, Purchaser shall pay to Parent Seller, on behalf of each Seller, at the Closing an amount equal to the Purchase Price in immediately available funds by wire transfer to a bank account to be designated by Parent Seller no later than the second business day prior to the Closing Date.

2.4 Cooperation, etc. Each Seller understands and acknowledges that, if and to the extent that Purchaser is not in its reasonable judgment fully recognized as the owner of the Claim from and after the Closing Date by the CA, Purchaser may require any such Seller's assistance, and each Seller agrees to provide such assistance to Purchaser, as may be necessary for the prosecution and collection of the Claim as further provided in this Agreement. Purchaser expressly reserves the right to take any steps it deems reasonable and necessary in order to maximize Purchaser's recovery in respect of the Claim. Purchaser has not, and shall not, assume or in any way become liable for any obligation or liability relating to the Claim or any Seller.

**SECTION 3 - REPRESENTATIONS AND WARRANTIES OF SELLERS**

Each Seller represents and warrants to Purchaser as of the date of this Agreement and as of the Closing Date as follows:

3.1 Organization; Authorization; Etc. Each Seller is duly organized, validly existing and (if relevant) in good standing under the laws of the state of its incorporation or other organization. Each Seller has the requisite power and authority to execute and deliver this Agreement and to perform the transactions contemplated hereby, and the transfer of any Claim pursuant to this Agreement will not constitute a violation of (i) any law, regulation or order, (ii) the relevant Seller's certificate of incorporation or by-laws or other organizational documents, or (iii) any instrument or agreement to which the relevant Seller is a party or by which such Seller may be bound. This Agreement has been duly authorized, executed and delivered and constitutes a legal, valid and binding obligation of each Seller, enforceable against it in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization,

4

moratorium or other similar laws affecting the enforcement of creditors' rights in general and subject to general principles of equity. The Parent Seller has the requisite power and authority to execute this Agreement on behalf of the Affiliated Sellers listed in Exhibit C to this Agreement.

3.2   No Litigation. There is no suit, action, litigation or other proceeding or governmental or administrative investigation or inquiry pending or, to the best knowledge of each Seller, threatened against any Seller or any of its affiliates or concerning any Claim that could prevent or prohibit any such Seller from selling any Claim or from otherwise complying in full with the provisions of this Agreement or prevent Purchaser from receiving the benefits of any Claim and the relevant Transferred Rights.

3.3   Title to Claims; No Liens. Each Seller has good, valid and marketable title to any Claim and the relevant Transferred Rights and it is selling each such Claim and the relevant Transferred Rights free and clear of any mortgage, pledge, lien, security interest, claim, set-off or encumbrance of any kind or nature. Neither any Seller nor any of such Seller's affiliates has transferred any Claim or any related Transferred Rights or any interest therein except to Purchaser hereunder. The Sellers listed on the signature pages hereto include all direct or indirect subsidiaries of and other entities affiliated with Parent Seller that own any Claim. No Settlement Event has occurred and neither any Seller nor any of such Seller's affiliates has received any payment or distribution in connection with any Claim.

3.4   Rule 23. The Litigation is a valid class action certified pursuant to Rule 23 of the Federal Rules of Civil Procedure and each Seller is, and has taken all action necessary to be included as, a member of the Class as defined in the order certifying the Class for purposes of the Litigation and has never attempted to (and shall never) opt out of the Class.

3.5   No Bad Acts. Each Seller has a valid factual and documentary basis for the Claim and neither any Seller nor any of its relevant affiliates has engaged in any acts, conduct or omissions or had or will have any relationship with the Defendants or any of their respective affiliates that might result in any Seller receiving in respect of any Claim or the relevant Transferred Rights proportionately less payments or distributions, or any other less favorable treatment (including the timing of payments or distributions) with respect to any Claim or the relevant Transferred Rights, than is received by any other member of the Class.

3.6   Filing Service. No Seller has engaged a filing service for the Litigation or the Claim except for Claimco LLC, dba Spectrum Settlement Recovery ("Spectrum"). A motion was filed with the Bankruptcy Court on January 9, 2018 to reject the contract between the Sellers and Spectrum.

3.7   Information Provided to Purchaser. Each Seller has provided to Purchaser all material information about the Claim and all such information is true, correct and complete. Each Seller has also provided to Purchaser originals or true, accurate and complete copies of all material Claim Documents. Other than as evidenced by the Claim Documents, no

5

Seller has had any communications regarding the Litigation with the District Court, Lead Counsel, the CA or any other entity involved in the Litigation.

3.8    No Reliance.  Each Seller is a sophisticated party that has conducted its own independent evaluation of the transactions contemplated by this Agreement and has made its own independent decision (based on its own judgment and upon advice from such advisers as it has deemed necessary) to sell the Claim for the relevant amount included in the aggregate Purchase Price upon the terms and conditions set forth in this Agreement. With the exception of the specific representations and warranties set forth in Section 4 of this Agreement, no Seller is relying on (i) any information provided to such Seller or written or oral representations, whether express or implied, by Purchaser or its respective members, shareholders, officers, directors, employees, representatives, agents or affiliates or (ii) any information provided to such Seller by Purchaser or its respective shareholders, officers, directors, employees, representatives, agents or affiliates in assessing the reasonableness of the Purchase Price or the other terms of this Agreement.

3.9    Excluded Information.  Each Seller, for itself and its affiliates, acknowledges that (i) Purchaser may currently have, and may later come into possession of, information relating to any Claim, the relevant Transferred Rights, the Litigation or the Defendants that is not known to such Seller and that may be material to a decision to buy or sell any Claim and the relevant Transferred Rights (the "Excluded Information"), (ii) it has not requested the Excluded Information, and has agreed to proceed with the purchase or sale of each Claim and the relevant Transferred Rights hereunder without receiving the Excluded Information, and (iii) Purchaser shall have no liability to it, and each Seller waives and releases any claims that it might have against Purchaser or Purchaser's members, shareholders, officers, directors, employees, representatives, agents and controlling persons and their respective successors and assigns whether under applicable securities laws or otherwise, with respect to the nondisclosure of the Excluded Information; provided, however, that, in each case, the Excluded Information shall not and does not affect either the truth or accuracy of Purchaser's representations and warranties or any Seller's rights and remedies with respect to Purchaser's representations, warranties and covenants;

3.10    Expectation of Return.  Each Seller acknowledges that Purchaser has entered into this Agreement for investment purposes, and Purchaser's intention and expectation in entering into this Agreement is to earn a positive financial return on each Claim and the relevant Transferred Rights.  Each Seller understands that Purchaser's recovery on any Claim and the relevant Transferred Rights may exceed the relevant portion of the aggregate Purchase Price or collectively the Purchase Price.

3.11    No Fiduciary Relationship.  Each Seller acknowledges that such Seller and Purchaser are not in a fiduciary, agency or other special relationship.

3.12    OFAC.  Neither any Seller nor any affiliate of any Seller, nor, to the best knowledge of any Seller, any director, officer, agent, employee or affiliate of any such Seller or any of

its affiliates is currently subject to any U.S. sanctions administered by the Office of Foreign Assets Control of the U.S. Department of the Treasury ("OFAC").

3.13 <u>AML Matters</u>.  The operations of each Seller and its respective affiliates are and have been conducted at all times in compliance with applicable financial recordkeeping and reporting requirements of the Currency and Foreign Transactions Reporting Act of 1970, as amended, the anti-money laundering statutes of all applicable jurisdictions, the rules and regulations thereunder and any related or similar rules, regulations or guidelines, issued, administered or enforced by any governmental agency (collectively, the "Anti-Money Laundering Laws"); and no action, suit or proceeding by or before any court or governmental agency, authority or body or any arbitrator involving any such Seller or any of its respective affiliates with respect to the Anti-Money Laundering Laws is pending or, to the best knowledge of such Seller, threatened.

3.14 <u>No Defenses or Setoff</u>.  To each Seller's knowledge, the Claims and other Transferred Rights are not subject to any defense, claim or right of setoff, recoupment, reduction, impairment, avoidance, disallowance, subordination or preference action, in whole or in part, whether on contractual, legal or equitable grounds, that have been or may be asserted by any party.  Each Seller has no obligation or liability related to or in connection with the Claim or the Litigation, and has not effected and will not effect any netting, set-off, recoupment or other recovery of all or any portion of the Claim against any claim or obligations owed to the Defendants in the Litigation or any of their affiliates.

**SECTION 4 – REPRESENTATIONS AND WARRANTIES OF PURCHASER**

Purchaser represents and warrants to each Seller as follows:

4.1 <u>Organization; Authorization; Etc</u>.  Purchaser is duly organized, validly existing and (if relevant) in good standing under the laws of the state of its incorporation or other organization.  Purchaser has the requisite power and authority to purchase the Claim from Seller, execute and deliver this Agreement, and to perform the transactions contemplated hereby or thereby.  This Agreement has been duly authorized, executed and delivered and constitutes a legal, valid and binding obligation of the Purchaser, enforceable against it in accordance with its terms except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights in general and subject to general principles of equity.

4.2 <u>No Litigation</u>.  There is no suit, action, litigation or other proceeding or governmental or administrative investigation or inquiry, pending or, to the best knowledge of Purchaser, threatened against Purchaser that could prevent or prohibit Purchaser from purchasing any Claim or from otherwise complying in full with the provisions of this Agreement.

7

4.3    Purchaser Solvent.  That Purchaser is solvent and the funds to pay the Purchase Price will be available at Closing.

4.4    No Reliance.  Purchaser is a sophisticated party that has conducted its own independent evaluation of the transactions contemplated by this Agreement and has made its own independent decision to purchase the Claims for the Purchase Price upon the terms and conditions set forth in this Agreement.  With the exception of any representations and warranties set forth in Section 3 of this Agreement, Purchaser is not relying on (i) any information provided to Purchaser or written or oral representations, whether express or implied, by any Seller or its respective agents or affiliates, or (ii) any information provided to Purchaser by any Seller or its respective agents or affiliates.

4.5    Disclaimers. PURCHASER SHALL BE DEEMED TO BE SATISFIED WITH AND/OR TO HAVE ACCEPTED THE CLAIM AND OBLIGATIONS ARISING FROM AND AFTER CLOSING, "AS IS", "WHERE IS"

4.6    Excluded Information.  Purchaser acknowledges that, except as otherwise provided herein, (i) any Seller may come into possession of, information relating to the Claim, the Transferred Rights, the Litigation or the Defendants that is not known to Purchaser and that may be material to a decision to buy or sell any Claim and the relevant Transferred Rights (the "Excluded Information"), (ii) it has not requested the Excluded Information, and has agreed to proceed with the purchase or sale of the Claim and the Transferred Rights hereunder without receiving the Excluded Information, and (iii) no Seller shall have any liability to it, and Purchaser waives and releases any claims that it might have against each Seller or such Seller's officers, directors, employees, agents and controlling persons and their respective successors and assigns whether under applicable securities laws or otherwise, with respect to the nondisclosure of the Excluded Information; provided, however, that, in each case, the Excluded Information shall not and does not affect either the truth or accuracy of any such Seller's representations and warranties or Purchaser's rights and remedies with respect to any Seller's representations, warranties and covenants;

4.7    No Fiduciary Relationship.  Purchaser acknowledges that no Seller and Purchaser in a fiduciary, agency or other special relationship.

**SECTION 5 - COVENANTS OF SELLERS**

Each Seller covenants to Purchaser as follows:

5.1    Further Assurances.  Each Seller agrees at its own expense to (a) provide, duly execute or deliver (as the case may be), or cause to be provided, duly executed or delivered (as the case may be), to Purchaser such further information, documents and instruments reasonably available to it or under its possession, custody or control and (b) do and cause to be done such further acts, in each case as may be reasonably necessary to (1) give effect to the transfer of the Claims and the Transferred Rights contemplated by this Agreement, and/or (2) permit recovery on the Claims and the Transferred Rights; without

8

limitation, this shall include causing any other direct or indirect subsidiary or controlled affiliate of the Parent Seller to enter into a counterpart of this Agreement as a Seller hereunder to the extent any such entity owns any Claims, and to cause any such entity to comply with the related obligations hereunder as if such entity entered into this Agreement as a Seller as of the date hereof. Without limitation, each Seller shall or shall cause its affiliates to use all commercially reasonable efforts, without undue delay, to obtain or consent to and direct its counterparties to obtain and deliver to Purchaser information relating to the amount and / or validity of any Claims or Transferred Rights, and shall use all commercially reasonable efforts to provide such other support of the validity and amount of the Claims and the Transferred Rights as Purchaser may request; provided, that Purchaser shall bear the reasonable out of pocket costs associated with the obtaining and delivery of such information or other actions required by this sentence.

5.2    Waiver of Claims; Agreement Not To Sue. To the maximum extent permitted by law, each Seller will not assert and hereby waives any and all claims against Purchaser or any of its members, shareholders, officers, directors, employees, agents or affiliates with respect to this Agreement or the transactions contemplated hereby or thereby based on an assertion that: (i) Purchaser made warranties or representations, expressed or implied, not contained in this Agreement; or (ii) the value and scope of any Claim, alone or in the aggregate, exceeds the Purchase Price. Each Seller agrees not to commence or maintain any suit against Purchaser or any of its members, shareholders, officers, directors, employees, agents or affiliates with respect to this Agreement or the transactions contemplated hereby, whether at law or in equity, based on a claim that: (i) Purchaser made warranties or representations, expressed or implied, not contained in this Agreement; or (ii) the value and scope of any Claim, alone or in the aggregate, exceeds the Purchase Price.

5.3    Proxy and Attorney-in-fact. To the extent Purchaser is not recognized by the CA as the owner of the Claims and the Transferred Rights as contemplated by this Agreement, each Seller hereby irrevocably appoints Purchaser as its true and lawful attorney-in-fact and authorizes Purchaser to act in such Seller's name, place and stead, to demand, sue for, compromise and recover all such amounts as now are, or may hereafter become, due and payable for or on account of the Claims and other Transferred Rights and to do all things necessary to enforce the Claims or any portion thereof and each Seller's rights hereunder or thereunder or related hereto or thereto. Each Seller agrees that the powers granted by this paragraph are discretionary and that Purchaser may exercise or decline to exercise such powers at Purchaser's sole option. Purchaser shall have no obligation to take any action to prove or defend the validity or amount of any Claim in any litigation (including the Litigation) or bankruptcy case. Each Seller agrees that it shall take no action whatsoever in respect of or in connection with the Claims or the Transferred Rights or any portion thereof without Purchaser's express consent, unless such action is expressly contemplated by this Agreement.

5.4    Distributions and Notices. Each Seller agrees that in the event such Seller shall receive payments, distributions or notices with respect to or relating to the Claims or the Transferred Rights at any time, such Seller shall accept the same as Purchaser's agent and

9

shall hold the same in trust on behalf of and for the sole benefit of Purchaser, and shall promptly deliver the same forthwith to Purchaser in the same form received within two Business Days in the case of cash, within three Business Days in the case of securities (which shall be in good deliverable form, with the endorsement of any such Seller when necessary or appropriate) and within one Business Day in the case of any notice.  In the event any Seller fails to deliver any payment or distribution to Purchaser within the relevant period from such Seller's receipt, such Seller shall be obligated to pay Purchaser interest on such payment or distribution (in the case of securities the value of each such security shall be the closing price as reported on the national securities exchange on which the security is listed or the average of the bid and ask price as reported on the automated inter-dealer quotation system on which the security is traded or such other value as Purchaser may reasonably determine) at the per annum rate of 10% (the "Interest Rate"), from the date of such Seller's receipt to the date of Purchaser's receipt.

5.5    <u>Indemnification</u>**.**  The purchase of the Claim is made without recourse to any Seller, provided, however that each Seller agrees to indemnify, reimburse and hold harmless Purchaser from all costs, expenses, losses, damages and liabilities, including, without limitation, reasonable attorneys' fees and expenses and whether or not arising out of any third party claim, which arise out of or result from or in connection with (a) any breach or inaccuracy in any of the Sellers representations, warranties, or covenants set forth herein; or (b) any failure to vest in Purchaser any Seller's (or any herein listed affiliate's or subsidiary's) right, title and interest in and to the Claims and the Transferred Rights. Nothing herein shall in any way limit any claim for fraud or intentional misrepresentation or misconduct.

5.6    <u>Remedy for Disallowed Purchase</u>.  If the purchase of a Claim is disallowed, for any reason, following the payment of the Purchase Price, the Purchaser has the option of (i) recovering from future recoveries from the Litigation an amount equal to the sum of the Purchase Price plus interest accrued at an annual rate of 10% ("Interest Payment"); or (ii) directing Seller, in which event Seller agrees to pursue the Claim as directed by and at the sole cost of Purchaser, and to remit to the Purchaser all amounts actually received by Seller as a result of its pursuit of the Claim.  The Interest Payment will be assessed for the period of time elapsed between the date of the payment of the Purchase Price and date the Purchase Price has been repaid to the Purchaser.

**SECTION 6 - GENERAL**

6.1    <u>Severability</u>.  In the event that any provision herein becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable or void, the remainder of this Agreement shall continue in full force and effect without said provision, and any such provision shall be construed to be enforceable to the maximum extent permitted under applicable law for the benefit of the party arguing against the treatment of such provision as illegal, unenforceable or void.

10

6.2    Costs.  The Parties shall each pay their own costs and expenses (including attorneys' fees and accountants' fees) incurred or to be incurred in negotiating, preparing, executing and performing this Agreement.

6.3    Entire Agreement.  This Agreement represents the entire agreement and understanding between the Parties regarding the sale and purchase of the Claims and supersedes any and all prior representations, warranties, agreements and understandings, whether written or oral, concerning the sale and/or purchase of the Claims.

6.4    No Oral Modification.  This Agreement may only be amended in writing signed by both Purchaser and Seller Parent.

6.5    Governing Law.  This agreement shall be governed by and construed in accordance with the laws of the state of California.  Each Party hereto irrevocably and unconditionally consents to the jurisdiction of the courts located in the state of California and county of Orange and of the United States district court for the Central District of California (Southern Division) for any action to enforce, interpret or construe any provision of this agreement, and also irrevocably waives any defense of improper venue or forum non conveniens to any such action brought in those courts and waives any right to demand trial by jury.  Each Party consents to service of process by certified first class mail at such Party's address listed below. Notwithstanding the above, the Bankruptcy Court shall have exclusive jurisdiction to consider any disputes arising from or related to the Approval Motion and the Approval Order.

**6.6    Jury Trial Waiver.  The Parties hereby irrevocably and knowingly waive to the fullest extent permitted by law any right to a trial by jury in any action or proceeding arising out of this Agreement. The Parties agree that any such action or proceeding shall be tried before a court and not a jury.**

6.7    Reliance on Representations.  Reliance by a Party on a representation or warranty of any other Party shall not be affected in any way by information such Party possesses as the result of the delivery of documents and information by any other Party in accordance with the terms of this Agreement or otherwise or by any other person or entity.

6.8    Assignment.  The terms of this Agreement shall be binding upon, and shall inure to the benefit of and be enforceable by Purchaser and its successors and assigns.  Sellers acknowledge that Purchaser may at any time sell, transfer, assign or sub-participate the Claims and the Transferred Rights, together with all right, title and interest of Purchaser in and to this Agreement, in whole or in part, without the consent of or notice to Sellers. All representations, warranties, covenants and agreements contained herein shall survive the execution and delivery of this Agreement and any such sale, transfer, assignment or participation of all or any portion of the Claims and the Transferred Rights.  Any successors, transferees or assigns of the Purchaser shall be entitled to enforce the rights of the Purchaser under this Agreement as if such person or entity were the Purchaser, and any such transferee or assignee is an intended beneficiary of this Agreement. Notwithstanding anything herein to the contrary, Sellers may not transfer or assign their

6.9   Confidentiality.  Each Party agrees that, without the prior written consent of the Parent Seller or the Purchaser, as the case may be, it shall not disclose the contents or existence this Agreement to any other person (other than affiliates); provided, however, that any Party may make any such disclosure: (a) to the extent required to do so by any law, court, regulation or legal process, (b) to give effect to the transfer of the Claims and other Transferred Rights contemplated by this Agreement, (c) to its professional advisors, auditors, representatives and other service providers as reasonably necessary to effect the transfer of the Claims; or (d) to any governmental authority having or asserting jurisdiction over it; and provided further that Purchaser and its affiliates may make such disclosure to any potential assignees, purchasers, sellers, transferees, counterparties or participants.  Notwithstanding the foregoing, Seller agrees that Purchaser or Purchaser's affiliates may disclose Seller's identity and the Purchase Price to prospective sellers in an effort to promote Purchaser's business.

6.10  Headings.  Section headings are for convenient reference only and will not affect the meaning or have any bearing on the interpretation of any provision of this Agreement.

6.11  Counterparts.  This Agreement may be executed in two or more counterparts, each of which together shall be deemed an original, but all of which together shall constitute one and the same instrument. In the event that any signature is delivered by facsimile transmission or by e-mail delivery of a ".pdf" format data file, such signature shall create a valid and binding obligation of the Party executing (or on whose behalf such signature is executed) with the same force and effect as if such facsimile or ".pdf" signature page were an original thereof.

6.12  Voluntary Execution of Agreement.  This Agreement is executed voluntarily and without any duress or undue influence on the part or on behalf of the Parties hereto.

6.13  Notices.  All notices, requests, demands or any other communication made under, pursuant to, or in accordance with this Agreement, except for normal day-to-day business communications, which may be made orally or in a writing, shall be in writing and shall either be delivered by hand or deposited in the United States mail and sent by first-class mail, certified, return receipt requested, postage prepaid and properly addressed as follows:

| If to Purchaser:<br>Optium Fund 2 LLC<br>610 Newport Center Drive<br>Suite 610<br>Newport Beach, CA 92660<br>Attention: Chief Executive Officer<br>nkornswiet@optiumcapital.com | If to any Seller:<br>_____<br>_____<br>_____<br>_____<br>_____<br>Attention: |
|---|---|

or to such other address(es) as a Party hereto may indicate to the other Party in the manner provided for herein.  Notices given by mail shall be deemed effective and complete forty-eight (48) hours following the time of posting and mailing, and notices delivered personally shall be deemed effective and complete at the time of delivery and the obtaining of a signed receipt.

**Signature Page Follows.**

IN WITNESS WHEREOF, the Agreement has been executed by the Parties as of the date and year provided above.

| OPTIUM FUND 2, LLC | ARO LIQUIDATION, INC. |
|---|---|
| By _____<br>Name: Neil B. Kornswiet<br>Title:  Chief Executive Officer | By _____<br>Name:<br>Title: |

**Claim Purchase Agreement**

Capitalized terms shall have the meanings set forth in the related Claim Purchase Agreement.

<u>In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation</u> (Case No. 1:05 md-1720-JG-JO), filed in the United States District Court for the Eastern District of New York, and any other cases constituting a reformation of the causes of action therein.

The sale, transfer and assignment of each Claim to Purchaser includes, without limitation, the sale, transfer and assignment to Purchaser all of each Seller's direct and indirect rights, title and interest in and to the following:

(1) all agreements, instruments, invoices, purchase orders, proofs of delivery, correspondence (including, without limitation, correspondence with the District Court), counsel appointed for the Class ("Class Counsel") or the claims administrator appointed in the Litigation (the "CA")), and other documents (whether now existing or hereafter arising) evidencing, creating, relating or referred to in, the Claim (collectively, the "Claim Documents");

(2) all interest, fees, payments, credits, coupons, reimbursements or rights thereto or other distributions in any form whatsoever (whether cash, securities, instruments, or other property) made or to be made on account of or in respect of the Claim or distributions issued in respect or satisfaction of the Claim and any proceeds of any of the foregoing;

(3) all other claims, suits, causes of action, and other rights of any Seller or any predecessor in interest to any Seller, whether known or unknown, against the Defendants or any other party relating to or arising from or in connection with the Claim or the Claim Documents; and

(4) all of any Seller's right to receive any payment, distribution or proceeds in respect of, or in connection with, any of the foregoing;

all of the foregoing, collectively being defined as the "Transferred Rights".

**Exhibit B**
**to**
**Claim Purchase Agreement**

# NOTICE OF ASSIGNMENT

ARO Liquidation, Inc. (the "Company") and Optium Fund 2 LLC (the "Assignee") have entered into a Claim Purchase Agreement dated _____, 201_ (the "Agreement"). Pursuant to that Agreement, the Company and its Affiliated Sellers as set forth in Exhibit C to the Agreement (collectively, the "Company Sellers") have irrevocably assigned and transferred to Assignee all of the their rights, title and interest in, to, or connected in any manner with, any settlement, judgment or recovery of funds or other consideration (collectively, "Settlement Funds") arising from the litigation entitled <u>In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Case No. 1:05 md-1720-JG-JO)</u>, filed in the United States District Court for the Eastern District of New York, and any other cases constituting a reformation of the causes of action therein or in which the same claims are alleged (the "Litigation"). Assignee is now the legal and equitable owner of all rights, title and interest associated with the Settlement Funds and the Litigation and you should deal directly with Assignee (or its duly appointed agents) on all matters regarding the Settlement Funds or the Litigation. In particular, the rights assigned and transferred by the Company Sellers to Assignee include, but are not limited to, the right to: (1) file, modify, compromise or amend a claim in connection with the Litigation; (2) communicate and receive communications from the Court, claims administrator, class counsel or other interested parties with respect to the Litigation; (3) receive Settlement Funds; and (4) challenge and/or negotiate the amount of Settlement Funds to be paid to Assignee in connection with the Litigation. All of the Company Sellers' third party service providers and counterparties are directed to provide Assignee with any and all of the Company Sellers' transactional information, sales information, purchase information, and other information requested by Assignee.

From this date forward, all payments of Settlement Funds shall be directed to the following bank account unless the Assignee notifies you otherwise:

| | |
|---|---|
| Bank: | Comerica Bank |
| ABA Number: | 121137522 |
| Account Name: | Optium Fund 2 LLC Settlement Account |
| LLC Account Number: | _____ |

All communications regarding the Litigation or the Settlement Funds, should be sent to Assignee at the following address:

> Optium Fund 2 LLC
> 610 Newport Center Drive
> Suite 610
> Newport Beach, CA 92660
> Attn: Chief Executive Officer
> nkornswiet@optiumcapital.com

Date: _____, 201_

_____, ON BEHALF OF ITSELF AND THE AFFILIATED SELLERS LISTED ON EXHBIT D TO THE AGREEMENT

By    ARO Liquidation, Inc.
Name:
Title:
Contact Details:

**Exhibit C**
to
**Claim Purchase Agreement**

# Affiliated Sellers

1. ARO Liquidation, Inc.
2. ARO Liquidation West, Inc.
3. ARO Liquidation Surf Co., LLC
4. ARO Liquidation GC Management LLC
5. ARO Liquidation Procurement Company, Inc.
6. ARO Liquidation Licensing, Inc.
7. ARO Liquidation (Kids), Inc.
8. ARO Liquidation GJ LLC
9. ARO Liquidation Holdings, Inc.
10. ARO Liquidation Puerto Rico, Inc.