**Exhibit C**

**Sale Order**

          **Hearing Date:**   February 15, 2018 at 11:00 a.m. (prevailing Eastern Time)
**Objection Deadline:**   February 8, 2018 at 4:00 p.m. (prevailing Eastern Time)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| ARO LIQUIDATION, INC., *et al.*, | Case No. 16-11275 (SHL) |
| Debtors[1]. | (Jointly Administered) |

### ORDER (A) APPROVING THE SALE OF VISA/MC LITIGATION CLAIM AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, AND (B) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the Debtors for entry of an order (this "Order") pursuant to sections 105(a), 363(b), 363(f), 363(m), 1107, and 1108 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), and Rules 9002, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i) authorizing the Debtors to sell or transfer the Visa/MC Litigation Claim to [•] (the "Buyer") in accordance with the agreement, dated as of [•], 2018 (together with all related agreements, documents or instruments and all exhibits, schedules, and supplements to any of the foregoing, the "Stalking Horse Agreement", and the transactions described therein, the "Sale Transaction"), by and among the Debtors and the Buyer, free and clear of all Liens, Claims (as defined herein) and encumbrances,

---

[1]   The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number are as follows: ARO Liquidation, Inc. (3880); ARO Liquidation West, Inc. (7013); ARO Liquidation Surf Co., LLC (0461); ARO Liquidation GC Management LLC (4257); ARO Liquidation Procurement Company, Inc. (8518); ARO Liquidation Licensing, Inc. (8124); ARO Liquidation (Kids), Inc. (5900); ARO Liquidation GJ LLC (4923); ARO Liquidation Holdings, Inc. (7729); and ARO Liquidation Puerto Rico, Inc. (6477). The Debtors' corporate headquarters is located at 125 Chubb Avenue, Lyndhurst, NJ 07071.

[2]   Capitalized terms not defined herein shall have the same meaning ascribed to them in the Motion.

with such Liens attaching to the proceeds of the Sale Transaction with the same validity, extent, and priority as had attached to the Visa/MC Litigation Claim immediately prior to the Sale Transaction, and (ii) granting certain related relief;  and the Court having held a hearing on February 15, 2018 at 11:00 a.m. (the "Sale Hearing") to approve the proposed Sale Transaction as set forth in the Stalking Horse Agreement;  and the Court having reviewed and considered (a) the Motion, (b) the O'Malley Declaration, (c) the objections to the Motion, if any, and (d) the arguments made by counsel, and the evidence proffered or adduced at the Sale Hearing;  and due and sufficient notice of the Motion having been given under the particular circumstances;  and it appearing that no other or further notice need be provided;  and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, their stakeholders, and other parties in interest;  and after due deliberation thereon;  and sufficient cause appearing therefore;

**IT IS HEREBY FOUND AND DETERMINED THAT**

A. **Jurisdiction and Venue**.  This Court has jurisdiction (i) to consider the Motion and (ii) over the property of Debtors, including the Visa/MC Litigation Claim to be sold, transferred, and conveyed pursuant to the Stalking Horse Agreement, under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B. **Legal Predicates**.  The legal predicates for the relief sought in the Motion are sections 105(a), 363(b), 363(f), 1107, and 1108 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004 and 9007.

C. **Final Order**.  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 7062, and to the extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of

2

Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of this Order as set forth herein.

        **D.**     **Notice**. As evidenced by the affidavits of service filed with the Court at Docket No. [•], and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Stalking Horse Agreement and the Sale Transaction has been provided in accordance with Bankruptcy Code sections 102(1), 363, and Bankruptcy Rules 2002, 6004 and 9006, and the case management procedures established in that certain *Order Pursuant to 11 U.S.C. Sections 105(a) and (d) and Fed. R. Bankr. 1015(c), 2002(m), and 9007 Implementing Certain Notice and Case Management Procedures* [Docket No. 255] (the "Case Management Order"), to each party entitled to such notice, (ii) such notice was good, sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, the Stalking Horse Agreement and the Sale Transaction is or shall be required.

        **E.**     On [•], 2018 in accordance with the Bidding Procedures Order, the Debtors served the Sale Notice upon: (i) counsel and co-counsel to the Debtors; (ii) the U.S. Trustee for the Southern District of New York; (iii) counsel for the Creditors Committee; (iv) counsel to (a) Aero Investors LLC in its capacities as administrative agent and lender under the Prepetition Term Loam Agreement and (b) MGF Holdings, Limited in its capacity as a lender under the Prepetition Term Loan Agreement; and (v) all parties who have requested notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002 (collectively, the "Standard Parties"), and (vi) any person or entity with a particularized interest in the subject matter of a certain Document (each, an "Affected Party") as described in the Case Management Order.

3

  **F.**  As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate and sufficient notice of the Auction, Sale Hearing and the Sale Transaction has been provided in accordance with sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014.  The Debtors have also complied with all obligations to provide notice of the Auction, Sale Hearing and Sale Transaction required by the Bidding Procedures Order.  The notices described above were good, sufficient and appropriate under the circumstances, provided all interested parties with timely and proper notice of the Auction, Sale Hearing and the Sale Transaction, and no further or other notice of the Auction, Sale Hearing and the Sale Transaction is required.

  **G.**  On [•], 2018, the Debtors filed with the Court a notice stating that Buyer is the Prevailing Purchaser, and that the Buyer's bid pursuant to the Stalking Horse Agreement is the Successful Bid.  A copy of the Stalking Horse Agreement is attached hereto as <u>Exhibit 1</u>.

  **H.**  The disclosures made by the Debtors concerning the Stalking Horse Agreement, Auction, Sale Hearing and the Sale Transaction were good, complete and adequate.

  **I.**  **Opportunity to Object**.  A fair and reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including:  (a) all entities known to have expressed an interest in a transaction with respect to the Visa/MC Litigation Claim;  (b) any such other party entitled to notice pursuant to Bankruptcy Rule 2002, Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, or the Case Management Order.

4

J.  **Sale in Best Interests**.  The consideration provided by the Buyer under the Stalking Horse Agreement constitutes the highest or otherwise best offer for the Visa/MC Litigation Claim and provides fair consideration and reasonably equivalent value to the Debtors in exchange for the Visa/MC Litigation Claim.  The transactions contemplated by the Stalking Horse Agreement represent the best opportunity to maximize and realize the value of the Visa/MC Litigation Claim for the Debtors' estate.

K.  **Highest and Best Offer**.  The Debtors engaged in a marketing process for the Visa/MC Litigation Claim prior to entering into the Stalking Horse Agreement and conducted an auction process in accordance with, and have otherwise complied in all respects with, the Bidding Procedures Order.  The auction process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any Person or entity to make a higher or otherwise better offer to purchase the Visa/MC Litigation Claim.  The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner and a reasonable opportunity has been given to any interested party to make a higher and/or better offer for the Visa/MC Litigation Claim.

L.  Based upon the Bidding Procedures approved pursuant to the Bidding Procedures Order, the Debtors determined that the bid evidenced by the Stalking Horse Agreement is the highest and/or best offer for the Visa/MC Litigation Claim.

M.  The transaction contemplated by the Stalking Horse Agreement constitutes the highest and/or best offer for the Visa/MC Litigation Claim, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative.  The Debtors' determination that the Stalking Horse Agreement constitutes the highest and/or best offer constitutes a valid and sound exercise of the Debtors' business judgment.

N.     The Stalking Horse Agreement represents a fair and reasonable offer to purchase the Visa/MC Litigation Claim under the circumstances of these Chapter 11 Cases. No other Person or entity or group of entities has offered to purchase the Visa/MC Litigation Claim for greater value to the Debtors' estates than the Purchaser.

O.     **Business Justification**. Sound business reasons exist for the Sale Transaction. Entry into the Stalking Horse Agreement, and the Sale Transaction and constitutes the Debtors' exercise of sound business judgment and such acts are in the best interests of the Debtors, their estates and all other parties in interest.

P.     The terms of the Stalking Horse Agreement and the Sale Transaction are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with its fiduciary duties and are the best available to the Debtors under the circumstances. For these reasons and based on the other evidence of record, the Court finds that (i) the Stalking Horse Agreement constitutes the highest or otherwise best offer for the Visa/MC Litigation Claim under the circumstances, (ii) the Stalking Horse Agreement and the closing of the Sale Transaction present the best opportunity to realize value for the Visa/MC Litigation Claim, and (iii) any other transaction would create a substantial risk of delay and a significant reduction in value.

Q.     **Condition to Sale Transaction**. Entry of this Order approving the Stalking Horse Agreement and all the provisions thereof is a condition precedent to the Buyer's obligation to consummate the Sale Transaction.

R.     **Good Faith Purchaser**. The Buyer (i) is a good faith purchaser for value and, as such, is entitled to all of the protections afforded under 11 U.S.C. § 363(m) and any other applicable or similar bankruptcy and non-bankruptcy law, and (ii) has otherwise proceeded in good faith in all respects in connection with this proceeding. Specifically: (a) all payments to be made by the Buyer in connection with the Sale

6

Transaction have been disclosed;  (b) the negotiation and execution of the Stalking Horse Agreement was at arm's-length and in good faith, and at all times each of the Buyer and the Debtors were represented by competent counsel of their choosing;  (c) the Buyer did not in any way induce or cause the filing of the Chapter 11 Cases;  and (d) the Buyer has not acted in a collusive manner with any person.  Neither the Debtors nor the Buyer has engaged in any conduct that would cause or permit the Stalking Horse Agreement or the Sale Transaction to be avoided or result in the imposition of any costs or damages under 11 U.S.C. § 363(n) and the Buyer will be acting in good faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by the Stalking Horse Agreement.

  **S.**  **Free and Clear**.  Debtors have provided notice as set forth in this Order to (i) Counsel to the DIP Agent and DIP Arrangers and (ii) all other entities asserting or holding Liens (as defined in the Stalking Horse Agreement) or Claims (as defined below) on the Visa/MC Litigation Claim.  Such notice expressly stated that the failure of any person holding any lien, encumbrance or other interest with respect to the Visa/MC Litigation Claim to object to the relief requested in the Motion may be deemed to consent to the sale of the Visa/MC Litigation Claim free and clear of such person's liens, encumbrances or interests.  The Debtors has complied with the requirements of Bankruptcy Code section 363(f) because in each case, one or more of the standards set forth in within section 363(f)(1)-(5) has been satisfied, and may sell the Visa/MC Litigation Claim free and clear of all Liens and Claims against the Debtors, their estates or the Visa/MC Litigation Claim.  The requisite DIP Lenders have consented to the Sale Transaction on the terms set forth in the Stalking Horse Agreement and this Order as required by the DIP Credit Agreement, in accordance with section 363(f)(2) of the Bankruptcy Code.  All other holders of Liens and Claims in

7

or against the Visa/MC Litigation Claim have either expressly consented or did not object, or withdrew their objections to the Motion and are deemed to have consented in accordance with section 363(f)(2) of the Bankruptcy Code.

T.    **No Reliance on Representations and Warranties.**  The purchase of the Visa/MasterCard Litigation Claim shall be deemed to be satisfied with and/or have accepted the claim and obligations from and after closing "as is," "where is."

U.    **Prompt Consummation.**  The sale of the Visa/MC Litigation Claim must be approved and consummated promptly in order to preserve the value of the Visa/MC Litigation Claim.  To maximize the value of the Visa/MC Litigation Claim, it is essential that the Sale Transaction occur within the timeframe set forth in the Stalking Horse Agreement.  Therefore, time is of the essence in consummating the Sale Transaction, and the Debtors and the Buyer intend to close the Sale Transaction as soon as reasonably practicable.

V.    **No Fraudulent Transfer**.  The Stalking Horse Agreement was not entered into, and neither the Debtors nor the Buyer proposes to consummate the Sale Transaction, for the purpose of hindering, delaying, or defrauding the Debtors' present or future creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

W.    **Consideration**.  As demonstrated by the O'Malley Declaration, the other evidence proffered or adduced at the Sale Hearing, and the arguments of counsel made on the record at the Sale Hearing, the consideration provided by the Buyer for the Visa/MC Litigation Claim pursuant to the Stalking Horse Agreement (i) is fair, full, adequate, and reasonable, (ii) is the highest or otherwise best offer for the Visa/MC Litigation Claim, (iii) will provide a greater recovery for the Debtors' creditors than

8

would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value, reasonable market value, and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia (including, without limitation, the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act).

   X.  **Buyer Not a Successor**.  The Buyer is not and shall not be deemed a successor to the Debtors as a result of the consummation of the Sale Transaction.

   Y.  **Legal and Factual Bases**.  The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

**IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED THAT:**

**General Provisions**

   1.  The Motion is GRANTED to the extent set forth herein.

   2.  All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits and denied with prejudice.  All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief sought therein.

**Approval of the Sale of the Visa/MC Litigation Claim**

   3.  The Stalking Horse Agreement, including any amendments, supplements, and modifications thereto, and all of the terms and conditions therein, is hereby approved.

   4.  The Debtors are hereby authorized and empowered to: (1) execute the Stalking Horse Agreement, along with any additional instruments or documents that may be necessary to implement the Stalking Horse Agreement, provided that such additional documents do not materially change its terms; (2) do all things and take all

9

actions necessary to consummate the Sale Transaction in accordance with the terms and conditions of the Stalking Horse Agreement and the instruments and agreements contemplated thereby; and (3) take all further actions as may reasonably be requested by the Buyer for the purpose of transferring or reducing to possession the Visa/MC Litigation Claim, in each case without further application to, or order of, the Court.

**Sale and Transfer of Visa/MC Litigation Claim**

5.  Except as otherwise expressly provided in the Stalking Horse Agreement and the terms of this Order, pursuant to 11 U.S.C. §§ 363(b) and 363(f) the Visa/MC Litigation Claim shall be transferred on the Closing Date free and clear of all (i) claims Liabilities (as defined in the Stalking Horse Agreement), interests, rights, and encumbrances, in each case against or otherwise in respect of the Visa/MC Litigation Claim being transferred, including, without limitation, all restrictions (including, without limitation, any restriction on the use, voting rights, transfer rights, claims for receipt of income, or other exercise of any attributes of ownership), hypothecations, charges, indentures, instruments, options, security interests, conditional sale rights or other title retention agreements, pledges, judgments, demands, rights of first refusal, consent rights, contract rights, rights of recovery, reimbursement rights, contribution claims, indemnity rights, exoneration rights, alter-ego claims, tax claims, regulatory violations by any governmental entity, decrees of any court or foreign or domestic governmental entity, charges of any kind or nature, debts arising in any way in connection with any agreements, acts, or failures to act, obligation claims, demands, guaranties, contractual or other commitment rights and claims, and all other matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or

unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the Debtors' Chapter 11 Case, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under any theory, law or doctrine of successor liability or related theories, as well as any and all "claims" as that term is defined and used in the Bankruptcy Code, including section 101(5) thereof (all of the foregoing, collectively, "Claims"), (ii) Liens (as defined in the Stalking Horse Agreement), including, without limitation, the DIP Liens, any other liens arising under or set forth in any DIP Loan Document (each of the foregoing, as defined in the Final DIP Order), and any other Liens on or against the Visa/MC Litigation Claim, arising prior to the Closing Date (the "Liens"), with such Liens to attach to the proceeds of the Sale Transaction in the order of their priority, with the same validity, force and effect which they now have as against such Visa/MC Litigation Claim, and (iii) to the maximum extent permitted by law, any other interests within the meaning of section 363(f) of the Bankruptcy Code.

6.     Following the Closing, the Debtors and the Buyer are authorized to file a certified copy of this Order, which, once filed, registered or otherwise recorded, shall at the time of the Closing constitute conclusive evidence of the release of all Liens and Claims of any kind or nature whatsoever with respect to the Visa/MC Litigation Claim being transferred at the Closing.  On the Closing Date, this Order will be construed, and constitute for any and all purposes, a full and complete general assignment, conveyance, and transfer of the applicable Visa/MC Litigation Claim transferring good and marketable title in and to such Visa/MC Litigation Claim in accordance with the Stalking Horse Agreement.

11

7. At the Closing, all of the Debtors' legal, equitable, and beneficial right, title and interest in and to, and possession of, the respective Visa/MC Litigation Claim being transferred at such Closing shall be immediately vested in the Buyer pursuant to Bankruptcy Code sections 105(a), 363(b), and 363(f) free and clear of any and all Liens and Claims. Such transfer shall constitute a legal, valid, binding, and effective transfer of such Visa/MC Litigation Claim and shall vest the Buyer with good and marketable title to the Visa/MC Litigation Claim. All persons or entities, presently, or on or after each Closing, in possession of some or all of the respective Visa/MC Litigation Claim being transferred are directed to surrender possession of such Visa/MC Litigation Claim directly to the Buyer or its designees on the Closing or at such time thereafter as the Buyer may request.

8. The Buyer is hereby authorized in connection with the consummation of the Sale Transaction to assign, transfer, allocate, or otherwise dispose of any of the Visa/MC Litigation Claim to and among its affiliates, designees, assignees, and/or successors (i) in a manner as it, in its sole discretion, deems appropriate and (ii) with all of the rights and protections accorded under this Order and the Stalking Horse Agreement, and the Debtors shall cooperate with and take all actions reasonably requested by the Buyer to effectuate any of the foregoing.

9. This Order: (a) shall be effective as a determination that, as of the Closing, (i) no Liens or Claims with respect to any of the Visa/MC Litigation Claim will be capable of being asserted against the Buyer or any of its direct assets (including such Visa/MC Litigation Claim), (ii) each of the Visa/MC Litigation Claim shall have been transferred to the Buyer free and clear of all Liens and Claims, and (iii) the conveyances described herein have been effected; and (b) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers,

12

administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Stalking Horse Agreement, provided that nothing herein shall relieve any entity of the obligation to pay filing fees required to be paid under non-bankruptcy law.

10. All persons and entities (and their respective successors and assigns), including, without limitation, all debt security holders, equity security holders, affiliates, governmental, tax, and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants, and other creditors holding Liens or Claims of any kind or nature whatsoever arising under or out of, in connection with, or in any way relating to, the Visa/MC Litigation Claim or the Chapter 11 Cases are, as of the Closing Date, forever barred, estopped, and permanently enjoined from asserting such Liens or Claims against the Buyer, its successors or assigns, or the Visa/MC Litigation Claim. Following the Closing, no holder of any Lien or Claim shall interfere with the Buyer's title to the Visa/MC Litigation Claim transferred in connection with the Closing based on or related to any such Lien or Claim, or based on any action the Debtors may take in its Chapter 11 Case.

11. Each person or entity that has filed financing statements or other documents or agreements evidencing Liens or Claims on or against any of the Visa/MC Litigation Claim shall use commercially reasonable efforts to deliver to the Debtors and the Buyer prior to the Closing of the Sale Transaction in proper form for filing, and executed by the appropriate parties, termination statements, instruments of satisfaction,

13

and releases of all such Liens and Claims on or against any of the Visa/MC Litigation Claim.  If any person or entity that has filed financing statements or other documents or agreements evidencing Liens or Claims on or against any of the Visa/MC Litigation Claim shall not have delivered to the Debtors prior to the Closing of the Sale Transaction, in proper form for filing, and executed by the appropriate parties, termination statements, instruments of satisfaction, and releases of all such Liens and Claims, then only with regard to the Visa/MC Litigation Claim that are purchased by the Buyer in connection with the Closing, and pursuant to the Stalking Horse Agreement and this Order:  (a) the Debtors and the Buyer are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to any of the Visa/MC Litigation Claim;  (b) the Buyer is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all such Liens and Claims against the Buyer and the Visa/MC Litigation Claim;  and (c) the Buyer may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction, and releases of all such Liens and Claims with respect to the any of the Visa/MC Litigation Claim.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.  Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment at the Closing of the Visa/MC Litigation Claim free and clear of Liens and Claims shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Order.

14

12. All persons and entities are hereby forever prohibited and permanently enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Visa/MC Litigation Claim in accordance with the Stalking Horse Agreement and this Order; provided, however, that the foregoing restriction shall not prevent any party from appealing this Order in accordance with applicable law or opposing any appeal of this Order.

**No Successor or Transferee Liability**

13. The Buyer is not and shall not be deemed a successor to the Debtors or any of the other Debtors as a result of the consummation of the Sale Transaction.

14. The Buyer shall not have any responsibility for any liability or other obligation of the Debtors or any of the other Debtors, whether known or unknown, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including under any law or theory of successor or vicarious liability, antitrust law, environmental law, foreign, federal, state or local revenue law, or products liability law. Without limiting the generality of the foregoing, the Buyer shall not be liable for any liabilities, debts, or obligations on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the ownership of the Visa/MC Litigation Claim prior to the Closing (all liabilities described in paragraphs 14 and 15 of this Order, "Successor or Transferee Liability").

15. Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Buyer, or its assets (including the Visa/MC Litigation Claim), with respect to any (a) Lien or Claim or (b) Successor or Transferee Liability, in each case, relating to the Visa/MC Litigation Claim, including, without limitation, the

15

following actions with respect to clauses (a) and (b):  (i) commencing or continuing any action or other proceeding pending or threatened;  (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order;  (iii) creating, perfecting or enforcing any Lien or Claim;  (iv) asserting any setoff, right of subrogation, or recoupment of any kind;  or (v) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof.

**Good Faith**

16.    The Buyer has acted without collusion, in good faith in undertaking the Sale Transaction contemplated by the Stalking Horse Agreement.  The Sale Transaction may not be avoided, nor may any costs or damages be imposed, under 11 U.S.C. § 363(n) and the Buyer is entitled to all of the protections afforded by Bankruptcy Code section 363(m).

**Other Provisions**

17.    The terms and provisions of the Stalking Horse Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors and their respective affiliates and subsidiaries, successors and assigns, their estates, and their creditors, the Buyer, and its affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting Liens or Claims on or against the Visa/MC Litigation Claims to be sold to the Buyer pursuant to the Stalking Horse Agreement, notwithstanding any subsequent appointment of any trustee(s), examiner with expanded powers, or other responsible person or officer under any chapter of the Bankruptcy Code, as to which persons such terms and provisions likewise shall be binding.  Nothing contained in any chapter 11 plan confirmed in any

16

of the Debtors' Chapter 11 Cases, any order confirming any such chapter 11 plan, any order approving wind-down or dismissal of any of the Debtors' Chapter 11 Cases or any subsequent chapter 7 cases, or any other order of any type or kind entered in the Debtors' Chapter 11 Cases shall conflict with or derogate from the provisions of the Stalking Horse Agreement or this Order, and to the extent of any conflict or derogation between this Order or the Stalking Horse Agreement and such future plan or order, the terms of this Order and the Stalking Horse Agreement shall control.

18. The Stalking Horse Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by all parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates. To the extent that any provision of the Stalking Horse Agreement conflicts with or is, in any way, inconsistent with any provision of this Order, this Order shall govern and control.

19. As provided by Bankruptcy Rules 7062 and 9014, the terms and conditions of this Order shall be effective and enforceable immediately upon entry and shall not be subject to the stay provisions contained in Bankruptcy Rule 6004(h). Time is of the essence in closing the sale, and the Debtors and the Buyer intend to close the sale as promptly as practicable following entry of this Order in accordance with the terms of the Stalking Horse Agreement.

20. The provisions of this Order and the Stalking Horse Agreement are nonseverable and mutually dependent. The provisions of this Order shall be self-executing.

21. The requirements set forth in Local Bankruptcy Rule 9013-1(b) are satisfied by the contents of the Motion.

22. The failure to specifically include any particular provisions of the Stalking Horse Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Stalking Horse Agreement be authorized and approved in its entirety; provided, however, that this Order shall govern if there is any direct conflict, and only to the extent of such conflict, between the Stalking Horse Agreement (including all ancillary documents executed in connection therewith) and this Order.

23. Notwithstanding anything to the contrary contained herein, any authorizations granted hereunder, and the disposition of any and all proceeds obtained by the Debtors pursuant to the Sale Transaction, shall be subject to any applicable requirements imposed on the Debtors under the *Final Order Pursuant to 11 U.S.C Sections 105, 361, 362, 363, and 364 and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Incurrence by the Debtors of Postpetition Secured Indebtedness, (II) Granting Liens, (III) Authorizing Use of Cash Collateral by the Debtors and Providing for Adequate Protection, and (IV) Modifying the Automatic Stay* [Docket No. 298] (the "Final DIP Order") and the other DIP Loan Documents (as defined in the Final DIP Order); provided, however, that nothing contained in this paragraph, the Final DIP Order or the DIP Loan Documents shall affect the Debtors' obligation to pay any amounts due on account of the Break-up Fee pursuant to the terms of the Stalking Horse Agreement to the extent such amounts become due and payable pursuant to the terms of the Stalking Horse Agreement.

24. Nothing in this Order or the Stalking Horse Agreement releases, nullifies, precludes or enjoins the enforcement of any liability arising after the date of

18

entry of this Order to a governmental unit under police and regulatory statutes or regulations (including but not limited to environmental laws or regulations), and any associated liabilities for penalties, damages, cost recovery, or injunctive relief that any entity would be subject to as the owner, lessor, lessee, or operator of property that is the subject of the Sale Transaction.  Nothing in this Order or the Asset Purchase Agreement authorizes the transfer to the Buyer of any licenses, permits, registrations, or governmental authorizations and approvals without the Buyer's compliance with all applicable legal requirements under non-bankruptcy law governing such transfers.

    25. This Court shall retain exclusive jurisdiction to, among other things, interpret, enforce, and implement the terms and provisions of this Order and the Stalking Horse Agreement, including all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connections therewith in all respects, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transaction.  This Court retains jurisdiction to compel delivery of the Visa/MC Litigation Claim, to protect the Buyer and its assets, including the Visa/MC Litigation Claim, against any Claims, Liens, and Successor or Transferee Liability and to enter orders, as appropriate, pursuant to sections 105 or 363 (or other applicable provisions) of the Bankruptcy Code necessary to transfer the Visa/MC Litigation Claim to the Buyer.

Dated: New York, New York
    _____, 2018

              _____
              HONORABLE SEAN H. LANE
              UNITED STATES BANKRUPTCY JUDGE

19